13 CV 9173

JUDGE RAMOS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

THE CITY OF NEW YORK,

                           Plaintiff,

-against-

FEDEX GROUND PACKAGE SYSTEM, INC. and
FEDERAL EXPRESS CORP.,

                           Defendants.

------------------------------------------------------------------ X

Civil Action No. 13 cv ___

**COMPLAINT**

RECEIVED
DEC 30 2013
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff the City of New York (the "City"), by its counsel Michael A. Cardozo,

Corporation Counsel of the City of New York, respectfully alleges, with knowledge of its own

actions and on information and belief as to the actions of others, as follows:

## NATURE OF THE ACTION

1.      This is a civil action for injunctive relief, including the appointment of a

Special Master, damages, and penalties under the Contraband Cigarette Trafficking Act, 18

U.S.C. § 2341 *et seq.* ("CCTA") and the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375

*et seq.* ("PACT Act"), for treble damages and attorney's fees under the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), for an injunction and penalties

under N.Y. Public Health Law § 1399-ll ("N.Y. PHL § 1399-ll"), and for abatement of a public

nuisance.

2.      Defendants FedEx Ground Package System, Inc. ("FedEx Ground") and

Federal Express Corp. ("FedEx Express") (collectively, "FedEx") are package delivery

companies and providers of specialized transportation and logistics services that in the regular

course of business deliver packages to persons located in New York State and nationwide.

3.      In February 2006, to resolve an investigation by the New York State Attorney General (the "NYAG") into FedEx's illegal residential deliveries of cigarettes, FedEx agreed to cease such deliveries in New York, an agreement subsequently expanded to include cigarette deliveries anywhere in the United States. Even while negotiating that agreement with the NYAG, and thereafter in defiance of the agreement, but more to the point, in violation of several federal and state statutes, FedEx knowingly shipped thousands of cartons of unstamped cigarettes to residential customers, partnering with a cigarette trafficking enterprise known as Shinnecock Smoke Shop, located on the Shinnecock Indian reservation in Southampton, New York. Between 2005 and 2012, FedEx delivered several tons of contraband cigarettes ordered over the Internet or by mail from Shinnecock Smoke Shop by consumers throughout the country, including New York City and State.

## BACKGROUND

4.      Cigarette smoking is the most significant source of preventable death in the United States. Smoking gives rise to billions of dollars in annual health care costs incurred to treat smoking-related illness.

5.      Higher cigarette prices have been incontrovertibly established to convince greater numbers of smokers to quit, reducing the incidence of smoking-related death and disease. "Raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco." Institute of Medicine, *Ending the Tobacco Problem: A Blueprint for the Nation*, at 182 (2007);[1] Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and*

---

[1] *Available at* http://books.nap.edu/openbook.php?record_id=11795&page=182 (last visited December 23, 2013).

*Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010)[2] (noting that "increases in the price of cigarettes through excise taxes ... are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit").

6.     A ten-percent increase in cigarette price reduces cigarette use among adults by three to five percent. Frank J. Chaloupka & Rosalie Liccardo Pecula, *The Impact of Price on Youth Tobacco Use*, National Cancer Institute Monograph No. 14, at 194 (Nov. 2001).[3] The response of youths to price increases is even greater, with a ten-percent price increase reducing the number of youth smokers by at least an estimated six or seven percent. *See Prevent All Cigarette Trafficking Act of 2007*, and the *Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 110 Cong. 50, 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids).

7.     States and local governments establish their own cigarette taxes, and significant disparities in the amount of tax imposed therefore exist among different taxing jurisdictions. Those disparities in turn give rise to opportunities for arbitrage, fueling an unlawful interstate market in "unstamped" cigarettes – cigarettes "which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found." *United States v. Hasan*, 846 F. Supp. 2d 541, 543 (E.D. Va. 2012). When purchased in low-tax jurisdictions and sold in a high tax jurisdictions, unstamped cigarettes produce enormous, illegal profits for everyone associated with the trade.

---

[2] *Available at* http://www.surgeongeneral.gov/library/tobaccosmoke/report/chapter9.pdf (last visited December 23, 2013).
[3] *Available at* http://cancercontrol.cancer.gov/tcrb/monographs/14/m14_12.pdf (last visited December 23, 2013).

8.    Interstate cigarette trafficking undercuts the salutary effect of high cigarette prices. For example, a study by the New York City Department of Health & Mental Health ("DOH") conducted an evaluation of the public health impact on smokers in New York City of cigarettes bootlegged from the Poospatuck Indian Reservation and imported to the City for resale, concluding that if the cigarettes had been fully taxed, in one year 1,370 additional New York City smokers would have quit smoking, avoiding 450 premature deaths. *City of New York v. Golden Feather Smoke Shop, Inc.,* 2009 U.S. Dist. LEXIS 76306, at *67-69 (E.D.N.Y. 2009).

9.    A study of smokers to whom bootlegged cigarettes were easily available, Shelley, D. *et al.,* "The $5 Man: The Underground Economic Response to a Large Cigarette Tax Increase in New York City," *Am J. Public Health,* 97(8) 1483-88 (2007), concluded based on smoker interviews that although interest in quitting smoking was high, bootleggers created an environment in which reduced-price cigarettes undermined cessation efforts and undermined the public health goals of the tax increase. Data from another study by the City DOH also concluded that "the availability of cheap cigarettes through untaxed sources may have provided a disincentive for tax-avoidant smokers to quit." Coady, M. *et al.,* "The Impact of Cigarette Excise Tax Increases on Purchasing Behaviors Among New York City Smokers," *Am J. Public Health,* 103(6) 54-60 (2013).

10.    Accordingly, "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]" *Report of the Surgeon General, supra* at 654.

11.    On February 3, 2006, FedEx resolved an investigation by the NYAG into the illegal delivery of cigarettes by FedEx to New York residences by entering into an

"Assurance of Compliance" ("AOC"). The AOC required FedEx, *inter alia*, to comply with N.Y. PHL § 1399-ll, which prohibits delivery of cigarettes to residences, by ceasing all such deliveries. The AOC also required FedEx to implement internal controls designed to assure that FedEx would not engage in residential cigarette deliveries in the future, and provided for a penalty of $1,000 per violation.

