UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

THE CITY OF NEW YORK and THE PEOPLE OF THE : 
STATE OF NEW YORK, :
                   :
               Plaintiffs, :
                   :
         - against - :
                   :
FEDEX GROUND PACKAGE SYSTEM, INC. and :
FEDERAL EXPRESS CORP., :
                   :
             Defendants. :

-----------------------------------------------------------------------x

**OPINION AND ORDER**

13 Civ. 9173 (ER)

Ramos, D.J.:

       Plaintiffs The City of New York ("City") and The People of the State of New York

("State") (collectively, "Plaintiffs") bring this action against FedEx Ground Package System, Inc.

("FedEx Ground" or "Defendant"), alleging that it knowingly delivered unstamped cigarettes

throughout the country, including New York City and State, between 2005 and 2012.[1]  Plaintiffs

seek the appointment of a special master, damages, and penalties under the Contraband Cigarette

Trafficking Act, 18 U.S.C. § 2341 *et seq.* ("CCTA") and the Prevent All Cigarette Trafficking

Act, 15 U.S.C. § 375 *et seq.* ("PACT Act"); treble damages and attorney's fees under the

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); an

injunction and penalties under New York State Public Health Law § 1399-ll; abatement of a

public nuisance; and penalties under the Assurance of Compliance that FedEx entered into with

the Attorney General of the State of New York in 2006.  Pending before the Court is FedEx

---

[1] The City of New York commenced this action against FedEx Ground and Federal Express Corp. (collectively, "FedEx") on December 30, 2013.  Doc. 1.  On February 14, 2014, the City voluntarily dismissed the action as to Federal Express Corp.  Doc. 6.  The Amended Complaint, which was filed on March 30, 2014, was brought by both the City and State and again named both FedEx Ground and Federal Express Corp. as defendants.  Doc. 13.  On May 14, 2014, Federal Express Corp. was again voluntarily dismissed from the instant action.  Doc. 31.

Ground's motion to dismiss the CCTA, RICO, N.Y. Public Health Law ("PHL"), and public nuisance claims. Doc. 28. For the reasons discussed below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## I.   Background

Plaintiffs each impose an excise tax on the sale of cigarettes. Am. Compl. ¶ 26.[2] The excise taxes are pre-paid by licensed cigarette stamping agents, who must affix a tax stamp to every package of cigarettes sold in the State and/or City. *Id.* ¶¶ 27, 28. By law, stamping agents are required to incorporate the amount of the tax into the price of the cigarettes, thereby ultimately passing the tax along to the consumer. *Id.* ¶ 29. New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's steam of commerce. *Id.* ¶ 27.

### FedEx's Assurance of Compliance with the NYAG

In 2004, the New York Attorney General investigated FedEx for violating N.Y. PHL § 1399-ll, which prohibits the delivery of cigarettes to residences. *Id.* ¶ 59. Section 1399-ll(1) states that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state governments. *Id.* ¶ 60. Section 1399-ll(2) provides, in turn:

> It shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-ll(1)]. For purposes of the preceding sentence, if cigarettes are transported to a home or residence, it shall be presumed that the common or contract carrier knew that such person was not a person described in [1399-11(1)] . . . .

---

[2] For the purposes of the instant motion, the Court assumes the allegations in Plaintiffs' Amended Complaint to be true and relies exclusively on information contained therein.

*Id.*

In February 2006, FedEx entered into an Assurance of Compliance ("AOC") with the Attorney General, in which it agreed, *inter alia*, to "at all times comply with Pub. Health L. 1399-ll," terminate relationships with shippers that unlawfully attempted to use FedEx to ship cigarettes to residential addresses, and report those shippers to the Attorney General's Office.  *Id.* ¶ 61.  FedEx also agreed to monitor and investigate its own shipments to assure compliance with the AOC.  *Id.*  FedEx later agreed to give nationwide effect to the AOC.  *Id.*

The AOC also required FedEx to implement a policy prohibiting the shipment and delivery of cigarettes to individual consumers, and to revise its internal policies to ensure their compatibility with the terms of the AOC.  *Id.* ¶ 62.  FedEx further agreed that it would pay the Attorney General $1,000 for every violation of the AOC.  *Id.* ¶ 63.

**The Cigarette Selling Enterprises**

Plaintiffs allege that between 2005 and 2012, FedEx made shipments of unstamped cigarettes on behalf of Shinnecock Smoke Shop ("Shinnecock"), Native Made Tobacco ("Native Made"), FOW Enterprises, Inc. ("FOW"), and Cigarettes Direct To You ("CD2U") (collectively, "Cigarette Sellers").  Plaintiffs allege that at all times relevant to the Amended Complaint, each of the Cigarette Sellers utilized FedEx and other delivery services to ship unstamped cigarettes directly to residents of New York State, and that three of the Cigarette Sellers—Shinnecock, Native Made, and FOW—shipped unstamped cigarettes directly to residents of New York City.

Shinnecock, which is owned and operated by Jonathan Smith, is located on the Shinnecock Indian reservation in Southampton, New York.  *Id.* ¶ 31.  At all times relevant to the Amended Complaint, neither Shinnecock nor Smith was licensed or otherwise permitted to distribute or ship unstamped cigarettes in New York State or City.  *Id.* ¶ 36.  Between 2005 and

3

2012, FedEx shipped approximately 55,000 cartons of unstamped cigarettes in 9,900 separate deliveries from Shinnecock to New York City residents, representing a tax loss to the City of approximately $825,000.  *Id.* ¶¶ 65, 67.  Between 2007 and 2012, FedEx shipped approximately 121,000 cartons of unstamped cigarettes in 20,000 separate deliveries from Shinnecock to New York State residents, representing a tax loss to the State of approximately $3,495,000.  *Id.* ¶¶ 66, 67.

Native Made, which is owned and operated by Rhonda Gasaway, is located in Palm Springs, California.  *Id.* ¶ 40.  At all times relevant to the Amended Complaint, Native Made was not licensed or otherwise permitted to distribute or ship unstamped cigarettes in New York State or City.  *Id.* ¶ 42.  Between 2007 and 2012, FedEx shipped approximately 7,850 cartons of unstamped cigarettes in 900 separate deliveries from Native Made to New York State residents, representing a tax loss to the State of approximately $202,000.  *Id.* ¶¶ 68, 69.

