UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------  x

THE CITY OF NEW YORK and THE PEOPLE OF THE
STATE OF NEW YORK,

                    Plaintiffs,

       -against-

FEDEX GROUND PACKAGE SYSTEM, INC. and
FEDERAL EXPRESS CORP.,

                    Defendants.

---------------------------------------------------------------------  x

Civ. Nos. 13-cv-9173-ER-KNF
14-cv-8985-ER-KNF

**CORRECTED MEMORANDUM OF LAW OF
PLAINTIFFS THE CITY OF NEW YORK
AND THE PEOPLE OF THE STATE OF NEW
YORK IN SUPPORT OF THEIR MOTION TO
STRIKE AFFIRMATIVE DEFENSES**

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, *New York* 10007
(212) 356-2032

**ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York

*Attorney for Plaintiff the People of the State
  of New York*
120 Broadway
New York, *New York* 10271
(212) 416-6699

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD ................................................................................................. 1

ARGUMENT .............................................................................................................. 2

I.     FEDEX'S SEVENTEENTH DEFENSE FAILS ON GROUNDS OF GOVERNMENT DISCRETION, FEDEX'S EQUAL LIABILITY FOR TAX LOSSES, PRIOR "FORBEARANCE" RULINGS AND COMITY. ................................... 3

        A.    Executive Branch Discretion ........................................ 5

        B.    FedEx is No Less Liable for Taxes Than Are Consumers ................................................................... 8

        C.    Prior Rulings Foreclose State Tax Policy as an Affirmative Defense ................................................... 9

        D.    The Comity Doctrine Bars Consideration of the Seventeenth Defense ................................................ 11

II.    FEDEX'S FOURTH AFFIRMATIVE DEFENSE REPRISES THE SEVENTEENTH DEFENSE AND FAILS FOR THE SAME AND ADDITIONAL REASONS. ....................................................................... 13

III.   FEDEX'S EIGHTH AFFIRMATIVE DEFENSE HAS ALREADY BEEN REJECTED BY THIS COURT AND FOUR OTHER COURTS ............................................................. 21

IV.   FEDEX'S TENTH AFFIRMATIVE DEFENSE SHOULD BE DISMISSED AS A MATTER OF LAW: THE PLAIN LANGUAGE OF EXECUTIVE LAW § 63 PERMITS ENFORCEMENT AGAINST ANY PERSON ENGAGING IN "REPEATED FRAUDULENT OR ILLEGAL ACTS" .................................................................... 21

V.    FEDEX'S ELEVENTH AFFIRMATIVE DEFENSE SHOULD BE DISMISSED AS A MATTER OF LAW: EXECUTIVE LAW § 63 EMPOWERS THE ATTORNEY GENERAL TO SEEK PENALTIES .......................... 23

ii

VI.    FEDEX'S   TWELFTH   AFFIRMATIVE   DEFENSE
       SHOULD BE DISMISSED FOR FAILURE TO PLEAD
       WITH PARTICULARITY .................................................................................24

VII.   FEDEX'S   THIRTEENTH   DEFENSE   SHOULD   BE
       DISMISSED    AS    THE    AOC    REQUIRES    NO
       PERFORMANCE BY THE STATE ................................................................25

VIII.  FEDEX'S FIFTEENTH DEFENSE IS REDUNDANT
       OF AND SHOULD BE DISMISSED FOR THE SAME
       REASONS AS THE FOURTH AND SEVENTEENTH
       DEFENSES..................................................................................................28

IX.    FEDEX'S  EIGHTEENTH  DEFENSE  DEFENSE  IS
       REDUNDANT  OF  AND  SHOULD  BE  DISMISSED
       FOR THE SAME REASONS AS THE SEVENTEENTH
       AND FOURTH DEFENSES. ........................................................................28

X.     FEDEX'S    TWENTY-THIRD    DEFENSE    FAILS
       BECAUSE THE CITY AND STATE'S CLAIMS ARE
       NOT PREEMPTED BY FEDERAL INDIAN LAW
       AND FEDEX MAY NOT AVAIL ITSELF OF THOSE
       PRINCIPLES EVEN IF THEY WERE. ..........................................................29

       A.    Indians Are Subject To State and Local Cigarette
             Tax Laws............................................................................................30

       B.    FedEx Is Not an Indian In Indian Country................................................31

XI.    THE  CITY  AND  STATE  ARE  SIGNIFICANTLY
       PREJUDICED BY THE DISCOVERY AND TRIAL
       BURDENS IMPOSED BY FEDEX'S DEFENSES...........................................33

CONCLUSION............................................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*Abuzaid v. Mattox,*
   726 F.3d 311 (2d Cir. 2013).....................................................................................12

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,*
   404 F.3d 566 (2d Cir. 2005).....................................................................................16

*Alliance Indus. v. Longyear Holdings, Inc.,*
   854 F. Supp. 2d 321 (W.D.N.Y. 2012) ....................................................................26

*Allstate Insurance Co. v. Foschio,*
   93 A.D.2d 328 (2d Dept. 1983) ...............................................................................22

*AP v. Meltwater U.S. Holdings, Inc.,*
   931 F. Supp. 2d 537 (S.D.N.Y. 2013).......................................................................15

*Baraga Prods. v. Comm'r of Revenue,*
   971 F. Supp. 294 (W.D. Mich. 1997),
   *aff'd*, 1998 U.S. App. LEXIS 17498 (6th Cir. July 23, 1998) ...............................32

*Bassett v. Mashantucket Pequot Tribe,*
   204 F.3d 343 (2d Cir. 2000)....................................................................................... 8

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985)...........................................................................................18, 19

*Behn, Meyer & Co. v. Miller,*
   266 U.S. 457 (1925)..................................................................................................32

*Bekhor v. Josephthal Group, Inc.,*
   2000 U.S. Dist. LEXIS 14924, *14 (S.D.N.Y. Oct. 13, 2000) ...............................27

*BrandAid Mktg. Corp. v. Biss,*
   462 F.3d 216 (2d Cir. 2006).....................................................................................19

*Calabrese v. CSC Holdings, Inc.,*
   2006 U.S. Dist. LEXIS 99681 (E.D.N.Y. Mar. 6, 2006).......................................21n

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.,*
   206 F.R.D. 78 (S.D.N.Y. 2002) .............................................................................32n

*Cayuga Indian Nation of N.Y. v. Gould,*
   14 N.Y.3d 614 (2010) ....................................................................................11, 29, 31

*Citizens Accord, Inc. v. Town of Rochester,*
  2000 U.S. Dist. LEXIS 4844 (N.D.N.Y. Apr. 18, 2000),
  *aff'd,* 29 F. App'x. 767 (2d Cir. 2002) .................................................................. 5

*City of New York v. City Civil Serv. Comm'n,*
  60 N.Y.2d 436 (1983) ............................................................................................. 14

*City of New York v. FedEx Ground Package System, Inc.,*
  2015 U.S. Dist. LEXIS 28529 (S.D.N.Y. Mar. 9, 2015) .................................... 3n, 21

*City of New York v. Golden Feather Smoke Shop, Inc.,*
  2009 U.S. Dist. LEXIS 20953 (E.D.N.Y. Mar. 16, 2009) .................................... 31, 32

*City of New York v. Golden Feather Smoke Shop, Inc.,*
  2009 U.S. Dist. LEXIS 76306 (E.D.N.Y. Aug. 25, 2009) ........................ 4, 18, 21, 30

*City of New York v. Gordon,*
  1 F. Supp. 3d 94 (S.D.N.Y. 2013) ................................................. 20, 21n, 29, 30, 31

*City of New York v. LaserShip, Inc.,*
  2014 U.S. Dist. LEXIS 99617 (S.D.N.Y. July 9, 2014) ........................................ 21n

*City of New York v. Smokes-Spirits.com, Inc.,*
  541 F.3d 425 (2d Cir. 2008), *vactaed and remanded sub nom Hemi Group, LLC v.*
  *City of New York,* 130 S. Ct. 983 (2010) ............................................................... 7

*Clear Channel Outdoor, Inc. v. City of New York,*
  594 F.3d 94 (2d Cir. 2010) ..................................................................................... 13

*Coach, Inc. v. Kmart Corps.,*
  756 F. Supp. 2d 421 (S.D.N.Y. 2010) .......................................................... 2, 3, 33

*Cortlandt Nursing Home v. Axelrod,*
  66 N.Y.2d 169 (1985) ............................................................................................. 16

*Dep't of Taxation v. Milhelm Attea & Bros.,*
  512 U.S. 61 (1994) ........................................................................................... 29n, 30

*Eastman Kodak Co. v. Ricoh Co.,*
  2013 U.S. Dist. LEXIS 113204 (S.D.N.Y. Aug. 9, 2013) ..................................... 15

*Enercomp, Inc. v. McCorhill Publishing, Inc.,*
  873 F.2d 536, 549 (2d Cir. 1989) .......................................................................... 27

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.,* 2014 U.S. Dist. LEXIS 112437
  (S.D.N.Y. Aug. 12, 2014) ....................................................................................... 21

*Fed. Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott,*
754 F. Supp. 22 (E.D.N.Y. 1990) ................................................................... 2

*Ferriola v. DiMarzio,*
83 A.D.3d 657 (2d Dep't 2011)....................................................................... 8

*Frazier v. Turning Stone Casino,*
254 F. Supp. 2d 295 (N.D.N.Y 2003).............................................................. 8

*FTC v. Crescent Publ'g Group, Inc.,*
129 F. Supp. 2d 311 (S.D.N.Y. 2001)........................................................... 29

*Gaynor v. Rockefeller,*
15 N.Y.2d 120 (1965) ...................................................................................... 6

*Geiger v. Town of Greece,*
2007 U.S. Dist. LEXIS 87464, *4 (W.D.N.Y. Nov. 2, 2007) ...................... 24

*Granada Buildings, Inc. v. City of Kingston,*
58 N.Y.2d 705 (1982) .................................................................................... 14

*Grey Poplars, Inc. v. One Million Three Hundred Seventy One
Thousand One Hundred (1,371,100) Assorted Brands of Cigarettes,*
282 F.3d 1175, 1177 (9th Cir. 2002) ............................................................ 30

*Guaranty Trust Co. of New York v. United States,*
304 U.S. 126 (1938)....................................................................................... 16

*Hamptons Hosp. & Med. Ctr., Inc. v. Moore,*
52 N.Y.2d 88 (1981) ...................................................................................... 14

*Harrington v. County of Suffolk,*
607 F.3d 31 (2d Cir. 2010).............................................................................. 5

*Heckler v. Chaney,*
470 U.S. 821 (1985)......................................................................................... 5

*Heckler v. Community Health Services,*
467 U.S. 51 (1984)......................................................................................... 14

*Ikelionwu v. United States,*
150 F.3d 233 (2d Cir. 1998)........................................................................... 15

*Illinois Dep't of Revenue v. Phillips,*
771 F.2d 312 (7th Cir. 1985) ........................................................................... 7

*International Klafter Co. v. Continental Casualty Co.,*
869 F.2d 96, 100 (2d Cir. 1989) .................................................................... 27

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997) ................................................................. 15

*Jones v. Beame*,
    45 N.Y.2d 402 (1978) ..................................................................... 5, 6

*Joseph v. Hyman*,
    659 F.3d 215 (2d Cir. 2011) ................................................................. 11

*Koninklijke Philips N.V. v. Cinram Int'l, Inc.*,
    2013 U.S. Dist. LEXIS 76163 (S.D.N.Y. May 24, 2013) ................................. 15

