UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

THE CITY OF NEW YORK and THE PEOPLE OF
THE STATE OF NEW YORK,

                Plaintiffs,

   -against-

FEDEX GROUND PACKAGE SYSTEM, INC.,

                Defendant.

-------------------------------------------------------------- X

**FILED PARTIALLY UNDER
SEAL PURSUANT TO
CONFIDENTIALITY ORDER
DATED APRIL 15, 2014**

Civil Action No. 13-CV-9173 (ER)


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES


STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

and

SPOTSWOOD SANSOM & SANSBURY LLC
One Federal Place
1819 Fifth Avenue North, Suite 1050
Birmingham, AL 35203
(205) 986-3622

# TABLE OF CONTENTS

ARGUMENT ....................................................................................................................2

I.        SUMMARY OF CLAIMS & DEFENSES......................................................2

        A.        Plaintiffs seek civil penalties, injunctive relief, and tax loss damages under
                Congress's 2006 amendments to the CCTA, borrowing in part from the
                civil penalties provision of the PACT Act of 2009.....................................3

        B.        Plaintiffs seek treble tax loss as private plaintiffs under Congress's 1978
                RICO amendment that made the CCTA a RICO predicate act. ...........................7

        C.        The State seeks civil penalties under the AOC.....................................................9

        D.        FXG's Defenses. ...............................................................................................10

II.       PLAINTIFFS DEMONSTRATE NO PREJUDICE............................................10

        A.        The asserted prejudice is not substantiated.........................................................10

        B.        The discovery at issue is relevant to Plaintiffs' prima facie case of
                liability, regardless of whether any affirmative defenses are litigated. .................11

        C.        The discovery at issue is relevant to Plaintiffs' prima facie case for the
                remedies that they seek, regardless of whether any affirmative defenses
                are litigated........................................................................................................15

        D.        The discovery at issue is relevant to defenses Plaintiffs do not seek to
                strike..................................................................................................................16

        E.        Plaintiffs do not argue prejudice at all for the AOC Defenses, the CCTA
                Quantity Defense, or the Indian Law Defense.....................................................17

III.      PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING NO
        SUBSTANIAL QUESTIONS OF LAW OR FACT. ..................................................17

        A.        Controlling authority is required to strike an affirmative defense, and
                Plaintiffs have presented none for any of the twelve Defenses they seek to
                strike..................................................................................................................17

        B.        Since Plaintiffs are the same as any other private litigant for purposes of
                their RICO claims, the Court should reject Plaintiffs' arguments that they
                are entitled to governmental exemption from the Equitable and C&D
                defenses as applied to those claims.....................................................................19

C.      Plaintiffs are likewise not entitled to governmental exemption from the Equitable or C&D Defenses based on their argument that FXG is directly liable for cigarette excise taxes under New York Tax Law § 471-A.....................20

D.      There are far too many open questions regarding the Equitable Defenses for the Court to strike them........................................................................23

     1.     Plaintiffs seek equitable relief and, in any event, equitable defenses are often applied to claims seeking legal relief..............................................23

     2.     Government immunity from equitable defenses is subject to exceptions..24

     3.     Plaintiffs' special justifications for the inapplicability of specific equitable defenses present substantial questions of law and fact that should not be determined on a motion to strike. .............................................26

E.      The CCTA Quantity Defense is proper and has not been the subject of prior rulings...................................................................................28

F.      FXG's Tenth and Eleventh AOC Defenses, based on the unenforceability of the AOC, raise substantial issues of law and should be allowed to proceed.....................................................................................28

     1.     FXG's Tenth Defense is Based on a Plain Reading of the New York Executive Law and Has Merit....................................................29

     2.     FXG's Eleventh Defense Constitutes a Legitimate Challenge to the Validity of the AOC's Penalty Provision.....................................30

G.      FXG's Amended Twelfth Defense, an AOC Defense, is pled with particularity and is meritorious. ...........................................................34

     1.     FXG has Adequately Pled the AOC's Formation Defects........................34

     2.     FXG has Pled with Particularity its Misrepresentation Defense ..............35

H.      FXG's Thirteenth AOC Defense has merit.......................................36

I.      The Indian Law Defense is far from settled.........................................40

CONCLUSION.......................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*,
24 N.Y.3d 528 (2014) ..................................................................................................33

*Abuzaid v. Mattox*,
726 F.3d 311 (2d Cir. 2013) ........................................................................................21

*AIU Ins. Co. v. Deajess Med. Imaging, P.C.*,
882 N.Y.S.2d 812 (N.Y. Sup. Ct. 2009) .....................................................................36

*Application of Whitehaven S.F., LLC v. Spangler*,
45 F. Supp. 3d 333, 347 (S.D.N.Y. 2014) ...................................................................30

*Atl. States Legal Found., Inc. v. New York State Dep't of Envtl. Conservation*,
119 A.D.3d 1172 (N.Y. App. Div. 2014) ..............................................................25, 35

*BDO Seidman v. Hirshberg*,
712 N.E.2d 1220 (N.Y. 1999) .....................................................................................33

*Bradley v. Lehigh Valley R. Co.*,
153 F. 350 (2d Cir. 1907) ............................................................................................26

*Bray v. City of New York*,
346 F. Supp. 2d 480 (S.D.N.Y. 2004) .........................................................................25

*Carey v. Piphus*,
435 U.S. 247 (1978) .......................................................................................................7

*Carney v. Newburgh Park Motors*,
444 N.Y.S.2d 220 (N.Y. App. Div. 1981) ...................................................................25

*Cayuga Indian Nation of N.Y. v. Pataki*,
413 F.3d 266 (2d Cir. 2005) ........................................................................................25

*CCM Rochester, Inc. v. Federated Investors, Inc.*,
No. 14-CV-3600 VEC, 2014 WL 6674480 (S.D.N.Y. Nov. 25, 2014)......................38

*City of New York v. Cyco.Net, Inc.*,
383 F. Supp. 2d 526 (S.D.N.Y. 2005) .........................................................................15

*City of New York v. FedEx Ground Package Sys., Inc.*,
No. 13 CIV. 9173 ER, 2015 WL 1013386 (S.D.N.Y. Mar. 9, 2015) ............... *passim*

*City of New York v. Golden Feather Smoke Shop, Inc.*,
597 F.3d 115 (2d Cir. 2010)...................................................................7

*City of New York v. Golden Feather Smoke Shop, Inc.*,
No. 08-CV-3966(CBA), 2009 WL 2612345 (E.D.N.Y. Aug. 25, 2009)...................8

*City of New York v. Golden Feather Smoke Shop, Inc.*,
No. 08-CV-3966 (CBA), 2009 WL 705815 (E.D.N.Y. Mar. 16, 2009)...................25

*City of New York v. Milhelm Attea & Bros., Inc.*,
No. 06-CV-3620 CBA, 2012 WL 3579568 (E.D.N.Y. Aug. 17, 2012) ...................4

*City of New York v. Milhelm Attea & Bros.*,
No. 06-CV-3620 (CBA), 2009 WL 701005 (E.D.N.Y. Mar. 11, 2009)...................9

*Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*,
205 F.R.D. 148 (S.D.N.Y. 2002) ...................10

*Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608 (2d Cir. 1994) ...................9

*Connell v. City of New York*,
230 F. Supp. 2d 432 (S.D.N.Y. 2002)...................17

*Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*,
929 F. Supp. 2d 460 (W.D. Pa. 2013)...................34

*People, ex rel. Cuomo v. Gagnon Bus Co.*,
30 Misc. 3d 1225(A) (N.Y. Sup. Ct. 2011) (unpublished) ...................32

*People ex rel. Cuomo v. Nationwide Asset Servs., Inc.*,
26 Misc. 3d 258 (N.Y. Sup. Ct. 2009) ...................32

*Diamond Servs. Mgmt., LLC v. Fable Jewelry Co.*,
No. 12 CIV 3543, 2012 WL 5871616 (S.D.N.Y. Nov. 20, 2012) ...................37

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
No. 12 CIV 5105 NRB, 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014)...................1

*Fleisher v. Phoenix Life Ins. Co.*,
858 F. Supp. 2d 290 (S.D.N.Y. 2012)...................37

*Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*,
278 F. Supp. 2d 313 (N.D.N.Y. 2003) ...................18, 25, 28

*Geiger v. Town of Greece*,
No. 07-CV-6066 CJS, 2008 WL 728471 (W.D.N.Y. Mar. 18, 2008) ...................32

*Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.*,
No. 06 CIV. 2865 (LAK), 2007 WL 2826630 (S.D.N.Y. Sept. 28, 2007)...................8

*Gristede's Foods, Inc. v. Unkechauge Nation,*
532 F. Supp. 2d 439 (E.D.N.Y. 2007) ....................................................8

*Groesbeck v. Morgan,*
206 N.Y. 385 (1912) ....................................................................27

*Harder's Exp., Inc. v. State Tax Comm'n,*
418 N.Y.S.2d 199 (N.Y. App. Div. 1979), *aff'd*, 410 N.E.2d 748 (1980)............21

*Hartman v. Harris,*
810 F. Supp. 82 (S.D.N.Y. 1992)..........................................................34

*Hecht Co. v. Bowles,*
321 U.S. 321 (1944)....................................................................5, 8

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,*
467 U.S. 51 (1984)......................................................................25

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010) (plurality opinion) ....................................................9

*Hernandez v. Balakian,*
No. CVF06-1383, 2007 WL 1649911 (E.D. Cal. June 1, 2007) ............................20

*Hickman v. Taylor,*
329 U.S. 495 (1947)......................................................................12

*Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach,*
No. 95 CIV. 3722 (LLS), 1996 WL 520902 (S.D.N.Y. Sept. 12, 1996) ..................24

*Joseph v. Hyman,*
659 F.3d 215 (2d Cir. 2011)..............................................................21

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC,*
No. 08CIV9116(PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) .......................38

*Kirk v. Hamilton,*
102 U.S. 68 (1880)......................................................................24

*Laker Airways Ltd. v. Pan Am. World Airways,*
103 F.R.D. 22 (D.D.C. 1984)..............................................................13

*Levin v. Commerce Energy, Inc.,*
560 U.S. 413 (2010)......................................................................21

*Linker v. Custom-Bilt Mach. Inc.,*
594 F. Supp. 894 (E.D. Pa. 1984)........................................................18

*Mallis v. Bankers Trust Co.*,
615 F.2d 68 (2d Cir. 1980)...................................................................24

*Marin v. Evans*,
No. CV-06-3090-RHW, 2007 WL 655456 (E.D. Wash. Feb. 27, 2007) ................................19

*MBIA Inc. v. Fed. Ins. Co.*,
652 F.3d 152 (2d Cir. 2011)...................................................................33

*Mead Corp. v. Riverwood Natural Res. Corp.*,
145 F.R.D. 512 (D. Minn. 1992)...................................................................12

*Miller Bros. Co. v. Maryland*,
347 U.S. 340 (1953)...................................................................22

*Murray v. Northrop Grumman Info. Tech., Inc.*,
444 F.3d 169 (2d Cir. 2006)...................................................................34

*N.L.R.B. v. P\*I\*E Nationwide, Inc.*,
894 F.2d 887 (7th Cir. 1990) (Posner, J.) ..............................................25

*Nat'l Conversion Corp. v. Cedar Bldg. Corp.*,
23 N.Y.2d 621 (N.Y. 1969) ...................................................................36

*P.T. & L. Contracting Corp. v. Trataros Const., Inc.*,
29 A.D.3d 763 (N.Y. App. Div. 2006) ................................................38

*People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc.*,
80 N.Y.2d 803 (N.Y. 1992) ...................................................................32

*People by Abrams v. Two Wheel Corp.*,
71 N.Y.2d 693 (N.Y. 1988) ...................................................................32

*People by Koppell v. Empyre Inground Pools Inc.*,
227 A.D.2d 731 (N.Y. App. Div. 1996) ................................................32

*People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.*,
No. 02-1020, 2003 WL 21649689 (N.Y. Sup. Ct. July 2, 2003) ............................32

*People v. Levy*,
2011 N.Y. Misc. LEXIS 2519 (N.Y. Sup. Ct. 2011) ..............................................32