12.   Even while negotiating the AOC, and in utter disregard of its agreement with the NYAG, from at least 2005 to 2012, FedEx serviced a nationwide contraband cigarette trafficking enterprise known as the "Shinnecock Smoke Shop," located on the Shinnecock Indian reservation on Long Island. FedEx not only delivered cigarettes to residences for Shinnecock Smoke Shop, in violation of PHL 1399-ll and the AOC, it delivered them in the form of "unstamped" cigarettes, *i.e.*, cigarettes not affixed with the tax stamps of the jurisdictions into which the cigarettes were delivered, in violation of the CCTA. Following the June 29, 2010 effective date of the PACT Act, FedEx then commenced its violations of that statute, by delivering packages of cigarettes that did not bear federally-mandated disclosures.

13.   While negotiating the AOC and afterwards, FedEx served numerous other cigarette traffickers that operated as so-called "delivery-sellers," *i.e.*, cigarette sellers that exploit interstate differences in cigarette tax rates by selling and shipping cigarettes to consumers in states with higher cigarette taxes than the delivery-sellers' state. For example, from at least 2006 through 2009, FedEx Ground serviced a nationwide, Kentucky-based cigarette smuggling enterprise, known to FedEx as "Cigarettes Direct To You." FedEx's partnership with Cigarettes Direct To You ("CD2U") ended only when the federal Bureau of Alcohol, Tobacco, Firearms

and Explosives shut CD2U down and arrested its principals and various co-conspirators, all of whom eventually pleaded guilty to cigarette trafficking felonies and many of whom were jailed.[4]

14.     FedEx shipped approximately 70 tons of unstamped cigarettes into New York City in the course of its partnership with CD2U.

15.     Much as FedEx concealed the cigarette deliveries it made for Shinnecock Smoke Shop even while negotiating the AOC with the NYAG, so intent was FedEx Ground on profiting from the shipment of contraband cigarettes for CD2U that even while resolving the City of New York's claims over those shipments, and despite assurances to the contrary, FedEx Ground concealed from the City that it shipped unstamped cigarettes for Shinnecock Smoke Shop into the City.[5]

16.     Still other cigarette traffickers serviced by FedEx include Native Made Tobacco, a cigarette smuggling enterprise based in Palm Springs, California for which FedEx delivered unstamped cigarettes from at least 2005 through 2011. In February 2011, Native Made Tobacco became subject to a Stipulated Judgment and Permanent Injunction as a result of a suit brought against it by the California Attorney General for violating the CCTA and California state law by, *inter alia*, shipping large quantities of cigarettes "whose packs do not bear California cigarette excise tax stamps." FedEx nevertheless continued to deliver untaxed cigarettes for Native Made Tobacco through 2011.

17.     FedEx's shipments of unstamped cigarettes from Shinnecock Smoke Shop into the City injured the City, *inter alia*, in that the City was deprived of the tax of $15 per carton immediately upon arrival of the cigarettes in the City.

---

[4] *See, e.g.,* http://www.justice.gov/usao/kyw/news/2013/20131213-03.html (last visited December 23, 2013).
[5] *See* http://cityroom.blogs.nytimes.com/2013/03/15/fedex-to-pay-city-2-4-million-in-cigarette-tax-settlement/ (last visited December 23, 2013).

18.   The City seeks in this action to: i) enjoin further deliveries of cigarettes into the City by FedEx; ii) require FedEx to submit to oversight by a court-appointed Special Master empowered to monitor FedEx's tobacco deliveries and assure FedEx's compliance with federal law governing tobacco deliveries; iii) recover damages under the CCTA and the PACT Act equal to the amount of each $15 tax stamp that should have been affixed to each carton of unstamped cigarettes that FedEx shipped, transported, and/or distributed in the City; iv) recover damages under RICO equal to three times the amount of each $15 tax stamp that should have been affixed to each carton of unstamped cigarettes shipped, transported, or distributed in the City; v) recover civil penalties under the CCTA, the PACT Act, and N.Y. PHL § 1399-ll; and vi) recover the attorney's fees and costs incurred in bringing this action.

## PARTIES

19.   Plaintiff the City of New York (the "City") is a municipal corporation organized under the laws of the State of New York.

20.   Defendant FedEx Ground Package System, Inc. ("FedEx Ground") is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1000 FedEx Drive, Moon Township, Pennsylvania 15108.

21.   Defendant Federal Express Corp. ("FedEx Express") is a corporation organized under the laws of the State of Delaware, with a principal place of business at 3610 Hacks Cross Road, Memphis, Tennessee 38125.

22.   FedEx Ground and FedEx Express are both wholly-owned subsidiaries of FedEx Corp., a corporation organized under the laws of the State of Delaware, with a principal place of business of 942 South Shady Grove Road, Memphis, Tennessee 38119.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1964(c), 18 U.S.C. § 2346(b), and 28 U.S.C. §§ 1331, 1332, and 1367.

24.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## FACTS

### Cigarette Taxation and Regulation in New York

25.     The State and City of New York each impose a separate excise tax on cigarettes. With exceptions not relevant to this complaint, the tax falls on all cigarettes possessed for sale or use in the State or the City, as the case may be, by New York State Tax Law ("N.Y. Tax L.") §§ 471, 471-a and Administrative Code of the City of New York ("Ad. Code") § 11-1302(a)(1). The "use" of cigarettes in the State or City is "any exercise of a right or power, actual or constructive, including but not limited to receipt, storage or any keeping or retention for any length of time."  N.Y. Tax L. § 471-a; Ad. Code § 11-1301(4). All cigarettes sold, possessed for sale or used in New York State and City are presumed subject to the cigarette tax, and hence must bear a tax stamp, until the contrary is established, with the burden of proof of non-taxability on the person asserting an exemption from taxation. *See* N.Y. Tax L. § 471; Ad. Code § 11-302(d).

26.     State and City cigarette excise taxes are pre-paid by "cigarette stamping agents," who are usually wholesale cigarette dealers licensed by the State and City of New York to purchase and affix tax stamps. New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's stream of commerce.

27.     To indicate that the tax has been pre-paid on cigarettes to which the tax applies, stamping agents must affix a cigarette tax stamp to every package of cigarettes possessed by the agent for sale in the State and/or City, as the case may be. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a)(1); Ad. Code § 11-302(e). All cigarettes possessed for sale or use in New York State and City, with exceptions not relevant to this complaint, must bear tax stamps. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a)(1); Ad. Code § 11-302(g).

28.     To comply with the foregoing requirements, stamping agents purchase tax stamps from the State and City, the cost of which is nearly equal in cost to the amount of the cigarette tax on a pack of cigarettes. By purchasing the tax stamps, the tax is paid. By law, stamping agents must incorporate the amount of the tax into the price of the cigarettes, thereby passing the tax along to each subsequent purchaser in the distribution chain, and ultimately the consumer, as required by N.Y. Tax L. § 471 and Ad. Code § 11-302(e) and (h).