FOW was a corporation owned and operated by Earl Fow, and located in Elizabethtown, Kentucky.  *Id.* ¶ 46.  At all times relevant to the Amended Complaint, FOW was not licensed or otherwise permitted to distribute or ship unstamped cigarettes in New York State or City.  *Id.* ¶ 48.  Between 2006 and 2012, FedEx shipped approximately 3,220 cartons of unstamped cigarettes in 600 separate deliveries from FOW to New York State residents, representing a tax loss to the State of approximately $136,000.  *Id.* ¶¶ 70, 71.

Chavez, Inc. was a corporation doing business as Cigarettes Direct To You, or CD2U. *Id.* ¶ 51.  CD2U, which was owned and operated by Israel Chavez, was located in Louisville, Kentucky.  *Id.*  At all times relevant to the Amended Complaint, CD2U was not licensed or otherwise permitted to distribute or ship unstamped cigarettes in New York State.  *Id.* ¶ 53. Between 2006 and 2009, FedEx shipped approximately 260,000 cartons of unstamped cigarettes

in 10,500 separate deliveries from CD2U to New York State residents, representing a tax loss to the State of approximately $6,147,000. *Id.* ¶¶ 72, 73.[3]

In total, the Amended Complaint alleges that FedEx knowingly shipped nearly 400,000 cartons of unstamped cigarettes from the Cigarette Sellers to individual residences in New York State. *Id.* ¶ 76.

**FedEx's Role in the Cigarette Selling Enterprises**

Plaintiffs allege that at least as of 2005, FedEx had written agreements with each of the Cigarette Sellers that provided preferential shipping rates in exchange for maintaining a high volume of shipments. *Id.* ¶ 74. These agreements were in effect for several years. *Id.* FedEx allegedly had full knowledge that the Cigarette Sellers were shipping unstamped cigarettes to individual residences in New York City and New York State, in violation of the AOC and state and federal law. *Id.* ¶ 79.

The Amended Complaint alleges that each of the Cigarette Sellers constituted a RICO enterprise, which was conducted through a pattern of racketeering activity, consisting principally of thousands of instances of contraband cigarette trafficking. *Id.* ¶¶ 101-04, 108.[4] FedEx is alleged to have been associated with the enterprises by providing them with delivery services, package tracking services, customer relations services, and generally facilitating the enterprises' deliveries of contraband cigarettes. *Id.* ¶ 106. Specifically, the Amended Complaint alleges that FedEx communicated on a regular basis with employees of the Cigarette Sellers regarding the

---

[3] In March 2013, FedEx Ground entered into a settlement with the City of New York related to CD2U deliveries into the City. Am. Compl. ¶ 3 n.1. Accordingly, only the State asserts claims related to CD2U. *Id.*

[4] Plaintiffs allege that each Cigarette Seller constituted an enterprise within the meaning of Section 1961(4) in that each was either a corporation or a sole proprietorship with several employees and/or associates. *See* Am. Compl. ¶¶ 101-04. Plaintiffs alternatively claim that (i) each Cigarette Seller's owners and/or employees constituted an association-in-fact enterprise within the meaning of Section 1961(4), or (ii) FedEx and each Cigarette Seller's owners and/or employees constituted an association-in-fact enterprise. *Id.*

Cigarette Sellers' business trends, volume, and needs.  *Id.* ¶¶ 81-84.  For example, FedEx employees communicated with CD2U employees regarding lost, stolen, or delayed shipments. *Id.* ¶ 84(b).  The Amended Complaint also alleges that FedEx knew from internal notifications that CD2U was shipping cigarettes to individual customers at residential addresses.  *Id.* ¶ 84(c). Plaintiffs further claim that CD2U's websites informed customers, *inter alia*, that their orders would be shipped by FedEx or Priority Mail.  *Id.* ¶ 84(d).

Plaintiffs allege that FedEx participated in the management and operation of the Cigarette Sellers by controlling the pick-up and delivery of unstamped cigarettes dealt by them and delivering those cigarettes nationwide, and specifically by (a) receiving unstamped cigarettes from the Cigarette Sellers for ultimate distribution to consumers; (b) subject to FedEx's own methods and means, and at FedEx's discretion, using information provided to FedEx by the Cigarette Sellers to transport and distribute the cigarettes to their customers; (c) allowing the Cigarette Sellers and their customers access to FedEx's package tracking system; and (d) providing general logistics, marketing, and delivery support services to the Cigarette Sellers.  *Id.* ¶ 109.  Without FedEx's involvement in the enterprises, the Cigarette Sellers would have been unable to service the unstamped cigarette market.  *Id.*

**Injury to the City and State**

Plaintiffs claim that FedEx's shipments of unstamped cigarettes caused them injury in the form of lost tax revenue amounting to $15 per carton delivered to the City, and ranging from $15 to $43.50 per carton delivered to the State.  *Id.* ¶ 17.[5]

---

[5] According to the Amended Complaint, the New York City excise tax was $1.50 per pack or $15 per carton at all times relevant to the instant action.  Am. Compl. ¶ 30.  On June 3, 2008, the New York State excise tax was increased from $15 per carton to $27.50 per carton.  *Id.*  The State tax was again increased on July 1, 2010, to $43.50 per carton.  *Id.*

The Amended Complaint further alleges that FedEx's deliveries of unstamped cigarettes between 2005 and 2012 constituted a public nuisance by endangering the health, safety, and comfort of City and State residents. *Id.* ¶ 129. According to Plaintiffs, FedEx delivered the cigarettes without regard to the age of the buyers and its deliveries are a likely means by which underage persons obtain cigarettes. *Id.* ¶ 128.

## II.   Standard of Review

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III.    Discussion

### a.  The Contraband Cigarette Trafficking Act

The CCTA makes it unlawful for any person knowingly to ship, transport, receive,

possess, sell, distribute, or purchase "contraband cigarettes."  18 U.S.C. § 2342(a).