*Lai Yoong Low v. Tian Yu Inc.*,
    2015 U.S. Dist. LEXIS 30250 (S.D.N.Y. Mar. 11, 2015) ................................. 16n

*LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*,
    40 F.3d 587 (2d Cir. 1994) ................................................................. 13

*Leland v. Moran*,
    80 F. App'x. 133 (2d Cir. 2003) ........................................................ 5, 13

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010) ................................................................... 11, 12

*Manshion Joho Ctr. Co., Ltd. v. Manshion Joho Ctr., Inc.*,
    24 A.D.3d 189 (1st Dep't 2005) ......................................................... 16n

*Matter of Parkview Assocs. v. City of New York*,
    71 N.Y.2d 274 (1988) ..................................................................... 14

*MBIA Inc. v. Fed. Ins. Co.*,
    652 F.3d 152, 157 (2d Cir. 2011) .......................................................... 24

*Medinol Ltd. v. Boston Sci. Corp.*,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004) ..................................................... 15

*N.Y. Ass'n of Convenience Stores v. Urbach*,
    275 A.D.2d 520 (3d Dep't 2000) ......................................................... 10

*Narragansett Indian Tribe v. Rhode Island*,
    449 F.3d 16 (1st Cir. 2006) ................................................................ 32

*Nat'l Private Truck Council v. Okla. Tax Comm'n*,
    515 U.S. 582 (1995) ...................................................................... 11

*Nat'l. Treas. Emp. Union v. Horner*,
    854 F.2d 490 (D.C. Cir. 1988) ............................................................. 6

*Nevada v. United States*,
   463 U.S. 110 (1983) ........................................................................................ 29

*New York v. BB's Corner, Inc.*,
   2012 U.S. Dist. LEXIS 88542 (S.D.N.Y. June 25, 2012) ........................... 21n

*New York v. Condor Pontiac, Cadillac, Buick & GMC Trucks*,
   2003 N.Y. Misc. LEXIS 881, *19 (N.Y. Sup. Ct. July 3, 2003) ................. 24

*Ogilvy Group Swed. v. Tiger Telematics, Inc.*,
   2006 U.S. Dist. LEXIS 8961 (S.D.N.Y. Mar. 6, 2006) .............................. 15

*Oneida County v. Oneida Indian Nation of N.Y. State*,
   470 U.S. 226 (1985) ........................................................................................ 15

*Oneida Nation of N.Y. v. Cuomo*,
   645 F.3d 154 (2d Cir. 2011) ..................................................................... 10, 29

*Pan American Petroleum & Transport Co. v. United States*,
   273 U.S. 456 (1927) ........................................................................................ 17

*People v. Allied Mktg. Group, Inc.*,
   220 A.D.2d 370 (1st Dept. 1995) ................................................................. 24n

*People v. American Motor Club*,
   179 A.D.2d 277 (1st Dept. 1992) ................................................................. 22

*People v. Apple and Health Sports Clubs, Ltd.*,
   206 A.D.2d 266, 267 (1st Dept. 1994) ......................................................... 22

*People v. Chazy Hardware*,
   176 Misc.2d 960 (Sup. Ct. Clinton Co. 1998) ............................................. 22

*People v. Concert Connection Ltd.*,
   211 A.D.2d 310 (2d Dept. 1995) .................................................................. 22

*People v. Empyre Inground Pools, Inc.*,
   227 A.D.2d 731 (3d Dept. 1996) .......................................................... 23n, 24n

*People v. Gagnon Bus Co., Inc.*,
   2011 N.Y. Misc. LEXIS 442 (Sup. Ct. Queens Co. Jan. 18, 2011) ........... 24n

*People v. Helena VIP Personal Introductions Services*,
   N.Y.L.J., 1/17/92, p.26, col. 3 (Sup. Ct. N.Y. Co.), *aff'd*, 199 A.D.2d 186 (1st Dept.
   1993) ............................................................................................................... 22

*People v. Levy*,
   2011 N.Y. Misc. LEXIS 2519 (Sup. Ct. N.Y. Co. May 25, 2011) ............. 24

*People v. Nationwide Asset Servs.*, Inc.,
26 Misc. 3d 258 (N.Y. Sup. Ct. 2009) ................................................................. 23

*People v. World Interactive Gaming Corp.*,
185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) ............................................................... 23

*People's Pleasure Park Co. v. Rohleder*,
61 S.E. 794 (Va. 1908) ........................................................................................ 32

*Pinter v. Dahl*,
486 U.S. 622 (1988) ............................................................................................. 18

*Poughkeepsie Chevrolet, Inc. v. Jeff Weaver's 96 Hour Super Sale, Inc.*,
8 A.D.3d 575, 575 (2d Dep't 2004) ..................................................................... 24

*Proteus Books, Ltd. v. Cherry Lane Music Co.*,
873 F.2d 502, 509-10 (2d Cir. 1989) .................................................................. 27

*Public Improvements Inc. v. Bd. of Ed. of the City of New York*,
56 N.Y.2d 850 (1982) .......................................................................................... 14

*Puyallup Tribe, Inc. v. Dep't of Game*,
433 U.S. 165 (1977) ........................................................................................... 32n

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014) ................................................................................ 19

*State v. Beach Boys Equip. Co.*,
273 A.D.2d 850, 852 (4th Dep't 2000) ............................................................... 23n

*State v. Princess Prestige*,
42 N.Y.2d 104, 106 (1977) .................................................................................. 22

*State v. Two Wheel Corp.*,
71 N.Y.2d 693, 696 (1988) .................................................................................. 23

*State v. Veleanu*,
89 A.D.3d 950, 950 (2d Dep't 2011) ................................................................... 23

*SEC v. Citigroup Global Mkts.*,
752 F.3d 285 (2d Cir. 2014) .................................................................................. 6

*SEC v. Gulf & Western Ind., Inc.*,
502 F. Supp. 343 (D.D.C. 1980) .......................................................................... 16

*SEC v. Management Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975) ............................................................................... 18n

*S.E.C. v. McCaskey,*
  56 F. Supp. 2d 323 (S.D.N.Y. 1999)..........................................................................2n

*SEC v. Sprecher,*
  1993 U.S. Dist. LEXIS 18116 (D.D.C. 1993) ..........................................................17

*Shehab v. Chas. H. Sells, Inc.,*
  2006 U.S. Dist. LEXIS 18404, at \*17 (Mar. 29, 2006) ...........................................26

*State v. Applied Card Sys., Inc.,*
  11 N.Y.3d 105 (2008) ...............................................................................................23

*State v. Midland Equities,*
  117 Misc. 2d 203 (Sup. Ct. N.Y. Co. 1982) .............................................................22

*Sun Microsystems, Inc. v. Versata Enters.,*
  630 F. Supp. 2d 395, 408–09 (D. Del. 2009) ...........................................................25

*Town of Castle Rock, Colo. v. Gonzales,*
  545 U.S. 748 (2005)...........................................................................................4, 5, 7

*United States v. 1,920, 000 Cigarettes,*
  2003 U.S. Dist. LEXIS 12603 (W.D.N.Y. Mar. 31, 2003)......................................31

*United States v. Alex. Brown & Sons,*
  963 F. Supp. 235 (S.D.N.Y. 1997) .............................................................................6

*United States v. American Electric Power Service Corp.,*
  218 F. Supp. 2d 931 (S.D. Ohio 2002) ....................................................................17

*United States v. Blue Ribbon Smoked Fish, Inc.,*
  179 F. Supp. 2d 30 (E.D.N.Y. 2001) ......................................................................18n

*United States v. East River Housing Corp.,*
  2015 U.S. Dist. LEXIS 24924 (S.D.N.Y. March 2, 2015) ....................................1, 2

*United States v. Kaid,*
  241 F. App'x. 747 (2d Cir. 2007) ...........................................................................11n

*United States v. Morrison,*
  686 F.3d 94 (2d Cir. 2012).................................................................9, 11n, 18, 20, 29 30n

*United States v. Philip Morris, Inc.,*
  300 F. Supp. 2d 61 (D.D.C. 2004) ...........................................................................16

*United States v. Schmitt,*
  999 F. Supp. 317 (E.D.N.Y. 1998) ..........................................................................13

*United States v. Vineland Chemical Co.,*
    692 F. Supp. 415 (D.N.J. 1988) ............................................................ 17

*Utah Power & Light Co. v. United States,*
    243 U.S. 389 (1917) ................................................................ 14, 16

*Uto v. Job Site Servs., Inc.,*
    269 F.R.D. 209 (E.D.N.Y. 2010) ........................................................ 16n

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) ...................................................................... 32

*Vives v. City of New York,*
    524 F.3d 346 (2d Cir. 2008) ............................................................... 5

*Wash. v. Confederated Tribes of Colville Indian Reservation,*
    447 U.S. 134 (1980) ................................................................. 29, 30

*Wausau Business Insurance Co. v. Horizon Admin. Servs, LLC.,*
    803 F. Supp. 2d 209 (E.D.N.Y. 2011) .................................................. 2, 33

*Wayte v. United States,*
    470 U.S. 598 (1985) ...................................................................... 6, 7

*Willets Point Indus. & Realty Ass'n v. City of New York,*
    2009 U.S. Dist. LEXIS 110181 (E.D.N.Y. Nov. 25, 2009) .............................. 6, 7

*Yurman Design Inc. v. Chaindom Enters., Inc.,*
    2000 U.S. Dist. LEXIS 9243, at *8-9 (S.D.N.Y. July 5, 2000) ......................... 25

## **Statutes**

18 U.S.C. § 2341 ................................................................................ 17

18 U.S.C. § 2342(2) ............................................................................. 12

18 U.S.C. § 2346(b) ....................................................................... 17, 31

18 U.S.C. § 2346 (b) (1) .................................................................. 29, 31

Fed. R. Civ. P. 9(b) ........................................................................... 25

Fed. R. Civ. P. 12(f) ............................................................................ 1

N.Y. Exec. Law § 63 ........................................................................... 22

N.Y. Tax Law § 471-a .............................................................. 8, 11n, 30n

PHL § 1399-ll ............................................................................ *passim*

**Other Authorities**

S. Rep. No. 95-962 (1978), reprinted in 1978 U.S.C.C.A.N. 5518 ............................................... 18

*Restatement (Second) of Contracts* § 212 (1981) ........................................................27

**Treatises**

*4 S. Williston, A Treatise on the Law of Contracts* §§ 631 (3d ed. 1957 & Supp. 1988) ..........27

## PRELIMINARY STATEMENT

The City of New York ("City") and State of New York ("State") bring this motion pursuant to Fed. R. Civ. P. 12(f) to strike 12 affirmative defenses asserted by defendant FedEx Ground Package System, Inc. ("FedEx").[1] FedEx answers allegations that the company knowingly made unlawful cigarette deliveries to New York consumers with an array of affirmative defenses centered on a contention that City and State law enforcement and taxation policies "made FedEx do it." The defenses, serviced by massive discovery demands and that intrude into protected matters of State and City taxation and law enforcement policy, should be dismissed now, thereby avoiding the further waste of resources addressing issues that ultimately cannot as a matter of law proceed to trial. After setting forth the legal basis by which the Court can hold that each FedEx defense addressed here fails as a matter of law (*infra* 2-33), this memorandum details the specific prejudice to the City and State from the discovery requests engendered by the defenses (*infra* 33-35); *see also Declaration of Eric Proshansky* ("*Proshansky Decl.*") ¶¶ 3-10.

## LEGAL STANDARD

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The standard for granting a motion to strike an affirmative defense is straightforward:

> (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense.

---

[1] The City and State seek to strike the Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Seventeenth, Eighteenth, and Twenty-third Affirmative Defenses.