*People v. Veleanu*,
89 A.D.3d 950 (N.Y. App. Div. 2011) ................................................32

*People v. Wilco Energy Corp.*,
284 A.D.2d 469 (N.Y. App. Div. 2001) ................................................32

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
134 S. Ct. 1962 (2014) ................................................................................27

*Pinter v. Dahl*,
486 U.S. 622 (1988) ............................................................................24, 26

*Pleiades Publ'g, Inc. v. Springer Sci. & Bus. Media LLC*,
117 A.D.3d 636 (N.Y. App. Div. 2014) .....................................................38

*Poughkeepsie Chevrolet, Inc. v. Jeff Weaver's 96 Hour Super Sale, Inc.*,
779 N.Y.S.2d 512 (N.Y. App. Div. 2004) ..................................................33

*Raymond Weil, S.A. v. Theron*,
585 F. Supp. 2d 473 (S.D.N.Y. 2008)....................................................2, 20

*Reliability Research Inc. v. Computer Assocs. Int'l, Inc.*,
793 F. Supp. 68 (E.D.N.Y. 1992) ...............................................................18

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015) ...........19, 24, 26

*Resolution Trust Corp. v. Gregor*,
No. 94-cv-2578, 1995 WL 931093 (E.D.N.Y. 1995) ................................14, 18, 25

*Richardson v. Vajiradhammapadip Temple*,
807 N.Y.S.2d 392 (N.Y. App. Div. 2005) .................................................27

*Rojas-Reyes v. I.N.S.*,
235 F.3d 115 (2d Cir. 2000)........................................................................25

*Rosof v. Roth*,
262 F.2d 829 (2d Cir. 1959).........................................................................6

*Roswell Capital Partners LLC v. Alternative Const. Technologies*,
No. 08 CIV 10647(DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ................24

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008)....................................................................................22

*S.E.C. v. Mgmt. Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975).........................................................................6

*Salcer v. Envicon Equities Corp.*,
744 F.2d 935 (2d Cir. 1984), *vacated and remanded on other grounds*, 478
U.S. 1015 ....................................................................................................18

*Seifts v. Consumer Health Solutions LLC*,
61 F. Supp. 3d 306, 326 (S.D.N.Y. 2014) (Ramos, J.) ..............................15

*Shinnecock Smoke Shop v. Spitzer*,
  No. 2494-05 (Sup. Ct., Albany County, May 5, 2005)...........................................................29

*Sibley v. Choice Hotels Int'l, Inc.*,
  304 F.R.D. 125 (E.D.N.Y. 2015) .................................................................................17, 19

*Smith v. Spitzer*,
  No. 2494/05 (N.Y. Sup. Ct., Albany County, June 22, 2005) (Clemente, J.),
  *aff'd* 28 A.D.3d 1047 (3d Dept. 2006).......................................................................29, 36

*Space Imaging Europe, Ltd. v. Space Imaging L.P.*,
  38 F. Supp. 2d 326 (S.D.N.Y. 1999)...............................................................................34

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
  11 N.Y.3d 105 (N.Y. 2008) .............................................................................................32

*State by Abrams v. Solil Mgmt. Corp.*,
  128 Misc. 2d 767 (N.Y. Sup. Ct.), *aff'd*, 114 A.D.2d 1057 (N.Y. App. Div.
  1985) ...............................................................................................................................31

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993)........................................................................................9, 16

*Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*,
  41 N.Y.2d 420 (1977) .....................................................................................................33

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
  369 F.3d 34 (2d Cir. 2004).............................................................................................33

*United States v. E. River Hous. Corp.*,
  No. 13 CIV. 8650 ER, 2015 WL 872160 (S.D.N.Y. Mar. 2, 2015) ...................................2

*United States v. Martell*,
  844 F. Supp. 454 (N.D. Ind. 1994) ................................................................................25

*United States v. Morrison*,
  686 F.3d 94 (2d Cir. 2012).........................................................................................8, 27

*People ex rel. Vacco v. Beach Boys Equip. Co.*,
  273 A.D.2d 850 (N.Y. App. Div. 2000) ..........................................................................32

*People ex rel. Vacco v. World Interactive Gaming Corp.*,
  185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) ..........................................................................32

*Van Schouwen v. Connaught Corp.*,
  782 F. Supp. 1240 (N.D. Ill. 1991) ...........................................................................11, 40

*Weinberger v. Romero–Barcelo*,
456 U.S. 305 (1982) ................................................................5

**Statutes**

15 U.S.C. § 376a(e) .............................................................4, 5

15 U.S.C. § 377 ......................................................................4

18 U.S.C. §§ 1961–1968 .........................................................7

18 U.S.C. § 1961(3) ..............................................................19

18 U.S.C. § 1963 ....................................................................7

18 U.S.C. § 1964 ............................................................. *passim*

18 U.S.C. § 2341(2) ..............................................................28

18 U.S.C. § 2346(b)(1) ...........................................................3

18 U.S.C. § 2346(b)(1)–(2) ...................................................3, 8

26 U.S.C. § 5713 ....................................................................3

49 U.S.C. § 14501(c)(1) ........................................................22

49 U.S.C. § 41713(b)(4)(A) ...................................................22

Gen. Bus. Law Article 22-a ...................................................32

Gen. Bus. Law § 349 .............................................................32

Gen. Bus. Law § 350 .........................................................32, 33

Gen. Bus. Law § 353 .........................................................32, 33

Gen. Bus. Law § 396-r ..........................................................32

Gen. Bus. Law § 630 .............................................................32

N.Y. Exec. Law § 63(12) ................................................30, 31, 32

N.Y. Exec. Law § 63(15) ................................................29, 30, 31

N.Y. Tax Law § 478 ..............................................................22

N.Y. Veh. & Traf. Law § 417-a ..............................................33

New York Public Health Law § 1399-*ll* ........................... *passim*

USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Title I, § 121(f), 120 Stat. 192, 223 (2006) ...................................................3

**Other Authorities**

20 N.Y.C.R.R. § 74.1(b)(3) ...........................................................................................15

Douglas Laycock, *The Triumph of Equity*, 56 LAW & CONTEMP. PROBS. 53 (Summer 1993) ........................................................................................................23

Fed. R. Civ. P. 8(c)(1) ....................................................................................................1

Fed. R. Civ. P. 26(b)(1) ................................................................................................12

Fed. R. Civ. P. 53 ...........................................................................................................6

Fed. R. Civ. P. 72 .........................................................................................................10

H.R. Rep. No. 95-1629 (1978) .......................................................................................8

NYC Admin. Code § 11-1302(a)(3) ............................................................................15

NYC Admin. Code § 11-1310 .......................................................................................22

Wallace R. Lane, *Federal Equity Rules*, 35 HARV. L. REV. 276, 296 (1922) ...............6

Defendant FedEx Ground Package System, Inc. ("FXG") respectfully submits this memorandum of law in opposition to Plaintiffs' motion to strike certain of FXG's affirmative defenses (the "Motion" or "Mot."). In its Answer to the Amended Complaint, FXG pleaded "Defenses" subject to the proviso that FXG "does not suggest either that Plaintiffs do not bear the burden of pleading, production and/or proof as to such matters, or that such matters are not elements that Plaintiffs must establish in order to make a prima facie case on one or more of their claims against Defendant." ECF No. 72 at 20. FXG pleaded its "defenses" to satisfy the requirement of Federal Rule of Civil Procedure 8(c)(1) that it "state" those defenses as to which it truly bears any affirmative burdens of pleading, production, and proof. It does not have the higher burden of "show[ing]" its "entitlement to relief" as a plaintiff pleading a claim must do under Rule 8(a)(2). *See, e.g.*, *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 CIV. 5105 NRB, 2014 WL 3950897, at *3 (S.D.N.Y. Aug. 13, 2014). FXG also pleaded its "defenses" more broadly to give Plaintiffs comprehensive notice of various issues in the case, and thereby avoid any later cry of "surprise" or "waiver," even though many of those issues are ones as to which Plaintiffs actually bear the burdens of pleading, production, and proof.

Plaintiffs are now attempting to turn FXG's effort to provide comprehensive notice against it by moving to strike twelve of FXG's defenses. Specifically, Plaintiffs move to strike FedEx Ground's Fourth Defense (the "Equitable Defenses"); its Fifth, Sixth, Seventeenth, and Eighteenth Defenses (collectively, the "Causation and Damages Defenses" or "C&D Defenses"); its Eighth Defense (the "CCTA Quantity Defense"); its Tenth, Eleventh, Twelfth, Thirteenth, and Fifteenth Defenses to Plaintiffs' claim arising under the Assurance of Compliance (collectively, the "AOC Defenses"); and its Twenty-Third Defense (the "Indian Law Defense"). Plaintiffs even move as to some defenses that are simply cautious paragraphs of additional notice, such as

the Sixth (reduction of damages for actual tax collection from others), Eighth (Plaintiffs still have to prove the quantity element of their own CCTA claim), and Seventeenth (claims barred or limited by Plaintiffs' own conduct). This effort to take unfair advantage of the double bind facing all defendants between providing too much notice and providing too little should be denied. *See Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 489–90 (S.D.N.Y. 2008) ("There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time.").

For the Court to grant this motion to strike, a drastic measure which is "generally disfavored" because "courts should not tamper with the pleadings unless there is a strong reason for so doing," Plaintiffs must satisfy every element of a "stringent three-pronged test" for each of the twelve defenses at issue. *United States v. E. River Hous. Corp.*, No. 13 CIV. 8650 ER, 2015 WL 872160, at *8 (S.D.N.Y. Mar. 2, 2015). That test requires for each defense that: (1) there be "no question of fact that might allow the defense to succeed"; (2) there be "no substantial question of law that might allow the defense to succeed"; and (3) Plaintiffs will be "prejudiced by the inclusion of the defense." *Id*.

Here, Plaintiffs have not even come close to meeting the prejudice prong because they assert "burdens" that are unsubstantiated, would be faced regardless of the defenses at issue, and are premature to consider. Plaintiffs fail to meet the remaining two prongs because the defenses raise substantial questions of law and fact.

## ARGUMENT

### I. SUMMARY OF CLAIMS & DEFENSES

Three claims remain in this suit: (1) the CCTA claim; (2) the RICO claims based on the CCTA predicate acts; and (3) the claim arising under the Assurance of Compliance ("AOC"). *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 CIV. 9173 ER, 2015 WL

1013386, at *12 (S.D.N.Y. Mar. 9, 2015) (hereinafter "*FedEx I*").[1] To understand the premises for FXG's various arguments in opposition to the Motion, it is necessary not only to know the defenses at issue, but also to understand key aspects of Plaintiffs' own case for liability and remedies. The claims and defenses are therefore summarized.

A. **Plaintiffs seek civil penalties, injunctive relief, and tax loss damages under Congress's 2006 amendments to the CCTA, borrowing in part from the civil penalties provision of the PACT Act of 2009.**

The CCTA was enacted by Congress in 1978, but Plaintiffs' CCTA claim was not added until 2006 amendments. From 1978 until 2006, only the United States had standing to sue under the CCTA itself. *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Title I, § 121(f), 120 Stat. 192, 223 (2006). The 2006 amendments added standing and remedies for state and local governments and tobacco manufacturers, importers, and export warehouse proprietors. 18 U.S.C. § 2346(b)(1); 26 U.S.C. § 5713. The amendments also required that the suit be primarily (or, in the case of industry plaintiffs, exclusively) one seeking injunctive relief. *See* 18 U.S.C. § 2346(b)(1)–(2). Broadly speaking, to maintain their CCTA claim under these amendments, Plaintiffs will need to show that FXG transported very specific items (cigarettes not bearing certain stamps under circumstances in which state law requires them to bear stamps) and not other items—such as stamped cigarettes, other tobacco products, or items other than tobacco. They also need to prove that FedEx did so knowingly and in a quantity of more than 10,000 cigarettes per violation. *FedEx I*, 2015 WL 1013386, at *5. Plaintiffs seek "civil penalties," "injunctive or other equitable relief," and "money damages" for any CCTA violations they can prove in this case. 18 U.S.C. § 2346(b)(1)–(2).

---

[1] The Court dismissed Plaintiffs' New York Public Health Law § 1399-*ll* and New York state law public nuisance claims in its March 9, 2015 order. *Id.* Plaintiffs have conceded their claims under the PACT Act.