29.     At all times relevant to this complaint, the New York City excise tax has been $1.50 per pack or $15.00 per carton, and every carton of cigarettes in New York City was required to have affixed to it a joint New York State/New York City tax stamp, the City's share of which was $15 in revenue.

### Shinnecock Reservation Retailer Sales of Unstamped Cigarettes

30.     The Shinnecock Indian reservation in Southampton, New York is home to the Shinnecock Indian Nation. As documented extensively in the media for at least several decades, the Shinnecock Nation and other New York Indian tribes have disputed the right of state and local taxing authorities to require reservation smoke shops to sell cigarettes on which

cigarette taxes have been pre-paid, stamps have been affixed, at prices that include amounts attributable to state and local taxes.[6]

31.     Although the applicability of New York's cigarette taxation regime to Indian cigarette sales to the public has for decades been repeatedly upheld by the courts, *see, e.g., Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 64 (1994); *Oneida Nation of N.Y. v. Cuomo,* 645 F.3d 154, 158 (2d Cir. 2011), Shinnecock reservation cigarette sellers, and those on other New York State reservations, have a long, well-reported history of selling cigarettes to the public, including via the Internet, telephone, and mail order, without affixing the tax stamps of any of the jurisdictions into which the stores make sales. The refusal of Shinnecock retailers to affix the cigarette tax stamps of the jurisdictions into which they sell has been publicly acknowledged in lawsuits brought or defended by Shinnecock sellers attempting to vindicate that refusal. *See, e.g., Smith v. Frederico,* 2013 U.S. Dist. LEXIS 3681 (E.D.N.Y. Jan. 8, 2013); *Smith v. Cuomo,* 2007 U.S. Dist. LEXIS 97105 (E.D.N.Y. Sept. 30, 2007); *Smith v. Everson, 2007* U.S. Dist LEXIS 58293 (E.D.N.Y. Aug. 6, 2007); *Smith v. Spitzer,* 2007 U.S. Dist LEXIS 97104 (E.D.N.Y. Jan 16, 2007); *Matter of Smith v. Spitzer,* 814 N.Y.S. 2d 338 (3d Dep't 2006).

### Shinnecock Smoke Shop

32.     Shinnecock Smoke Shop is a sole proprietorship owned by Jonathan Smith ("Smith") and operated by Smith and his employees.

33.     Jonathan Smith is a member of the Shinnecock Nation and a frequent plaintiff in lawsuits brought in support of what he believes is his right to sell unstamped cigarettes. *See, e.g., Smith v. Frederico,* 2013 U.S. Dist. LEXIS 3681 (E.D.N.Y. Jan. 8, 2013);

---

[6] *See, e.g.,* New York Times, *Tribes Fear Cigarette Tax Law Could Destroy Their Prosperity,* November 6, 2006, *available at* http://www.nytimes.com/2006/11/06/nyregion/06cigarette.html (last visited December 23, 2013).

*Smith v. Cuomo,* 2007 U.S. Dist. LEXIS 97105 (E.D.N.Y. Sept. 30, 2007); *Smith v. Everson,* 2007 U.S. Dist. LEXIS 58293 (E.D.N.Y. Aug. 6, 2007); *Smith v. Spitzer,* 2007 U.S. Dist. LEXIS 97104 (E.D.N.Y. Jan 16, 2007); *Matter of Smith v. Spitzer*, 814 N.Y.S. 2d 338 (3d Dep't 2006).

34.     At least as early as 2006, Shinnecock Smoke Shop distributed and sold unstamped cigarettes throughout the country, including to residents of New York City, receiving orders by mail, telephone, and over the Internet. Shinnecock Smoke Shop shipped the unstamped cigarettes through FedEx or other delivery services for distribution to purchasers nationwide, including persons residing in New York City.

35.     At all times relevant to this complaint, neither Shinnecock Smoke Shop nor Smith had any licenses or were otherwise permitted to distribute, ship, transport, receive, possess, or purchase unstamped cigarettes in New York State or City.

36.     Between approximately December 20, 2005 and January 4, 2012, Shinnecock Smoke Shop shipped, transported, sold, and/or distributed tens of thousands of cartons of unstamped cigarettes to consumers in New York City.

37.     None of the cartons of cigarettes sold to City residents by Shinnecock Smoke Shop and subsequently delivered into the City had New York State or City tax stamps affixed to them; the cigarettes were all sold at prices that did not include amounts attributable to the payment of State and City cigarette taxes; the cigarettes were delivered to consumers at their homes or residences; none of the cigarette sales were reported to the City and none of the packages were labeled with the legend mandated under the PACT Act to indicate that they contained cigarettes.

**FedEx's Assurance of Compliance with the NYAG**

38.    In 2004, the NYAG investigated FedEx for delivering cigarettes to consumers in violation of N.Y. PHL § 1399-ll, which prohibits the delivery of cigarettes to residences.

39.    Section 1399-ll(1) provides that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government. Section 1399-ll(2) provides, in turn:

> It shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-ll(1)]. For purposes of the preceding sentence, if cigarettes are transported to a home or residence, it shall be presumed that the common or contract carrier knew that such person was not a person described in [1399-ll(1)]....

(Emphasis added).

40.    In February 2006, FedEx entered into the AOC with the NYAG, in which it agreed, *inter alia*, to "at all times comply with Pub. Health L. 1399-ll," to terminate relationships with shippers that unlawfully attempted to use FedEx to ship cigarettes to residential addresses, and to report those shippers to the NYAG. FedEx also agreed to monitor and investigate its own shipments to assure compliance with the AOC. FedEx later agreed to give nationwide effect to the AOC.

41.    The AOC also required FedEx to maintain, adhere to, and publicize to its customers a policy prohibiting the shipment and delivery of cigarettes to individual consumers. FedEx was required to revise an y and all of its internal policies to ensure that they were consistent with the terms of the AOC.

42.     FedEx agreed that it would pay the NYAG $1,000 for every violation of the AOC.

## FedEx's Shipments for Shinnecock Smoke Shop

43.     Since at least 2005, even during the period in which FedEx was negotiating the AOC, FedEx has knowingly shipped tens of thousands of cartons of unstamped cigarettes from Shinnecock Smoke Shop to individual residences in New York City, and indeed nationwide.

44.     Between 2005 and 2012, FedEx made approximately 9,900 separate deliveries of unstamped cigarettes from Shinnecock Smoke Shop to New York City residents.