"[C]ontraband cigarettes" are defined in the CCTA as:

> a quantity in excess of 10,000 cigarettes,[6] which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than—
>
> (A) a . . . manufacturer of tobacco products . . . ;
>
> (B)  a common or contract carrier transporting the cigarettes involved under a proper bill of lading or freight bill . . . ; and
>
> (C) a person . . . who is licensed or otherwise authorized by the State where the cigarettes are found to account for and pay cigarette taxes imposed by such State . . .

18 U.S.C. § 2341(2).  Together, these provisions establish four elements for a CCTA violation:

that a party (1) knowingly ship, transport, receive, possess, sell, distribute or purchase (2) more

than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or

local cigarette tax law requires the cigarettes to bear such stamps.  *City of New York v. Golden

Feather Smoke Shop, Inc.*, No. 08 Civ. 3966 (CBA), 2009 WL 2612345, at *26 (E.D.N.Y. Aug.

25, 2009).

Defendant contends that the CCTA claim fails principally because Plaintiffs have not

alleged facts demonstrating that FedEx Ground shipped "contraband cigarettes."  Def. Mem. L.

6.  FedEx Ground bases this challenge on its interpretation of the CCTA as requiring the

---

[6] A carton contains 200 cigarettes; accordingly, 10,000 cigarettes equals 50 cartons of cigarettes.  Am. Compl. ¶ 90.

shipment of 10,000 unstamped cigarettes *in a single transaction*, and Plaintiffs' failure to so

plead.  *Id.* at 7.  Defendant alternatively asserts that the CCTA claim should be dismissed to the

extent it is based on deliveries occurring more than four years before the commencement of this

action.  *Id.* at 12.

        1.  *Aggregation of Sales*

      Defendant claims that Section 2341(2) supports a transactional interpretation of the

CCTA.  *Id.* at 6.  According to FedEx Ground, the inclusion of "in the possession of" prong in

Section 2341(2) dictates that there is no liability under the CCTA for the shipment of 10,000 or

fewer unstamped cigarettes.  *Id.* at 7.  However, Defendant's interpretation of Section 2341(2)

conflicts with "the plain, unambiguous text of the CCTA [which] imposes no 'in a single

transaction requirement.'"  *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 313

(S.D.N.Y. 2014).  Indeed, courts within this Circuit have repeatedly interpreted Section 2341(2)

to allow for the aggregation of sales.  *See id.* (holding that the City of New York stated a CCTA

claim against delivery and courier service provider that was alleged to have delivered

approximately 79,974 cartons of cigarettes to New York consumers over a two-year period); *City

of New York v. Gordon*, 1 F. Supp. 3d 94, 103 (S.D.N.Y. 2013) (observing that the text of the

CCTA is unambiguous:  "[p]ut simply, it provides that 'a quantity in excess of 10,000 cigarettes'

constitutes contraband"); *Golden Feather Smoke Shop*, 2009 WL 2612345, at *35 (rejecting the

view that defendants could sell unlimited quantities of unstamped cigarettes so long as they

avoided making any sale in excess of 49 cartons because "[n]othing in the CCTA provides that

for cigarettes to be considered contraband they must be sold in a single transaction").[7]  This view

---

[7] FedEx Ground's reliance on *United States v. Morrison*, No. 04-CR-0699 (DRH) (E.D.N.Y.), is misplaced.  In an opinion denying defendant's motion for a new trial, the court observed that certain resales of unstamped cigarettes may not have constituted a CCTA violation if they did not involve the number of cigarettes required under the

is supported by the fact that other CCTA provisions *do* contain an explicit per-transaction requirement, and therefore it should be presumed that Congress acted intentionally and purposefully in excluding such a requirement from Section 2341(2). *See, e.g.*, 18 U.S.C. § 2342(b) ("It shall be unlawful for any person knowingly to make any false statement or representation with respect to the information required by this chapter to be kept in the records of any person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000 *in a single transaction*." (emphasis added)); 18 U.S.C. § 2343(a) ("Any person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000 . . . *in a single transaction* shall maintain such information about the shipment, receipt, sale, and distribution of cigarettes as the Attorney General may prescribe by rule or regulation." (emphasis added)); *cf. Bates v. United States*, 522 U.S. 23, 30 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and citation omitted)).  Because the Court agrees that Section 2342(a) therefore allows for the aggregation of sales, Plaintiffs' CCTA claim cannot be dismissed on the basis that the Amended Complaint does not plead the shipment of 10,000 cigarettes in a single transaction.[8]

---

statute "per transaction."  *United States v. Morrison*, 596 F. Supp. 2d 661, 686 n.27 (E.D.N.Y. 2009).  However, no court has followed *Morrison*'s position on the issue, and indeed each of the above-cited decisions—*LaserShip*, *Gordon*, and *Golden Feather Smoke Shop*—was issued after *Morrison*.  Moreover, the court in *Gordon* explicitly rejected reliance on *Morrison*, which, in any event, is not binding authority on this Court.  *See Gordon*, 1 F. Supp. 3d at 105 n.4 (noting that the only case that even arguably supported the defendants' per-transaction argument was *Morrison*, and that *Morrison*'s observation was made in a footnote without any analysis and is dictum).

[8] Plaintiffs alternatively argue that even if the CCTA required a sale of 10,000 unstamped cigarettes—or 50 cartons—in a single transaction, their allegation that FedEx knowingly shipped nearly 400,000 cartons of unstamped cigarettes between 2005 and 2012—or 8,000 times the statutory amount—allows the Court to plausibly infer that FedEx violated the CCTA.  Pls. Opp. Mem. L. 14-15.  In addition, Plaintiffs have submitted invoices in support of their opposition to the instant motion, which they contend "establish that FedEx routinely exceeded the statutory threshold by receiving, possessing, or distributing in a single transaction more than 50 cartons of unstamped cigarettes."  *Id.* at 15; *see* Declaration of Leonard M. Braman in Opposition to FedEx Ground Package System Inc.'s Motion to Dismiss In Part ("Braman Decl."), Exs. 1-4.  Even assuming, *arguendo*, that the Court may take this

2. *Statute of Limitations*

FedEx Ground also argues that the CCTA claim should be dismissed to the extent it is based on deliveries made more than four years before the commencement of this action on December 30, 2013.  Def. Mem. L. 13.  Under 28 U.S.C. § 1658(a), a civil action arising under an Act of Congress enacted after December 1, 1990 may not be commenced later than four years after the cause of action accrues.[9]  According to Plaintiffs, however, accrual under Section 1658(a) is governed by a discovery rule, and the claim's limitations period therefore presents a fact question that cannot be answered on a motion to dismiss.  Pls. Opp. Mem. L. 42.  Defendant relies on *Gabelli v. S.E.C.*, 133 S. Ct. 1216 (2013), to argue that a CCTA claim instead accrues when the plaintiff has a complete and present cause of action.  Def. Reply Mem. L. 19.