*United States v. East River Housing Corp.*, 2015 U.S. Dist. LEXIS 24924 at *24 (S.D.N.Y. March 2, 2015) (Ramos, J.) (citations and quotation marks omitted). Prejudice is shown if litigating legally insufficient defenses "increase[s] the duration and expense of trial," because "[p]laintiffs would incur increased discovery costs in having to explore the factual basis for these defenses." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010); *East River*, 2015 U.S. Dist. LEXIS 24924 at *25 ("In evaluating [prejudice], the Court may consider whether inclusion of the legally insufficient defense would needlessly increase the time and expense of trial or duration and expense of litigation.") (quotation marks and citation omitted).[2] For the reasons detailed below, the three-part test is satisfied for each of the affirmative defenses addressed in this memorandum.

## ARGUMENT

FedEx premises the affirmative defenses addressed here on a contention that the injury to the City and State was not caused by FedEx's deliveries of cigarettes (untaxed or otherwise) to consumers, but by City and State governance, including New York State's former policy necessitated by considerations of Indian sovereignty, and City and State policy decisions on the collection of taxes from the consumers to whom FedEx delivered cigarettes ("consumer collection"). The Seventeenth Affirmative Defense is the centerpiece of FedEx's strategy to shift injury causation to City and State tax and law enforcement policy, and away from the indisputable fact that FedEx contracted with shippers known to FedEx to deliver untaxed cigarettes to consumers. The Seventeenth Defense is accordingly addressed first, followed by the

---

[2] *Accord S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) ("An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike."); *Wausau Bus. Ins. Co. v. Horizon Admin. Servs, LLC*., 803 F. Supp. 2d 209, 213 (E.D.N.Y. 2011); *Fed. Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990).

several redundant defenses in which the same defense is implicit. FedEx's remaining defenses advance legally insupportable attacks on the authority of the State to enforce the Assurance of Compliance (the "AOC"), by which FedEx expressly agreed with the State to halt cigarette deliveries to consumers, and implement rigorous self-policing measures to assure against such deliveries. Finally, FedEx defends on the unprecedented ground that it may assume the cloak of Indian sovereignty.

## I. FEDEX'S SEVENTEENTH DEFENSE FAILS ON GROUNDS OF GOVERNMENT DISCRETION, FEDEX'S EQUAL LIABILITY FOR TAX LOSSES, PRIOR "FORBEARANCE" RULINGS AND COMITY.

FedEx's Seventeenth Affirmative Defense asserts that

> Plaintiffs' claims are barred or limited by their own conduct, including but not limited to their failure to enforce cigarette tax laws.

The Seventeenth Defense is "legally insufficient," *Coach,* 756 F. Supp. 2d at 428, under several, independent lines of authority and subject to dismissal as an attempt to penalize the City and State in this action by arguing for the inadequacy of prior City or State tax and law enforcement policies. As a matter of law, the Seventeenth Defense, and its several redundant variations described below: i) violates black letter law that executive branch enforcement choices are discretionary, not properly subject to adjudication; ii) ignores that FedEx is equally liable for the tax losses as the consumers on whom it seeks to foist liability; iii) conflicts with Second Circuit and New York decisions that have concluded that the State's cigarette tax enforcement policy – which for many years was subject to state and federal court injunctions that barred the State from enforcing its cigarette tax laws – was a "rational" policy, imposed by "political and practical realities"; and iv) intrudes into matters of state tax collection, which the Supreme Court and

Second Circuit have held on multiple occasions are not appropriately determined in federal court.[3]

---

[3] The City and State respectfully take this opportunity to expand on the Court's observation that "this action … primarily involves alleged tax evasion." *City of New York v. FedEx Ground Package System, Inc.*, 2015 U.S. Dist. LEXIS 28529, at *43 (S.D.N.Y. Mar. 9, 2015). Cigarette taxation is as much, if not more, about protecting public health as it is about money. The Amended Complaint alleges that FedEx's conduct gravely injures the public health by interfering with the proven ability of high cigarette taxes to induce smoking reduction. *See Am. Compl.* ¶¶4-6. Courts have held that large-scale cigarette bootlegging damages public health:

> The evidence in the record establishes that defendants' sales of cigarettes in violation of the CCTA and CMSA cause a substantial number of cheap, untaxed cigarettes to be transported into the City for resale. The City further has established, and defendants do not dispute, that the availability of reduced-price cigarettes in a particular marketplace causes smokers to smoke more cigarettes. Undisputed medical testimony in the record establishes that more smoking causes detrimental health effects, including an increased risk of lung cancer ….
>
> * * *
>
> [Former City Health Commissioner] Dr. Frieden concluded that if the untaxed cigarettes trafficked to the City from the Poospatuck Reservation were fully taxed, in one year 1,370 additional New York City smokers would have quit smoking, avoiding 450 premature deaths.

*City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 76306 at *67, 119 (E.D.N.Y. Aug. 25, 2009) ("[T]he availability of cheap cigarettes in the City has detrimental effects on public health due to the relationship between cigarette price and smoking behavior."). Other public policy objectives are served by the present action, in which the City and State "seek[] to enjoin activity that constitutes a federal crime":

> Congress's determination that [cigarette bootlegging] should be criminalized implies a judgment that violations will harm the public. This judgment is further reflected in the legislative history of the [CCTA], which reveals Congress's concern with the connections between cigarette trafficking and organized crime and the ensuing detrimental effects on public safety and economic welfare. *See* S. Rep. No. 95-962, at 6 ("Cigarette bootlegging has often been viewed as a victimless crime, but both research and testimony of witnesses forcefully refuted this notion by pointing out the violent activity associated with organized crime infiltration and take-over operations."); *id. at 6* ("The truly innocent victims of the activities of organized crime in this area are the thousands of legitimate businessmen, wholesalers, retailers, drivers, packers, and sales people who have lost their jobs and businesses as a result of the takeover."); H.R. Rep. No. 95-1778, at 7 (finding a "causal relationship between the flow of cigarettes into interstate commerce to be sold in violation of state laws and the rise of racketeering in the United States").

*Id.* at *112-13. If this Court were to assign weight to policy objectives, public health and criminal justice considerations deserve far more weight than the tax losses caused by FedEx's conduct. The damages and penalties sought here are best viewed as a means of enforcing compliance and achieving these policy objectives than as a significant contribution to the public treasury.

**A.     Executive Branch Discretion** – An affirmative defense premised on the theory that the City and State should have pursued a different tax policy, or pursued others to recover tax losses, embodied in FedEx's defense of "failure to enforce cigarette tax laws," is foreclosed by the long-settled principle that government officials are given broad deference in undertaking enforcement actions because of "[t]he deep-rooted nature of law-enforcement discretion[.]" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761 (2005); *see also Citizens Accord, Inc. v. Town of Rochester*, 2000 U.S. Dist. LEXIS 4844, at * 39 (N.D.N.Y. Apr. 18, 2000) ("nothing in the language of [a local law] … alters the general rule that public officers retain discretion whether to enforce violations thereof."), *aff'd*, 29 F. App'x., 767 (2d Cir. 2002). One "who asks a court to direct a local official to enforce a law will likely fail based on the discretion accorded to municipalities and/or individual officers in determining when to enforce state law." *Vives v. City of New York*, 524 F.3d 346, 354 (2d Cir. 2008); *see also Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (finding that individual plaintiffs did not hold a "'legitimate claim of entitlement' to a police investigation") (quoting *Castle Rock*, 545 U.S. at 756)).

The discretion afforded government applies broadly to efforts to compel agency action of any sort. "The Supreme Court has long recognized that an agency's decision not to prosecute or enforce is a decision generally committed to an agency's absolute discretion, *which courts are particularly ill-equipped to review.*" *Leland v. Moran*, 80 F. App'x. 133, 135 (2d Cir. 2003) (emphasis added) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no

small part to the general unsuitability for judicial review of agency decisions to refuse enforcement."); *see also Jones v. Beame*, 45 N.Y.2d 402, 407 (1978) (holding that because the expenditure of municipal resources involved "questions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena, the responsibility for which is lodged in a network of executive officials, administrative agencies and local legislative bodies," it would be "untenable that the judicial process . . . should intervene and reorder priorities, allocate the limited resources available, and in effect direct how the vast municipal enterprise should conduct its affairs."); *accord Willets Point Indus. & Realty Ass'n v. City of New York*, 2009 U.S. Dist. LEXIS 110181, at *24-25 (E.D.N.Y. Nov. 25, 2009) ("The[] words [of *Jones v. Beame*] apply with even more compelling force when a federal judge is asked to intervene and reorder priorities ... ."). Unless a constitutional violation is at issue, "[i]t is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes...." *Gaynor v. Rockefeller*, 15 N.Y.2d 120, 131 (1965).

Government officials are accordingly under no obligation, for example, to account for decisions to indict one person but not another. *Nat'l. Treas. Emp. Union v. Horner*, 854 F.2d 490, 496 (D.C. Cir. 1988); *see also SEC v. Citigroup Global Mkts.*, 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C.").

> [T]he decision whether or not to prosecute . . . generally rests entirely in [a prosecutor's] discretion. This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, *the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan* are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (citations, quotation marks and ellipses omitted) (emphasis added)[4]. Courts are still more deferential to decisions not to prosecute. *United States v. Alex. Brown & Sons*, 963 F. Supp. 235, 246-47 (S.D.N.Y. 1997).

> Judicial supervision [regarding decisions to prosecute], ..., entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.

*Wayte*, 470 U.S. at 607-08.

Should FedEx argue that the foregoing principles are inapplicable because City and State are engaged in "commercial activity" merely because the recovery of money is at issue, the argument has already been rejected. "[W]e hold that lost taxes can constitute injury to 'business or property' for purposes of RICO, and conclude that the City has adequately met this requirement notwithstanding that its injury did not arise from its participation in a commercial transaction." *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008) (emphasis added), *rev'd on other grounds by Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010); *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 314-16 (7th Cir. 1985) (rejecting the notion that a State government unit suing under RICO is limited to competitive or commercial injuries). Moreover, as shown *supra*, n.3, the City and State act in this matter under their traditional police powers, not as commercial actors, in protecting the public health.

In contending that City and State claims are "barred or limited by ... their failure to enforce cigarette tax laws," FedEx seeks rulings that would "intervene and reorder priorities," and "direct how the [City and State] should conduct [their] affairs." *See Willets Point,* 2009 U.S.

---

[4] A simple illustration from the present case illustrates this point. The City and State may well have decided that it is a better use of their resources to pursue a single defendant – FedEx – than a myriad of consumers, the difficulties of which should be obvious. *See Proshansky Decl.* Ex. 7 at 91:2-15; 95:11-23. This is not a "priority" that should be re-ordered by a court. *Willets Point,*, 2009 U.S. Dist. LEXIS 110181, at *24-25.

Dist. LEXIS 110181, at \*24-25 (quoting *Jones*, 45 N.Y.2d at 407). FedEx's Seventeenth Defense asks this Court to adjudicate whether State and local cigarette tax policy was conducted more effectively by the responsible elected officials or instead, by whatever Monday-morning quarterbacking FedEx offers. The Defense "subjects the [City and State's] motives and decision-making to outside inquiry," and "undermine[s] prosecutorial effectiveness by revealing the Government's enforcement policy." Adjudications of this nature are impermissible as a matter of black letter law. *See, e.g., Town of Castle Rock*, 545 U.S. at 761; *Jones*, 45 N.Y.2d at 407.