*Civil Penalties.* For civil penalties, Plaintiffs seek to have the Court borrow the $5,000 per violation civil penalty from the PACT Act (PACTA) contained in 15 U.S.C. § 377, since the CCTA itself does not specify penalties, just as the City successfully asked the Court to do in *City of New York v. Milhelm Attea & Bros., Inc.*, No. 06-CV-3620 CBA, 2012 WL 3579568, at *33 (E.D.N.Y. Aug. 17, 2012) (Amon, C.J.). In *Milhelm*, the court held that an award of civil penalties in this fashion should be based on an evidentiary hearing and that the Court should:

> . . . take some account of the fact that state tax authorities actively acquiesced in . . . business model[s surrounding Native American tobacco sales] for years, despite actual knowledge that large amounts of untaxed cigarettes were being sold and distributed to non-Native Americans as a result of the forbearance regime.

In addition, unlike *Milhelm*, this case is against an interstate common carrier. Therefore, in borrowing from § 377, Plaintiffs will also have to account for the fact that, in enacting PACTA, Congress carefully calibrated the relative obligations of common carriers, the City, and the State in taking steps regarding cigarette sellers using common carriers. The City and State have affirmative obligations under PACTA, including reporting cigarette sellers suspected of misusing common carriers to ship cigarettes to the Department of Justice, which then compiles a list of such suspected sellers and provides that list to carriers, among others. 15 U.S.C. § 376a(e)(1), (e)(6). Section 377 penalty awards are forbidden if:

> **(i)** the common carrier or independent delivery service has implemented and enforces effective policies and practices for complying with [obligations to take certain actions if its customers' names appear on the list] or

> **(ii)** the violation [on which a request for civil penalties is based] consists of an employee of the common carrier or independent delivery service who physically receives and processes orders, picks up packages, processes packages, or makes deliveries, taking actions that are outside the scope of employment of the employee, or that violate the implemented and enforced policies of the common carrier or independent delivery service described in clause (i).

*Id.* § 377(b)(3)(B)(i)–(ii); *see also* § 376a(e)(2)–(3). Otherwise, the duties of carriers are carefully curtailed. *See id.* § 376a(e)(9)(D). Cities and states may opt out of this regime, but only

in writing, *id.* § 376a(e)(6)(B), and Plaintiffs have sought to preclude discovery on this very issue.

These PACTA provisions from which Plaintiffs seek to borrow largely mirror the rationale behind the two agreements that FXG entered into with the City and State: that of a cooperative framework through which government and carriers actively, prospectively work together to prevent the kinds of harm that Plaintiffs assert to be the heart of their case. *See* Mot. at 4 n.3. Both agreements further this goal by providing a framework for FXG to act after receiving notifications from the State and City regarding shippers. *See* Assurance of Compliance, *FedEx II*, No. 14-cv-8985 (S.D.N.Y.), ECF No. 33-3 (hereinafter "AOC") ¶¶ 15–17; City Agreement ("City Agr."), Declaration of Michele L. Pahmer, dated August 14, 2015 ("Pahmer Dec.") at Ex. 11 ¶¶ 7, 5 (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). Plaintiffs' conduct is, thus, clearly relevant to civil penalties.

*Injunctive or Other Equitable Relief.*   Plaintiffs seek an injunction (permitted under the CCTA) and the appointment of a special master (authorization for which Plaintiffs cite no authority).

Adjudicating these prayers for relief will require the Court "to do equity and to mould each decree to the necessities of the particular case," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), as well as to determine whether injunctive relief is appropriate in the first instance, *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (upholding, like *Hecht*, district court's denial of an injunction in favor of some governmental actors and noting that "[t]he grant of

jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law"); *see also S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) ("We scarcely mean to imply that judges are free to set to one side all notions of fairness because it is the SEC, rather than a private litigant, which has stepped into court."); *Rosof v. Roth*, 262 F.2d 829, 831 (2d Cir. 1959) ("Where resort is to be had to the broad powers of a court of equity, each case must be decided upon its own peculiar facts."). Plaintiffs' request for the appointment of a special master to supervise FXG's operations, certainly an equitable exercise, requires additional, careful attention to do equity and mould any decree to the particular facts of this case. *See, e.g.*, Fed. R. Civ. P. 53 advisory committee's note (1937 adoption) (noting that every subsection of the rule on special masters derives from pre-merger Equity Rules); Wallace R. Lane, *Federal Equity Rules*, 35 HARV. L. REV. 276, 296 (1922) ("The reference to a master has long been an inseparable adjunct of equity procedure, and has imposed ever increasing burdens and expense upon litigants.")

In seeking to determine whether and what equitable relief may be justified, Plaintiffs' conduct is highly relevant to understanding the facts of this case and thus what equity demands. For example, all violations alleged in this case ended by early 2012—nearly four years ago and shortly after the State's forbearance policy ended—and it would be relevant if Plaintiffs knew of the shippers at issue, or knew of FXG's alleged deliveries, but did not communicate with FXG, *see infra* Sections III.G–H. Based on considerations such as these, the Court will have to determine whether it is more equitable to issue an injunction, billet a special master at FXG, fashion some other form of relief, or grant no such equitable relief at all.[2]

---

[2] Plaintiffs may not be required to show irreparable harm because of the Second Circuit's view of the CCTA, *see City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120–21 (2d Cir. 2010), but this hardly exhausts

*Money Damages.* Finally, for their CCTA money damages, Plaintiffs seek lost taxes. *See FedEx I*, 2015 WL 1013386, at *4, 9 n.13; Compl. ¶ 136. For these "money damages," Plaintiffs must invoke ordinary causation and damages principles, including that "[t]he cardinal principle of damages in Anglo-American law is that of *compensation* <u>for the injury caused to plaintiff</u> by defendant's breach of duty." *Carey v. Piphus*, 435 U.S. 247, 254–55 (1978) (first emphasis in original) (quoting 2 F. HARPER & F. JAMES, LAW OF TORTS § 25.1, p. 1299 (1956)). Thus, any evidence pointing to other causes of damages or the amount of damages, including any self-infliction of tax loss by Plaintiffs, is relevant to their own prima facie claim for damages.

**B.    Plaintiffs seek treble tax loss as private plaintiffs under Congress's 1978 RICO amendment that made the CCTA a RICO predicate act.**

RICO was enacted by Congress in 1970, primarily to give the U.S. Department of Justice a new tool to fight organized crime. *See* 18 U.S.C. § 1963 (federal criminal enforcement); § 1964(a)–(b) (injunctive relief for the United States). At the same time, Congress also vested private litigants with the ability to pursue damages under RICO's § 1964(c) if the private litigant suffered "injur[y] in his business or property." *See* CIVIL RICO: 18 U.S.C. §§ 1961–1968, A MANUAL FOR FEDERAL ATTORNEYS, at 2 (October 2007) ("Section 1964(a) vests the Attorney General of the United States with the exclusive authority to sue for equitable relief, whereas Section 1964(c) vests private litigants, but not the United States, with authority to sue for treble damages for injury to their business or property."), *available at:* http://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf. Subsequently, in 1978, Congress enacted the CCTA and added it as a new RICO predicate act (then with a 60,000

---

the "equity" and "mould[ing]" necessary, *see Hecht*, 321 U.S. at 329, to issue any order or decree based on Plaintiffs' prayer for "injunctive or other equitable relief," 18 U.S.C. § 2346(b)(1)–(2); *see also City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966(CBA), 2009 WL 2612345, at *38 (E.D.N.Y. Aug. 25, 2009) ("[T]he district court . . must weigh equitable considerations in determining whether an injunction [for the City of New York under the CCTA] is appropriate . . . .").

cigarette threshold, Pub. L. No. 95-575) to give federal prosecutors tools to prosecute large-scale cigarette bootlegging criminals. *See United States v. Morrison*, 686 F.3d 94, 106 & n.8 (2d Cir. 2012) (reciting, as Congressional goals in enacting the CCTA, "to maintain a proper federal-state balance, encourage the states to take the lead in *prosecuting* cigarette trafficking" by prosecuting criminal cases too small to be the subject of federal prosecution using the CCTA, "and reduce the financial burden likely to be borne by the federal government, the CCTA empowered the federal government to deal only with major trafficking infractions" (emphasis added)); H.R. Rep. No. 95-1629, at 7 (1978) ("The proposed legislation is designed to supplement current efforts by the States to combat cigarette smuggling, not to supplant them. States are encouraged to upgrade their capabilities in this regard, both in terms of increased resources and stronger State cigarette bootlegging statutes."). A by-product of the CCTA's addition to the list of RICO predicate acts is that, since 1978, private litigants may seek RICO's civil remedies under § 1964(c) for business or property injuries resulting from sufficiently large-scale activity to trigger the CCTA. And they have done so. *See, e.g.*, *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439 (E.D.N.Y. 2007) (supermarket chain retailer that sold tobacco products alleging CCTA-based RICO claims); *Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.*, No. 06 CIV. 2865 (LAK), 2007 WL 2826630 (S.D.N.Y. Sept. 28, 2007) (wholesale agent and dealer of tobacco products alleging CCTA-based RICO claims).

It was not until much later, in its 2006 CCTA amendments, that Congress evinced any particular consideration for civil CCTA enforcement by cities and states. *See supra* Section I.A. For the purposes of their RICO claims in this case, therefore, Plaintiffs are just another of the private litigants afforded a civil RICO cause of action. *See* Compl. ¶¶ 138, 145 (suing as ordinary RICO "person[s]"); *id.* ¶¶ 143, 152 (suing for "injury" to "business or property"); Plaintiffs'

Motion to Dismiss Opp'n, ECF No. 33 at 29 n.21 (City disclaiming any sovereign status); ECF No. 33 at 32 (rejecting FedEx Ground's argument regarding injury to sovereign interests and asserting that "property" at interest was simply "money owed to" Plaintiffs). Thus, like any other private RICO plaintiffs utilizing § 1964(c), Plaintiffs here must show: i) that FXG not merely knew of, or merely aided and abetted,[3] but actually operated or managed and conspired with, the alleged-shipper-enterprises; ii) that FXG was both the but-for and proximate cause of Plaintiffs' losing excise taxes; iii) how much excise tax would have been realized but for the alleged conduct in comparison to how much was realized; *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9–12 (2010) (plurality opinion) (proximate causation); *Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) (but-for causation); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165–66 (2d Cir. 1993) (alternative collection must precede RICO and RICO must be netted of such collection); and iv) all the CCTA liability elements previously recited, *see supra* Section I.A. A variety of evidence sought to be discovered, including evidence regarding Plaintiffs' own conduct, is relevant to determining whether Plaintiffs have met these RICO burdens.

### C.     The State seeks civil penalties under the AOC.

The State also seeks a "penalty of $1,000" per alleged violation of the AOC, Compl. ¶ 173, along with the appointment of a special master to "assure" FXG's "compliance" under the AOC *id.* ¶ 178(iv). The AOC is addressed at greater length in Sections III.F–H, *infra*, but the foregoing principles regarding Plaintiffs' request for equitable relief also apply to the State's request for such relief under the AOC.

---

[3] *Cf. City of New York v. Milhelm Attea & Bros.*, No. 06-CV-3620 (CBA), 2009 WL 701005, at *2–7 (E.D.N.Y. Mar. 11, 2009) (rejecting mere aiding-and-abetting CCTA liability as contrary to the intention of Congress, and relying in part on previous courts' rejection of aiding-and-abetting liability under RICO).

### D. FXG's Defenses.

In response to the various claims, FXG pleaded, among other things, the Equitable, C&D, and AOC Defenses, aspects of which are certainly based on Plaintiffs' own conduct. ECF No. 72 at 21–24. Thus, evidence regarding Plaintiffs' conduct is relevant to these defenses, just as it is to Plaintiffs' case for liability and remedies.

## II. PLAINTIFFS DEMONSTRATE NO PREJUDICE.

Plaintiffs argue that they are prejudiced by "delay," "expense," and "trial burdens." Mot. at 33. This argument fails for four reasons. First, the claimed burdens are not substantiated. Second, the only concrete actions Plaintiffs assert they are forced to take as a result of the defenses is submission to some written discovery and deposition questions. But the discovery at issue has already been completed or is relevant regardless of the defenses.[4] Third, the same purported discovery and trial burdens are imposed by three additional defenses that Plaintiffs do even not move to strike. Fourth, Plaintiffs do not articulate any prejudice for several of the defenses they move to strike. Accordingly, Plaintiffs' motion must be denied.