45.     Between 2005 and 2012, FedEx delivered approximately 19.5 tons of unstamped cigarettes to City residents. Assuming a package weight of 1 pound equals about 1.4 cartons of cigarettes, FedEx's deliveries amounted to approximately 55,000 cartons of unstamped cigarettes to City residents, representing a tax loss to the City of approximately $825,000.

## FedEx's Knowing Shipment of Unstamped Cigarettes to Residential Customers

46.     At least as of 2005, FedEx had a written agreement with Shinnecock Smoke Shop whereby FedEx incentivized Shinnecock Smoke Shop's shipments by providing it with preferential shipping rates in exchange for maintaining a high volume of shipments. That agreement was in effect from at least 2005 to 2012.

47.     From at least 2005 to 2012, FedEx knowingly shipped at least 55,000 cartons of unstamped cigarettes from Shinnecock Smoke Shop to individual residences in New York City.

48.     Each package of cigarettes bore a sender's address of "Shinnecock Smoke Shop."

49.    FedEx categorized the deliveries as "residential" and imposed a residential delivery surcharge on Shinnecock Smoke Shop.

50.    FedEx had full knowledge that Shinnecock Smoke Shop was shipping unstamped cigarettes to individual residences in New York City, in violation of the AOC and in violation of state and federal law, but FedEx continued to knowingly ship, transport, and/or distribute unstamped cigarettes for Shinnecock Smoke Shop.

51.    FedEx employees, including those who negotiated and entered into the written agreement with Shinnecock Smoke Shop on behalf of FedEx, who managed the Shinnecock Smoke Shop account for FedEx, and who maintained Shinnecock Smoke Shop's business relationship with FedEx, knew that Shinnecock Smoke Shop was in the business of selling and shipping untaxed cigarettes to residential customers.

52.    FedEx employees communicated on a regular basis with Jonathan Smith and with employees of Shinnecock Smoke Shop in writing, by telephone, and in person regarding, among other things, Shinnecock Smoke Shop's business trends, volume, and needs.

53.    FedEx employees visited Shinnecock Smoke Shop's premises in Southampton, New York, and observed Shinnecock Smoke Shop's advertisement, promotion, and sale of untaxed cigarettes.

54.    FedEx employees observed Shinnecock Smoke Shop's packages containing cartons of unstamped cigarettes being picked up by FedEx for delivery to residential customers.

55.    FedEx employees communicated with employees of Shinnecock Smoke Shop on a regular basis regarding lost, stolen, or delayed FedEx shipments of cigarettes from Shinnecock Smoke Shop to individual customers at residential addresses.

56.   FedEx employees knew that Shinnecock Smoke Shop advertised and offered the sale of untaxed cigarettes to residential customers via the Internet, phone, and/or mail order.

57.   FedEx employees knew that the purpose of businesses that offer to sell and ship cigarettes via Internet, phone, and mail order, like Shinnecock Smoke Shop, is to unlawfully deliver unstamped cigarettes to individual consumers in order to evade payment of required taxes.

58.   FedEx employees knew that shipments of cigarettes to residences were prohibited by N.Y. PHL § 1399-ll and FedEx's AOC, and knew that the reason for this prohibition was, *inter alia*, that the purpose of such shipments is to unlawfully deliver unstamped cigarettes to individual consumers in order to evade payment of required taxes and to allow youthful smokers to evade age-restrictions on the purchase of cigarettes.

59.   FedEx departed from its usual business practices to participate in and facilitate Shinnecock Smoke Shop's unlawful sales of unstamped cigarettes to residential customers. For example, FedEx has a system of notifications that are generated when FedEx employees discover that a customer is shipping or attempting to ship any prohibited materials through FedEx. In the ordinary course of business, FedEx would issue a warning to the offending shipper regarding the prohibited shipment and ultimately, if prohibited shipments continued, terminate its business relationship with the shipper. Despite the fact that Shinnecock Smoke Shop illegally shipped tens of thousands of cartons of unstamped cigarettes to residential customers through FedEx, FedEx continued its relationship with Shinnecock Smoke Shop for at least seven years, from 2005 to 2012.

60.     Indeed, under the AOC, FedEx agreed to terminate relationships with shippers that unlawfully used FedEx to ship cigarettes to residential addresses, and to report such shippers to the NYAG. Despite the fact that Shinnecock Smoke Shop illegally shipped tens of thousands of cartons of unstamped cigarettes through FedEx, FedEx continued its relationship with Shinnecock Smoke Shop for at least seven years, from 2005 to 2012, and never reported the shipments to the NYAG.

### Allegations Related to the CCTA

61.     The CCTA, 18 U.S.C. § 2341 *et seq.*, provides that it is unlawful knowingly to ship, transport, receive, possess, sell, distribute, or purchase "contraband cigarettes," defined as more than 10,000 cigarettes (50 cartons) found in a jurisdiction without the cigarette tax stamps required by law in that jurisdiction affixed to them ("unstamped cigarettes"). 18 U.S.C. § 2341(2); 18 U.S.C. § 2342(a).

62.     Pursuant to a narrow exemption in the CCTA, intended to permit the transport of unstamped cigarettes from place of manufacture to the approximately 48 separate state cigarette-stamping programs, the only unstamped cigarettes that are not contraband cigarettes are unstamped cigarettes in the possession of cigarette manufacturers, common carriers or entities licensed to affix cigarette stamps. 18 U.S.C. § 2341(2) (collectively, "regulated entities").

63.     The statutory language of the exemption defines unstamped cigarettes as non-contraband only when "in the possession" of a regulated entity. Thus, any regulated entity that engages in transactions with anyone other than another regulated entity has engaged in conduct with "contraband" cigarettes: the cigarettes do not remain in the possession of the regulated entity at all times, but have been transferred to (or received from) a non-exempt entity, in the hands of which the cigarettes are contraband. By engaging in something other than

possession within a distribution chain consisting solely of other regulated entities, a regulated entity has thereby engaged in conduct with contraband cigarettes, whether "distribution," "shipping" or "receipt." For example, a common carrier with no liability for possessing unstamped cigarettes that transfers possession of unstamped cigarettes to a consumer is liable under the CCTA: the cigarettes are contraband in the hands of the consumer, and the common carrier is has placed them there, and thus has "distributed" contraband cigarettes. *See City of New York v. Gordon,* 2013 U.S. Dist. LEXIS 71953, at *23-27 (S.D.N.Y. May 21, 2013).