In *Gabelli*, the Supreme Court held that the five-year statute of limitations set forth in 28 U.S.C. § 2462—which was applicable to a civil action brought by the Securities and Exchange Commission ("SEC") under the Investment Advisers Act—"begins to tick when the fraud occurs, not when it is discovered."  133 S. Ct. at 1217.  The Court stated that "[t]he 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'"  *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks omitted)).  The Court went on to observe that although it had previously applied the discovery rule to civil actions, "we have never applied the discovery rule in this context, where the plaintiff is not a defrauded victim seeking recompense, but is instead the Government bringing an enforcement action for civil penalties."  *Id.* at 1221.  The Court reasoned, *inter alia*, that the SEC is not like an

---

extrinsic evidence into account on a motion to dismiss, based on the above analysis regarding the aggregation of sales, the Court need not consider these alternative theories.

[9] Plaintiffs accept *arguendo*, for the purposes of this motion only, that Section 1658(a) is the applicable statute of limitations for purposes of the CCTA claim.  Pls. Opp. Mem. L. 42 n.30.

individual victim who relies on an apparent injury to learn of a wrong, but is instead a government agency whose "central 'mission' . . . is to 'investigat[e] potential violations of the federal securities laws.'" *Id.* at 1222 (quoting SEC, Enforcement Manual 1 (2012)).  As FedEx Ground correctly notes, although Section 1658(a) was not at issue in *Gabelli*, the Supreme Court's reasoning compels the Court's rejection of the discovery rule here as it involves a government enforcement action for civil penalties.  *Cf. Maskaev v. Rappaport*, No. 12 Civ. 6008 (JG), 2014 WL 5427539, at *6 (E.D.N.Y. Oct. 24, 2014) (relying on *Gabelli* to reject the discovery rule in an action governed by Section 1658(a)); *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1129 (D. Minn. 2013) ("Given the baseline mandated by *Gabelli*, the use of 'accrues' in § 1658(a) . . . further signals the absence of an intent to incorporate a discovery rule in any form into [that section].").  Accordingly, Plaintiffs' CCTA claim is subject to a four-year statute of limitations, which accrued when the City and State had a complete and present cause of action.

In the instant case, the Amended Complaint does not allege the amount of cigarettes included in any particular shipment.  Therefore, the Court cannot determine when the cause of action against FedEx Ground accrued, *i.e.*, when the aggregate number of cigarettes first exceeded 10,000.  *Cf.* Def. Mem. L. 12.  Accordingly, the Court cannot conclude that deliveries made on or after December 30, 2009 should be the cutoff point for the CCTA claim's limitations period.  Defendant's motion to dismiss the CCTA claim is therefore DENIED.

**b.  RICO**

Plaintiffs allege that FedEx Ground violated Section 1962(c) through its association with the Cigarette Seller enterprises and its participation in the enterprises' affairs through a pattern of racketeering activity, in the form of multiple, related acts of contraband cigarette trafficking. Am. Compl. ¶ 141.  FedEx Ground contends that the RICO claim fails because Plaintiffs have

failed to plead (1) a pattern of predicate acts; (2) Defendant's participation in the operation or management of the alleged enterprises; (3) injury to Plaintiffs' business or property; or (4) proximate causation of such injury.  The Court will address these arguments in turn.

### 1.  *Pattern of Predicate Acts*

To state a claim under Section 1962(c), a plaintiff must allege, *inter alia*, a pattern of racketeering activity, which is defined as "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  The pattern requirement is one that requires continuity, which may be either close-ended (*i.e.*, past criminal conduct extending over a substantial period of time, typically understood to encompass no less than two years) or open-ended (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct).  *LaserShip*, 303 F. Supp. 3d at 310; *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014) (quoting *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 466 (2d Cir. 1995)).

FedEx Ground claims that Plaintiffs have not pleaded two CCTA violations in connection with any Cigarette Seller enterprise, but instead have aggregated Defendant's deliveries in an attempt to exceed the 10,000 cigarette threshold.  Def. Mem. L. 17.  FedEx Ground further argues that Plaintiffs' failure to allege two predicate acts also results in a failure to plead continuity and relatedness.  *Id.*  Defendant's arguments are unavailing.

Plaintiffs have alleged that between 2005 and 2012, FedEx made 29,000 separate deliveries of 176,000 cartons for Shinnecock; 10,500 deliveries of 260,000 cartons for CD2U; 900 deliveries of 7,850 cartons for Native Made; and 600 deliveries of 3,220 cartons for FOW. *See* Pls. Opp. Mem. L. 17.  According to Plaintiffs, then, they have pleaded thousands of interrelated CCTA violations over a substantial period of time, comprising a pattern of racketeering activity.  *Id.* (internal citations omitted).

In *LaserShip*, the City of New York alleged that from March 2011 through May 2013, the defendant made approximately 16,383 deliveries of unstamped cigarettes to addresses in New York State, including 13,167 to addresses in New York City.  *LaserShip*, 303 F. Supp. 3d at 311.  On this basis, the court found that the City's allegations involved numerous predicate acts constituting a violation of the CCTA, which continued for a period of over two years.  *Id.*  In reaching this conclusion, the court rejected the defendant's argument—which is revived here by FedEx Ground—that the City alleged, at most, only a single statutory violation of the CCTA, not multiple violations over a multi-year period.  *Id.*  And in *Gordon*, the court decided that the City had pleaded a pattern of racketeering activity through allegations that the defendants (i) sold, distributed, and caused to be delivered "thousands of cartons" of unstamped cigarettes to persons throughout the City during a period of over ten years, and (ii) sold and delivered contraband cigarettes to a City investigator on two occasions in 2012.  1 F. Supp. 3d at 112; *see also City of New York v. Chavez*, No. 11 Civ. 2691 (BSJ), 2012 WL 1022283, at *6 (S.D.N.Y. Mar. 26, 2012) (denying motion to dismiss Section 1962(c) claim where the City alleged that the CD2U enterprise engaged in a pattern of racketeering by committing multiple and continuing acts of contraband cigarette trafficking in violation of the CCTA).  Here, Plaintiffs have similarly pleaded that the Cigarette Seller enterprises "engaged in thousands of instances of contraband

cigarette trafficking" in violation of the CCTA over a period of over two years.  Am. Compl. ¶

142.  Based on the number of deliveries alleged and the confined time period of the deliveries,

Plaintiffs have plausibly pleaded a pattern of racketeering activity.