**B.  FedEx is No Less Liable for Taxes Than Are Consumers** – FedEx contends that the City and State were required to proceed against cigarette purchasers (or sellers) for taxes owed, instead of FedEx, a defense barred under the doctrine of executive discretion. But the defense independently fails merely from the application of ordinary procedural law governing joint tortfeasors. In *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 (E.D.N.Y 2012), the City successfully sued licensed stamping agents for selling unstamped cigarettes. As does FedEx here, the stamping agents argued that the City should have pursued cigarette consumers. *Id.* at \*61. Judge Amon rejected the argument:

> [T]he fact that the tax in these transactions could have been collected from the ultimate consumer does not eliminate liability for the prior parties in the distribution chain. *All cigarette transactions* ... are subject to the backstop "use tax" in § 471-a ...

*Id.* FedEx's liability for the "backstop 'use tax'" in § 471-a has been shown. *See Pltf.'s Mem. of Law in Opp. to Mot. to Dis. (Dkt.* 33) at 34 & n.25.[5] FedEx is no less liable for the use tax payments than is a purchaser of unstamped cigarettes. At most, a purchaser's failure to pay the

---

[5] The use tax, N.Y. Tax L. § 471-a, is imposed on any cigarettes for which taxes have not been collected at the place of sale. FedEx's cigarette distributions self-evidently constitute "use" within the meaning of the statute: "the exercise of any right or power actual or constructive and shall include but is not limited to the receipt, storage or any keeping or retention for any length of time, but shall not include possession for sale." NY Tax § 471-a. The City imposes a use tax as well. *Administrative Code of the City of New York* ("*Ad. Code*") §§ 11-1302(a) (2).

tax renders the purchaser a joint tortfeasor with FedEx. "[I]t is well-established that generally a tort plaintiff is not required to proceed against all joint tortfeasors but may proceed against one, some or all of them." *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 306 (N.D.N.Y 2003) (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir. 2000)); *see Ferriola v. DiMarzio*, 83 A.D.3d 657, 658 (2d Dep't 2011) (deeming meritless an affirmative defense of failure to join a joint tortfeasor). The latter principle dove-tails with the principles of agency discretion set forth above, and further bars a defense based on a decision not to proceed against persons who are at most jointly liable with FedEx. Indeed, nothing has prevented FedEx from joining in this action anyone whom FedEx believes is jointly liable with it for cigarette taxes. FedEx's failure to exercise its right of joinder constitutes a waiver of any defense based on the liability of others.

     **C.**    **Prior Rulings Foreclose State Tax Policy as an Affirmative Defense** – FedEx not only seeks to adjudicate past exercises of discretion by the State executive branch, but does so on a subject already described as laden with considerations appropriately left to the legislature and executive: "[T]he problem of public sales of untaxed cigarettes from Native American reservations in New York has been a subject of legislative, executive, and judicial action and debate since the late 1980s." *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *29. The State's policy addressing public sales of untaxed cigarettes by Indians – known as "forbearance" – has been described by the Second Circuit:

> New York's DTF [Department of Taxation & Finance], in 1988, instituted regulations to govern the collection of taxes from non-Native American purchasers who bought cigarettes on reservations from Native American retailers. When the Native American retailers threatened a legal challenge to the regulations, the DTF withheld implementing these regulations. Although the Supreme Court ultimately ruled that the regulations were legal, the DTF was still effectively powerless to enforce them. It was rendered

powerless because, even after long negotiations with the retailers, the DTF was unable to compel or convince the retailers to participate in its auditing scheme. And when—in the face of the non-cooperation of Native American retailers—New York began a program of highway interdiction, its actions were disastrously unsuccessful, resulting in civil unrest, personal injuries and significant interference with public transportation on the State highways. It was only after these failed interdiction efforts that Governor Pataki ordered the repeal of the DTF regulations.

In view of this history, the forbearance policy in no way signaled New York's choice not to enforce its tax laws when such enforcement would be possible. Rather, the policy represented New York's beleaguered concession to the difficulty and danger of state-level enforcement, the complex jurisdictional issues surrounding reservation-based cigarette sales, and the politically combustible nature of bootlegging prosecutions.

*United States v. Morrison*, 686 F.3d 94, 105-107 (2d Cir. 2012) (refe rring to New York's decision, "for political and practical reasons, to refrain from enforcing [the cigarette tax law]") (emphasis added); *accord N.Y. Ass'n of Convenience Stores v. Urbach*, 275 A.D.2d 520, 522-523 (3d Dep't 2000) (recounting the above history and finding forbearance to be a rational policy); *see also Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 159 (2d Cir. 2011) ("due to additional litigation, civil unrest, and failed negotiations between the State and individual nations and tribes," and "[d]espite the New York Legislature's repeated efforts to the contrary, the Department [of Taxation] adopted a 'forbearance' policy..."). Even were this Court to re-enter this political thicket, the above rulings foreclose the argument implicit in FedEx's Seventeenth and related defenses, that State enforcement policy can be "blamed" for FedEx's conduct. *See also Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *58-59 ("[T]he Second Circuit's recent pronouncements in *Morrison* foreclose many of the defendants' arguments premised on ... the DTF forbearance policy.").

FedEx's characterization of state policy as a "failure to enforce cigarette tax laws" is itself a gross mischaracterization of the facts. In reality, the State and the Attorney General were enjoined from at least 2006 until 2011 from enforcing the tax statutes on Indian reservations. *See Cayuga Indian Nation of N.Y. v Gould*, 14 N.Y.3d 614, 629 (2010) (describing an injunction that went into effect in March 2006 and stating that "at present [May 2010], there is no enforceable statutory or regulatory scheme specifically addressing the calculation or collection of taxes arising from the on-reservation retail sale of cigarettes.").[6] The injunction against Indian tax collections was not lifted until after FedEx had made most of the deliveries at issue here. *Milhem Attea*, 2012 U.S. Dist. LEXIS 116533 at *19 ("As of June 21, 2011 all temporary injunctive relief had been lifted by the state Appellate Division.").[7]

**D.** **The Comity Doctrine Bars Consideration of the Seventeenth Defense** – The comity doctrine counsels federal courts to avoid adjudicating matters pertaining to state tax policy. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421-22 (2010) ("[I]t is of the utmost importance to [the states] that the modes adopted to enforce the taxes levied should be interfered with as little as possible.") (citation and quotation marks omitted); *Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582 (1995) ("Congress and this Court repeatedly have shown an

---

[6] Significantly, "the injunction issued when a cigarette wholesaler and a tribal retailer initiated a declaratory judgment action against the State and the Attorney General (who had threatened to enforce the statute, despite the Department's forbearance policy)...." *Cayuga Indian Nation*, 14 N.Y.3d at 628 (emphasis added). The court's comment documents the then-existing conflict between the State Department of Taxation and Finance and the Attorney General over the enforcement of cigarette taxes. That disagreement provides another compelling illustration of the reason the Seventeenth Defense is an impermissible affirmative defense. Where matters "committed to an agency's absolute discretion" were the subject of disagreements between different State agencies, "the special reasons justifying the policy of federal noninterference with state tax collection," *Levin*, 560 U.S. at 422 n.2, are self-evident.

[7] Arguments that the forbearance policy affected the imposition of the cigarette tax have been uniformly rejected. *See Morrison*, 686 F.3d at 105-07 ("New York's decision ... to refrain from enforcing Section 471, [the cigarette tax law], did not grant Morrison leave to sell massive quantities of untaxed cigarettes to non-Native Americans.); *accord United States v. Kaid*, 241 F. App'x. 747, 750 (2d Cir. 2007) (deeming "meritless" the argument that "State's non-enforcement policy 'effectively 'de-taxed' sales of cigarettes to non-Native Americans on reservation land,' thereby negating the element of 'contraband' necessary to a conviction for trafficking in contraband cigarettes").

aversion to federal interference with state tax administration."). "Federal courts generally abstain from cases that challenge state taxation schemes, on the basis that those claims are more appropriately resolved in state court." *Joseph v. Hyman*, 659 F.3d 215, 218 (2d Cir. 2011). Comity restrains federal courts from hearing cases that "risk disrupting state tax administration," *Joseph*, 659 F.3d at 218-219, and "generally forbids federal courts from interfering with a state's enforcement of its tax laws." *Abuzaid v. Mattox*, 726 F.3d 311, 312 (2d Cir. 2013). *Abuzaid* is closely on point. There, the Second Circuit invoked the comity doctrine to reverse a district court's grant of relief from penalties imposed by the State on some sellers of unstamped cigarettes. "The district court was barred by the comity doctrine from granting injunctive and declaratory relief ... because such relief would interfere with the state's administration of its tax laws." *Id.* at 313. The funds at issue were not even taxes, but were penalties "designed to encourage payment of taxes," and hence "indisputably part of the state's tax system." *Id.* at 315-16.

This action likewise seeks penalties for conduct on the part of FedEx that interfered with City and State tax collection. *See* 18 U.S.C. § 2342(2) (contraband cigarettes are cigarettes "that bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found"). To thwart the imposition of penalties here through affirmative defenses that are nothing more than full bore attacks on the manner in which the City or State administered their tax laws surely "interferes with the state's administration of its tax laws," no differently than did the declaratory relief blocking the collection of penalties in *Abuzaid*, 726 F.3d at 315-16.[8]

---

[8] Significantly, federal courts apply the comity doctrine to dismiss cases in which a plaintiff argues that a tax burden should fall on someone else, as FedEx does here. The court in *Joseph*, 659 F.3d at 219-20, noted that the dismissal in *Levin* involved plaintiffs "objecting to their own tax situation, measured by the allegedly more favorable treatment accorded" other taxpayers. *Joseph* in part dismissed on similar grounds, stating that appellants "are really

Each line of authority outlined above – the executive branch discretion, avoidance of state tax matters, and prior rulings characterizing "forbearance" as a "rational" compromise, and even simple procedural law – is alone sufficient grounds to dismiss as "legally insufficient" FedEx's Seventeenth Defense (and its redundant progeny). To perform the analysis necessary to address whether FedEx's liability is affected by City or State enforcement policy involves the Court in matters of agency discretion, an area that it is "particularly ill-equipped to review." *Leland*, 80 F. App'x. at 135.

The Fifth and Sixth Affirmative Defenses both rest on assertions of failure to mitigate damages to the extent taxes were not collected from consumers. These defenses should be dismissed for the reasons applicable to the Seventeenth Defense to the extent they posit a failure to mitigate based on a theory of collection from customers or any other entity.

## II.    FEDEX'S FOURTH AFFIRMATIVE DEFENSE REPRISES THE SEVENTEENTH DEFENSE AND FAILS FOR THE SAME AND ADDITIONAL REASONS.

FedEx pleads in its Fourth Defense that:

> Plaintiffs' claims, including their request for civil penalties, are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, unclean hands, *in pari delicto*, and/or similar doctrines and equitable doctrines, in that, *inter alia*, Plaintiffs had reason to know about unlawful cigarette sales by Shinnecock, FOW, Native Made and CD2U, yet failed to take appropriate steps as to them or their customers, or to notify FedEx Ground.

*Answer* at 21. Every equitable defense offered by FedEx is redundant of the more specific assertion in the Seventeenth Defense that the City and State did not enforce tax laws or otherwise proceed against cigarette sellers or consumers. Independently, many of these equitable defenses

challenging their own relative tax liability by asserting that an exemption granted to a competitor was unconstitutional" (citing *Levin*, 130 S. Ct. at 2335).

are simply not applicable in actions for damages, and are inapplicable when the government seeks to vindicate a public interest.