### A. The asserted prejudice is not substantiated.

"[W]hile 'increased time and expense of trial may constitute sufficient prejudice to warrant granting [a motion to strike],' mere assertions by the moving party that he is prejudiced are insufficient." *Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (quoting *SEC v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992)) (internal citation omitted)). Here, however, Plaintiffs do not explain how the discovery to which they point will delay or increase the expenses of the case, or how it will materially increase expenses

---

[4] On August 13, 2015, the parties participated in a telephonic conference before Magistrate Judge Fox following Plaintiffs' letter requests for an informal pre-motion conference on their proposed motion for a protective order. The Magistrate Judge issued a ruling on Plaintiffs' objections to discovery. Pursuant to Fed. R. Civ. P. 72, FedEx Ground intends to file formal objections to portions of the Magistrate Judge's ruling on both procedural and substantive grounds.

in a litigation of this size. Further, considering "trial burdens," Plaintiffs do not explain how the discovery or defenses at issue will lengthen or increase the cost of trial; they make only a cryptic allusion to "complexity." Mot. at 2 n.2; *see also id.* at 35. Such an unsubstantiated assertion of trial burdens is a particularly poor foundation for a motion to strike since it is impossible to suffer trial burdens until after discovery is completed and the summary judgment and immediate pre-trial motions phases of the case are completed. To the extent that Plaintiffs prevail in summary judgment or pre-trial motion practice regarding the defenses at issue, they will suffer no trial burdens; to the extent they do not prevail, it will only be because those defenses have been meritorious all along. *See Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991) ("If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record— such as on a motion for summary judgment."). Much of the discovery has already been completed, however, and the discovery would still be no foundation for a motion to strike.

**B.**      **The discovery at issue is relevant to Plaintiffs' prima facie case of liability, regardless of whether any affirmative defenses are litigated.**

Prior to the commencement of this case, FXG produced package shipping records for the four shippers alleged in this case. Those records do not establish the contents of any shipment, something FXG generally does not know for the millions of packages it handles each day. To prove liability in this case, Plaintiffs must prove that FXG operated the shippers' enterprises (for RICO) knowing that cigarettes, and not something else, were in those packages. Further, Plaintiffs must prove that those cigarettes did not bear necessary tax stamps and were of sufficient quantities to trigger the CCTA (for both the CCTA and RICO). Finally, Plaintiffs must prove FXG's actual knowledge. Both parties have taken discovery into how Plaintiffs might satisfy these burdens, what evidence tending to disprove Plaintiffs' claims there might be, who

the relevant witnesses are likely to be, and information that might bear on the credibility of those witnesses.

FXG's discovery has included not just requests for evidence itself, but also inquiry into "the existence, description, nature, custody, condition, and location of any documents or other tangible things" that might yield evidence "and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Relatedly, it has included inquiry into Plaintiffs' investigation, enforcement, and tax collection efforts, because it is impossible to know what information Plaintiffs have about topics such as the contents of each shipment at issue or the operation of the shippers without knowing (1) what methods of Plaintiffs might have led to documentation, corroboration, or preservation of evidence regarding the alleged shipments or shippers; (2) what Plaintiffs did or did not do to document, corroborate, or preserve evidence about the alleged violations based on these methods; and (3) what Plaintiffs' documents or other evidence actually shows about the shipments or shippers, including, of course, evidence that might contradict Plaintiffs' claims about the issues. FXG has also sought information about the distribution chain and other business activities of the shippers at issue because of its relevance to the contents of each package and management of the shippers. Basic principles of discovery entitle defendants like FXG to discovery of these various items not only to discover actual facts and evidence bearing on the claims, but also so that it does not have to "take Plaintiffs' word for it" as to where such facts and evidence are to be found. *See Hickman v. Taylor,* 329 U.S. 495, 501 (1947) ("The various instruments of discovery now serve . . . as a device for ascertaining the facts, *or information as to the existence or whereabouts of facts* . . . ." (emphasis added)); *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 516 (D. Minn. 1992) (noting that discovery is meant "to unearth facts or information pertaining to the existence and whereabouts

of relevant facts"); *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 31 (D.D.C. 1984) ("One purpose of discovery, however, is to find new avenues of discovering further information . . . .").

Plaintiffs assert that this discovery is prejudicial because it is an "attempt to 'put the government on trial'" by asking about issues that "have nothing to do with the fact that FedEx shipped unstamped cigarettes to City and State consumers." Mot. at 35. This is absurd because Plaintiffs must *prove* the very "fact" they assert with *evidence*, and FXG would like to know where that evidence may be, what that evidence is, and, of course, what evidence tends to refute the "fact." A classic example of Plaintiffs' mindset is the State's objection to 30(b)(6) topics because FXG defined a term Plaintiffs protest "encompasses virtually every possible participant in the distribution chain" of the alleged shippers, "from manufacturer to consumer," to learn of evidence potentially regarding what items were handled by the alleged shippers. ECF No. 87, Exh. B at 1. Among the items Plaintiffs cite as prejudicial, Mot. at 33–34, are:

- 30(b)(6) topics to the State and City, *see* ECF Nos. 93–1, 93–2, respectively, regarding: whether Plaintiffs have information concerning FXG or the shippers' shipment of anything other than tobacco (1(b), 2, 3(b)); whether Plaintiffs collected any tobacco taxes from entities or individuals in the cigarette distribution chain (1(f), 2, 3(h)/(i)); Plaintiffs' knowledge regarding cigarette-related documents or filings on which they may base any claim, including the failure to file required forms (3(g)/(h)); positions taken by the State regarding whether any cigarettes need not bear tax stamps (6); whether Plaintiffs had engaged in litigation or entered into any deals concerning tobacco or tobacco taxes relating to individuals or entities in the cigarette distribution chain (8); and any contingencies that "might otherwise pertain to whether the harm of losing taxes is complete as soon as cigarettes are shipped" (17)/(15).

- Document requests to the City regarding: Investigation or monitoring of the Shinnecock Indian Reservation, the locus of the only shipper at issue for the City in this case, "concerning the sale or suspected sale of untaxed cigarettes to non-Native Americans," and communications related thereto (ECF No. 90–3, #4–6); "All documents concerning the distribution or sale of cigarettes, tobacco products, or other products to Shinnecock, Native Made, FOW, or CD2U by any cigarette manufacturer, wholesaler, distributor, stamping agent, retailer, or other person or entity" (*id.* #26); "All documents concerning both (i) cigarette-related arrests and (ii) Shinnecock,

Native Made, FOW, or CD2U" (*id.* #28).

Additional claims of prejudice range from the incredible—asking that the City produce documents from City agencies outside the confines of solely the Law Department, all of which were selected because the City's attorneys in this suit withheld communications with those agencies as privileged on the privilege log it provided to FXG[5]—to the speculative, *see* Mot. at 34 (request, almost literally parroting Rule 26's standard, that City identify individuals at the City who are "'responsible for monitoring or investigating sales or shipments of [untaxed] cigarettes,' *presumably* in order to depose them concerning the sufficiency of the City's cigarette tax 'monitoring' and investigation efforts" (emphasis added)).

Because the discovery Plaintiffs assert to be prejudicial is relevant to Plaintiffs' own proof of liability, Plaintiffs have not been prejudiced by Defenses that are also likely to be based on the same relevant evidence. *See Resolution Trust Corp. v. Gregor*, No. 94-cv-2578, 1995 WL 931093, at *5 (E.D.N.Y. 1995) ("These affirmative defenses cover information that will be subject to discovery whether or not they are stricken, and therefore, plaintiff cannot—and does not—argue that it will be prejudiced in any way if these defenses remain. Absent a showing of prejudice, an affirmative defense need not be stricken.").

---

[5] As one example of the relevance of such discovery, the City produced at 6 P.M. on July 23, 2015—the evening prior to the City's initial 30(b)(6) deposition—what appear to be 142 pages of "Resident Agent[] Cigarette Tax Return[s]" from the City Department of Finance, which make frequent reference to "Shinnecock Smoke" and date back to 2006. *See* Pahmer Dec., Ex. 14. The City had previously stated in a December 2014 response to a document request—apparently without actually looking—that "[a]s Shinnecock, Native Made, FOW, and CD2U have never had . . . New York City licenses, the online reporting system [from which the produced documents seemingly came] *would* not contain relevant information pertaining to them." *See id.*, Ex. 12 at RPD 2 Response #1 (emphasis added). The City subsequently said that it had already produced all documents concerning the putative stamping agent at issue in a July 2, 2015 response to a document request. *See id.*, Ex. 13 at RPD 3 Response # 25. The City currently lists that same Request for Production of Documents, Number 25, as prejudicial in this motion, because it "concern[s] the adequacy of the City's tobacco tax enforcement efforts." Mot. at 34.

**C.** **The discovery at issue is relevant to Plaintiffs' prima facie case for the remedies that they seek, regardless of whether any affirmative defenses are litigated.**

In addition to liability, Plaintiffs will be required to demonstrate injury and provide a justification for their entitlement to damages, civil penalties, injunctive relief, and the appointment of a special monitor. Plaintiffs' own conduct is expressly relevant to civil penalties as set forth in Section I.A, *supra*, and to awarding and crafting injunctive relief, as set forth above. In addition, Plaintiffs must also hew to basic principles of but-for and proximate causation to prove their tax loss "money damages" under both the CCTA and RICO tax loss "injury," as set forth in Sections I.A and I.B. Plaintiffs are also bound by principles against duplicative recovery, both specific to the tax regime and generally. *See* 20 N.Y.C.R.R. § 74.1(b)(3) ("In no event shall the cigarette tax be paid to the department more than once on the same package of cigarettes."); NYC Admin. Code § 11-1302(a)(3) ("Such tax shall be imposed only once on the same package of cigarettes."); *Seifts v. Consumer Health Solutions LLC*, 61 F. Supp. 3d 306, 326 (S.D.N.Y. 2014) (Ramos, J.) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." (quoting *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 511 (2d Cir. 1994))).

To defend these aspects of Plaintiffs' prima facie case, FXG is entitled to learn the methods available to Plaintiffs to collect cigarette taxes; whether those methods led to tax collection; how much tax revenue was lost on cigarettes for which taxes were not collected because the purchaser would have "covered" non-delivery of alleged cigarettes with brick-and-mortar purchases of fully taxed cigarettes, *see City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 558 (S.D.N.Y. 2005) (characterizing as "highly implausible" City's argument that online cigarette sales would be replaced by fully taxed brick-and-mortar sales but-for online cigarette sellers' "misrepresentations" regarding sales' "tax free" status); and any evidence that the

contents of the packages were not subject to cigarette excise taxes at all. Without such discovery, Plaintiffs may improperly receive multiple recoveries of the tax that is meant to apply only once to each pack of cigarettes. This is not a hypothetical danger since discovery has revealed previous tax collection on cigarettes sold by at least one shipper alleged in this case, and other litigation by the City in federal district court has potentially implicated the distribution chain of Long Island smoke shops, like Shinnecock Smoke Shop.

Plaintiffs have not been prejudiced by Defenses that are likely to be based on the same evidence relevant to the issue of remedies. In addition, Plaintiffs' argument as to joint and several liability is no answer to these damages points, in particular, not only because FXG is entitled to know what has happened, but also because FXG is *not* jointly liable for the tax itself, as Plaintiffs contend, *see infra* Section III.C; and private RICO plaintiffs must pursue RICO remedies after, and net of, debt collection under cases like *Stochastic*, *see supra* Section I.B.