64.     As discussed above, FedEx knew that the cigarettes it shipped for Shinnecock Smoke Shop were unstamped because FedEx employees (a) understood that Shinnecock Smoke Shop was in the business of selling and shipping untaxed cigarettes to residential customers; (b) communicated with Jonathan Smith and with employees of Shinnecock Smoke Shop regarding its business; (c) visited Shinnecock Smoke Shop's premises in Southampton, New York, and observed its advertisement, promotion, and sale of untaxed cigarettes; (d) observed Shinnecock Smoke Shop's packages containing cartons of unstamped cigarettes being picked up by FedEx for delivery to residential customers; (e) communicated with employees of Shinnecock Smoke Shop regarding lost, stolen, or delayed FedEx shipments of cigarettes to residential customers; (f) knew that Shinnecock Smoke Shop advertised and offered the sale of untaxed cigarettes to residential customers via the Internet, phone, and/or mail order; (g) knew that the purpose of businesses that offer to sell and ship cigarettes via Internet, phone, and mail order is to unlawfully deliver unstamped cigarettes to individual consumers in order to evade payment of required taxes; and (h) knew that the reason for the prohibition on delivery of cigarettes to residences was, *inter alia*, that the purpose of such shipments is to

unlawfully deliver unstamped cigarettes to individual consumers in order to evade payment of required taxes and/or evade age restrictions on the purchase of cigarettes.

65.     FedEx knew that the cigarettes it shipped for Shinnecock Smoke Shop were unstamped because of the widespread public knowledge that Shinnecock and other New York State Indian reservation retailers deal exclusively in unstamped cigarettes.

66.     FedEx also knew, as a result of its lengthy negotiations with the NYAG in connection with the AOC, that the purpose of mail order cigarette businesses like Shinnecock Smoke Shop is to deliver unstamped cigarettes to consumers to evade payment of required taxes, and generally understood the business model of Indian reservation smoke shops.

67.     FedEx also knew that Indian reservation smoke shops sold unstamped cigarettes through its participation in the several years of legislative lobbying by the package-delivery industry that accompanied the enactment of both N.Y. PHL § 1399-ll and the PACT Act.

68.     By receiving, shipping, transporting, and/or distributing cigarettes in New York City and State on which New York State and City tax stamps had not been affixed, FedEx violated the CCTA.

## Allegations Related to RICO

69.     The RICO statute, 18 U.S.C. § 1962(c) and (d), provides a civil cause of action to persons injured in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

70.     CCTA violations are "racketeering acts" under the RICO statute. The thousands of deliveries of unstamped cigarettes made by FedEx over several years, amounting to multiple CCTA violations, constitute a pattern of racketeering activity. FedEx thereby conducted

the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity, or agreed that the affairs of the enterprise would be conducted in that manner, and thereby violated and/or conspired to violate RICO.

### The Enterprise

71.     Shinnecock Smoke Shop constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

72.     At all times relevant to this complaint, Shinnecock Smoke Shop has been an "enterprise" within the meaning of 18 U.S.C. § 1961(4) in that it was a sole proprietorship with several employees and /or associates. Shinnecock Smoke Shop, which operated in the Southern District of New York and elsewhere, was engaged in, and its activities affected, interstate and foreign commerce. Shinnecock Smoke Shop constituted an ongoing organization whose members and associates functioned as a continuing unit for many years, with the common purpose of receiving income from the sale, shipment, distribution and delivery of contraband cigarettes.

73.     At all times relevant to this complaint, FedEx has been associated with Shinnecock Smoke Shop, providing the store with delivery services, package tracking services, customer relations services, and generally facilitating Shinnecock Smoke Shop's deliveries of contraband cigarettes.

### The Purposes, Methods, and Means of the Enterprise

74.     The principal purpose of Shinnecock Smoke Shop was for each person associated with the enterprise to profit from the purchase, sale, shipment, transport, and/or distribution of contraband cigarettes to consumers. Enterprise associates implemented this purpose through various legal and illegal activities, but principally through the shipment,

- 19 -

transport, receipt, possession, sale, and/or distribution of contraband cigarettes in interstate commerce.

75.     At all times relevant to this complaint, the affairs of Shinnecock Smoke Shop have been conducted through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of thousands of instances of contraband cigarette trafficking, in violation of 18 U.S.C. § 2341 *et seq.*

### Role of the Enterprise Associates: FedEx

76.     At all times relevant to this complaint, FedEx participated in the management and operation of Shinnecock Smoke Shop by controlling the pick-up and delivery of unstamped cigarettes from Shinnecock Smoke Shop and delivering those cigarettes nationwide, and specifically by (a) receiving unstamped cigarettes from Shinnecock Smoke Shop for ultimate distribution to consumers; (b) subject to FedEx's own methods and means, and at FedEx's discretion, using information provided to FedEx by Shinnecock Smoke Shop to transport and distribute the cigarettes to Shinnecock Smoke Shop customers; (c) allowing Shinnecock Smoke Shop access to FedEx's package tracking system; (d) allowing Shinnecock Smoke Shop customers access to FedEx's package tracking system; and (e) providing general logistics, marketing, and delivery support services to Shinnecock Smoke Shop. FedEx participated in the conduct of the affairs of Shinnecock Smoke Shop by the nationwide shipping, transporting, receiving, and/or distributing of cigarettes that did not bear tax stamps. In this manner FedEx performed a critical function for Shinnecock Smoke Shop, which otherwise would have been unable to provide customers with the unstamped cigarettes purchased from the store.

77.     From at least 2005 to 2012, within the Southern District of New York and elsewhere, FedEx knowingly and intentionally shipped, transported, and/or distributed cigarettes lacking valid New York City tax stamps to City residents in violation of 18 U.S.C. § 2342(a).

78.     At all times relevant to this complaint, FedEx conducted the management and operation of the affairs of Shinnecock Smoke Shop directly or indirectly through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), in violation of 18 U.S.C. § 1962(c), by committing multiple and continuing acts of contraband cigarette trafficking in violation of 18 U.S.C. § 2341 *et seq.*, through, *inter alia*, the shipment, transport, and/or distribution of unstamped cigarettes to City residents.

79.     At all times relevant to this complaint, FedEx also conspired with associates of Shinnecock Smoke Shop to violate the provisions of 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), by agreeing to further endeavors of Shinnecock Smoke Shop that, when completed, amounted to contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*, and by agreeing that the affairs of Shinnecock Smoke Shop would be conducted through a pattern of racketeering activity.

80.     At all times relevant to this complaint, FedEx agreed to a plan with associates of Shinnecock Smoke Shop whereby Shinnecock Smoke Shop would receive, possess, sell, ship, and/or distribute contraband cigarettes to City residents and elsewhere and FedEx would ship, transport, and/or distribute those unstamped cigarettes to the customers of Shinnecock Smoke Shop in New York City and elsewhere, in violation of the CCTA.