### 2.  *Participation in the "Operation or Management" of the RICO Enterprises*

To state a civil RICO claim, Plaintiffs must also allege that FedEx Ground was

"employed by or associated with an enterprise . . . to conduct or participate, directly or indirectly,

in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18

U.S.C. § 1962(c).  The Supreme Court has interpreted this statutory language to mean that the

RICO defendant must have participated "in the operation or management of the enterprise."

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Under this standard, a person may not be

held liable merely for taking directions and performing tasks "that are 'necessary and helpful to

the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'"  *Sky*

*Med. Supply*, 17 F. Supp. 3d at 224 (quoting *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,

303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004)).  Instead, the defendant "must have played '*some*

part in directing [the enterprise's] affairs.'"  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,

385 F.3d 159, 176 (2d Cir. 2004) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 310 (2d Cir. 2001)

(emphasis in original), *cert. denied*, 534 U.S. 891 (2001)).  In this Circuit, the operation or

management test typically has proven to be a relatively low hurdle for plaintiffs to clear,

especially at the pleading stage.  *Id.*; *see also LaserShip*, 303 F. Supp. 3d at 310 (observing that

the question of operation or management is essentially one of fact).

Plaintiffs have sufficiently alleged that FedEx Ground had some part in directing the

affairs of the Cigarette Seller enterprises.  Specifically, Defendant is alleged to have, *inter alia*,

used its own methods and means and exercised discretion to transport and distribute the

cigarettes to the Cigarette Sellers' customers and provided general logistics, marketing, and delivery support services to the Cigarette Sellers.  *See* Am. Compl. § 109; *see also LaserShip*, 303 F. Supp. 3d at 310 (finding that the operation or management test was satisfied where the defendant was alleged to have had some part in directing the enterprise's affairs and exercised discretion over the enterprise's operation); *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 291 (S.D.N.Y. 2012) (denying motion to dismiss Section 1962(c) claim against FedEx and FedEx Corporate Services, Inc. concerning their involvement in FedEx Ground's alleged upweighting and customs overcharging schemes; the court found the allegation that FedEx oversees and FedEx Services performs billing functions for FedEx Ground "alone suffice[d] to hurdle the low bar of the 'operation or management' test" for the purposes of a motion to dismiss).  Plaintiffs' allegations of FedEx Ground's participation in the operation or management of the Cigarette Seller enterprises are therefore sufficient at this stage of the litigation.

      3.  *Injury to Business or Property*

FedEx Ground also challenges whether Plaintiffs have adequately pleaded injury to the "business or property" of a person within the meaning of Section 1964(c).  Plaintiffs contend that tax revenue is inherently a sovereign, rather than a business or property interest, and that the alleged loss of tax revenue is a mere expectation insufficiently concrete to constitute an actual injury to business or property.  Def. Mem. L. 25.  This argument is squarely at odds with Supreme Court and Second Circuit precedent.  In *Pasquantino v. United States*, 544 U.S. 349, 349 (2009), the Supreme Court held that Canada's right to collect excise taxes on imported liquor was "property" within the meaning of the federal wire fraud statute, 18 U.S.C. § 1343. There, the Court ruled that this right was an entitlement to collect money from the petitioners, individuals who had been convicted of federal wire fraud for carrying out a scheme to smuggle

16

large quantities of liquor into Canada from the United States, and that the possession of such money constituted "'something of value' to the Government of Canada." *Id.* at 353, 355. The Court went on to observe that "[v]aluable entitlements like these are 'property' as that term is ordinarily employed." *Id.* at 356. Similarly, in *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008), *rev'd on other grounds*, *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), the Second Circuit expressly held that lost taxes can constitute injury to "business or property" for purposes of RICO. Though Defendant claims that *Smokes-Spirits* is no longer controlling law because of the Supreme Court's reversal, *see Hemi Group*, 559 U.S. at 1, that reversal—as FedEx Ground plainly acknowledges—was decided other grounds.[10] And in *Gordon*, which was decided after *Hemi Group*, the court relied on *Smokes-Spirits* for the very same principle. *See Gordon*, 1 F. Supp. 3d at 113 (stating that the City's complaint easily satisfies the requirement that a plaintiff allege an injury to business or property); *see also LaserShip*, 303 F. Supp. 3d at 312 (denying dismissal of Section 1962(c) claim where harm alleged was City's lost tax revenue).[11] Plaintiffs' Section 1962(c) claim therefore cannot be dismissed on the ground that Plaintiffs have not alleged injury to a business or property interest.[12]

---

[10] *See* Def. Mem. L. 28 n.20 ("*While the Court decided Hemi on proximate cause grounds*, the Second Circuit's determination in [*Smokes-Spirits*] no longer controls as a result of its judgment being reversed." (emphasis added)).

[11] FedEx Ground's claim that tax revenue is inherently a sovereign interest is unavailing for the further reason that it relies on principles extracted from the Clayton Act. *See* Def. Mem. L. 28-29. However, in light of the Second Circuit's controlling decision in *Smokes-Spirits* and the consistent conclusions reached in *Gordon* and *LaserShip*, Defendant's argument is without merit.