**Estoppel** – Accepting *arguendo* that the City and State "had reason to know" of unlawful cigarette sales by the sellers in question, and failed to take "appropriate steps," it is well settled that estoppel may not be asserted against governments based on an alleged failure to take a discretionary action. (*Supra* at Point I). In addition, principles of estoppel "do not bar a municipality from enforcing ordinances that have been allowed to lie fallow." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 111 (2d Cir. 2010); *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994); *accord United States v. Schmitt*, 999 F. Supp. 317, 360-61 (E.D.N.Y. 1998). More broadly, "estoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility." *City of New York v. City Civil Serv. Comm'n*, 60 N.Y.2d 436, 449 (1983). "In principle it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment." *Hamptons Hosp. & Med. Ctr., Inc. v. Moore*, 52 N.Y.2d 88, 94 (1981). The New York Court of Appeals has repeatedly held that estoppel will not lie against municipalities, public agencies or governmental subdivisions. *Matter of Parkview Assocs. v. City of New York*, 71 N.Y.2d 274, 278 (1988) ("[G]enerally, estoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties."); *Public Improvements Inc. v. Bd. of Ed. of the City of New York*, 56 N.Y.2d 850, 852 (1982) ("estoppel is unavailable against a public agency"). This broad rule incorporates the principle that "as a general rule ... neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest," *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917), necessitated because

"[w]hen the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Services*, 467 U.S. 51, 60 (1984) (government may not be estopped on the same terms as other litigants); *Granada Buildings, Inc. v. City of Kingston*, 58 N.Y.2d 705, 708 (1982) ("[B]ecause a governmental subdivision cannot be held answerable for the unauthorized acts of its agents . . . we have frequently reiterated that estoppel is unavailable against a public agency").[9]

**Laches** – "Laches is an equitable defense that bars a plaintiff's *equitable* claim …." *Ikelionwu v. United States*, 150 F.3d 233, 238 (2d Cir. 1998) (emphasis added). Laches is inapplicable to legal claims, for damages. "The doctrine of laches is not … a defense to a claim for damages." *Eastman Kodak Co. v. Ricoh Co.*, 2013 U.S. Dist. LEXIS 113204, at *59 (S.D.N.Y. Aug. 9, 2013) (citing *Oneida County v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 244 n.16 (1985) (noting that the "application of the equitable defense of laches in an action at law would be novel indeed")); *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 609 (S.D.N.Y. 2004) ("The bar of laches applies to equitable, not legal, claims."); *Ogilvy Group Swed. v. Tiger Telematics, Inc.*, 2006 U.S. Dist. LEXIS 8961, at *6 (S.D.N.Y. Mar. 6, 2006) ("Laches is an equitable doctrine and cannot be invoked as a defense to a claim for damages.").

A laches defense is independently barred because "[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." In the Second Circuit, "'[t]he prevailing rule' in the context of a federal statutory claim seeking legal relief, is one in which 'laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely.'" *AP v. Meltwater U.S.*

---

[9] This principle also serves to bar FedEx's Eighteenth Affirmative Defense, alleging the negligence of City and State agents. *See infra* at 28.

*Holdings, Inc.*, 931 F. Supp. 2d 537, 566-67 (S.D.N.Y. 2013) (quoting *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (citation omitted). Laches is inapplicable when applied to statutory claims raised within the appropriate statutory limitations period. *Koninklijke Philips N.V. v. Cinram Int'l, Inc.*, 2013 U.S. Dist. LEXIS 76163, at *30-31 (S.D.N.Y. May 24, 2013). The claims by the City and State are of course legal claims, made pursuant to statute, and governed by specified statutes of limitation (which FedEx indeed has invoked), and laches accordingly should be stricken.[10]

Finally, "as a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest," *Utah Power & Light,* 243 U.S. at 409, because of "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132 (1938); *accord Matter of Cortlandt Nursing Home v. Axelrod*, 66 N.Y.2d 169, 178 (1985) ("It is settled that the equitable doctrine of laches may not be interposed as a defense against the State when acting in a governmental capacity to enforce a public right or protect a public interest.").

**Unclean Hands** – Unclean hands is an equitable defense, to an equitable claim, unavailable to a defendant in an action at law for damages. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 607 (2d Cir. 2005).[11] The defense should be stricken on that basis alone.

---

[10] Laches is not even available to bar the present claim for injunctive relief because that claim is brought pursuant to the CCTA and PHL § 1399-ll and hence subject to express statutes of limitations.

[11] *Accord Lai Yoong Low v. Tian Yu Inc.*, 2015 U.S. Dist. LEXIS 30250, at *23 (S.D.N.Y. Mar. 11, 2015) (unclean hands defense unavailable against legal claims); *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010) ("[I]t is black-letter law that unclean hands is an equitable defense. As such, it can only be asserted with respect to equitable - not legal - claims.") (brackets, quotation marks and citations omitted); *see also Manshion Joho Ctr. Co., Ltd. v. Manshion Joho Ctr., Inc.*, 24 A.D.3d 189, 190 (1st Dep't 2005) ("the doctrine of unclean hands is an equitable defense that is unavailable in an action exclusively for damages").

Moreover, "[w]hen, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law." *United States v. Philip Morris, Inc.*, 300 F. Supp. 2d 61 (D.D.C. 2004); *SEC v. Gulf & Western Ind., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980) ("the doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest."); *SEC v. Sprecher*, 1993 U.S. Dist. LEXIS 18116 (D.D.C. 1993) ("an unclean hands defense does not lie in a civil enforcement action brought by a federal agency, as distinguished from a private plaintiff") (citing *Pan American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 506 (1927) (The general principles of equity "will not be applied to frustrate the purpose of ... laws or to thwart public policy."); *United States v. American Electric Power Service Corp.*, 218 F. Supp. 2d 931, 938 (S.D. Ohio 2002) (rejecting unclean hands defense, which "may not be used against the United States to prevent it from enforcing its laws to protect the public interest."); *United States v. Vineland Chemical Co.*, 692 F. Supp. 415, 423 (D.N.J. 1988) ("unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare.").

This principle applies to proceedings by State and local government under the CCTA because

> [The CCTA] prohibits actions taken with respect to contraband cigarettes at all stages of the distribution chain–shipping, transporting, receiving, possessing, selling, distributing and purchasing–and authorizes states and municipalities to bring actions to "prevent and restrain violations . . . by any person" and obtain "any other appropriate relief." 18 U.S.C. § 2346(b). The absence of any limiting language in this expansive grant of standing suggests that Congress intended to recognize a broad class of public injuries caused by the contraband cigarette market, and effectively to delegate enforcement authority to state and local governments....

*Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *41. In 2006, Congress took the highly unusual step of extending to state and local governments the authority to proceed civilly under the CCTA, a criminal statute, 18 U.S.C. § 2341 *et seq*., providing "an expansive grant of standing" that "effectively delegate[d] enforcement authority to state and local governments." *Id.* The Second Circuit has characterized that grant of authority as follows:

> Congress designed the CCTA to provide federal support to the states in enforcing their tax laws. *See S. Rep. No. 95-962*, at 9 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5518, 5524. The design of the CCTA as a federal statutory "back-up" for state-level enforcement regimes stemmed from Congressional concerns regarding (a) federal-state relations and (b) limitations in federal resources. In order to maintain a proper federal-state balance, <u>encourage the states to take the lead in prosecuting cigarette trafficking</u>, and reduce the financial burden likely to be borne by the federal government, the CCTA empowered the federal government to deal only with major trafficking infractions.

*Morrison*, 686 F.3d at 106 (citations omitted). Congress's intent to "encourage the states to take the lead in prosecuting cigarette trafficking," *id.*, and delegate enforcement authority to state and local governments," *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *41, provides more than sufficient grounds to conclude that the inapplicability of certain affirmative defenses afforded federal enforcement agencies extends to state and local agencies engaged in enforcing the CCTA. To hold otherwise would thwart Congress's delegation of federal enforcement powers to state and local agencies.[12]

---

[12] Consistent with the foregoing, the presumption of irreparable harm applicable when injunctive relief is sought by a federal agency pursuant to statute has been extended to the City when it brings CCTA actions. *See City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120-21 (2d Cir. 2010) (holding that the City was not required to show irreparable harm to obtain an injunction under the CCTA because the statute authorizes injunctive relief for particular violations, indicating Congress's determination that conduct in violation of the statute is harmful to the public. The principle was found "particularly applicable … where the City seeks to enjoin activity that constitutes a federal crime." *Golden Feather*, 2009 U.S. Dist. Lexis 76306, at *112, *aff'd*, 597 F.3d 115 (2d Cir. 2010). *Compare See SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) ("Unlike private actions, which are rooted wholly in the equity jurisdiction of the federal court, SEC suits for injunctions are creatures of statute. Proof of irreparable injury or the inadequacy of other remedies as in the usual suit for injunction is not required.") (internal quotation marks omitted); *United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30, 49-50 (E.D.N.Y. 2001) ("Where the government is enforcing a statute designed to protect the public interest, it is not

**In Pari Delicto –** *In pari delicto* "literally means 'in equal fault'" and is based on "the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). In *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), the Supreme Court held that application of *in pari delicto* turns on the plaintiff's relative degree of fault and the potential for frustrating the law-enforcement goals of the provisions under which the plaintiff brings suit. Even in a private action for damages, the doctrine is limited to a situation in which (1) as a direct result of its own actions, the plaintiff bears at least substantially equal responsibility for the violations it seeks to redress, and (2) preclusion of suit would not significantly interfere with law enforcement and protection of the public. *Id.* at 310-11. "The second prong . . . embodies the doctrine's traditional requirement that public policy implications be carefully considered before the defense is allowed," thus "ensur[ing] that . . . judge-made law does not undermine . . . congressional policy." *Pinter*, 486 U.S. at 633. The plaintiff must "be an active, voluntary participant in the unlawful activity that is the subject of the suit," and "the degrees of fault must [be] essentially indistinguishable or the plaintiff's responsibility [be] clearly greater." *Id.* at 636. (*in pari delicto* is "limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arose out of the same illegal act"); *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 161 (2d Cir. 2014).

As to "same wrongdoing," there is no conceivable factual basis by which harm could have arisen from the City or State's delivery of untaxed cigarettes to consumers, which is "the unlawful activity that is the subject of the suit." *Bateman Eichler,* 472 U.S. at 636 (emphasis added); *compare Brand Aid Mktg. Corp. v. Biss*, 462 F.3d 216, 218 (2d Cir. 2006) (rejecting *in*

---

required to show irreparable harm to obtain injunctive relief. The statute's enactment constitutes Congress' implied finding that violations will harm the public and ought, if necessary, be restrained." (internal quotation marks and citations omitted).

*pari delicto* defense because "Whatever misrepresentations [plaintiff] may have made about its condition, there is no suggestion that this in any way caused [defendant] to use fraud and other unlawful conduct to attempt its purchase and hostile takeover. But it is this fraud and other chicanery on which [plaintiff's] claims are premised."). Likewise, nothing the City or State did caused FedEx to deliver cigarettes.

As to "effect on law enforcement," application of *in pari delicto* here certainly would interfere significantly with the effective enforcement of the laws and protection of the public. *Bateman Eichler*, 472 U.S. at 310-11. Again, the "expansive grant of standing" for civil enforcement by which Congress recognized a broad class of public injuries caused by contraband cigarettes, and delegated enforcement authority to state and local governments, *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *41, will be impaired by an *in pari delicto* defense.

**Waiver** – Waiver is foreclosed not only for the reasons provided above, but also because as the "intentional relinquishment of a known right," *United States v. Parse*, 2015 U.S. App. LEXIS 9492, at *73 (2d Cir. 2015) (citing *Fay v. Noia*, 372 U.S. 391, 439 (1963)), waiver is inapplicable as a matter of law in the face of the Second Circuit ruling that

> the forbearance policy in no way signaled New York's choice not to enforce its tax laws when such enforcement would be possible. Rather, the policy represented New York's beleaguered concession to the difficulty and danger of state-level enforcement, the complex jurisdictional issues surrounding reservation-based cigarette sales, and the politically combustible nature of bootlegging prosecutions.