**D.     The discovery at issue is relevant to defenses Plaintiffs do not seek to strike.**

Plaintiffs have not moved to strike FXG's First, Seventh, or Fourteenth defenses—(1) a C&D defense; (2) a defense based on the City's express representation of not having any information suggesting deliveries by FXG prior to March 2013; and (3) an AOC defense based on frustration of the AOC by conduct of the State. These defenses independently justify inquiry into the areas that Plaintiffs seek to block. The first defense, for the reasons analyzed at length above, permits FXG's discovery into the same causation and damages issues that Plaintiffs assert to be prejudicial. Similarly, the City's representation in the City Agreement squarely presents the question of whether the City did, in fact, have as of March 2013 "█████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████," Pahmer Dec., Ex. 11 ¶ 5. The Fourteenth

Defense likewise requires inquiry into the State's action or inaction under the AOC.[6]

E.      **Plaintiffs do not argue prejudice at all for the AOC Defenses, the CCTA Quantity Defense, or the Indian Law Defense.**

Plaintiffs fail to make any prejudice argument at all regarding discovery or trial burdens

pertaining to the AOC, CCTA Quantity, or Indian Law Defenses. Thus, those defenses should

not be stricken.

III.    **PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING NO SUBSTANIAL QUESTIONS OF LAW OR FACT.**

Although Plaintiffs have argued against FXG's motions to dismiss that courts should be

generous to plaintiffs when assessing whether claims might be better substantiated following

discovery, *see* ECF No. 33 at 17–18 n.16; ECF No. 64 at 10, they brook no such consideration

for FXG's defenses. The test for striking defenses requires such consideration, however, even

when plaintiffs might—unlike here—be prejudiced. *See, e.g.*, *Sibley v. Choice Hotels Int'l, Inc.*,

304 F.R.D. 125, 133 (E.D.N.Y. 2015) ("A motion to strike is generally determinable only after

discovery and a hearing on the merits, and [a] court may therefore strike only those defenses so

legally insufficient that it is beyond cavil that defendants could not prevail upon them." (internal

quotation marks omitted)). For the reasons discussed below, Plaintiffs fail to show that the

defenses they seek to strike raise no substantial question of law or fact.

A.      **Controlling authority is required to strike an affirmative defense, and Plaintiffs have presented none for any of the twelve Defenses they seek to strike.**

For a motion to strike an affirmative defense to succeed, there must be no debatable

question regarding the defense. *See, e.g.*, *Connell v. City of New York*, 230 F. Supp. 2d 432, 438

---

[6] The Court has already rejected Plaintiffs' invocation of a discovery rule by Plaintiffs, but to the extent that such a rule is invoked, the discovery Plaintiffs identify would certainly be relevant to determining when Plaintiffs discovered the shipping activity on which their claims are based.

(S.D.N.Y. 2002) ("[M]otions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed."). This means that authority against the defense must be controlling, not merely persuasive, and on all fours with the case at hand, not merely similar. *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (concluding that legal issue was "substantial and disputed" when Second Circuit had never addressed legal question at issue and other courts had not reached uniform conclusions), *vacated and remanded on other grounds*, 478 U.S. 1015; *Reliability Research Inc. v. Computer Assocs. Int'l, Inc.*, 793 F. Supp. 68, 69 (E.D.N.Y. 1992) ("An open and disputed question of law" for which there was no binding authority was "not a proper basis for a motion to strike"); *Linker v. Custom-Bilt Mach. Inc.*, 594 F. Supp. 894, 898 (E.D. Pa. 1984) (concluding that defense could not be insufficient as a matter of law "absent a clear statement to the contrary by the Pennsylvania Supreme Court" when no Pennsylvania case had addressed legal issue).

Plaintiffs do not meet these standards. First, many of their points are founded on decisions of federal district courts or on circuit court decisions other than those of the Second Circuit. Such decisions are not controlling and cannot be a proper foundation for striking affirmative defenses. *See, e.g.*, *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003) ("[C]lose or new questions of law should *not* be resolved on a motion to strike." (quoting *Mohegan Tribe v. State of Conn.*, 528 F. Supp. 1359, 1362 (D. Conn. 1982)); *see also, e.g.*, *Gregor*, 1995 WL 931093, at *4 ("Because of the uncertainty of the authority, the viability of laches and estoppel/waiver defenses" in the context of a case brought by a federal government receiver is "an open and disputed question of law that the Court declines to decide on this motion").[7] Second, Plaintiffs' cases do not address the

---

[7] The weight of authority in the Second Circuit has coalesced around the inapplicability of *Twombly* to affirmative defenses, and, thus, in assessing motions to strike affirmative defenses. *See Sibley*, 304 F.R.D. at 133 n.5 ("Given

particular issues in this case, including how the various equitable defenses may apply to their RICO claim or whether there exists case law supporting the imposition of a penalty under an assurance of discontinuance when the underlying substantive statute does not expressly provide such penalties to the Attorney General. A motion to strike should not be granted by citation to potentially distinguishable case law on an empty record.

**B.      Since Plaintiffs are the same as any other private litigant for purposes of their RICO claims, the Court should reject Plaintiffs' arguments that they are entitled to governmental exemption from the Equitable and C&D defenses as applied to those claims.**

Plaintiffs seeks to strike the Equitable, C&D, and certain AOC Defenses (the Thirteenth and Fifteenth, overlapping areas of the Equitable and C&D Defenses) based on assertions that these Defenses cannot apply to them as governments. As introduced above in Section I.B, however, Plaintiffs have no special governmental standing under RICO: they are simply "person[s]," 18 U.S.C. § 1961(3), seeking to vindicate an "injur[y]" to their asserted "business or property," *id.* § 1964(c). Thus, their argument for exemption from the pleaded defenses on the ground of any specific governmental status is invalid as applied to Plaintiffs' RICO claims. Indeed, Plaintiffs cite no cases supporting governmental exemption from the various defenses in § 1964(c) civil RICO claims.

The defenses are applicable to civil RICO claims, and it would be improper to strike them. *See, e.g.*, *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015) (holding *in pari delicto* available in defense of RICO because RICO is "silent as to the availability of any common-law defense" and thus permits courts to assume that Congress impliedly acknowledged *applicability* of common-law defenses in civil RICO cases); *Marin v. Evans*, No. CV-06-3090-RHW, 2007 WL 655456, at *3 (E.D. Wash. Feb. 27, 2007)

---

the wealth of recent caselaw holding that the *Twombly/Iqbal* plausibility standard does not apply to affirmative defenses, the Court questions whether this is even a disputed issue in this Circuit any longer.").

("Here, there is no case law on point that directly supports the argument that the Court should rule, as a matter of law, that the affirmative defense of failure to mitigate can never be asserted in a civil RICO claim. . . . Instead, these cases support the conclusion that the Court should consider the facts of the case in determining whether a defendant can assert an affirmative defense at trial."); *Hernandez v. Balakian*, No. CVF06-1383 (OWW/DLB), 2007 WL 1649911, at *6–8 (E.D. Cal. June 1, 2007) (likewise refusing to strike failure to mitigate damages as affirmative defense in civil RICO claim, and citing *Marin*).[8]

### C. Plaintiffs are likewise not entitled to governmental exemption from the Equitable or C&D Defenses based on their argument that FXG is directly liable for cigarette excise taxes under New York Tax Law § 471-A.

Plaintiffs argue that the Court should strike the Equitable and C&D Defenses (and, again, the overlapping Thirteenth and Fifteenth Defenses) because (1) Plaintiffs have unassailable "executive branch discretion" as to when, against whom, and in what forum (apparently federal or state) cigarette excise tax laws may be enforced and (2) FXG is, indeed, liable directly under New York's cigarette excise tax laws and thus subject to this purported absolute discretion. For several reasons, the Court should give no consideration to this argument.

First, it is disingenuous. For more than a year, Plaintiffs have tried to maintain in various ways that their injury or damages is some nebulous thing other than lost cigarette excise taxes to avoid their obvious causation and damages proof problems. This has never been supported by the Amended Complaint, and the Court has rejected those efforts. *See FedEx I*, 2015 WL 1013386, at *4, 9 n.13; Compl. ¶¶ 136, 143, 152. Having fought so hard against the idea that this

---

[8] The applicability of the various defenses to RICO—and particularly the applicability of a mitigation of damages defense—alone renders invalid Plaintiffs' argument regarding the Fifth and Sixth Defenses, a failure to mitigate or avoid damages and reduction of damages by the amounts that were collected or should have been collected from third parties, respectively. Mot. at 13. In addition, it would be extraordinary generally to strike the Fifth Defense, for failure to mitigate or avoid damages. *Cf. Raymond Weil, S.A.*, 585 F. Supp. 2d at 490 (denying "dismissal of the sixth affirmative defense—failure to mitigate damages—because we are having a damages trial, and a defendant can always allege failure to mitigate").

is a tax case—including representations as late as the pre-motion conference *for this motion* that "FedEx doesn't have to pay any taxes" and that FXG "do[es]n't have any tax responsibility," 6/3/15 Tr. at 7:22–23—it is disingenuous for Plaintiffs now to assert that FXG's defenses should fall based on the unassailability of "executive branch discretion" with respect to tax collection.

Second, while cigarette excise taxes are the measure of "damages" claimed, Plaintiffs should not be permitted to inject into this case the idea of FXG's own liability for a cigarette tax under the New York Tax Law. Plaintiffs do not assert a claim against FXG under New York's tax laws, as in other cases. *Compare* Compl.*, with* ECF No. 33 (Motion to Dismiss) at 34 n.25; *and* Mot. at 8–9*, and New York v. Grand River Enters.*, No. 14-cv-00910, Second Amended Complaint, ECF No. 76 at 33–34 (W.D.N.Y. Dec. 15, 2014) (asserting a claim for relief for a "Violation of N.Y. Tax Law §§ 471 and 471-e"). Moreover, Plaintiffs themselves have asserted—twice now—that theorizing their case based on direct liability under the New York Tax Law would involve the Court in state tax collection issues from which it should abstain under the Comity Doctrine.[9] Comity Doctrine or not, Plaintiffs are correct that this Court should not consider direct FXG liability for tax.

Plaintiffs' theory would impose a use tax on a carrier of goods that neither bought nor sold nor smoked any cigarettes allegedly at issue, a dubious proposition under even New York law. *Harder's Exp., Inc. v. State Tax Comm'n*, 418 N.Y.S.2d 199, 201 (N.Y. App. Div. 1979) ("A common carrier does not possess cigarettes for use as a consumer, but only for the purpose

---

[9] The main cases cited by Plaintiffs for invocation of the Comity Doctrine—*Joseph v. Hyman*, 659 F.3d 215 (2d Cir. 2011) and *Abuzaid v. Mattox*, 726 F.3d 311 (2d Cir. 2013)—both stand for the significantly more comprehensible position that "taxpayer-plaintiffs" cannot file suits "that contest taxpayer liability" in federal court, *Abuzaid*, 726 F.3d at 315, not that the doctrine precludes a *private defendant* from defending itself on grounds implicating state tax law when the *government plaintiff elects to sue in federal court under federal statutes. See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432 (2010) ("'If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system.'" (quoting *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480 (1977))). Plaintiffs' reading of these cases would not permit defendants to muster any defense at all if Plaintiffs simply elected to pursue tax-related claims in federal court, and their repeated references to the effect of the Comity Doctrine on "plaintiff[s]" is telling, *see* Mot. at 12 n.8.

of facilitating a sale."), *aff'd*, 410 N.E.2d 748 (1980). Moreover, the ordinary mechanisms for liquidating tax liability would need to be applied, which Plaintiffs clearly have not done. *See* N.Y. Tax Law § 478 (providing procedure for written notices of tax determination); NYC Admin. Code § 11-1310 (same).

Further, due to the preemption clause of the Federal Aviation Administration Authorization Act of 1994, the City and State may not deploy New York law against FXG in any way that relates to FXG's services, routes, or prices, as treating FXG directly responsible under state law for cigarette taxes for physical possession of cigarettes during carriage plainly would do. *See* 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(A); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371–73 (2008). And attempting to hold a common carrier liable for use tax on the goods it carries also raises serious concerns under at least the Commerce Clause. *See Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344 (1953) ("We do not understand the State to contend that it could lay a use tax upon mere possession of goods in transit by a carrier or vendor upon entering the State, nor do we see how such a tax could be consistent with the Commerce Clause."). These issues are far too substantial for Part I of Plaintiffs' brief regarding tax collection discretion to be a foundation for striking defenses.