81.     FedEx recognized that an essential element of this plan consisted of multiple violations of 18 U.S.C. § 2341 *et seq*. FedEx agreed that certain conspirators, including itself and other associates of Shinnecock Smoke Shop, would commit CCTA violations, while

other associates of Shinnecock Smoke Shop, including FedEx, would engage in conduct intended to support and facilitate the violations of the CCTA.

82.     Between at least 2005 and 2012, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, FedEx, together with others, being persons employed by or associated with Shinnecock Smoke Shop, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of Shinnecock Smoke Shop  through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1), (5). FedEx agreed that one or more associates of Shinnecock Smoke Shop  would commit thousands of racketeering acts in conducting the affairs of Shinnecock Smoke Shop.

83.     FedEx departed from its usual business practices in participating in and facilitating Shinnecock Smoke Shop's unlawful sales of unstamped cigarettes to residential customers. For example, FedEx has a procedure for identifying, rejecting, and returning attempted shipments of any prohibited materials such as tobacco. In the ordinary course of business, FedEx would issue a warning to the offending customer regarding the prohibited shipment and ultimately, if prohibited shipments continued, terminate its business relationship with the customer. FedEx also publicly states that its policy is to decline to ship cigarettes to consumers. Although FedEx recognized that Shinnecock Smoke Shop was selling and shipping unstamped cigarettes to individual consumers at residential addresses, FedEx decided, contrary to its usual practice, to continue to provide delivery services to Shinnecock Smoke Shop.

84.     All of FedEx's departures from its normal business practices are evidence that FedEx intended to, and did in fact, actively facilitate the contraband cigarette trafficking of Shinnecock Smoke Shop.

### Allegations Related to the PACT Act

85.     With exceptions not relevant here, the PACT Act provides that:

> For any shipping package containing cigarettes or smokeless tobacco, the delivery seller shall include on the bill of lading, if any, and on the outside of the shipping package, on the same surface as the delivery address, a clear and conspicuous statement providing as follows: "CIGARETTES/SMOKELESS TOBACCO: FEDERAL LAW REQUIRES THE PAYMENT OF ALL APPLICABLE EXCISE TAXES, AND COMPLIANCE WITH APPLICABLE LICENSING AND TAX-STAMPING OBLIGATIONS".

15 U.S.C. § 376a(b)(1).

> Any shipping package . . . that is not labeled in accordance with that paragraph shall be treated as nondeliverable matter by a common carrier or other delivery service, if the common carrier or other delivery service knows or should know the package contains cigarettes or smokeless tobacco.

15 U.S.C. § 376a(b)(2).

86.     The packages delivered by FedEx for Shinnecock Smoke Shop were not labeled as required by the PACT Act, and FedEx knew or should have known that they contained cigarettes.

87.     Although the PACT Act contains an exemption for common carriers, it is inapplicable here. The PACT Act provides that the delivery prohibition of § 376a(e) shall not apply to a common carrier that is subject to certain settlement agreements, including "the Assurance of Compliance entered into by the Attorney General of New York and Federal Express Corporation and FedEx Ground Package Systems, Inc. on or about February 3, 2006," but only "if each of those agreements is honored throughout the United States to block illegal

- 23 -

deliveries of cigarettes or smokeless tobacco to consumers." 15 U.S.C. §376a (e)(3). It is self-evident from this complaint that FedEx does not "honor" its agreement throughout the United States to block illegal deliveries of cigarettes to consumers, and the exemption is accordingly inapplicable.

88.     By delivering packages of cigarettes for Shinnecock Smoke Shop that did not comply with the labeling requirements of the PACT Act, despite the fact that FedEx knew (or should have known) that the packages contained cigarettes, FedEx violated the PACT Act.

### Allegations Related to N.Y. PHL § 1399-ll

89.     N.Y. PHL § 1399-ll(1) provides that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government. Section 1399-ll(2) provides, in turn:

> It shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-ll(1)]. For purposes of the preceding sentence, if cigarettes are transported to a home or residence, it shall be presumed that the common or contract carrier knew that such person was not a person described in [1399-ll(1)]. . . .

90.     It was self-evident, both from the recipients' addresses on the shipping labels as well as from actual observation of the delivery locations by FedEx employees, that the locations to which FedEx delivered thousands of packages containing unstamped cigarettes on behalf of Shinnecock Smoke Shop were in fact "home[s] or residence[s]."

91.     FedEx categorized its deliveries for Shinnecock Smoke Shop as "residential" and included a residential delivery surcharge in its pricing.

92.     Moreover, for the reasons described in paragraph 64, *supra*, FedEx also knew that it was transporting cigarettes to those homes or residences.

93.     By knowingly transporting cigarettes to persons other than those designated as permissible recipients of cigarette deliveries, FedEx violated N.Y. PHL § 1399-ll.

**Allegations Related to Creation and Maintenance of a Public Nuisance**

94.     The New York State legislature has expressly determined that "shipments of cigarettes sold via the Internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare to the funding of health care and to the economy of the state." N.Y. Pub. Health L. § 1399-ll (L.200, ch. 262 § 1), thereby defining such shipments as a public nuisance.

95.     The unstamped cigarettes transported into the City by FedEx endanger or injure the property, health, safety or comfort of a considerable number of persons according to the above-described DOH studies. Moreover, cigarettes delivered into the City by FedEx are distributed without regard to the age of the buyers and are a likely means by which underage persons obtain cigarettes, particularly where studies have documented that internet sales are a means by which youthful smokers avoid age controls and obtain cigarettes. *See, e.g.*, K. Ribisl *et al.*, "Internet Sales of Cigarettes to Minors," *JAMA*, 290, 1356-59 (2003).

96.     Accordingly, by completing in excess of 9000 deliveries of unstamped cigarettes between 2005 and 2012, FedEx created, contributed to, and/or maintained a public nuisance by endangering the health, safety and comfort of a considerable number of persons residing in the City.

**FIRST CLAIM FOR RELIEF**

**Violation of 18 U.S.C. § 2341 *et seq.***

97.     The City realleges paragraphs 1-96 above as if fully set forth herein.

98.     At all times relevant to this complaint, by delivering unstamped cigarettes from Shinnecock Smoke Shop and other delivery sellers whose identity is not known to the City

at this time, defendants FedEx Ground and FedEx Express received, shipped and/or distributed more than 10,000 cigarettes that were found in New York City not bearing the New York State and City cigarette tax stamps required by N.Y. Tax L. § 471 and Ad. Code § 11-302(e), all in violation of 18 U.S.C. § 2342(a).