[12] FedEx Ground alternatively argues that even if Plaintiffs have alleged harm in the nature of a business or property injury, they would lack standing to pursue a Section 1964(c) RICO claim because true tax-collection efforts may still be undertaken. Def. Mem. L. 25. The Second Circuit has determined that a "cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995). Courts that have dismissed RICO claims on this basis typically have done so where "a creditor alleges he has been defrauded . . . [but] contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be

   4.   *Causation*

Finally, FedEx Ground claims that Plaintiffs have failed to plead that its shipping services were the proximate cause of the alleged harm:  lost tax revenue.[13]  Def. Mem. L. 25.  In resolving questions of proximate cause in the civil RICO context, courts consider the relationship between the predicate act and the plaintiff's harm.  *Hemi Group*, 559 U.S. at 12.  Plaintiffs here have plausibly pleaded Defendant's involvement in a tax evasion scheme that directly caused their injury.  *Cf. Gordon*, 1 F. Supp. 3d at 113; *LaserShip*, 303 F. Supp. 3d at 312 (finding that the shipping of unstamped cigarettes was a direct cause of the tax evasion that injured the City because the conduct causing the harm was the same conduct that created liability for the predicate act); *Chavez*, 2012 WL 1022283, at *7 (concluding that the City's harm was directly linked to the evasion of New York's tax collection scheme by the defendants).[14]  Accordingly, Plaintiffs have adequately pleaded causation for the purposes of their Section 1962(c) claim.

eliminated or significantly reduced."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (per curiam); *see, e.g.*, *Harbinger Capital Partners Master Fund I, LTD. v. Wachovia Capital Mkts., LLC*, 347 F. App'x 711, 714 (2d Cir. 2009) (summary order) (affirming dismissal of creditors' RICO claims against debtor because plaintiffs' damages were still unknown based on a pending bankruptcy action); *Am. Home Mortg. Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279 (RCC), 2007 WL 1074837, at *4 (S.D.N.Y. Apr. 9, 2007) (holding that mortgage loan funder did not have standing to assert RICO claims based on loans and properties that were not yet subject to foreclosure); *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) (dismissing lenders' RICO claims based on a third party's failure to pay a debt because the related losses could have been abated by, *inter alia*, the plaintiffs' recovery in foreign arbitration).  However, Defendant can point to no similar contingencies bearing on the ripeness of Plaintiffs' RICO claim.

[13] Plaintiffs argue in opposition to the instant motion that their injury consisted of damages caused by the lost opportunity to collect taxes rather than lost taxes.  Pls. Opp. Mem. L. 32.  The Supreme Court addressed this purported distinction in *Hemi Group*.  *See Hemi Group*, 559 U.S. at 15 (noting that it was not clear that there was a substantive distinction between injury based on lost tax revenue and that premised on the lost opportunity to tax).  Accordingly, Plaintiffs' attempt to revive this distinction here is unavailing.  Moreover, Plaintiffs do not draw this distinction on the face of the Amended Complaint.  *Cf. id.* ("[I]n its entire brief on the merits, the City never uses the word 'opportunity' (or anything similar) to describe its injury.").

[14] FedEx Ground argues at length that the RICO claim is "squarely foreclose[d]" by *Hemi Group*.  Def. Mem. L. 26.  In *Hemi Group*, the Supreme Court reversed the Second Circuit's ruling that the City stated a RICO claim based on the predicate acts of mail and wire fraud.  *Hemi Group*, 559 U.S. at 1.  At issue there was an out-of-state cigarette dealer's alleged failure to file reports with New York State under the Jenkins Act, which requires that any person who sells and ships cigarettes across a state line to a buyer other than a licensed distributor report the sale to the buyer's state tobacco tax administrator.  *Id.*  In that case, the City of New York claimed that the failure of the out-of-

Defendant's motion to dismiss the RICO claim is therefore DENIED.

**c. RICO Conspiracy**

Defendant argues that the RICO conspiracy claim should be dismissed because Plaintiffs' allegations do not sufficiently establish that FedEx Ground agreed to violate RICO's substantive provisions rather than merely provide third-party shipping services.[15]  Def. Mem. L. 34.  Section 1962(d) proscribes an agreement to conduct or to participate in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity.  *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009), *cert. denied*, 558 U.S. 1115 (2010); *see also City of New York v. Chavez*, 944 F. Supp. 2d 260, 268-69 (S.D.N.Y. 2013) (stating that to establish a RICO conspiracy, the plaintiff must prove that (1) there existed a conspiracy to commit acts that, if successful, would constitute a substantive RICO violation; (2) defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) defendant acted in furtherance of the conspiracy in some manner); *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 350 (S.D.N.Y. 2011) ("A defendant can commit a RICO conspiracy where he 'know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role[].'" (quoting *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000)).  Plaintiffs have alleged that FedEx (1) had written agreements with each of the Cigarette Seller enterprises; (2) knew of the

---

state dealer defendant to file the reports made it easier for City consumers to avoid paying taxes, and therefore caused lost revenue to the City.  *Id.* at 3.  The Court reasoned that the defendant's "obligation was to file the . . . reports with the State, not the City, and the City's harm was directly caused by the customers, not [the defendant]."  *Id.* at 3.  Here, however, the Court need not "stretch[] the causal chain of [this] RICO violation so far," *id.*:  as stated above, FedEx Ground's alleged delivery of unstamped cigarettes was a direct cause of the tax evasion pleaded by Plaintiffs.  *Cf. Gordon*, 1 F. Supp. 3d at 113; *Chavez*, 2012 WL 1022283, at *7 n.6 (observing that the CD2U defendants' reliance on *Hemi Group* was inapt because the City's theory of liability in *Chavez*—unlike in *Hemi Group*—did not rest on the independent actions of third parties because the harm was complete as soon as the cigarettes were shipped to the seller defendants).

[15] FedEx Ground also argues that the RICO conspiracy claim necessarily fails because Plaintiffs have not adequately alleged a substantive violation under Section 1962(c).  Given the conclusion above, however, the Court need not consider this argument.

illegal business of each of the enterprises; (3) committed hundreds to thousands of racketeering

acts for each enterprise; and (4) committed the acts with the intention of helping the enterprises

succeed in their illegal endeavors.  *See* Am. Compl. ¶¶ 74-76; 79-89; 109; 114.  Plaintiffs

additionally plead that FedEx conducted the affairs of the Cigarette Seller enterprises through a

pattern of racketeering activity, or agreed that the enterprises' affairs would be conducted in such

manner.  *Id.* ¶ 100; *see also id.* ¶ 115 ("FedEx agreed that one or more associates of [the

Cigarette Sellers] would commit thousands of racketeering acts in conducting the affairs of the

Enterprises.").  These allegations are plainly sufficient to state a claim under Section 1962(d).