*Morrison*, 686 F.3d at 107. Waiver also cannot be invoked where the State's tax enforcement efforts were severely constrained by injunctions. Nor can waiver be invoked where the City and State had no obligations to proceed against other parties, *see supra* at 8, especially when FedEx has the option to do so itself. *Id.*

## III. FEDEX'S EIGHTH AFFIRMATIVE DEFENSE HAS ALREADY BEEN REJECTED BY THIS COURT AND FOUR OTHER COURTS

FedEx's Eighth Affirmative Defense asserts that

> Plaintiffs' CCTA-based claims are barred, in whole or in part, to the extent they are not based on separate violations, each of which comprised more than 10,000 unstamped cigarettes.

*Answer* at 22. FedEx again argues for a statutory construction previously rejected by this Court and four other district courts, to the effect that a CCTA violation requires allegations of a discrete transaction of 50 cartons. *See City of New York v. FedEx Ground Package System, Inc.*, 2015 U.S. Dist. LEXIS 28529, at *14-18 (S.D.N.Y. Mar. 9, 2015).[13] "When an issue has already been decided by a court, it is not properly raised again as an affirmative defense." *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2014 U.S. Dist. LEXIS 112437, *12 (S.D.N.Y. Aug. 12, 2014).[14]

## IV. FEDEX'S TENTH AFFIRMATIVE DEFENSE SHOULD BE DISMISSED AS A MATTER OF LAW: THE PLAIN LANGUAGE OF EXECUTIVE LAW § 63 PERMITS ENFORCEMENT AGAINST ANY PERSON ENGAGING IN "REPEATED FRAUDULENT OR ILLEGAL ACTS"

FedEx's Tenth Affirmative Defense is that:

> The AOC is unenforceable under Executive Law § 63, as the Attorney General lacked the authority to institute a civil action under NYPHL 1399-*ll* at the time the AOC was executed.

*Answer* at 22.

---

[13] *Accord City of New York v. LaserShip, Inc.*, 2014 U.S. Dist. LEXIS 99617, at *18-19 (S.D.N.Y. July 9, 2014); *City of New York v. Gordon*, 1 F. Supp. 2d 94, 103-04 (S.D.N.Y. 2013); *New York v. BB's Corner, Inc.*, 2012 U.S. Dist. LEXIS 88542, at *14-15 (S.D.N.Y. June 25, 2012); *Golden Feather*, 2009 U.S. Dist. LEXIS 76306, at *103.

[14] To the extent prejudice is necessary to strike an already-ruled upon affirmative defense, *see Calabrese v. CSC Holdings, Inc.*, 2006 U.S. Dist. LEXIS 99681, at *9-10 (E.D.N.Y. Mar. 6, 2006), the City and State are prejudiced by additional trial and discovery expenses incurred in rebutting the defense, for example by the need to demonstrate and calculate that FedEx deliveries and pick-ups consisted of 50 cartons.

FedEx's affirmative defenses related to the AOC (Tenth, Eleventh, Twelfth, Thirteenth, and Fifteenth) all attempt to challenge the State's authority to prosecute FedEx's violations of state law. There is no question of law that would allow those defenses to succeed.

In its Tenth Affirmative Defense, FedEx alleges, without any legal basis, that the Attorney General lacked the authority to enforce violations of PHL § 1399-*ll* under Executive Law § 63 at the time the AOC was executed.[15] In fact, the Attorney General's authority under Executive Law § 63 could not be stated more plainly: the statute permits the Attorney General to initiate an action against any person engaging in "repeated fraudulent or illegal acts" or otherwise "demonstrat[ing] persistent fraud or illegality in the carrying on, conducting or transaction of business[.]" N.Y. Exec. Law § 63(12). It is well-established that violation of any state law constitutes "illegality" within the meaning of § 63(12), and the Attorney General has accordingly enforced a variety of state laws pursuant to its authority under the statute. *See, e.g,. State v. Princess Prestige,* 42 N.Y.2d 104, 106 (1977)(violations of the Home Solicitation Act, P.P.L. Art. 10-A); *Ford Motor Co.,* 136 A.D.2d at 154 (violation of New York Lemon Law); *People v. Concert Connection Ltd.,* 211 A.D.2d 310 (2d Dept. 1995) (violation of Arts and Cultural Affairs Law § 25.07); *People v. Apple and Health Sports Clubs, Ltd.,* 206 A.D.2d 266, 267 (1st Dept. 1994) (violations of health club law); *People v. Chazy Hardware,* 176 Misc.2d 960 (Sup. Ct. Clinton Co. 1998); *People v. Helena VIP Personal Introductions Services,* N.Y.L.J., 1/17/92, p.26, col. 3 (Sup. Ct. N.Y. Co.), *aff'd,* 199 A.D.2d 186 (1st Dept. 1993) (violations of GEN. BUS. L. §394-c); *People v. American Motor Club,* 179 A.D.2d 277 (1st Dept. 1992), *appeal dismissed,* 80 N.Y.2d 893 (violations of Insurance Law); *Allstate Insurance*

---

[15] This Court's ruling on the Attorney General's authority under PHL 1399-*ll* to bring claims under that statute for violations arising prior to the statute's 2013 amendment, *FedEx,* 2015 U.S. Dist. LEXIS 28529 at *34, addresses a different issue than the State's ability to enforce state law under § 63(12).

*Co. v. Foschio*, 93 A.D.2d 328 (2d Dept. 1983) (violation of Motor Vehicle Repair Shop Register Act); *State v. Midland Equities*, 117 Misc. 2d 203 (Sup. Ct. N.Y. Co. 1982) (violation of the Judiciary Law). FedEx's attempt to question the State's authority to investigate and prosecute its violations of state law therefore fails.

### V. FEDEX'S ELEVENTH AFFIRMATIVE DEFENSE SHOULD BE DISMISSED AS A MATTER OF LAW: EXECUTIVE LAW § 63 EMPOWERS THE ATTORNEY GENERAL TO SEEK PENALTIES

FedEx's Eleventh Affirmative Defense states:

> The penalty provision of the AOC is unenforceable, as it is beyond the permissible scope of relief in an Assurance under Executive Law § 63 and/or New York contract law.

*Answer* at 22, incorrectly contending that the Attorney General is not authorized to collect penalties related to violations of state law. Again, FedEx is wrong as a matter of law.

Executive Law § 63 clearly empowers the Attorney General to seek penalties where an underlying statute provides for penalties, as does PHL § 1399-*ll*. *See People v. Nationwide Asset Servs.*, Inc., 26 Misc. 3d 258 (N.Y. Sup. Ct. 2009) (Attorney General can recover a civil penalty under § 63(12) as a deterrent against future misconduct pursuant to GEN. BUS. L. § 350-d); *see also State v. Applied Card Sys., Inc.*, 11 N.Y.3d 105 (2008) (allowing Attorney General to recover $7.9 million in penalties in a § 63(12) action under Gen. Bus. L. §§ 349, 350); *People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) (awarding of civil penalties in § 63(12) action under Gen. Bus. L. § 352); *Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d at 807 (Attorney General can recover penalties for violations of Health Club Law in a § 63(12) proceeding); *State v. Two Wheel Corp.*, 71 N.Y.2d 693, 696 (1988) (affirming summary imposition of maximum civil penalty in a special proceeding brought pursuant to § 63(12) and GEN. BUS. L. § 396-r); *State v. Veleanu*, 89 A.D.3d 950, 950 (2d Dep't 2011) (affirming award of civil penalties in § 63(12) proceeding involving violation of Gen. Bus. L. § 349); *Wilco*

*Energy Corp.,* 284 A.D.2d at 469 (in § 63(12) proceeding, remanding to trial court to determine penalties under Gen. Bus. L.§ 350-d).[16]

Likewise, the Attorney General possesses broad authority to enter into an Assurance that includes penalty provisions in lieu of instituting an action. *See, e.g., Geiger v. Town of Greece,* 2007 U.S. Dist. LEXIS 87464, *4 (W.D.N.Y. Nov. 2, 2007) (noting that plaintiff paid $4,000 in penalties pursuant to Assurance with the OAG); *MBIA Inc. v. Fed. Ins. Co.,* 652 F.3d 152, 157 (2d Cir. 2011) (referencing an Assurance of Discontinuance with the Attorney General providing for a $15 million civil penalty); *Poughkeepsie Chevrolet, Inc. v. Jeff Weaver's 96 Hour Super Sale, Inc.,* 8 A.D.3d 575, 575 (2d Dep't 2004) (noting that "appellant entered into separate Assurances of Discontinuance with the Attorney–General, agreeing, inter alia, to pay costs and penalties without any admission of wrongdoing"); *New York v. Condor Pontiac, Cadillac, Buick & GMC Trucks,* 2003 N.Y. Misc. LEXIS 881, *19 (N.Y. Sup. Ct. July 3, 2003) (noting that defendant paid a penalty pursuant to an Assurance agreement with Attorney General).

Clearly, the penalty provision that FedEx agreed to in the AOC is enforceable.

## VI.  FEDEX'S TWELFTH AFFIRMATIVE DEFENSE SHOULD BE DISMISSED FOR FAILURE TO PLEAD WITH PARTICULARITY

FedEx's Twelfth Affirmative Defense contends:

> The AOC is unenforceable due to contract formation defects and/or misrepresentations by the State.

*Answer* at 22.

---

[16] *Accord State v. Beach Boys Equip. Co.,* 273 A.D.2d 850, 852 (4th Dep't 2000) (affirming civil penalty in a special proceeding brought pursuant to Executive Law § 63(12) and Gen. Bus. L. § 396-r); *People v. Empyre Inground Pools, Inc.,* 227 A.D.2d 731 (3d Dept. 1996) (affirming, in 63(12) proceeding, summary imposition of fines provided for in Gen. Bus. L. §§ 350-d); *Allied Mktg. Group, Inc.,* 220 A.D.2d 370 (1st Dept. 1995) (in § 63(12) proceeding Attorney General can collect penalties provided for in three separate Gen. Bus. L. sections); *People v. Gagnon Bus Co., Inc.,* 2011 N.Y. Misc. LEXIS 442, at *10 (Sup. Ct. Queens Co. Jan. 18, 2011) (in § 63(12) proceeding Attorney General can collect penalties provided for in Gen. Bus. L. § 350-d); *People v. Levy,* 2011 N.Y. Misc. LEXIS 2519 (Sup. Ct. N.Y. Co. May 25, 2011) (penalties awarded pursuant to Gen. Bus. L. § 350-d for deceptive practices in proceeding under the Martin Act and Executive Law § 63(12)).

FedEx's failure to provide any detail at all regarding the alleged contract formation defects "and/or" misrepresentations renders this defense completely defective. At the outset, it is clearly insufficient under Fed. R. Civ. P 8(c), as it fails to provide plaintiffs with any notice at all of what such "defects" or "misrepresentations" are. *See, e.g. Erickson*, 2014 U.S. Dist. LEXIS 112437 at *16 (striking defendants' affirmative defense for vagueness and for failing to provide plaintiff a fair notice of the nature of the defense); *Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 408–09 (D. Del. 2009) (striking an equitable estoppel defense for lacking enough detail for plaintiff to avoid surprise and undue prejudice).