Plaintiffs real theory is that FXG, by virtue of its alleged transportation, is *indirectly* liable for tax loss allegedly resulting from the alleged cigarette sales by the alleged shippers to their customers—a transaction in which FXG did not participate. As mere "person[s]" attempting recovery for their RICO claims, they should be entitled to no special executive exemption or deference from the strictures of § 1964(c). *See supra.* As for their CCTA claim, for which there is little background law, any notions of "executive discretion" should be grounded solely in interpretation of the CCTA as Congress modified it in 2006, and not on any assertion that FXG is

an excise cigarette taxpayer under the New York Tax Law, or that the City and State should be accorded executive discretion as though it were. In short, a talismanic invocation of "executive discretion" does not permit Plaintiffs to assert the sweeping proposition that principles of federalism mandate that they be able to proceed in *federal* court under *federal* causes of action, subject to no inquiry or questioning regarding "their own conduct," simply because they believe themselves entitled to such deference under an alternative *state law* version of the same suit in a *state* forum that they purposefully have elected *not* to pursue.[10]

### D. There are far too many open questions regarding the Equitable Defenses for the Court to strike them.

Plaintiffs assert that there are no open questions regarding the Equitable Defenses (and aspects of certain others), because Plaintiffs do not seek equitable relief, Plaintiffs are the "government," and due to doctrine-specific twists. Plaintiffs are wrong on all counts.

### 1. Plaintiffs seek equitable relief and, in any event, equitable defenses are often applied to claims seeking legal relief.

Plaintiffs argue that Equitable Defenses and the Fifteenth AOC Defense, to the extent it references equitable principles, as well as the Eighteenth C&D Defense, even though it references no equitable principles, are inapplicable because Plaintiffs do not seek equitable relief. Plaintiffs certainly seek equitable relief, however. *See supra* Sections I.A, I.C.

Further, "the equitable defenses are now generally available both at law and in equity." Douglas Laycock, *The Triumph of Equity*, 56 LAW & CONTEMP. PROBS. 53, 70 (Summer 1993).

---

[10] In any event, apart from two RICO cases merely repeating the proposition that taxes are "business or property" interests, Mot. at 7, Plaintiffs' purported "executive discretion" cases involve courts' concluding either (1) that the claims of *plaintiffs* suing government *defendants* failed because the plaintiffs were not entitled to particular government action or (2) that the government can choose whether to prosecute criminally and which charges to bring. These cases against governments and criminal prosecutions by governments are simply not relevant to, much less do they establish that there is "no substantial question of law" in, a civil action brought by government plaintiffs. Indeed, at points in Part I, Plaintiffs actually assert principles of executive discretion as though they were prosecutors in a criminal prosecution. Mot. at 6–7. This, however, is a civil case, and "selective" criminal prosecution is not the issue.

For instance, the Second Circuit recently upheld the use of "[t]he equitable defense of *in pari delicto*," *Pinter v. Dahl*, 486 U.S. 622, 632 (1988), on a claim—it happened to be a RICO claim— purely for damages. *See ABB AG*, 768 F.3d at 160. Moreover, both federal courts and New York courts have applied equitable defenses to legal claims. *See, e.g.*, *Kirk v. Hamilton*, 102 U.S. 68, 78 (1880) ("The doctrine of equitable estoppel is, as its name indicates, chiefly, if not wholly, derived from courts of equity, and as these courts apply it to any species of property, there would seem no reason why its application should be restricted in courts of law."); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 75–76 (2d Cir. 1980) (analyzing unclean hands defense to common law claims under New York law on the merits), *abrogated in part on other grounds by Peltz v. SHB Commodities*, 115 F.3d 1082, 1090 (2d Cir. 1997); *Roswell Capital Partners LLC v. Alternative Const. Technologies*, No. 08 CIV 10647(DLC), 2009 WL 222348, at *13 (S.D.N.Y. Jan. 30, 2009) ("Some New York courts have allowed the unclean hands defense in actions both at law and at equity." (citing *Smith v. Long*, 723 N.Y.S.2d 584, 586–87 (N.Y. App. Div. 2001) (allowing unclean hands defense against actions for specific performance and for damages)); *Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 95 CIV. 3722 (LLS), 1996 WL 520902, at *8 (S.D.N.Y. Sept. 12, 1996) ("Although INA cannot rely on a laches defense, its other equitable defenses—waiver, estoppel and unclean hands—may be asserted regardless of the legal nature of Milberg's counterclaims.").

## 2. Government immunity from equitable defenses is subject to exceptions.

For three Equitable Defenses—estoppel, laches, and unclean hands, as well as the Fifteenth AOC Defense to the extent that it references those equitable doctrines—Plaintiffs assert governmental immunities. Their arguments fail for three reasons.

First, the City has asserted in this action that it "remains a municipal corporation, not a sovereign," ECF No. 33 at 29 n.21, which alone should foreclose any special governmental

treatment. *See, e.g.*, *Bray v. City of New York*, 346 F. Supp. 2d 480, 492 (S.D.N.Y. 2004) ("Accordingly, this Court finds the City's application for a preliminary injunction is barred by laches."); *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966 (CBA), 2009 WL 705815, at *15 (E.D.N.Y. Mar. 16, 2009) (entertaining laches defense against City).

Second, courts have observed that equitable doctrines are not necessarily barred when asserted against the government, which is sufficient to withstand Plaintiffs' motion under both the no substantial question of fact and no substantial question of law prongs of the three-part test. *See, e.g.*, *Gregor*, 1995 WL 931093, at *4 (refusing to strike estoppel, laches, and waiver defenses against government "[b]ecause of the uncertainty of the authority, the viability of laches and estoppel/waiver defenses in this context is an open and disputed question of law that the Court declines to decide on this motion"); *United States v. Martell*, 844 F. Supp. 454, 458–59 (N.D. Ind. 1994) (refusing to strike waiver, estoppel, laches, and unclean hands defenses raised against government); *see also N.L.R.B. v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 893 (7th Cir. 1990) (Posner, J.) ("The principles of equitable jurisprudence are not suspended merely because a government agency is the plaintiff.").[11]

Third, Plaintiffs argue cases regarding the inapplicability of the unclean hands doctrine against the *federal* government, *see* Mot. at 16–18, and make a complex "deputization" argument, whereby they assert derivative immunity from an unclean hands defense under the CCTA because the federal government supposedly delegated enforcement authority to state and local governments under the CCTA. Such arguments are exactly the kind of arguments for "new law" that a court should avoid deciding on a motion to strike. *See Canadian St. Regis Band of*

---

[11] *See also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984); *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278–79 (2d Cir. 2005); *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000); *Atl. States Legal Found., Inc. v. New York State Dep't of Envtl. Conservation*, 119 A.D.3d 1172, 1173 (N.Y. App. Div. 2014); *Carney v. Newburgh Park Motors*, 444 N.Y.S.2d 220, 221 (N.Y. App. Div. 1981).

*Mohawk Indians ex rel. Francis*, 278 F. Supp. 2d at 325. In a similar vein, Plaintiffs do not cite a single estoppel case in which the estoppel at issue was used defensively in a suit brought by state or municipal plaintiffs seeking damages, injunctive relief, and civil penalties.

> **3. Plaintiffs' special justifications for the inapplicability of specific equitable defenses present substantial questions of law and fact that should not be determined on a motion to strike.**

Plaintiffs raise several additional, defense-specific grounds, but those grounds are not amenable to a motion to strike. First, Plaintiffs' *in pari delicto* and waiver claims fundamentally rest on questions that are not suitable for resolution on a motion to strike. *See, e.g.*, *Pinter*, 486 U.S. at 637 (observing that "a court's assessment of the relative responsibility of the plaintiff will necessarily vary depending on the facts of the particular case"); *ABB AG*, 768 F.3d at 162 (noting that "[c]omparison of the parties' degrees of fault . . . will often depend on findings of fact as to the circumstances of a plaintiff's involvement"); *Bradley v. Lehigh Valley R. Co.*, 153 F. 350, 353 (2d Cir. 1907) ("[W]hether there has been a waiver is a question of fact, depending upon the intention of the party against whom the waiver is asserted."). Moreover, Plaintiffs overstate the *in pari delicto* test by asserting that they did not themselves deliver or "cause[]" FedEx to deliver cigarettes; for the first prong of the *in pari delicto* test, Mot. at 19–20, the inquiry is simply whether Plaintiffs were actively involved in the unlawful activity at issue and bear equally substantial responsibility, not whether they singlehandedly committed or caused to be committed the alleged violations at issue. *See ABB AG*, 768 F.3d at 162. Nor do Plaintiffs clarify how the second prong of *in pari delicto*—the effect on law enforcement—applies to Plaintiffs' RICO claim, under which (1) the Second Circuit has expressly permitted the *in pari delicto* defense, *see id.* at 167–68, and (2) Plaintiffs sue as private plaintiffs.

*Second*, contrary to an argument posed by Plaintiffs, *see* Mot. at 15–16, courts have not invariably concluded that laches may not apply when a statute of limitations applies. For

example, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), the Supreme Court recently noted that, "[a]s to equitable relief, in extraordinary circumstances, laches may bar at the very threshold the particular relief requested by the plaintiff" even within the statutory limitations period, and further noted that "a plaintiff's delay can always be brought to bear at the remedial stage" and "in determining appropriate injunctive relief," *id.* at 1967. *See also, e.g.*, *Groesbeck v. Morgan*, 206 N.Y. 385, 389 (1912) ("The defense of laches in a suit for specific performance is to be considered wholly independent of the statute of limitations."); *Richardson v. Vajiradhammapadip Temple*, 807 N.Y.S.2d 392, 393 (N.Y. App. Div. 2005) (concluding that suit for specific performance was barred by laches notwithstanding its timeliness under statute of limitations). Moreover, Plaintiffs should not be able to foreclose laches when they seek appointment of a special monitor not clearly linked to any particular statutory cause of action, and to the extent they assert that any claim has no limitations period.

Finally, Plaintiffs' claims for immunity from the unclean hands and waiver defenses are complex requests for this Court to make new law or assume facts in Plaintiffs' favor. As discussed above, Plaintiffs' unclean hands argument rests on a theory of derivative immunity specific to the CCTA, in which Plaintiffs request the Court to "extend[]" to them the "inapplicability of certain affirmative defenses afforded federal enforcement agencies . . . ." Mot. at 18. Regarding the waiver defense, they attempt to apply the Second Circuit's reasoning upholding a *criminal* conviction in *Morrison*, along with the factual assertion that injunctions "severely constrained" the "State's tax enforcement," to conclude that there is no waiver here. Mot. at 20. (Plaintiffs also fail to explain the relevance of their unsupported assertion that their perceived lack of obligation to pursue third parties bars a waiver claim.) These complicated questions of law, derived from brand new theories—with waiver also involving an attempt to

argue Plaintiffs' *factual* intention via case law—should not be resolved on a motion to strike. *See Canadian St. Regis Band of Mohawk Indians ex rel. Francis*, 278 F. Supp. 2d at 325.

### E. The CCTA Quantity Defense is proper and has not been the subject of prior rulings.

Plaintiffs' misconstrue FXG's Eighth Defense as a repeat of its aggregation argument that was addressed by the Court in its March 9, 2015 Opinion. *See* Mot. at 21. FXG's defense merely reflects the statutory declaration that a CCTA violation must involve at least 10,001 cigarettes and asserts that *each* CCTA violation alleged by Plaintiffs must therefore involve at least 10,001 cigarettes, whether or not discrete shipments are aggregated to arrive at that per-violation quantity. *See* 18 U.S.C. § 2341(2) (defining contraband cigarettes as a "quantity in excess of 10,000 cigarettes"). FXG's Eighth Defense merely pleads that, at the very least, each CCTA violation alleged must involve more than 10,000 cigarettes.

Moreover, FXG's assertion of this defense merely flags this legal issue for Plaintiffs and the Court; it does not shift the burden from Plaintiffs to establish the elements of each CCTA violation for which they seek damages and penalties, including that the statutory threshold has been met. *See supra* Section I.A. Given the statutory requirement that a violation involve more than 10,000 cigarettes, Plaintiffs cannot demonstrate that there is "no substantial question of law that might allow the defense to succeed."

### F. FXG's Tenth and Eleventh AOC Defenses, based on the unenforceability of the AOC, raise substantial issues of law and should be allowed to proceed.