99.     As a direct result of the foregoing violations of the CCTA, the City has suffered damages in an amount to be determined at trial, because a $15 New York City tax should have been paid on every carton of cigarettes that FedEx received, shipped, and/or distributed in the City.

## SECOND CLAIM FOR RELIEF

### Violation of 18 U.S.C. § 1962(c)

100.    The City realleges paragraphs 1-96 above as if fully set forth herein.

101.    New York City is a "person" as defined in 18 U.S.C. §§ 1961(3) and 1962(c).

102.    Defendants FedEx Ground and FedEx Express are each a "person" as defined in 18 U.S.C. §§ 1961(3) and 1962(c).

103.    Shinnecock Smoke Shop is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); the enterprise engages in and its activities have an effect on interstate commerce.

104.    FedEx Ground and FedEx Express each were associated with Shinnecock Smoke Shop and participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in the form of multiple, related acts of contraband cigarette trafficking, in violation of 18 U.S.C. § 2341 *et seq.*

105.    The predicate acts of contraband cigarette trafficking constitute a pattern of unlawful activity within the meaning of 18 U.S.C. § 1961(1)(B). Shinnecock Smoke Shop

engaged in thousands of instances of contraband cigarette trafficking. The enterprise's acts are connected to one another as part of a scheme to accomplish a uniform purpose, *i.e.*, profiting from the sale and delivery of unstamped cigarettes into New York City and elsewhere. The repeated nature of the conduct during the period of the scheme makes the acts continuous.

106.    The City of New York has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of defendants' violation of 18 U.S.C. § 1962(c), in an amount to be determined at trial, but no less than the total value of all the $15 tax stamps that were required to have been affixed to every carton of cigarettes that FedEx shipped, transported and/or distributed in or into New York City.

## THIRD CLAIM FOR RELIEF
### Violation of 18 U.S.C. § 1962(d)

107.    The City realleges paragraphs 1-96 above as if fully set forth herein.

108.    New York City is a "person" as defined in 18 U.S.C. §§ 1961(3).

109.    Defendants FedEx Ground and FedEx Express are each a "person" as defined in 18 U.S.C. §§ 1961(3) and 1962(c).

110.    Shinnecock Smoke Shop is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); the enterprise engages in and its activities have an effect on interstate commerce.

111.    FedEx Ground and FedEx Express each were associated with Shinnecock Smoke Shop and each agreed that the affairs of the enterprise would be conducted through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), to wit, multiple and repeated acts of contraband cigarette trafficking, in violation of 18 U.S.C. § 2341 *et seq.*

112.   FedEx Ground and FedEx Express each conspired with associates of Shinnecock Smoke Shop, within the meaning of 18 U.S.C. § 1962(d), to violate 18 U.S.C. § 1962(c), in that FedEx Ground and FedEx Express agreed with other associates of Shinnecock Smoke Shop that the affairs of the enterprise would be conducted through a pattern of racketeering activity and that FedEx Ground and FedEx Express would further or facilitate endeavors of the enterprise that, when completed, would satisfy all of the elements of a criminal offense, to wit, contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*

113.   With knowledge that Shinnecock Smoke Shop engaged in multiple and repeated acts of contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*, FedEx Ground and FedEx Express each agreed with associates of the enterprise to facilitate the activities of Shinnecock Smoke Shop by providing delivery and package tracking services, assisting Shinnecock Smoke Shop customers in the receipt of their packages, and providing other essential services leading to the success of a scheme to traffic contraband cigarettes into New York City and elsewhere.

114.   The scheme to traffic contraband cigarettes into New York City and elsewhere constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B). The predicate acts are both related and continuous. The acts are connected to one another as part of a scheme to accomplish a uniform purpose, which is profiting from the sale of unstamped cigarettes in New York City and elsewhere. The repeated nature of the conduct during the period of the scheme makes the acts continuous.

115.   The City of New York has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of defendants' violation of 18 U.S.C.

§ 1962(d), in an amount to be determined at trial, but no less than the total value of all the $15

New York City tax stamps that were required to have been affixed to every carton of cigarettes

that FedEx shipped, transported and/or distributed in or into New York City.

## FOURTH CLAIM FOR RELIEF

### Violation of 15 U.S.C. § 376a(b)(2) -- Civil Penalties

116.    The City realleges paragraphs 1-96 above as if fully set forth herein.

117.    Pursuant to 15 U.S.C. § 376a(b)(2), effective June 29, 2010, "Failure to

label," "Any shipping package [containing cigarettes] that is not labeled in accordance with that

paragraph [to state  "Cigarettes/Smokeless Tobacco: Federal Law Requires The Payment Of All

Applicable Excise Taxes, And Compliance With Applicable Licensing And Tax-Stamping

Obligations] shall be treated as nondeliverable matter by a common carrier or other delivery

service, if the common carrier or other delivery service knows or should know the package

contains cigarettes or smokeless tobacco."

118.    None of the packages delivered by FedEx for Shinnecock Smoke Shop

after the effective date of the PACT Act were labeled with the legend required by 15 U.S.C.

§ 376a(b)(1). FedEx knew or should have known that the packages did contain cigarettes, but

nonetheless delivered those packages, in violation of the PACT Act.

119.    The PACT Act provides for civil penalties, in addition to damages or other

relief, in the case of a common carrier or other delivery service, of $2,500 in the case of a first

violation, or $5,000 for any violation within one year of a prior violation.

## FIFTH CLAIM FOR RELIEF

### Violation of 15 U.S.C. § 376a(b)(2) – Damages

120.    The City realleges paragraphs 1-96 above as if fully set forth herein.

121.    Pursuant to 15 U.S.C. § 376a(b)(2), "Failure to label," "Any shipping

package [containing cigarettes] that is not labeled in accordance with that paragraph [to state "Cigarettes/Smokeless Tobacco: Federal Law Requires The Payment Of All Applicable Excise Taxes, And Compliance With Applicable Licensing And Tax-Stamping Obligations] shall be treated as nondeliverable matter by a common carrier or other delivery service, if the common carrier or other delivery service knows or should know the package contains cigarettes or smokeless tobacco."

122.     None of the packages delivered by FedEx for Shinnecock Smoke Shop after the effective date of the PACT Act were labeled with the legend required by 15 U.S.C. § 376a(b)(1). FedEx knew or should have known that the packages did contain cigarettes, but nonetheless delivered those packages in violation of the PACT Act.