Defendant's motion to dismiss the RICO conspiracy claim is therefore DENIED.

### d.  New York Public Health Law

Plaintiffs allege that FedEx violated N.Y. Public Health Law § 1399-ll, which makes it

"unlawful for any common or contract carrier to knowingly transport cigarettes to any person in

this state reasonably believed by such carrier to be [a consumer]."  *Id.* ¶ 162.  On September 27,

2013, Section 1399-ll was amended to increase the amount of civil penalties recoverable under

the section and grant the City and State authority to enforce it.  Prior to its amendment, Section

1399-ll was enforceable civilly only by the State Commissioner of Health.  As amended, Section

1399-ll allows for the Attorney General and "corporation counsel of any political subdivision

that imposes a tax on cigarettes" to bring suit and collect civil penalties.

FedEx Ground challenges the PHL claim on two grounds.  Defendant first claims that the

2013 amendment is not retroactive, and that Plaintiffs therefore are not authorized to sue for

violations taking place between 2005 and 2012—the time period alleged in the Amended

Complaint.  FedEx Ground also argues that the PHL claim is barred in large part by the statute of

limitations.

"Generally, 'retroactive operation of statutes is not favored by [New York] courts' and it 'takes a clear expression of the legislative purpose to justify a retroactive application.'" *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998)); *see also* N.Y. Stat. Law § 52 ("Generally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation."). Under New York law, to determine if such a purpose exists, courts look to the text of the legislation at issue. *Gold*, 730 F.3d at 143 (citing *Majewski*, 91 N.Y.2d at 583-84). If the text is not clear, courts then look to the legislative history. *Id.* (citing *Majewski*, 91 N.Y.2d at 583-84); *see also CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009) ("Simply put, there must be a *'clear'* expression of legislative intent to apply a statute retroactively." (emphasis added) (quoting *Majewski*, 91 N.Y.2d at 589)).

FedEx Ground contends that the PHL claim should be dismissed in its entirety, *inter alia*, because a plain reading of the amendment and its legislative intent do not support retroactive application. Def. Mem. L. 36-37. In *LaserShip*, the court concluded that the amended Section 1399-ll was remedial in that it was designed to correct imperfections in the law and provide a new remedy for an existing prohibited wrong by granting standing to additional government entities. *LaserShip*, 303 F. Supp. 3d at 315. The court determined that it should therefore have retroactive application. *Id.* However, the court's analysis was based solely on the classification of the law as remedial; it did not make reference to the legislative history.

Although amendments to remedial statutes were *once* presumed to be retroactive under New York law, *see Gold*, 730 F.3d at 144, the Court of Appeals in *Majewski* expressly stated that there must be a clear expression of legislative intent in order for an amendment to apply

retroactively.  *Majewski*, 91 N.Y.2d at 589; *see also CFCU Cmty. Credit Union*, 552 F.3d at 262

(quoting *Majewski* for the principal that the mere classification of a statute is remedial is

insufficient because that term may broadly encompass any attempt to supply some defect or

abridge some superfluity in the former law).  Indeed, in that case, the court observed that "the

classification of a statute as 'remedial' no longer automatically overcomes the strong

presumption against retroactivity and that a better guide for discerning the intent of the

legislature is text and history."  *Gold*, 730 F.3d at 144 (citing *Majewski*, 91 N.Y.2d at 584).

Thus, while the 2013 amendments to Section 1399-ll were indisputably remedial, either the text

or the legislative history must also provide a clear expression of legislative intent in order for the

amendment to apply retroactively.  That is missing here.

      The Legislature's stated justification for the 2013 amendment was to "provide[] for more

effective enforcement of the statute by permitting both the Attorney General and the Corporation

Counsel . . . to bring actions to recover civil penalties for statutory violations."  N.Y. S.B. Summ.

5215A, June 21, 2013.  While this may mean that the amendment was remedial, the text of the

amendment and the legislative history are silent on retroactivity.[16]  *See, e.g.*, *id.* (stating only that

the amendment "shall take effect immediately").  Similarly, in *Gold*, the Second Circuit affirmed

the district court's holding that the 2011 amendment to the New York Labor Law's ("NYLL")

---

[16] Plaintiffs contend that the plain text of the 2013 amendment supports retroactive application because it allowed
the Attorney General and the Corporation Counsel to bring suit related to "'*any cigarettes* shipped . . . in violation of
such subdivision,'" thus "refer[ring] to all violations, before and after the Amendment."  Pls. Opp. Mem. L. 36
(quoting N.Y. Public Health Law § 1399-ll(6)).  Such language hardly evidences a *clear* expression of intent for
retroactive application.  This finding is further supported by the fact that the Legislature has explicitly accorded
retroactive application to prior amendments to the Public Health Law.  *See, e.g.*, *Hodes v. Axelrod*, 70 N.Y.2d 364,
368, 369 (1987) (stating that the 1983 amendments to N.Y. PHL § 2806(5)—which regards the revocation of
nursing home operating certificates—were explicitly made retroactive by the Legislature because they were made to
"apply to all existing operating certificates even though the felony conviction may have been entered and the
certificate of relief from disabilities granted prior to the effective date hereof" (internal quotation marks and citation
omitted)).

liquidated damages provision did not have retroactive application.  *Gold*, 730 F.3d at 144.