Moreover, a claim of misrepresentation, as with "fraud or mistake," must be pled with particularity. Fed. R. Civ. P. 9(b). "[W]hile other affirmative defenses must satisfy only the notice requirements of Rule 8(c), '[d]efendants must plead their affirmative defenses alleging fraud with the particularity required by Fed. R. Civ. P. 9(b)." *Erickson*, 2014 U.S. Dist. LEXIS 112437, at *12 (quoting *Yurman Design Inc. v. Chaindom Enters., Inc.*, 2000 U.S. Dist. LEXIS 9243, at *8-9 (S.D.N.Y. July 5, 2000)).[17]

## VII. FEDEX'S THIRTEENTH DEFENSE SHOULD BE DISMISSED AS THE AOC REQUIRES NO PERFORMANCE BY THE STATE

FedEx's Thirteenth Affirmative Defense argues:

> The State's claim under the AOC is barred or limited by its own breach or nonperformance of, or bad faith with respect to, the Assurance of Compliance, including but not limited to, any covenants implied therein.

*Answer* at 23.

FedEx's Thirteenth Defense reprises its argument that the State's tax collection or enforcement policies absolve FedEx of liability under state and federal law. To the extent that FedEx's vague reference to the State's "bad faith" under the AOC relates to its oft-repeated

---

[17] FedEx is currently amending the Twelfth Affirmative Defense to address these deficiencies. Plaintiffs accordingly reserve the right to respond to the amended defense in their reply brief.

argument about State enforcement practices, this Defense fails for the reasons articulated in Sections I and II.

Any argument regarding the State's "nonperformance" is clearly inapplicable to the AOC because the Assurance does not require any conduct on behalf of the State – certainly FedEx has not identified any. It is axiomatic that, where, as here, a party has no duty to perform under an agreement, there can be no "breach," or "nonperformance" on its behalf. *See Shehab v. Chas. H. Sells, Inc.*, 2006 U.S. Dist. LEXIS 18404, at *17 (Mar. 29, 2006) ("Where there is no duty to perform, there can be no breach of contract." (citation omitted)).

The sole provision of the AOC that mentions State conduct does so only conditionally. Specifically, Paragraph 15 of the AOC states,

> "...*If* the Attorney General or any other governmental authority provides FedEx with evidence that any person is or may be using FedEx's Delivery Services to ship Cigarettes to Individual Consumers, *FedEx* shall immediately send such shipper a written communication stating that FedEx does not deliver Cigarettes to Individual Consumers..." (*See* AOC ¶15). [emphasis added]

As the provision makes clear, there is no affirmative obligation on the Attorney General's Office to notify FedEx about illegal shippers. Rather, the Assurance merely sets up a contingent duty on FedEx to terminate its relationship with cigarette shippers if and when it is notified of such shippers by the Attorney General. The AOC contains no language that provides for any obligation by the State to notify FedEx about anything, much less disclose any information about illegal shippers. T here is accordingly no duty to provide such notice and no set of facts regarding the extent of the Attorney General's disclosure on this topic that could absolve FedEx of its obligations under the AOC. *See Alliance Indus. v. Longyear Holdings, Inc.*, 854 F. Supp. 2d 321, 328 (W.D.N.Y. 2012) (holding that, where a party is under no contractual duty to disclose certain information, it is inconsequential whether it disclosed it adequately).

The AOC not only fails to provide for any affirmative obligations on behalf of the Attorney General, but the Assurance also forecloses the creation by FedEx of any implicit obligations. Paragraph 27 stipulates that the AOC "constitutes the entire agreement between the Attorney General and FedEx," and that no additional terms beyond what is expressly contained in the AOC may be read into the agreement (*See* AOC ¶ 27). When contracts contain integration clauses, as here, extrinsic evidence may not be admitted to prove different or additional terms in the contract. *Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 509-10 (2d Cir. 1989) (citing *4 S. Williston, A Treatise on the Law of Contracts* §§ 631 (3d ed. 1957 & Supp. 1988)); *Restatement (Second) of Contracts* § 212 (1981)); *see also Bekhor v. Josephthal Group, Inc.*, 2000 U.S. Dist. LEXIS 14924, *14 (S.D.N.Y. Oct. 13, 2000) (finding that "evidence that the parties orally agreed to a term or condition not contained in the written contract contradicts the Settlement Agreement's integration clause").

FedEx may not, therefore, undertake burdensome discovery in the hopes of turning up some piece of evidence that will contravene this clear statement in the AOC. It is a fundamental principle of contract interpretation that, absent ambiguity, the intent of the parties must be determined from their final writing, and no extrinsic evidence is admissible. *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir. 1989) (finding that the unambiguous language of the contract established at-will employment and excluding consideration of parol evidence to imply otherwise); *see also Enercomp, Inc. v. McCorhill Publishing, Inc.*, 873 F.2d 536, 549 (2d Cir. 1989).

No performance was explicitly required by the Attorney General under the contract, and no such performance can be read into it. Accordingly, the Attorney General could not have

breached the AOC. No set of facts could absolve FedEx of liability under this Defense, and the

Thirteenth Defense must be dismissed.

### VIII. FEDEX'S FIFTEENTH DEFENSE IS REDUNDANT OF AND SHOULD BE DISMISSED FOR THE SAME REASONS AS THE FOURTH AND SEVENTEENTH DEFENSES

FedEx's Fifteenth Affirmative Defense asserts:

> The State's own inactivity under the AOC, and with respect to cigarette tax laws more generally, bars, estops, or otherwise precludes it from complaining of, or seeking relief based on, FedEx Ground's alleged performance and/or nonperformance under the AOC, including, but not limited to, under principles of laches, waiver, estoppel, and similar doctrines.

*Answer* at 23.

FedEx's redundant assertion of the issue of cigarette tax collection, which has no bearing on FedEx's liability for unlawful shipments, should be dismissed for the reasons provided in Sections I and II above. Here, the attempt to condition FedEx's liability on cigarette tax collection by the State is especially preposterous because the law at issue in the AOC, PHL § 1399-*ll*, has nothing whatsoever to do with cigarette taxes. Under the Public Health Law, shippers are liable for shipping cigarettes to unauthorized persons, including private residences, regardless of whether the cigarettes are taxed or not. *See* Pub. Health Law § 1399-*ll*.

Any claim of estoppel for other "inactivity under the AOC" fails for the same reasons described above, particularly as no "activity" was required on behalf of the State under the Assurance.

### IX. FEDEX'S EIGHTEENTH DEFENSE IS REDUNDANT OF AND SHOULD BE DISMISSED FOR THE SAME REASONS AS THE FOURTH AND SEVENTEENTH DEFENSES

FedEx's Eighteenth Defense asserts:

> Plaintiffs' claims are barred or limited by their own conduct, including but not limited to their failure to enforce cigarette tax

laws, negligence, or the negligence of their agents, employees, or representatives, or third-parties over which Defendants had no control.

*Answer* at 24. FedEx's Eighteenth Defense is a redundant blending of its Seventeenth Defense and its Fourth Defense (estoppel) and should be dismissed for the reasons provided in connection with those defenses. (*Supra* at Points I and II) "As a general rule ... neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest." *FTC v. Crescent Publ'g Group, Inc.*, 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) (quoting *Nevada v. United States*, 463 U.S. 110, 141 (1983)).

### X. FEDEX'S TWENTY-THIRD AFFIRMATIVE DEFENSE FAILS BECAUSE THE CITY AND STATE'S CLAIMS ARE NOT PREEMPTED BY FEDERAL INDIAN LAW AND EVEN IF THEY WERE FEDEX MAY NOT AVAIL ITSELF OF THOSE PRINCIPLES.

FedEx's Twenty-Third Affirmative Defense asserts that:

> Plaintiffs' claims are preempted or barred, in whole or in part, by principles of federal law pertaining to Indians or Indian tribes to the extent Plaintiffs seek to hold FedEx Ground liable for aspects of Indian activities and FedEx Ground may legally avail itself of the rights or powers of Indians or Indian tribes.

*Answer* at 24. Each premise of this defense fails as a matter of law.[18] *First*, principles of federal law pertaining to Indians expressly permit States to require Indians to participate in state cigarette tax regimes. Under principles of federal Indian law, the City and State could bring all of the claims made here directly against "Indians."[19] *Wash. v. Confederated Tribes of Colville*

---

[18] It is unclear which allegations of the Amended Complaint seek to "hold FedEx Ground liable for aspects of Indian activities." Answer at 24. The Amended Complaint alleges only that FedEx distributed and transported unstamped cigarettes to consumers and does not seek relief for any conduct by Indians. Although FedEx contracted with Indians to make cigarette deliveries, FedEx is not protected as an "Indian trader." *Dep't of Taxation v. Milhelm Attea & Bros.*, 512 U.S. 61 (1994) (finding that Indian Trader Statutes did not pre-empt regulations controlling tax-exempt cigarette sales to non-Indians on reservations because the state's interest in ensuring compliance with lawful taxes outweighed the tribes' interest in tax-exempt sales).

[19] Members of certain federally-recognized tribes are immune from civil actions under the CCTA, 18 U.S.C. § 2346 (b) (1), but retain civil liability under RICO, 18 U.S.C. § 1962, for RICO offenses in which the CCTA is the predicate violation. *See, e.g. Gordon*, 1 F. Supp. 3d at 103.

*Indian Reservation*, 447 U.S. 134 (1980) (states may tax on reservation sales to non-Indians); *United States v. Morrison*, 686 F.3d 94 (2d Cir. 2012) (same); *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154 (2d Cir. 2011) (same); *Cayuga Indian Nation v. Gould*, 14 N.Y.3d 614 (2010) (tax imposed on Indian sales). Even if FedEx were an Indian, the City and State could proceed against it under the CCTA, RICO and PHL §1399-ll for dealing in untaxed cigarettes. *See City of New York v. Gordon*, 1 F. Supp. 3d 94, 113 (S.D.N.Y. 2013) (upholding RICO claim against an Indian immune from CCTA claims); *Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 76306 (E.D.N.Y. Aug. 25, 2009) (upholding CCTA and state tax law claims against Indians). Because the claims in the Amended Complaint may be brought directly against Indians, *a fortiori*, they may be brought against FedEx. *Second*, FedEx will be unable to present any principle of law by which FedEx could "legally avail itself of the rights or powers of Indians or Indian tribes." *See* Answer at 24.

A. **Indians Are Subject to State and Local Cigarette Tax Laws** – FedEx does not specify which "principles of federal law pertaining to Indians" are supposedly preemptive, but it has been settled beyond question that Indian sales of cigarettes to the public are taxable by the states, that Indians must comply with state tax laws applicable to such sales, and that actions lie against Indians for state cigarette tax law violations. *See, e.g.*, *Milhelm Attea*, 512 U.S. at 73 ("States have a valid interest in ensuring compliance with lawful taxes that might easily be evaded through purchases of tax-exempt cigarettes on reservations"); *Confederated Tribes of Colville*, 447 U.S. at 141-42 (upholding a state pre-collection scheme that required Indian retailers to either purchase taxed cigarettes).[20]

_____

[20] *Accord Morrison*, 686 F.3d at 104 ("[T]he plain language of [N.Y. Tax L.] Section 471 gave the State of New York the power to prosecute cigarette vendors for the on–reservation sale of unstamped cigarettes to non-tribal members."); *Oneida Nation*, 645 F.3d at 169 (The New York "tax law's precollection mechanism constitutes a

- 30 -

Indians are subject to suit under the CCTA, RICO and PHL §1399-*ll*. *Grey Poplars, Inc. v. One Million Three Hundred Seventy One Thousand One Hundred (1,371,100) Assorted Brands of Cigarettes*, 282 F.3d 1175, 1177 (9th Cir. 2002) (the CCTA is a federal statute of general applicability and it applies equally to Indains, even on the reservation); *see City of New York v. Gordon*, 1 F. Supp. 3d 94, 103 (S.D.N.Y. 2013) (upholding RICO claim against Indian distributing untaxed cigarettes, despite assertions of Indian sovereignty); *City of New York v. Golden Feather Smoke Shop*, 2009 U.S. Dist. LEXIS 20953, at *7 (E.D.N.Y. Mar. 16, 2009) (upholding CCTA and state tax law claims against Indians claiming sovereign immunity); *Cayuga Indian Nation*, 14 N.Y.3d at 653 ("there is no exemption allowing Indians to engage in the wholesale distribution of untaxed cigarettes destined for off-reservation sales."); *United States v. 1,920,000 Cigarettes*, 2003 U.S. Dist. LEXIS 12603 (W.D.N.Y. Mar. 31, 2003) (holding PHL § 1399-ll applicable to Indians).