As this Court held in its March 9, 2015 Opinion, neither Plaintiff was authorized to enforce NYPHL § 1399-ll pursuant to its civil penalty provision prior to September 27, 2013. *FedEx I*, 2015 WL 1013386, at *10–11. That means that at the time the AOC was signed in February 2006, the Attorney General lacked authority to commence a civil action against FXG

under NYPHL § 1399-ll and lacked authority to seek civil penalties from FXG for any alleged violations of that statute.[12]   Both of FXG's defenses derive from these undeniable facts.[13]

### 1.   FXG's Tenth Defense is Based on a Plain Reading of the New York Executive Law and Has Merit

FXG's Tenth Defense asserts that the AOC is not enforceable because the Attorney General lacked the authority to commence a civil action under NYPHL 1399-ll at the time it was signed.   An Assurance of Discontinuance, such as the AOC here, is authorized by statute in lieu of a civil action "[i]n any case where the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state."   N.Y. Exec. Law § 63(15).   The AOC here purports to be based on the authority conferred by § 63(15), in lieu of a civil action under NYPHL § 1399-ll. *See* AOC at 4  ("Whereas, the Attorney General accepts the following assurances pursuant to EL § 63(15) in lieu of commencing a civil action against FedEx in connection with the matters that were the subject of the investigation described in Paragraphs 6 and 7 of this Assurance of Compliance, including any alleged past violations of PHL § 1399-ll").   However, at the time the AOC was offered to FXG by the Attorney General, it was without authority to institute a civil action to enforce § 1399-ll.  *See FedEx I*, 2015 WL 1013386, at *11.

---

[12] The State recognized its lack of enforcement authority under NYPHL 1399-ll mere months before signing the AOC:  In May 2005, in an action entitled *Smith, a/k/a Shinnecock Smoke Shop v. Spitzer*, the Attorney General asserted with respect to NYPHL § 1399-ll, that "[t]he State Commissioner of Health, *not the Attorney General*, has civil enforcement authority under the Statute." Respondent's [New York Attorney General Elliot Spitzer's] Memorandum of Law in Answer to the Petition and In Support of Objections in Point of Law at 8, *Smith, a/k/a Shinnecock Smoke Shop v. Spitzer*, No. 2494-05 (Sup. Ct., Albany County, May 5, 2005) (emphasis added), *available at FedEx II*, No. 14-cv-8985 (S.D.N.Y.), ECF No. 33-1.  *See also Smith v. Spitzer*, No. 2494/05, at 4 (RJI No. 01-05-ST5602) (N.Y. Sup. Ct., Albany County, June 22, 2005) (Clemente, J.), *available at id.* ECF No. 33-2, *aff'd* 28 A.D.3d 1047 (3d Dept. 2006) (adopting Attorney General position). The State re-affirmed that it lacked enforcement authority in August 2013, when it urged that the 2013 amendment to the NYPHL be adopted, noting that "under current law, only the Commissioner of Health is authorized to impose a civil penalty for violations of [§ 1399-ll]. This bill amends section 1399-ll to authorize the Attorney General to recover civil penalties for violations of [section 1399-ll]." Memorandum from Harlan A. Levy, Counsel to the Attorney General, to Mylan L. Denerstein, Counsel to the Governor (Aug. 13, 2013), reprinted in N.Y. Bill Jacket 2013, ch. 342, at 19.

[13] In the companion case to this one, *City of New York v. FXG Package System, Inc.*, docket number 14-cv-8985 ("*FedEx II*"),  FXG has moved to dismiss the State's claim arising under the AOC for these reasons and for the reasons addressed in Section III.G, *infra*.  *See FedEx II*, ECF No. 34.

Because the Attorney General lacked the underlying authority under § 1399-ll, it could not lawfully enter into the AOC "in lieu of commencing a civil action" under that statute. As a result, and as stated in FXG's Tenth Defense, the AOC exceeded the Attorney General's statutory authority and is unenforceable. *Cf. Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 347 (S.D.N.Y. 2014) (recognizing that the validity of an Assurance derives "pursuant to his [the Attorney General's] authority under New York Executive Law § 63(15)").

The cases cited by Plaintiffs miss the point entirely. Those cases merely concern the Attorney General's authority to investigate and bring an action under Executive Law § 63(12) for repeated violations of law. *See* Mot. at 22–23. However, the Attorney General's authority under § 63(12) is, as the State concedes, "a different issue" from the Attorney General's lack of enforcement authority under NYPHL § 1399-ll and, thus, has nothing to do with the validity of the AOC. Mot. at 22 n.15. Not surprisingly, none of the cases Plaintiffs cite supports the incongruous notion that the Attorney General has authority under § 63(15) to enter into an Assurance in lieu of a civil action that it could not bring. Just as the Attorney General could not have brought a civil action under NYPHL § 1399-ll, it could not enter into an Assurance in lieu of such action. *See* N.Y. Exec. Law § 63(15).

Plainly, Plaintiffs have not demonstrated that no colorable argument exists with respect to the AOC's validity pursuant to Exec. Law § 63(15).

## 2. FXG's Eleventh Defense Constitutes a Legitimate Challenge to the Validity of the AOC's Penalty Provision

Even if the AOC itself is found to be enforceable notwithstanding FXG's defenses under Executive Law § 63(15) (*see infra* Section III G-H, *supra*) and ordinary contract principles (see Section III.G, *infra*), the penalty provision is not enforceable. As articulated in FXG's Eleventh

Defense, the penalty provision "is beyond the permissible scope of relief in an Assurance under Executive Law § 63 and/or New York contract law."  ECF No. 101 at 22.

### a.    The Executive Law Does Not Authorize the Imposition of Penalties

No authority for a penalty provision is provided by Executive Law § 63(15).  Rather, that section provides that an Assurance "may include a stipulation for the voluntary payment by the alleged violator of the reasonable costs and disbursements incurred by the attorney general during the course of his investigation."  N.Y. Exec. Law § 63(15).  Executive Law § 63(12) also does not authorize the recovery of civil penalties.  *See id*. § 63(12) (authorizing the Attorney General to investigate violations of law and seek an injunction, restitution and damages for repeated or persistent fraud or illegality); *cf. State by Abrams v. Solil Mgmt. Corp*., 128 Misc. 2d 767, 773 (N.Y. Sup. Ct.), *aff'd*, 114 A.D.2d 1057 (N.Y. App. Div. 1985) (punitive damages and treble damages unavailable because "Executive Law Section 63(12) does not provide for either of these extraordinary remedies").  Because the Executive Law does not provide an independent source of authority for the recovery of civil penalties, such authority must come, if at all, from the underlying substantive statute itself.  Here, however, the Attorney General lacked authority to enforce the underlying substantive statute at all and was not empowered to seek or recover civil penalties.[14]

For this reason, the cases Plaintiffs rely on are inapposite.  All of Plaintiffs' cases under § 63(12) concern penalties imposed *where the underlying substantive claim expressly authorized an action by the Attorney General*.  All of those cases concern alleged violations of New York's General Business Law that the Attorney General is expressly empowered to enforce.  For

---

[14] Plaintiffs elide the critical distinction between authority under § 63(12) and authority under the substantive statute when they argue that the Executive Law "clearly empowers the Attorney General to seek penalties where an underlying statute provides for penalties, as does PHL § 1399-ll."  Mot. at 23.  Of course, NYPHL § 1399-ll did not permit the Attorney General to directly enforce the statute, or seek penalties, at the relevant time.

example, Plaintiffs rely predominantly on cases involving New York's consumer protection laws, Gen. Bus. Law Article 22-a, for which the Attorney General is expressly authorized to commence an action and to recover civil penalties. *See* N.Y. Gen Bus. Law § 350-d (providing that violators of article are liable for civil penalties, which "may be recovered in a civil action brought by the attorney general).[15] Plaintiffs also rely on cases under new York's price-gouging statute, which similarly authorizes the Attorney General to bring a civil action and provides for penalties. *See* N.Y. Gen. Bus. Law § 396-r(4) ("[T]he attorney general may apply . . . for an order enjoining or restraining commission or continuance of the alleged unlawful acts. In any such proceeding, the court shall impose a civil penalty . . . .).[16]

The cases Plaintiffs cite in which penalties were imposed pursuant to an Assurance are similarly inapplicable here, as those cases also concern substantive statutes providing the Attorney General with enforcement authority. *See Geiger v. Town of Greece*, No. 07-CV-6066 CJS, 2008 WL 728471, at *1 (W.D.N.Y. Mar. 18, 2008) (Assurance in lieu of action under consumer fraud statute); *People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.*, No. 02-1020, 2003 WL 21649689, at *1 (N.Y. Sup. Ct. July 2, 2003) (unreported decision)

---

[15] *People ex rel. Cuomo v. Nationwide Asset Servs., Inc.*, 26 Misc. 3d 258 (N.Y. Sup. Ct. 2009) (penalties imposed in action brought under Executive Law § 63(12) and General Bus. Law § 350-c); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105 (N.Y. 2008) (same; Gen. Bus. Law §§ 349, 350); *People v. Veleanu*, 89 A.D.3d 950 (N.Y. App. Div. 2011) (same; Gen. Bus. Law § 349); *People v. Wilco Energy Corp.*, 284 A.D.2d 469 (N.Y. App. Div. 2001) (same; Gen. Bus. Law §§ 349, 350); *People by Koppell v. Empyre Inground Pools Inc.*, 227 A.D.2d 731 (N.Y. App. Div. 1996) (same); *People, ex rel. Cuomo v. Gagnon Bus Co.*, 30 Misc. 3d 1225(A) (N.Y. Sup. Ct. 2011) (unpublished) (same); *People v. Levy*, 2011 N.Y. Misc. LEXIS 2519 (N.Y. Sup. Ct. 2011) (same; Gen. Bus. Law § 349).

[16] *People by Abrams v. Two Wheel Corp.*, 71 N.Y.2d 693 (N.Y. 1988) (action brought under Executive Law § 63(12) alleging violations of General Business Law § 396-r); *People ex rel. Vacco v. Beach Boys Equip. Co.*, 273 A.D.2d 850 (N.Y. App. Div. 2000) (same). Plaintiffs' other cases similarly involve sections of the General Business Law expressly authorizing suit by the Attorney General. *See People ex rel. Vacco v. World Interactive Gaming Corp.*, 185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) (action brought under Executive Law § 63(12), and, *inter alia,* the Martin Act, Gen. Bus. Law § 353, providing for an action by the Attorney General for securities fraud); *People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc.*, 80 N.Y.2d 803 (N.Y. 1992) (action brought under Executive Law § 63(12) and Gen. Bus. Law § 630, authorizing an action by the Attorney General with respect to violations of laws relating to health club services).

(Assurance resolving claims for false advertising under consumer fraud statute and N.Y. Veh. & Traf. Law § 417-a (authorizing action by Attorney General and imposition of penalties)).[17]

The instant case is markedly different from the ones cited by Plaintiffs. Here, the Attorney General had no authority to bring a civil action under NYPHL § 1399-ll. Since he could not sue to recover penalties directly under NYPHL § 1399-ll, he also could not properly recover them under the Executive Law.

### b. The Penalty Provision is Unenforceable Under New York Contract Law

Plaintiffs do not even address the second prong of FXG's defense; namely that the penalty provision in the AOC is unenforceable under ordinary contract principles. Contractual provisions containing stipulated payments for violations of the agreement are enforceable only when those stipulated payments are designed to approximate the actual damages resulting from a breach. *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 70 (2d Cir. 2004) ("[A] contractually agreed upon sum for liquidated damages will be sustained where . . . the sum stipulated is not plainly disproportionate to the probable loss."); *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1227 (N.Y. 1999) (same). By contrast, where a stipulated damage provision constitutes a penalty imposed for breach, the provisions are unenforceable. *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.,* 41 N.Y.2d 420, 424 (1977); *172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 24 N.Y.3d 528, 536 (2014). Here, the AOC's stipulated payments, tellingly termed "penalties," AOC at 8, in no way attempt to approximate the damages to the State that would result from FXG's violation. Indeed, the State does not

---

[17] Plaintiffs also rely on *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 157 (2d Cir. 2011) and *Poughkeepsie Chevrolet, Inc. v. Jeff Weaver's 96 Hour Super Sale, Inc.,* 779 N.Y.S.2d 512 (N.Y. App. Div. 2004), although neither decision involves an Assurance at all; both cases merely make mention of the existence of an Assurance. In any event, even the Assurances referenced in those cases concerned substantive claims that the Attorney General had express authority to enforce using civil penalties. *See MBIA, supra* (Martin Act violations; Gen. Bus. Law § 353); *Poughkeepsie Chevrolet, supra* (false advertising violations; Gen Bus. Law § 350).

allege any actual damage resulting from the alleged violation of the AOC, or the NYPHL, and cigarette taxes (or alleged tax losses) are not implicated by these claims.