123.     As a direct result of the foregoing violations of the PACT Act, specifically FedEx's failure to comply with 15 U.S.C. § 376a(b)(2), the City has suffered damages in an amount to be determined at trial, because a $15 New York City tax should have been paid on every carton of cigarettes that FedEx unlawfully distributed in the City.

### SIXTH CLAIM FOR RELIEF

#### Violation of N.Y. PHL § 1399-ll

124.     The City realleges paragraphs 1-96 above as if fully set forth herein.

125.     N.Y. PHL § 1399-ll provides that it "shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be [a consumer]," with the presumption that the deliveries are to consumers when made to a home or residence.

126.     A person who violates the provisions of § 1399-ll "shall be subject to a civil penalty not to exceed, *inter alia*, five thousand dollars for each such violation.

127.     Between 2005 and 2012, FedEx made approximately 9,900 deliveries of

cigarettes to homes or residences in New York City, in violation of N.Y. PHL § 1399-ll.

## SEVENTH CLAIM FOR RELIEF

### Public Nuisance

128.    The City realleges paragraphs 1-96 above as if fully set forth herein.

129.    The unstamped cigarettes delivered into the City by FedEx have been sold to City residents at illegally reduced prices that were less than the price at which the cigarettes should have been sold if amounts attributable to taxes were included in the sales price.

130.    The success of smoking cessation efforts is inversely proportional to the price of available cigarettes. High cigarette prices are known to lead directly to i) greater numbers of persons successfully quitting smoking, and ii) greater numbers of persons reducing the number of cigarettes they smoke, with youth smokers being affected to a greater extent than adult smokers.

131.    Cigarette smoking is hazardous to health.

132.    FedEx's deliveries of unstamped cigarettes that were purchased in non-face-to-face transactions provide a source of cigarettes for underage smokers.

133.    FedEx, by distributing unstamped cigarettes to consumers at prices less than the legal price thereby creates, supplies, maintains, and contributes to a public nuisance, and unreasonably and substantially interferes with rights common to the general public, with commerce and the quality of daily life, and endangers the property, health, and safety of large numbers of residents of this State and the City of New York.

## EIGHTH CLAIM FOR RELIEF

### Injunctive Relief and Appointment of a Monitor

134.    The City realleges paragraphs 1-96 above as if fully set forth herein.

135.    The City is likely to succeed on the merits of its claim that FedEx is in

violation of the CCTA, the PACT Act, and N.Y. PHL § 1399-ll, and has created and maintained a public nuisance.

136.   The City has no adequate remedy at law, in that FedEx has shown itself unable or unwilling to comply voluntarily with the AOC entered into with the NYAG, and has been unable or unwilling to cease conduct that injures the health and safety of a considerable number of persons, and accordingly cannot be remedied by the payment of money damages.

137.   The Court should accordingly i) enjoin FedEx pursuant to 18 U.S.C. § 2346(b)(1) from knowingly shipping, transporting, receiving, possessing, or distributing contraband cigarettes as that term is defined in the CCTA; ii) enjoin FedEx pursuant to 15 U.S.C. § 378(c)(1)(A) from shipping any cigarettes that do not comply with the PACT Act's labeling requirement; iii) enjoin FedEx pursuant to N.Y. PHL § 1399-ll from delivering any cigarettes to any home or residence within the State of New York; and iv) appoint a Special Master to assure FedEx's compliance with each of the above statutes, and with the AOC entered into by FedEx with the NYAG, and to provide training and monitoring to FedEx in order to abate the public nuisance FedEx created and maintained.

**WHEREFORE**, the City of New York respectfully prays that the Court grant judgment against defendant as follows:

> a.      On the First Claim For Relief, award the City damages in an amount equal to the cost of a City tax stamp multiplied by the approximately 55,000 cartons of cigarettes that FedEx shipped, transported, and/or distributed in or into New York City, in violation of 18 U.S.C. § 2341 *et seq.*, *i.e.*, $825,000;

b. On the First Claim For Relief, award the City a suitable civil penalty against FedEx, as provided for in 18 U.S.C. § 2341 *et seq.*, as measured by the penalty amount specified in 15 U.S.C. § 377(b)(1)(b);

c. On the Second and Third Claims For Relief, award the City treble damages, measured by the cost of a City tax stamp multiplied by the number of cartons of cigarettes that FedEx shipped, transported, and/or distributed in or into New York City, in violation of 18 U.S.C. § 1962(c) and (d), *i.e.*, $2,475,000;

d. On the Fourth Claim for Relief, award the City a civil penalty in the amount of $49,500,000, as specified in 15 U.S.C. § 377(b)(1)(B), for FedEx's violation of 15 U.S.C. § 376a(b)(2);

e. On the Fifth Claim for Relief, award the City damages in an amount equal to the cost of a City tax stamp multiplied by the approximately 55,000 cartons of cigarettes that FedEx shipped, transported, and/or distributed in or into New York City, in violation of 15 U.S.C. § 376a(b)(2), *i.e.*, $825,000;

f. On the Sixth Claim for Relief, award the City a civil penalty under N.Y. PHL § 1399-ll in the amount of $5000 for each of FedEx's deliveries of cigarettes to a home or residence in violation of that section, *i.e.*, $49,500,000;

g. On the Seventh Claim for Relief, award injunctive relief, including the appointment of a Special Master to provide training and monitoring to abate the public nuisance created and maintained by FedEx;

h.   On the Eighth Claim for Relief, issue an injunction pursuant to 18 U.S.C.
§ 2346(b)(1), 15 U.S.C. § 378(c)(1)(A), and N.Y. PHL § 1399-ll,
enjoining and restraining FedEx from shipping any unstamped cigarettes,
from delivering any cigarettes in which the packages are not labeled in
compliance with the PACT Act, and/or from shipping any cigarettes to
any home or residence in the State of New York.

i.   On the Eighth Claim for Relief, appoint a Special Master as an
independent monitor to oversee and ensure FedEx's compliance with the
injunctive relief awarded and to abate the public nuisance created and
maintained by FedEx;

j.   Award the City its attorney's fees, pursuant to 18 U.S.C. § 1964(c); and

k.   Award such other and further relief as the Court may deem appropriate.


Dated: New York, New York
       December 30, 2013

                                   MICHAEL A. CARDOZO
                                   Corporation Counsel of the
                                    City of New York
                                   Attorney for Plaintiff The City of New York
                                   100 Church Street, Room 20-99
                                   New York, New York 10007
                                   (212) 356-2032

                          By:      _____
                                   Eric Proshansky (EP 1777)
                                   Leonard Braman (LB 4381)
                                   Assistant Corporation Counsel