There, the court observed that although an earlier amendment to the same provision expressly

stated that it would apply to offenses committed on or after that amendment's effective date, the

2011 amendment, which was remedial, contained no such language.  *Id.* at 143.  Accordingly,

the plaintiff could not overcome the "strong presumption against retroactivity" through the

amendment's text or legislative history.  *Id.* at 144.[17]  For the same reason, the Court will not

retroactively apply the 2013 amendment to Section 1399-ll.[18]

     Defendant's motion to dismiss the N.Y. PHL claim is therefore GRANTED.[19]

_____

[17] By contrast, in *CFCU Community Credit Union*, the Second Circuit held that a 2005 amendment to New York's homestead exemption in bankruptcy proceedings, which increased the exempted amount from $10,000 to $50,000, had retroactive application.  552 F.3d at 256.  The court reached this conclusion even though the plain text of the 2005 amendment, as here, was inconclusive as to retroactivity.  *See id.* at 261-62.  Specifically, the Second Circuit found a clear expression of legislative intent for retroactivity based on "several key legislative documents which shed light on the statute's purpose."  *Id.* at 263.  In particular, the New York State Senate sponsor memo noted that the homestead exemption in effect at the time of the amendment—$10,000—had not been updated since it was put in place through an amendment in 1977 amendment.  *Id.*  According to the 2005 amendment's sponsors, "[i]n 1998, the value of that amount of money had declined to about $3570 in 1977 dollars."  *Id.*  Accordingly, the sponsors observed that to have an exemption so low was tantamount to having no exemption at all, and proposed an increase in the amount to $50,000, "a much more realistic figure."  *Id.*  The Second Circuit thereby determined that there was a clear legislative intent to adjust the homestead exemption to account for inflation and bring it in line with current economic conditions.  *Id.*  Moreover, whereas the 1977 amendment contained an explicit anti-retroactivity provision, there was no such provision in the 2005 amendment.  *Id.* at 264.

Unlike in *CFCU Community Credit Union*, the sponsor memo for the amendment to Section 1399-ll—which was submitted by Plaintiffs as support for the amendment's retroactivity—contains no similar indication that the amendment's purpose was "'to clarify what the law was always meant to say and do.'"  *Id.* at 262 (quoting *Majewski*, 91 N.Y.2d at 585); *see* Braman Decl., Ex. 5.  Instead, the document notes that the law was already an "effective tool" to ensure that minors could not purchase cigarettes, and states that the purpose of the amendment was to strengthen enforcement of the law.  *See* N.Y. Spons. Memo., 2013 A.365-B.

[18] The Court's conclusion here is unaffected by the Legislature's express intent that the 2013 amendment "shall take effect immediately."  N.Y. S.B. Summ. 5215A, June 21, 2013; *see, e.g.*, *CFCU Cmty. Credit Union*, 552 F.3d at 261 ("A statute's command that it take effect 'immediately' does not resolve the question of whether, under New York law, the amendment should be applied retroactively . . . ."); *Majewski*, 91 N.Y.2d at 583 (declining to apply amendments to Workers' Compensation Law retroactively because "the Act says *only* that the subject provisions are to 'take effect immediately'" and "the date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence" (emphasis added)).

[19] The N.Y. PHL claim is dismissed in full because the Amended Complaint covers FedEx deliveries made from 2005 to 2012, which of course predate the 2013 amendment.  Given this conclusion, the Court need not consider FedEx Ground's argument that the PHL claim is partially barred by the statute of limitations.

23

e. **Public Nuisance**

Plaintiffs allege that FedEx's distribution of unstamped cigarettes to consumers at prices lower than the legal price created a public nuisance.  Am. Compl. ¶ 170.  Under New York law, a public nuisance consists of conduct or omissions which offend, interfere with, or cause damage to the public in the exercise of rights common to all, in a manner such as to interfere with the use by the public of a public place or endanger or injure the property, health, safety, or comfort of a considerable number of persons.  *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 158 (S.D.N.Y. 2010), *aff'd in relevant part*, 406 F. App'x 557, 557 (2d Cir. 2011) (quoting *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.S.2d 564, 568 (1977)).  FedEx Ground contests the public nuisance claim on the basis that it is foreclosed by *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616 (2009).

In *Smokes-Spirits*, the Court of Appeals held that the City of New York could not assert a common law public nuisance claim that was predicated on N.Y. PHL § 1399-ll.  *Id.* at 630.  There, the City claimed that defendants' allegedly illegal marketing and shipment of cigarettes deprived it of tax revenues.  *Id.* at 618.  The court reasoned that the Legislature's passage of Section 1399-ll was "predominantly intended to prevent young people in New York from becoming addicted to cigarettes."  *Id.* at 628 (internal quotation marks and citation omitted).  The court went on to observe that the City's alleged injury—lost tax revenue—is a harm that is subject to thorough regulation, including by Section 1399-ll.  *Id.* at 629.  In light of the "comprehensive enforcement scheme[]" already in place for Section 1399-ll violations, as well as the Legislature's "clear expressions that the public health thrust of section 1399-ll was related to the prevention of underage smoking," the court concluded that the Legislature did not intend to authorize a public nuisance claim based primarily upon alleged tax evasion.  *Id.*

24

Plaintiffs claim that their public nuisance claim should survive the instant motion despite the Court of Appeals' decision in *Smokes-Spirits*.  In particular, because the court acknowledged in a footnote that it might have reached a different result if the City's complaint "had alleged unauthorized shipment to minors."  *Id.* at 629 n.5.  Here, Plaintiffs have pleaded that the cigarettes delivered by FedEx (1) are distributed without regard to the age of the buyers and are a likely means by which underage persons obtain cigarettes, and (2) provide a source of cigarettes for underage smokers.  Am. Compl. ¶¶ 128, 169.  Despite these attempts to distinguish the instant action from *Smokes-Spirits*, Defendant points out that Plaintiffs have *not* specifically pleaded that FedEx made unauthorized shipments to minors.  Def. Mem. L. 43.  Furthermore, the Court of Appeals noted merely that it *may* have reached a contrary result if allegations of unauthorized shipment to minors had been pleaded, not that a different result was *compelled*.  After all, this action—like *SmokesSpirits*—primarily involves alleged tax evasion.  *See SmokesSpirits*, 12 N.Y.3d at 625 ("Based on its text and legislative history, we conclude that the Legislature did not contemplate that section 1399-ll would be used as a predicate for public nuisance actions in cases—like the present—that primarily involve alleged tax evasion.").

Defendant's motion to dismiss the public nuisance claim is therefore GRANTED.

## IV.   Conclusion

For the reasons set forth above:

- Defendant's motion to dismiss the CCTA claim is DENIED.

- Defendant's motion to dismiss the RICO and RICO conspiracy claims is DENIED.

- Defendant's motion to dismiss the N.Y. Public Health Law and public nuisance claims is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 28.

It is SO ORDERED.


Dated:    March 9, 2015
          New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.

26