**B.  FedEx Is Not an Indian in Indian Country** – The CCTA contains an exemption from civil suits against "an Indian in Indian country," *see* 18 U.S.C. § 2346 (b) (1), but no legal principle permits FedEx to partake of that provision. Self-evidently, FedEx is not an Indian, an Indian tribe, or an Indian corporation, and neither is it "in Indian country." *See* 18 U.S.C. § 1151. The CCTA's "Indian" exemption is precisely limited. *See Gordon*, 1 F. Supp. 3d at 103. In *Gordon*, a defendant Indian (who was himself exempt from civil actions under 18 U.S.C. § 2346 (b) (1)) argued that his wife was also exempt, as the "agent of an Indian." The court rejected the dcfense, narrowly construing the plain language of the CCTA:

> The CCTA permits the City to "bring an action in the United States district courts to prevent and restrain violations of [the Act] by any person" except "an Indian tribe or an Indian in Indian country." 18

minimal tax collection burden that is reasonably necessary to prevent wholesale evasion of New York's own valid taxes[.]") (internal quotation marks omitted).

> U.S.C. § 2346(b) (emphasis added). As Marcia Gordon is not herself an Indian in Indian country, she may — under the plain text of the Act — be sued for its violation.

1 F. Supp. 3d at 103. Where the wife of an Indian cannot avail herself of the rights or powers of an Indian, neither can FedEx.

FedEx's inability to avail itself of Indian status rests not merely on the language of the CCTA, but on the broader principle that a status such as ethnicity or race generally does not transfer from individuals to corporations. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977) ("As a corporation, MHDC has no racial identity and cannot be the direct target of the petitioners' alleged discrimination."); *Baraga Prods. v. Comm'r of Revenue*, 971 F. Supp. 294, 296 (W.D. Mich. 1997) (corporation whose sole shareholder was a tribe-member is not a tribe member for purposes of exemption from state taxes), *aff'd*, 1998 U.S. App. LEXIS 17498 (6th Cir. July 23, 1998); *see also Behn, Meyer & Co. v. Miller,* 266 U.S. 457, 472 (1925) (corporation does not acquire the nationality of its stockholders for purposes of the Trading With the Enemy Act); *People's Pleasure Park Co. v. Rohleder*, 61 S.E. 794, 795-96 (Va. 1908) (corporation with African-American owners is not African-American for purposes of a restrictive covenant). The Court can take judicial notice that FedEx is not formed under the laws of an Indian tribe and is not a tribal corporation, and therefore may not avail itself of tribal benefits or immunities, especially where the rights and powers of an Indian tribe do not even transfer to tribe members.

> [E]ven if the Tribe was entitled to the protection of sovereign immunity in this case – which it is not – that protection would not cover the tribal members involved in the operation of the smoke shop. The general rule is that tribal sovereign immunity does not protect individual members of an Indian tribe.

*Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 30 (1st Cir. 2006). [21]

## XI.   THE CITY AND STATE ARE SIGNIFICANTLY PREJUDICED BY THE DISCOVERY AND TRIAL BURDENS IMPOSED BY FEDEX'S DEFENSES

As shown above, FedEx's affirmative defenses addressed here fail as a matter of law. The City and State will therefore be substantially prejudiced if these defenses are permitted to stand. "[I]nclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010). Thus, when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *Id.* (internal citation and quotation marks omitted); *see also Wausau Bus. Ins. Co. v. Horizon Admin. Servs, LLC.*, 803 F. Supp. 2d 209, 214 (E.D.N.Y. 2011) ("Undoubtedly, the burden and cost of undertaking discovery on the issue of Wausau's claims handling constitutes sufficient prejudice to warrant striking the affirmative defense. . . .").

The "delay and unnecessary expense from litigating [FedEx's] invalid claim[s]," and the resulting prejudice to the City and State, are acute. FedEx has inundated the City and State with dozens of discovery demands related to meritless defenses. A few examples:

- FedEx served the State with a Rule 30(b)(6) deposition notice containing 17 topic paragraphs with a total of 52 topics and subparts, and the City with a similar notice containing 15 topic paragraphs with a total of 46 topics and subparts. The topics and subparts in paragraphs 1-3, 6, 8, 10-13, and 17 of the State's notice, and paragraphs 1-3, 6, 8-11, and 15 of the City's notice – the vast majority of the topics – address State or City investigative methods, consumer collection, and/or the adequacy of the State and

---

[21] *Accord Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171-72 (1977) ("regardless of tribal sovereign immunity, individual defendant-members of the Puyallup Tribe remain amenable to the process of the Washington courts ..."); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 20953, 22-23 (E.D.N.Y. Mar. 16, 2009) (sovereign immunity no defense where "the City has sued the individual defendants as individuals in their capacity as business owners"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) ("It is well-settled that tribal sovereign immunity does not extend to individual members of a tribe.").

City's tobacco tax enforcement efforts. (*Supplemental Declaration of Eric Proshansky* ¶¶ 5-6, Exs. 1-2 (*Amended Rule 30(b)(6) deposition notices to State and City*)).[22]

- FedEx served the City with 34 document demands that principally concern the adequacy of the City's tobacco tax enforcement efforts. (*Proshansky Decl.* ¶ 5, Ex. 3 (*FedEx's Third Set of Document Requests to City:* Requests 1-8, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31)).

- FedEx served document demands on the City seeking, *inter alia*, "[a]ll reports or internal memoranda reflecting and/or summarizing the City's enforcement efforts with respect to unstamped cigarettes" and "all documents concerning communications to or from the New York City Sheriff's Office and/or the New York City Department of Finance concerning Cigarette Law or Cigarette Tax Law enforcement." (*Proshansky Decl.* ¶ 6, Ex. 4 (*FedEx's Second Set of Document Requests to City* at Requests Nos. 6, 8).

- FedEx has demanded that the City produce documents, <u>including those not related to FedEx or to any of the cigarette shippers at issue in this action</u>[23], from at least seven different City agencies, including but not limited to the Law Department, the Office of the Mayor, the Department of Finance, the Department of Health and Mental Hygiene, the Department of Consumer Affairs, the Sheriff's Office, and the Police Department. (*Proshansky Decl.* ¶ 5, Ex. 3 (*FedEx's Third Set of Document Requests to City*) at Request No. 34).

- FedEx has repeatedly and improperly demanded that the State search the e-mails of former Attorney General and current Governor Andrew Cuomo, former Attorney General and Governor Eliot Spitzer, and current Attorney General Eric Schneiderman, without any basis to believe that these high-ranking State officials had any substantive involvement in the matters at issue in this action. (*Proshansky Decl.* ¶ 7, Ex. 5 (July 2, 2015 FedEx Letter to State at 3).

- FedEx has demanded that the City "[i]dentify each person at or on behalf of the City responsible for monitoring or investigating sales or shipments of [untaxed] cigarettes," presumably in order to depose them concerning the sufficiency of the City's cigarette tax "monitoring" and investigation efforts. (*Proshansky Decl.* ¶ 8, Ex. 6 (*FedEx's Second Set of Interrogatories to City*) at Interrogatory No. 19).

- FedEx took a Rule 30(b)(1) deposition of the City's First Deputy Sheriff and Director of the Office of Tax Enforcement, Maureen Kokeas, during which at least 70 transcript pages out of 261 revolved around the sufficiency of the City's efforts to collect taxes from individual consumers of untaxed cigarettes. (*Proshansky Decl.* ¶ 9, Ex. 7 (*Kokeas 7/9/15 Dep. Tr., see, e.g.* at 79-135). The City objected to the line of questioning as

---

[22] The State has filed a pre-motion conference letter in anticipation of moving for a protective order narrowing the topics in the 30(b)(6) deposition. (*Dkt.* 87). The City will imminently file such a request.

[23] In this regard, the City and State respectfully remind the Court that FedEx successfully sought relief from the Court blocking any discovery into shippers not named in the complaint.

irrelevant and subject to the instant motion to strike. (*Kokeas 7/9/15 Dep. Tr.* at 88:12-19).

- FedEx has extended its inquiry into City and State enforcement efforts even to a third-party witness (*Proshansky Decl.* ¶ 9, Ex. 8, (*FedEx Written Deposition Questions to Carl Nappi*) ¶¶ 29-32) ("To your knowledge, has the City [State] of New York failed to take action against any person or entity that it knew was involved in the shipment of cigarettes?" "To your knowledge, has the City [State] of New York failed to take action against any person or entity that it knew was involved in the shipment of cigarettes to individual residences?")

The July 9, 2015 deposition of Ms. Kokeas, a high-ranking tax enforcement official at the City, is instructive with regard to the prejudice from FedEx's defenses. During that deposition, FedEx counsel delved exhaustively into the City's policy decisions and exercise of discretion in, among other things: (1) whether or not, and the extent to which, to investigate and pursue violations of the cigarette tax laws (*See, e.g., Proshansky Decl.* Ex. 7 at 119:18-124:12; 242:17-248:18); (2) whether or not, and the extent to which, to pursue collection of City taxes from individual City residents (*See e.g., id.* at 83:17-98:7), and what City policy or political decisions governed collections from consumers. (*See e.g., id.* at 95:11-25. Should FedEx's meritless defenses remain in the case, discovery directed to discretionary prosecutorial, enforcement, and tax policy will continue. These are matters into which the federal courts have been expressly cautioned from intruding, and which have nothing to do with the fact that FedEx shipped unstamped cigarettes to City and State consumers, after having expressly agreed not to do so. The City and State will be burdened, and a trial lengthened and confused, by FedEx's attempt to "put the government on trial" through attacks on City and State policy.

**CONCLUSION**

For the reasons set forth above, the City and State's motion to dismiss FedEx's Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Seventeenth, Eighteenth, and Twenty-third Affirmative Defenses pursuant to Rule 12 (f) should be granted in its entirety.

Dated:      New York, New York
           July 20, 2015

                ZACHARY W. CARTER
                Corporation Counsel of the
                 City of New York
                Attorney for Plaintiff the City of New York
                100 Church Street, Room 20-99
                New York, New York 10007
                (212) 356-2032

                By:    /s/ Eric Proshansky
                        Eric Proshansky (EP 1777)
                        Leonard Braman (LB 4381)
                        Assistant Corporation Counsel

                ERIC T. SCHNEIDERMAN
                Attorney General of the State of New York
                Attorney for Plaintiff State of New York
                120 Broadway, 3rd floor
                New York, New York 10271
                (212) 416-6699

                By:    /s/ Dana Biberman
                        Dana Biberman (DB 9878)
                        Sandra Pullman (SP 7722)
                        Joshua Sprague (JS 8789)
                        Assistant Attorneys General