### G. FXG's Amended Twelfth Defense, an AOC Defense, is pled with particularity and is meritorious.

As stipulated between the parties, FXG filed an amended Answer and Defenses that disposes of Plaintiffs' argument for dismissal. As amended, FXG's Twelfth defense alleges in particularity that the AOC is unenforceable because it is not supported by consideration and because it was procured through misrepresentations by the Attorney General's Office as to its authority. *See* ECF No. 101 at 22–26.

### 1. FXG has Adequately Pled the AOC's Formation Defects

It is axiomatic that consideration is a cornerstone of a binding contract and it is entirely absent here. *See, e.g.*, *Murray v. Northrop Grumman Info. Tech., Inc.,* 444 F.3d 169, 178 (2d Cir. 2006) (under New York law, consideration is an element required "of any valid contract"); *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, 38 F. Supp. 2d 326, 337 n.2 (S.D.N.Y. 1999) ("It is a fundamental principle of contract law that 'consideration is a necessary prerequisite to a valid contract.'"). The only consideration provided by the Attorney General for the AOC was his promise to forbear from bringing a civil action under § 1399-ll—a promise that was entirely illusory and known by the Attorney General's Office to have been illusory—in light of its inability to bring such an action. The Attorney General's promise to forego commencing an action that he could not lawfully bring does not constitute valid consideration; "the surrender of a nonexistent legal right is insufficient consideration." *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.,* 929 F. Supp. 2d 460, 470 (W.D. Pa. 2013); *Hartman v. Harris*, 810 F. Supp. 82, 85 (S.D.N.Y. 1992) ("[I]f [the consideration] is a forbearance, it must generally be

to refrain from doing that which a party has a *legal* right to do." (second alteration in original)), *aff'd*, 996 F.2d 301 (2d Cir. 1993).

Plaintiffs' brief confirms the lack of any other form consideration for the AOC, as it boldly and unequivocally renounces the existence of any obligations by the State. *See, e.g.*, Mot. at 26 ("[T]he Assurance does not require any conduct on behalf of the State . . . ."); *id*. ("[T]here is no affirmative obligation on the Attorney General's Office to notify FedEx about illegal shippers."); *id*. at 27 ("The AOC . . . fails to provide for any affirmative obligations on behalf of the Attorney General . . . ."); *id*. ("No performance was explicitly required by the Attorney General under the contract, and no such performance can be read into it.").[18] In the absence of valid consideration, the AOC is not enforceable, and this defense should stand.

### 2.    FXG has Pled with Particularity its Misrepresentation Defense

FXG has met Plaintiffs' claim that its misrepresentation defense lacks particularity with an amended pleading that contains specific and detailed information of the "who, what, when, and where" of its defense.  As particularized in the Twelfth defense, FXG contends that the AOC should not be enforced against it because the Attorney General's Office materially misrepresented its authority pursuant to NYPHL § 1399-ll, including its ability under the statute to commence a civil action and recover penalties, while simultaneously concealing its own admissions elsewhere concerning its lack of such authority.  As alleged in FXG's defense, the misrepresentations were made both in the AOC itself and in separate communications to FXG maintaining that the Attorney General would and could seek penalties under § 1399-ll if the AOC were not signed.  FXG's detailed recitation of the facts underlying its misrepresentation certainly demonstrates a substantial factual basis for the defense.

---

[18] Similarly, in response to the Court request that the state "tell me generally, what are the State's responsibilities under the AOC?" counsel for the State responded definitively, "there are none."  6/3/15 Tr. at 15.

There is also a substantial legal basis for FXG's claim that the Attorney General materially misrepresented its authority under § 1399-ll. A false representation of the law, if represented as a "sincere opinion," may, if reasonably relied on, be the basis for a misrepresentation claim. *AIU Ins. Co. v. Deajess Med. Imaging, P.C.*, 882 N.Y.S.2d 812, 820 (N.Y. Sup. Ct. 2009) ("A misrepresentation as to the law is more likely to induce reasonable reliance where it is made by one possessing superior knowledge as to the subject of the representation[.]" (internal citation omitted)); *Nat'l Conversion Corp. v. Cedar Bldg. Corp.*, 23 N.Y.2d 621, 629 (N.Y. 1969) ("[I]n the proper circumstances there may indeed be reliance on a fraudulently expressed statement of the law.").[19]

### H.    FXG's Thirteenth AOC Defense has merit.

In the event that AOC is held enforceable and the State's claim for penalties under the AOC proceeds, FXG's Thirteenth Defense asserts that such penalties should be "barred or limited" based on the State's failure to do what the parties undeniably contemplated it would do under the AOC; namely, promptly notify FXG when it learned that FXG's services were being used to ship cigarettes unlawfully.[20]

FXG reasonably understood that the AOC was a two-way agreement, under which the State undertook to notify FXG of improper shipments so that it could take appropriate steps to halt such deliveries. Indeed, a key component of the AOC was to put in place a cooperative framework between the State and FXG to cease unlawful cigarette shipments. Thus, the pre-execution e-mail from Vincent Esposito of the Attorney General's Office dated October 24, 2005 states that "the AOD [sic] asks FedEx to cooperate and assist the Attorney General in *his* effort

---

[19] In light of the statements made to the court in the *Smith* action that the Attorney General lacked enforcement authority under the statute, there is ample basis to believe that the Attorney General's Office knew that its contrary statements to FXG were false when made. See *supra* at 29 n.12.

[20] As noted earlier, FXG's pending motion in *FedEx II* seeks dismissal of the State's AOC claim on the grounds that the AOC itself, or alternatively, the penalty provision, is unenforceable. *See FedEx II*, ECF No. 34.

to stop illegal cigarette sales and reduce teen smoking[.]" Pahmer Dec., Ex. 1 at 2 (emphasis added). Similarly, the press release announcing the execution of the AOC praises the agreement as "another example of private industry joining with law enforcement" and notes that "FedEx will also work with the Attorney General's Office to root out shippers that traffic in illegal cigarette sales." *Id.*, Ex. 2 at 1. Indeed, three years before the Attorney General joined this lawsuit to assert claims with respect to additional shippers, including CD2U, ███████████

████████████████████████████████████████████████████████

███. In an email exchange in April 2011 between counsel for the City and State ██████████

██████████████████████████████, Ms. Biberman notes that ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████." *Id.*, Ex. 3 at 1. ███

████████████████████████████████████████████████████████

████████████████████████████████████████." *Id.*

████████████████████████████

    As now argued by the State, cooperation was apparently required to go only one-way. The State's argument is premised on the assertion that it had no affirmative obligations under the AOC because, it claims, nothing in the AOC expressly mandates such notification. *See, e.g.,* Mot. at 26. However, the covenant of good faith and fair dealing, which is implied in every agreement, "encompass[es] any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 298–99 (S.D.N.Y. 2012) (internal quotation marks omitted); *Diamond Servs. Mgmt., LLC v. Fable Jewelry Co.*, No. 12 CIV 3543, 2012 WL 5871616, at *4 (S.D.N.Y. Nov. 20, 2012) ("[T]he covenant of good faith and fair dealing provides a means for a promisee

to vindicate its rights when the promisor has violated the spirit, if not the letter of [a] contract." (internal quotation marks omitted)).[21]  The fact that the AOC contains a merger clause "does not prevent a court from inferring a covenant of good faith and fair dealing[.]"  *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08CIV9116(PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009); *CCM Rochester, Inc. v. Federated Investors, Inc.*, No. 14-CV-3600 VEC, 2014 WL 6674480, at *5 (S.D.N.Y. Nov. 25, 2014) (denying motion to dismiss claim for breach of implied duty of good faith notwithstanding integration clause).

The covenant of good faith and fair dealing is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."  *P.T. & L. Contracting Corp. v. Trataros Const., Inc.*, 29 A.D.3d 763, 764 (N.Y. App. Div. 2006) (quoting *Aventine Inv. Mgt. v. Canadian Imperial Bank of Commerce,* 265 A.D.2d 513, 514 (N.Y. App. Div. 1999)); *Pleiades Publ'g, Inc. v. Springer Sci. + Bus. Media LLC*, 117 A.D.3d 636, 637 (N.Y. App. Div. 2014) (affirming denial of motion to dismiss claim for breach of covenant notwithstanding the discretion given to defendant in the agreement because "defendant did not have the right to exercise that discretion in such a way as to frustrate plaintiff's rights under the agreement").

Here, if the State had notified FXG about unlawful shipments by the four shippers, FXG could have ceased such shipments, thereby cutting off potential liability under the AOC (and otherwise).  Indeed, discovery to date has shown that: i) the State did undertake to notify FXG of certain potentially unlawful shipments; and ii) when it did, FXG took appropriate action.   For example, the documents produced by the State demonstrate that in April 2009, the NYAG reached out to FedEx ████████████████████████████████████

---

[21] This Court preliminarily seemed to recognize that the notice provision of the AOC "sounds like an affirmative obligation" on the part of the Attorney General. 6/3/15 Tr. at 16.



" Pahmer Dec., Ex. 4. The documents also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, Ex. 5. Again, in June 2011, the Attorney General ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.*, Ex. 6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, Ex. 7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The same occurred years earlier when the City ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, Ex. 8.

Under these circumstances, it cannot be said that FXG's defense has no basis in law or fact. Moreover, Plaintiffs not only do not argue, but could hardly establish, prejudice with respect to this defense, particularly since they themselves have sought broad discovery concerning the AOC. Even before the State joined this action and asserted a claim under the AOC, the City sought "[a]ll documents concerning the negotiation of the Assurance of Compliance that You entered into with the New York State Attorney General on or about February 3, 2006." *Id.*, Ex. 9 at Request 29. The City also requested "[a]ll documents concerning the Assurance of Compliance that You entered into with the New York State Attorney General on or about February 3, 2006." *Id*., at Request 30. Plaintiffs have also noticed a 30(b)(6) deposition on a breadth of topics purportedly relating to, but going far beyond, the AOC. *Id*., Ex. 10. Given the breadth of discovery concerning the AOC by Plaintiffs, they should not be heard to complain about prejudice from FXG's reciprocal request for discovery concerning the AOC.

## I.     The Indian Law Defense is far from settled.

Plaintiffs fail to demonstrate that the Indian Law Defense should be stricken. The Defense itself simply states that Indian law may bar Plaintiffs' claims *if* FXG can avail itself of that law. Indian law is a complex area full of treaty considerations and side deals with Tribes; Plaintiffs' own brief demonstrates that the application of cigarette taxes in ways implicating Indian law has been hotly litigated, and even enjoined, over many years, see Mot. at 9–11; Plaintiffs cite only district court or out-of-circuit authority, or authority from other contexts, for key propositions, *id.* at 31–32; and discovery has revealed that even after the 2011 lifting of injunctions Plaintiffs discuss, the State still cautiously differentiated "native brand" cigarettes in its enforcement policies for reasons that remain somewhat unclear. If the modestly framed Indian Law Defense "is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored" without striking it. *Van Schouwen*, 782 F. Supp. at 1245. If it may be relevant, then since no prejudice has been asserted, it should be tested later. *Id.*

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion should be denied. Alternatively, it should be taken under consideration until the summary judgment stage.

Dated:  August 14, 2015

/s/   Joel Cohen
Joel Cohen
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038
(212) 806-5400

Kenneth D. Sansom
SPOTSWOOD SANSOM & SANSBURY LLC
One Federal Plaza
1819 Fifth Avenue North, Suite 1050
Birmingham, AL  35203
(205) 986-3622
*Attorneys for Defendant FedEx Ground Package System, Inc.*

-40-