UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

THE CITY OF NEW YORK and THE PEOPLE OF THE
STATE OF NEW YORK,

                              Plaintiffs,

                                                    Civ. No. 13-cv-9173-ER-KNF

-against-

FEDEX GROUND PACKAGE SYSTEM, INC. and
FEDERAL EXPRESS CORP.,

                              Defendants.

---------------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW OF PLAINTIFFS THE CITY OF NEW YORK AND
THE PEOPLE OF THE STATE OF NEW YORK IN FURTHER SUPPORT OF THEIR
MOTION TO STRIKE AFFIRMATIVE DEFENSES**

                    **ZACHARY W. CARTER**
                    Corporation Counsel of the
                      City of New York
                    *Attorney for Plaintiff The City of New York*
                    100 Church Street, Room 20-99
                    New York, New York 10007
                    (212) 356-2032

                    **ERIC T. SCHNEIDERMAN**
                    Attorney General of the State of New York
                    *Attorney for Plaintiff The People of the State
                      of New York*
                    120 Broadway, 3rd Floor
                    New York, New York 10271
                    (212) 416-6699

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    FEDEX'S FOURTH, FIFTH, SIXTH, FIFTEENTH,
      SEVENTEENTH, AND EIGHTEENTH DEFENSES FAIL ON
      GROUNDS OF EXECUTIVE DISCRETION ............................................................2

II.   FEDEX'S EQUITABLE DEFENSES ALSO FAIL ON GROUNDS
      OF EXECUTIVE DISCRETION. ..............................................................................8

III.  THE FIFTH AND SIXTH DEFENSES SHOULD BE STRICKEN.......................10

IV.   THE EIGHTH AFFIRMATIVE DEFENSE SHOULD
      BE STRICKEN..........................................................................................................11

V.    FEDEX'S AFFIRMATIVE DEFENSES RELATING TO THE
      AOC SHOULD BE STRICKEN; THE AOC AND PENALITIES
      PROVIDED THEREIN ARE ENFORCEABLE UNDER
      EXECUTIVE LAW § 63 AS A MATTER OF LAW ...............................................12

      A.   FedEx's Tenth Defense Should Be Stricken: The State Had
           Authority Under Executive Law § 63(12) To Enforce
           Violations of NYPHL § 1399-*ll* At The Time The Assurance of
           Compliance Was Executed ...............................................................................12

      B.   FedEx's Eleventh Defense Should Be Stricken As A Matter Of
           Law Because The Attorney General Is Empowered Under
           Executive Law § 63 To Seek Penalties Set Forth In An
           Assurance of Compliance .................................................................................14

           1.   Executive Law § 63 Authorizes The Attorney General To
                Seek Penalties And To Include Them In The AOC .................................14

           2.   Ordinary Contract Principles Do Not Preclude The
                Penalties Set Forth In The AOC..............................................................15

      C.   Despite Its Re-Pleading, FedEx's Twelfth Defense Still Fails ........................17

      D.   FedEx's Thirteenth Defense Lacks Any Basis in Law or Fac .........................17

VI.   THE CITY AND STATE HAVE DEMONSTRATED PREJUDICE .....................19

CONCLUSION........................................................................................................................25

**Cases**                                                                                                  **Page(s)**

*Advance Pharm., Inc. v. United States*,
  391 F.3d 377 (2d Cir. 2004)...................................................................................................23

*AG of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir. 2001)..................................................................................................6, 7

*Alcorn County v. U.S. Interstate Supplies*,
  731 F.2d 1160 (5th Cir. 1984) ...............................................................................................5

*Bekhor v. Josephthal Group, Inc.*,
  2000 U.S. Dist. LEXIS 14924 (S.D.N.Y. Oct. 13, 2000) .....................................................18

*CIBC Bank and Trust Co., Ltd. (Cayman) v. Banco Cent.
  do Brasil*, 886 F. Supp. 1105, 1118 (S.D.N.Y. 1995)..........................................................18

*City of New York v. Golden Feather Smoke Shop, Inc*.,
  597 F.3d 115 (2d Cir. 2010)....................................................................................................6

*City of New York v. Gordon*,
  1 F. Supp. 3d 94, 103 (S.D.N.Y. 2013)..................................................................................10

*City of New York v. LaserShip, Inc.*,
  33 F. Supp. 3d 303, 313 (S.D.N.Y. 2014)..............................................................................10

*City of New York v. Milhelm Attea*,
  2012 U.S. Dist. LEXIS 116533 (E.D.N.Y. Aug. 17, 2012).........................................1, 7, 9, 23

*City of New York v. Smokes-Spirits.com, Inc.*,
  541 F.3d 425 (2d Cir. 2008),
  *rev'd on other grounds by Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010).............5

*Coach, Inc. v. Kmart Corps*.,
  756 F. Supp. 2d 421 (S.D.N.Y. 2010)....................................................................................20

*Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*,
  929 F. Supp. 2d 460 (W.D. Pa. 2013)....................................................................................17

*European Cmty. v. RJR Nabisco, Inc*.,
  355 F.3d 123 (2d Cir. 2004)....................................................................................................6

*European Cmty. v. RJR Nabisco, Inc.*,
  764 F.3d 129 (2d Cir. 2014)....................................................................................................4

*Geiger v. Town of Greece*,
  2008 U.S. Dist. LEXIS 21190 (W.D.N.Y. Mar. 18, 2008)....................................................17

**Cases**                                                                                               **Page(s)**

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)........................................................................18

*Harder's Express, Inc. v. N.Y. State Tax Com.*,
    70 A.D.2d 1010 (3d Dep't 1979)..........................................................................10

*Hernandez v. Balakian*,
    2007 U.S. Dist. LEXIS 43680 (E.D. Cal. June 1, 2007)........................................11

*Honduras v. Philip Morris Cos.*,
    341 F.3d 1253 (11th Cir. 2003) ..............................................................................6

*Illinois Dep't of Revenue v. Phillips*,
    771 F.2d 312 (7th Cir. 1985) ..............................................................................4, 5

*James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. v. State, Office of Atty. Gen.*,
    27 Misc. 3d 1223(A), 910 N.Y.S.2d 762 (Sup. Ct. N.Y. Cnty. 2010)....................17

*Jones v. Beame*,
    45 N.Y.2d 402 (1978) ............................................................................................7

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
    2009 U.S. Dist. LEXIS 9207 (S.D.N.Y. Feb. 9, 2009)..........................................18

*United States v. Manhattan-Westchester Med. Servs.*,
    2008 U.S. Dist. LEXIS 5819 (S.D.N.Y. Jan. 29, 2008) ........................................25

*Marin v. Evans*,
    2007 U.S. Dist. LEXIS 13492 (E.D. Wash. Feb. 27, 2007) ..................................11

*MBB Realty Ltd. P'ship v. A&P (In re A&P)*,
    509 B.R. 430 (S.D.N.Y. 2014)..............................................................................17

*People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.*,
    2003 N.Y. Misc. LEXIS 881 (Sup. Ct. N.Y. Cnty. July 2, 2003)..........................17

*Pinter v. Dahl*,
    486 U.S. 622 (1988)................................................................................................9

*Proteus Books, Ltd. v. Cherry Lane Music Co.*,
    873 F.2d 502 (2d Cir. 1989)..................................................................................18

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014)....................................................................................8

**Cases**                                                                **Page(s)**

*Rodriguez v. It's Just Lunch Int'l*,
2012 U.S. Dist. LEXIS 51687 (S.D.N.Y. Apr. 6, 2012)........................................16

*S.E.C. v. McCaskey*,
56 F. Supp. 2d 323 (S.D.N.Y. 1999)................................................18, 20, 21

*S.E.C. v. Toomey*,
866 F. Supp. 719 (S.D.N.Y. 1992)...................................................21, 25

*State v. Solil Mgmt. Corp.*,
128 Misc. 2d 767 (Sup. Ct. N.Y. Cnty. 1985) ......................................14

*Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*,
41 N.Y.2d 420 (1977) ................................................................16

*In re United Merchants & Mfrs., Inc.*,
674 F.2d 134 (2d Cir. 1982)..........................................................15

*United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
369 F.3d 34 (2d Cir. 2004)...........................................................15

*United States v. Angelilli*,
660 F.2d 23 (2d Cir. 1981)............................................................3

*United States v. Brock-Davis*,
504 F.3d 991 (9th Cir. 2007) .......................................................11

*United States v. Global Distribs.*,
498 F.3d 613 (7th Cir. 2007) ........................................................23

*United States v. Morrison*,
686 F.3d 94 (2d Cir. 2012)............................................................7

*United States v. Rice*,
38 F.3d 1536 (9th Cir. 1994) .......................................................11

*United States v. Suarez*,
253 F. Supp. 2d 662 (S.D.N.Y. 2003)................................................11

*Warner Theatre Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co.*,
1997 U.S. Dist. LEXIS 17217 (S.D.N.Y. Nov. 4, 1997)..........................18

*Wayte v. United States*, 470 U.S. 598 (1985)......................................20

*Willets Point Indus. & Realty Ass'n v. City of New York*,
2009 U.S. Dist. LEXIS 110181 (E.D.N.Y. Nov. 25, 2009)......................7, 8

**Cases** **Page(s)**

**Statutes and Rules**

18 U.S.C. § 1961 ...........................................................................................................4

Executive Law § 63 ............................................................................... *passim*

New York Public Health Law § 1399-*ll* ............................................. *passim*

Fed. R. Civ. P. 12(f) ...............................................................................11, 20, 22, 25


**Other Authorities**

Rakoff & Goldstein, RICO: Civil and Criminal Law and Strategy (2014) .................................4, 9

*Restatement (Second) of Contracts* § 212 (1981) .........................................................18

## PRELIMINARY STATEMENT

Liability in this action turns solely on proof that FedEx knowingly delivered unstamped cigarettes in New York State (a CCTA and RICO violation) or delivered any cigarettes to unauthorized recipients (a violation of the Assurance of Compliance ("AOC")). The proof of either lies in FedEx's own records. Attempting to confuse what would otherwise be discrete claims (having an equally discrete scope of discovery), FedEx offers affirmative defenses the essence of which is to lay responsibility for FedEx's conduct at the feet of the government by positing fictional obligations on Plaintiffs. *See, e.g.*, Seventeenth Defense ("Plaintiffs' claims are barred or limited by their own conduct, including … their failure to enforce cigarette tax laws").[1] As set forth in Plaintiffs' moving brief, affirmative defenses that operate by second-guessing Plaintiffs' discretion in implementing tax and law enforcement policy are "legally insufficient." *See Dkt.* 94 ("*Br.*") 5-8. FedEx's response ("*Opp.*") provides no authority that permits discretionary decisions to serve as defenses to liability.

FedEx recognizes that "notions of 'executive discretion' should be grounded solely in interpretation of the CCTA as Congress modified it in 2006 …." *Opp.* 22-23. Accordingly, arguments that Plaintiffs were required to implement different law enforcement or tax policies are to be considered in light of rulings that the 2006 Congressional enactments amending the CCTA were intended "to recognize a broad class of public injuries caused by the contraband cigarette market, *and effectively to delegate enforcement authority to state and local governments*…." *City of New York v. Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, at *41 (E.D.N.Y. Aug. 17, 2012) (emphasis added). This is the apparent reason FedEx objects to applying principles of executive discretion to Plaintiffs' RICO claims alone:

---

[1] The City and State seek to strike the Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Seventeenth, Eighteenth, and Twenty-third Affirmative Defenses.

> Plaintiffs have no special governmental standing *under RICO*… their argument for exemption … on the ground of any specific governmental status is invalid as applied to plaintiffs' *RICO claims*.

*Id*. 19 (emphasis added). Appellate authority (and logic) demonstrate even this limited proposition to be wrong.

Plaintiffs make no claim to "absolute discretion," *Opp.* 20, or "talismanic" discretion, *id.* 23, but merely seek a return of public funds in a manner best suited to the limited public resources at their command. Naming FedEx as the defendant here, instead of the cigarette buyers or sellers whom experience has shown to be a time-consuming, burdensome, and unsuccessful source of damages, is purely a matter of executive discretion, as is the State's accommodation with the sovereign Indian tribes of the state.

As to the showing of prejudice required of Plaintiffs, FedEx's minute parsing of every aspect of the broad discovery imposed by its defenses is but one branch of the prejudice sustained, the other being FedEx's foray into State and City tax and law enforcement decision-making and policy, which alone is sufficiently prejudicial to warrant dismissal of these defenses.

## ARGUMENT

---

## I. FEDEX'S FOURTH, FIFTH, SIXTH, FIFTEENTH, SEVENTEENTH, AND EIGHTEENTH DEFENSES FAIL ON GROUNDS OF EXECUTIVE DISCRETION

As to all claims other than RICO, FedEx effectively concedes that principles of executive discretion (*Br*. 5-8) require dismissal of the following defenses:

- Fourth ("Plaintiffs had reason to know about unlawful cigarette sales by [shippers] yet failed to take appropriate steps as to them or their customers, or to notify FedEx Ground");

- Fifth ("Plaintiffs' claims are barred … by their failure to mitigate or avoid their claimed damages, including … by pursuing the shippers alleged to have sold untaxed cigarettes or their customers");

- Sixth ("Plaintiffs' claims for damages must be reduced by the amounts they collected or should have collected from their parties, including … the consumers bearing ultimate responsibility for the taxes at issue");

- Seventeenth ("Plaintiffs' claims are barred or limited by their own conduct, including but not limited to their failure to enforce cigarette tax laws";

- Fifteenth ("The State's own inactivity … with respect to cigarette tax laws … bars, estops, or otherwise precludes it from … or seeking relief"); and

- Eighteenth ("Plaintiffs' claims are barred or limited by their own conduct, including … failure to enforce cigarette tax laws, negligence …").

That FedEx limits its argument to RICO is clear:

> Plaintiffs have no special governmental standing *under RICO*… their argument for exemption … on the ground of any specific governmental status is invalid *as applied to plaintiffs' RICO claims*.

*Opp.* 19 (emphasis added). Even as limited to RICO, FedEx's argument lacks merit.

To begin with, it is clear that RICO protects governments. *United States v. Angelilli*, 660 F.2d 23, 32 (2d Cir. 1981) ("While Congress was concerned principally with the relationship of crime to legitimate businesses, it does not appear that it intended to exclude the public sector from its assessment of the problem or its search for a cure"). But FedEx argues that executive discretion is inapplicable in RICO, and that "Plaintiffs are just another of the private litigants afforded a civil RICO cause of action." *Opp.* 8-9. That argument rests on a deep dive into the legislative history of RICO and the CCTA, from which FedEx surfaces with the pointless observation that when the CCTA was first designated a RICO predicate under 18 U.S.C. § 1961(1), any RICO "person," private or public, could bring such a claim. Only in 2006 did Congress differentiate state and local governments from "ordinary [] persons," by affording state and local government a direct right of action under the CCTA. *Opp.* 8. FedEx concludes from this that because Congress had not previously differentiated public from private entities, the City and State must now be ordinary RICO "persons," suing for "ordinary" injury to "business or

property": "*therefore* plaintiffs are just another of the private litigants afforded a civil RICO cause of action." *Id.* (emphasis added). According to FedEx, a government suing as a RICO person for injury to business or property therefore loses any government prerogatives, *e.g.*, executive discretion, that it ordinarily possesses under other statutes. *Id.*

Beyond the fact that not a single case is cited in support, several reasons compel rejection of this argument. First, the fact that state and local governments did not have a separate civil action under the CCTA when RICO was first enacted is of no significance. No RICO plaintiff has ever been able to sue under the various RICO predicates on which a civil RICO claim is based. All RICO predicates are federal (or state) criminal statutes, *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 135 (2d Cir. 2014), enforceable only in criminal proceedings by federal or state prosecutors. The distinction created between private parties and governments by Congress in 2006 as to the CCTA, by which the latter could for the first time bring direct CCTA actions, does not mean that prior to 2006 there were no distinctions between government and private civil RICO actions merely because both are "persons" injured in "business or property."

A RICO "person" is an entity that can hold a legal or beneficial interest in property. 18 U.S.C. § 1961(3). That definition does not serve to distinguish governments from private litigants but neither does not eliminate any differences between them. Governments certainly have proceeded as RICO "persons" while maintaining the attributes of governments. *See, e.g.*, *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 314-16 (7th Cir. 1985) (concluding that the State of Illinois can appropriately seek taxes under RICO); Rakoff & Goldstein, *RICO: Civil and Criminal Law and Strategy*, § 12.01 n.7 (2014) ("RICO Treatise") ("Courts have entertained damage suits by various government entities without questioning whether these government units are entitled to sue for monetary damages"). The flawed logic in FedEx's argument is that

merely because the term "person" in RICO is broad enough to encompass governments and private litigants, that "therefore" the City and State "are just another private litigant." But mere inclusion of otherwise different entities within a broad class (RICO "persons") does not as a matter of logic itself eliminate all distinctions among the members of that class. FedEx's argument is essentially that "because cats and dogs are mammals, cats must bark."

Nor does the term "injury to business or property" serve to collapse the distinction between governments and private litigants. Like private litigants, governments have business or property that can be injured, *See, e.g.*, *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008), *rev'd on other grounds by Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010); *Illinois Dep't of Revenue*, 771 F.2d at 316-18 (lost taxes are RICO injury to state's business or property); *Alcorn County v. U.S. Interstate Supplies*, 731 F.2d 1160, 1169 (5th Cir. 1984) (county injured where it paid more than market price for products purchased from RICO defendants). The treatment of "business or property" in RICO cases provides still stronger proof that the law preserves distinctions between government and private litigants under RICO – notably, government actions for injury to business or property are actionable under RICO, despite the fact that the transactions are not ordinary commercial transactions. *See Smokes-Spirits.com*, 541 F.3d at 445 ("lost taxes can constitute injury to 'business or property' for purposes of RICO," "*notwithstanding that … injury did not arise from … participation in a commercial transaction*") (emphasis added); *Illinois Dep't of Revenue*, 771 F.2d at 314-16 (state government unit suing under RICO is not limited to competitive or commercial injuries). Nothing in the fact that governments and private parties share some attributes when proceeding under RICO eliminates all other distinctions between the two:  cats don't bark.[2]

---

[2] The notion that seeking redress for injury to "business or property" transforms Plaintiffs into "ordinary" litigants is also rebutted by the Amended Complaint's allegations that Plaintiffs here are acting in furtherance of their

The most compelling rejection of FedEx's position is established in RICO suits brought by foreign governments (coincidently, to recover cigarette taxes lost to smuggling), where courts hold that government plaintiffs *retain* their governmental attributes. *See, e.g. European Cmty. v. RJR Nabisco, Inc*., 355 F.3d 123, 132 (2d Cir. 2004) ("Plaintiffs are foreign sovereigns attempting to use RICO to impose liability on various domestic and foreign tobacco companies for smuggling and money laundering, premising their assertions of injury to business and property on the taxes that they would have levied on the cigarettes, had they been legitimately imported ….").[3] According to FedEx, the courts should have treated these plaintiffs as "hav[ing] no special governmental standing under RICO; they are simply 'person[s],' seeking to vindicate an injur[y]" to their asserted "business or property." *Opp*. 19. To the contrary, the governments were held to have stated cognizable RICO claims, but in every case were nonetheless held to retain their status as a government. Although in these cases that status worked to the governments' detriment – otherwise valid claims were barred under the Revenue Rule[4] – that result rebuts FedEx's supposition that governments are "ordinary plaintiffs" that forfeit their government attributes when appearing as RICO plaintiffs. If that were true, the Revenue Rule, applicable only to governments, would not have applied to thwart an otherwise valid RICO claim. *See Honduras,* 341 F.3d at 1256-1257 ("[t]he Republics' civil RICO claims implicate the revenue rule because, in substance, they seek redress for violations of the Republics' tax laws.");

---

traditional police powers to protect the public health, which is surely part of Plaintiffs' "business." *See Am. Compl.* ¶¶ 4-10; *Br.* 4 n.3; *City of New York v. Golden Feather Smoke Shop, Inc*., 597 F.3d 115, 120-21 (2d Cir. 2010) (deeming City CCTA action one for protection of the public). The assertion of police powers that are of course unavailable to private actors also serves to distinguish Plaintiffs from "ordinary" RICO persons.

[3] *Accord Honduras v. Philip Morris Cos*., 341 F.3d 1253, 1256-57 (11th Cir. 2003); *AG of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 105-106 (2d Cir. 2001).

[4] The Revenue Rule bars adjudication of tax claims by *foreign* sovereigns in courts of the United States. The policy bases for the rule are inapplicable to actions by domestic governments. *See AG of Can.*, 268 F.3d at 105-06, 109.

*AG of Can.*, 268 F.3d at 131 ("RICO may not be used by Canada to seek recovery of lost tax revenues and tax enforcement costs as RICO damages").

FedEx advances a related argument, again without a shred of authority, that executive discretion is inapplicable to state and local governments proceeding in federal court. *Opp.* 23. Directly to the contrary is *Willets Point Indus. & Realty Ass'n v. City of New York*, 2009 U.S. Dist. LEXIS 110181 (E.D.N.Y. Nov. 25, 2009), where Judge Korman looked to the discretionary powers of City government to reject plaintiffs' *federal* claims, invoking the words of *Jones v. Beame*, 45 N.Y.2d 402 (1978) ("questions of judgment, discretion, allocation of resources and priorities are inappropriate for resolution in the judicial arena"), and stating they "apply with even more compelling force when a federal judge is asked to intervene and reorder priorities ...." *Id.* at *24-25. Executive discretion is based in separation of powers principles, and FedEx yet again cites absolutely no authority (*see Opp.* 23) that governments are afforded discretion only in particular courts. Indeed, it would offend bedrock principles of federalism to bar considerations of executive discretion by state and local actors merely because they proceed in federal court. Disdain for executive discretion in a civil CCTA action is especially unwarranted where Congress sought in such actions "to delegate enforcement authority to state and local governments…," *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *41, "designed the CCTA to provide federal support to the states in enforcing their tax laws," *United States v. Morrison*, 686 F.3d 94, 106 (2d Cir. 2012) (citing S. Rep. No. 95-962, at 9 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5518, 5524), and sought "to encourage the states to take the lead in prosecuting cigarette trafficking …." *Id.*

FedEx's contention that only sovereign entities (*i.e.*, the State) but not municipal corporations get "special treatment" under the executive discretion doctrine, *Opp.* 24-25, is

offered without support, and is belied by *Willets Point* and other citations in Plaintiffs' moving brief. *See Br.* 14-17.[5]

## II. FEDEX'S EQUITABLE DEFENSES ALSO FAIL ON GROUNDS OF EXECUTIVE DISCRETION

FedEx attempts to raise a host of issues as to when and against whom equitable defenses may *generally* be asserted (*Opp.* 23-28),[6] but does not refute Plaintiffs' principal argument, that "[e]very equitable defense offered by FedEx is redundant of the more specific assertion in the Seventeenth Defense that the City and State did not enforce tax laws or otherwise proceed against cigarette sellers or consumers." *Br.* 13. This latter point is clear:

> Plaintiffs' claims, including their request for civil penalties, are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, unclean hands, *in pari delicto*, and/or similar doctrines and equitable doctrines, in that, *inter alia*, *Plaintiffs had reason to know about unlawful cigarette sales by Shinnecock, FOW, Native Made and CD2U, yet failed to take appropriate steps as to them or their customers, or to notify FedEx Ground.*

Fourth Defense (emphasis added). FedEx's equitable defenses are thus all premised on discretionary actions by the City or State that are not subjects for adjudication. *See Br.* 5-8. Every FedEx equitable defense requires adjudication of questions of tax and law enforcement policy, and is thus deficient as a matter of law.

**In Pari Delicto** – FedEx's citation to *Republic of Iraq v. ABB AG*, 768 F.3d 145 (2d Cir. 2014) is inapposite, where the case merely states that *in pari delicto* may be raised in a RICO action against a government. *Opp.* 19. Plaintiffs did not contend otherwise, but demonstrated that

---

[5] FedEx asserts that the shorthand term "prosecutorial discretion" applies only in criminal prosecutions and hence is inapplicable here, *Opp.* 23 n.10, a frivolous argument, since "prosecutorial discretion" is simply one aspect of the broader concept of "executive discretion." The doctrine, whether referred to as prosecutorial or executive discretion, routinely applies in civil actions. *See Br.* at 5-6 (citing, *e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) (civil case recognizing that "[g]overnment officials … generally are given broad discretion in their decisions whether to undertake enforcement actions," and citing *Wayte v. United States*, 470 U.S. 598 (1985), involving prosecutorial discretion).

[6] Plaintiffs explained in their moving brief (at 13-20) the reasons why these equitable defenses do not as a general matter apply here.

the necessary *elements* of the defense made the doctrine inapplicable here as matter of law, *Br.* 19-20, because the City and State did not participate *in the conduct at issue*. *See Opp.* 26 ("the inquiry is simply whether plaintiffs were involved in the … *conduct at issue*" (emphasis added). FedEx states itself that the City and State conduct on which it predicates *in pari delicto* is non-enforcement of tax laws. *See supra* at 8. That is not the same conduct from which FedEx's offense arises, cigarette deliveries. Second, FedEx recognizes that with *in pari delicto*: "the inquiry is simply whether plaintiffs were involved in the *unlawful* conduct …." *Opp.* 26 (emphasis added); *accord Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (plaintiff must be a participant in … *unlawful* activity …") (emphasis added). No court has ever held that State taxation policy or decisions to forego consumer collection are "unlawful," and have to the contrary recognized the former as a "rational" policy decision. *See Br.* 9-11.

FedEx is also mistaken regarding the second factor in the analysis of the applicability of *in pari delicto* – interference with law enforcement. Plaintiffs are certainly engaged in law enforcement, even if they are using civil means to do so. See *RICO Treatise* Chap. 12, *Government Civil RICO* ("The wave of civil RICO cases instituted by the federal government amply demonstrates that RICO provides more than one way to skin a cat."). The CCTA confers an expansive grant of standing that suggests that Congress intended to … "delegate enforcement authority to state and local governments…." *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, at *41 (emphasis added). FedEx's *in pari delicto* defense interferes with law enforcement, just as it would in civil enforcement actions brought by the federal government.

FedEx's responds to a demonstration that FedEx has its own *theoretical* tax liability, *Br.* 8, by introducing a school of red herrings, and profoundly mis-describing the argument as asserting that "FedEx is … liable directly under New York's cigarette excise tax laws …" (*Opp.*

20), a formulation bearing little relationship to the actual argument.[7] Plaintiffs have stated repeatedly that this case does not bring claims for tax liability *per se* and does not assert causes of action that would permit recovery of taxes as taxes, as FedEx recognizes, *Opp.* 21 ("Plaintiffs do not assert a claim against FXG under New York's tax laws …"). Plaintiffs merely demonstrate that FedEx's hypothetical liability for tax evasion from unstamped cigarettes is no less than that of the purchasers that FedEx contends Plaintiffs should pursue. *Br.* 8-9.[8] FedEx's *hypothetical* liability means that FedEx and cigarette buyers are joint tortfeasors. Plaintiffs have cited authority that no plaintiff is required to sue all joint tortfeasors, and that governments may choose to pursue certain tortfeasors but not others. *See Br.* 9. Once again, FedEx's "direct liability for the tax," *Opp.* 21, is not at issue; FedEx's "direct liability" is for violation of the AOC, the CCTA, and RICO, *none* of which has tax evasion as an element of liability. Plaintiffs' "real" theory is not even FedEx's "indirect liability" for a tax loss. *Opp.* 22. Plaintiffs' "real theory" – upheld repeatedly – is that common carriers violate the CCTA and RICO by transporting unstamped cigarettes. *City of New York v. LaserShip, Inc.,* 33 F. Supp. 3d 303, 313 (S.D.N.Y. 2014); *City of New York v. Gordon,* 1 F. Supp. 3d 94, 103 (S.D.N.Y. 2013).

## III.    THE FIFTH AND SIXTH DEFENSES SHOULD BE STRICKEN

---

[7] FedEx also misunderstands the applicable law, claiming that "plaintiffs' theory would impose a use tax on a carrier of goods that neither bought nor sold nor smokes any cigarettes." *FedEx Mem.* 21. Tax Law 471-a imposes a use tax on anyone who "controls" cigarettes, including keeping for any length of time, which FedEx certainly did in transporting cigarettes. FedEx's citation to *Harder's Express, Inc. v. N.Y. State Tax Com.*, 70 A.D.2d 1010 (3d Dep't 1979), is misplaced. The case was affirmed on grounds having nothing to do with imposition of a use tax by Tax Law 471-a. *See Harder's Express, Inc. v. N.Y. State Tax Com.*, 50 N.Y.2d 1050, 1051 (1980) ("Inasmuch as the determination of the State Tax Commission was not predicated on the provisions of section 471-a, we intimate no views as to the applicability that section.").

[8] FedEx's hypothetical tax liability is not new, and was asserted by Plaintiffs previously in *FedEx I* and  *II. See FedEx II*, *Dkt.* 37 at 26 ("It is in any event unavailing for FedEx to claim that under the tax statutes FedEx's liability is any different than or secondary to cigarette purchasers. Under the tax statutes, FedEx's liability for tax losses is exactly the same as the liability of cigarette purchasers." (citing N.Y. Tax. L. § 471-a)); *FedEx I*, *Dkt.* 33 at 33-34 ("Indeed, even if taxes were at issue, buyers of unstamped cigarettes have no greater tax liability under the tax laws than does FedEx itself.").

FedEx inappositely cite *Marin v. Evans*, 2007 U.S. Dist. LEXIS 13492 (E.D. Wash. Feb. 27, 2007) and the only case citing it, *Hernandez v. Balakian*, 2007 U.S. Dist. LEXIS 43680 (E.D. Cal. June 1, 2007), each of which refused to strike a duty to mitigate defense, but not against a government. The City and State moved to strike the mitigation defenses (Fifth and Sixth Defenses) on the same grounds as FedEx's other defenses, that discretionary decisions as to whom to losses are not appropriate for adjudication, certainly, as here, when a government is not acting in a proprietary capacity. Additionally, courts have held that "[a] crime victim is not required to mitigate damages." *United States v. Brock-Davis*, 504 F.3d 991, 1001 (9th Cir. 2007); *United States v. Rice*, 38 F.3d 1536, 1540 (9th Cir. 1994); *United States v. Suarez*, 253 F. Supp. 2d 662, 663 (S.D.N.Y. 2003).

## IV. THE EIGHTH AFFIRMATIVE DEFENSE SHOULD BE STRICKEN

Clarifying that its Eighth Affirmative Defense means only that "each CCTA *violation* must involve 10,001 cigarettes," *Opp.* 28 (emphasis added), and that the defense is not encompassed by the Court's ruling that "[CCTA] section 2342(a) therefore allows for the aggregation of sales," *City of New York v. FedEx Ground Package System, Inc.*, 2015 U.S. Dist. LEXIS 28529, at *16 (S.D.N.Y. Mar. 9, 2015) ("*FedEx I*"), FedEx necessarily recognizes that "each CCTA violation" to which it refers can consist of multiple, aggregated transactions. The defense should nonetheless be stricken as surplusage that does no more than recite an element of *Plaintiffs'* proof. Affirmative defenses are not for the purpose of "flag[ging]" issues, *Opp.* 28, nor are they meant to be "simply cautious paragraphs of additional notice." *Opp.* 1-2. If, as FedEx claims, it must plead affirmative defenses on which it "truly bears" the affirmative burden of pleading and proof. *Opp.* 1, proof of a CCTA violation is not one of them. Rule 12(f) permits the striking of "immaterial" or "redundant" matter in a pleading, and the Eighth Defense, "reminding" Plaintiffs of an element of Plaintiffs' proof, is surely that. *See Clark v. Milam*, 152

F.R.D. 66, 73 (S.D.W.Va. 1993) (citing *Rochholz v. Farrar*, 547 F.2d 63, 65 n.3 (8th Cir. 1976))

(striking as "superfluous" purported affirmative defenses that were "merely denials of liability

and assertions that Plaintiff cannot establish a prima facie case").

**V.    FEDEX'S AFFIRMATIVE DEFENSES RELATING TO THE AOC SHOULD BE STRICKEN; THE AOC AND PENALTIES PROVIDED THEREIN ARE ENFORCEABLE UNDER EXECUTIVE LAW § 63 AS A MATTER OF LAW**

All of the arguments set forth in FedEx's opposition as to the lack of enforceability of the

AOC fail as a matter of law, and its AOC defenses should be stricken.

**A.    FedEx's Tenth Defense Should Be Stricken: The State Had Authority Under Executive Law § 63(12) To Enforce Violations of NYPHL § 1399-*ll* At The Time The Assurance of Compliance Was Executed**

FedEx argues that the AOC to which it agreed was never enforceable because "at the

time the AOC was offered to [FedEx]" in February 2006, "the [Attorney General] was without

authority to institute a civil action to enforce" New York Public Health Law ("PHL") § 1399-*ll*.

*Opp.* 29-30. FedEx thus would have this Court believe that the Attorney General entered into the

AOC with FedEx "in lieu of commencing a civil action" that the OAG would have brought

*solely* under PHL § 1399-*ll*, without reference to the Attorney General's authority under

Executive Law § 63. *See Opp.* 29-30. But the AOC makes it abundantly clear that FedEx's

assertions are both patently false and belied by the text of the agreement itself.

Reference to the Attorney General's authority under Exec. L. § 63 is first made in the

opening words of the AOC:

> Pursuant to New York Executive Law ... § 63(12), ELIOT SPITZER ... has
> caused an inquiry to be made into certain business practices of [FedEx Ground]
> related to N.Y. Public Health Law ... § 1399-*ll*.

*AOC* 1.  Additionally, as is plainly stated in the AOC, the Attorney General accepted FedEx's

assurances set forth therein, in lieu of commencing a civil action against FedEx "in connection

with the matters that were the subject of the investigation described in Paragraphs 6 and 7" of the

AOC.  *Id.* at 4.  Paragraphs 6 and 7, which FedEx conveniently omits, explain that the Attorney General's investigation into FedEx's illegal shipment of cigarettes was based not only on FedEx's potential violation of PHL § 1399-*ll*, but rather its "violation of PHL § 1399-*ll* (2) *and* [Exec. L.] § 63(12)."  *Id.* (emphasis added).

The Attorney General has express authority under Exec. L. § 63(12) to initiate an action against any person engaged in the repeated violation of any State law, and had that authority when the AOC was executed in 2006—a fact not disputed by FedEx.  *See Br.* 21-23 (collecting cases).[9]  Notwithstanding the non-retroactivity of the 2013 amendment to § 1399-*ll,* the State, as stated in the AOC itself, could have brought a civil action in 2006 against FedEx, pursuant to Exec. L. § 63(12) for its repeated violations of PHL § 1399-*ll*; thus, the Attorney General had full authority to enter into an enforceable AOC with FedEx in lieu of initiating just such an action.

**B.**   **FedEx's Eleventh Defense Should Be Stricken As A Matter Of Law Because The Attorney General Is Empowered Under Exec. L. § 63 To Seek Penalties Set Forth In An Assurance of Compliance**

FedEx contends that the Attorney General is not entitled to the penalties set forth in the AOC because the Executive Law does not explicitly provide for such relief and because such penalties are impermissible under New York contract law.  FedEx is wrong on both accounts.

**1.**   **Exec. L. § 63 Authorizes The Attorney General To Seek Penalties And To Include Them In The AOC**

FedEx asserts the novel argument—as usual, without citation to any supporting authority—that because Executive Law §§ 63(12) and (15) do not explicitly state that the Attorney General may recover civil penalties, the Court must look to the underlying statute itself, which must expressly authorize a direct cause of action by the Attorney General.  *Opp.* 31.

---

[9] *See also FedEx II*, *Dkt*. 38 at 12-17.

According to FedEx, if an underlying statute does not explicitly allow for a direct cause of action by the Attorney General, he is foreclosed from seeking any remedies provided for in that statute, and may not include penalties in an AOC entered into in lieu of bringing an action. The contention is completely unsupported and would thoroughly undermine the Attorney General's use of the enforcement authority vested in him by the legislature under Executive Law § 63(12).[10] It is well settled, and FedEx does not dispute, that Executive Law § 63(12) enables the Attorney General to bring suit for repeated violations of any state law, including PHL § 1399-*ll*. That authority exists even where the right to enforce the underlying statute might otherwise fall under the primary responsibility of another state agency. *See, e.g.*, *State v. Solil Mgmt. Corp.*, 128 Misc. 2d 767, 769 (Sup. Ct. N.Y. Cnty. 1985) (rejecting argument that a State housing agency possessed exclusive authority to enforce the Omnibus Housing Act of 1983, and holding that Attorney General possessed concurrent jurisdiction to enforce the Act, pursuant to Exec. L. § 63(12)).

Given this broad authority under Exec. L. § 63(12), it necessarily follows that the Attorney General must also be able to obtain all attendant remedies and penalties provided for in the underlying laws enforced. With regard to PHL § 1399-*ll*, the legislature clearly intended that penalties were appropriate to dissuade common carriers from shipping cigarettes to unauthorized recipients, and to punish them when they make such deliveries. Thus, pursuant to his concurrent Executive Law authority, the adequate enforcement of PHL § 1399-*ll* intended by the legislature empowers the Attorney General to obtain the penalties set forth in the PHL, and include them in an AOC entered into in lieu of an Executive Law action. Otherwise, the Attorney General's authority under Exec. L. §§ 63(12) and (15) "would be hollow." *Solil Mgmt.*, 128 Misc. 2d at

---

[10] FedEx fails to cite a single instance in which a penalty provision included within an AOC was invalidated under FedEx's theory. None has been.

773 (finding that "[a]lthough a suit for breach of contract is not explicitly sanctioned" under Section 63(12), "the right to enter into an Assurance under Exec. L. § 63(15) would be hollow if it did not include" such a right).

### 2. Ordinary Contract Principles Do Not Preclude The Penalties Set Forth In The AOC

FedEx incorrectly argues that the stipulated penalties for violating the AOC are unenforceable as a matter of contract law, as impermissible liquidated damages. *Opp.* 33-34. But New York law provides that "a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not plainly disproportionate to the possible loss." *In re United Merchants & Mfrs., Inc.*, 674 F.2d 134, 142 (2d Cir. 1982) (internal quotation marks omitted). Stated differently, it is only "where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, [that] the stipulated sum will be treated as a penalty and disallowed." *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 70-71 (2d Cir. 2004) (citation omitted).

Here, actual damages are not easily ascertainable, nor is the monetary penalty imposed out of proportion to the injury. The primary harm caused by FedEx's alleged violations of the AOC is a public health injury. *See Am. Compl.* ¶ 4. To combat this harm, governments tax cigarettes, reducing consumption, particularly among youth smokers. *See id.* at ¶¶ 5-7. The injury to those public health goals is certainly significant, but also "difficult to determine" in monetary terms. *In re United Merchants*, 674 F.2d at 142; *see also Am. Compl.* ¶¶ 7-10.

FedEx makes much of the AOC's use of the term "penalties" to question enforceability. But as courts recognize, that label has no bearing on a legal analysis. "In interpreting a provision fixing damages, it is not material whether the parties themselves have chosen to call the

provision one for 'liquidated damages[,]' as in this case, or have styled it as a penalty." *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425 (1977) (citations omitted). "[S]uch an approach would put too much faith in form and too little in substance." *Id.* Accordingly, the Attorney General was authorized pursuant to Exec. L. § 63 to enter into an AOC backed by penalties for breach, consistent with contract law.

### C. Despite Its Re-Pleading, FedEx's Twelfth Defense Still Fails

FedEx re-pleaded its twelfth affirmative defense to identify the alleged "defects in contract formation" in the AOC as a lack of consideration and a misrepresentation as to the Attorney General's authority to enforce the PHL. The Attorney General's purported misrepresentation of authority can be easily rejected. First, as discussed in Section V.A, *supra*, the Attorney General always had authority to remedy violations of the PHL § 1399-*ll* under Exec. L. § 63(12), so there was no misrepresentation. Second, the Attorney General clearly had a good faith belief in its enforcement powers under PHL § 1399-*ll* alone, evidenced by the filing of those charges here, which hardly could have been an elaborate (and costly) ruse to hide the Attorney General's belief about its lack of jurisdiction in this area.

FedEx's arguments about a lack of consideration are illogical. As with any settlement of an investigation by a law enforcement agency, the consideration provided by the State was the agreement to forgo filing suit. The Attorney General is authorized by Exec. L. § 63(15) to—and frequently does—enter into assurance agreements in lieu of enforcement proceedings. *See, e.g.*, *Rodriguez v. It's Just Lunch Int'l*, 2012 U.S. Dist. LEXIS 51687, at *7 (S.D.N.Y. Apr. 6, 2012) ("Pursuant to the provisions of New York Exec. L. § 63(15), the New York Attorney General may, in lieu of instituting a civil action or proceeding in connection with New York law(s), enter into an Assurance of Discontinuance ('AOD') with an entity whose act(s) or practice(s) is found

by the Attorney General to be violative of New York law."). These Assurances are routinely enforced in New York courts.[11]

FedEx's attempt to cast doubt on the Attorney General's authority to prosecute violations of PHL § 1399-*ll* under Exec. L. § 63 do not invalidate the AOC. Even assuming, *arguendo,* any merit to FedEx's argument, (there is none), "[f]orbearance of a legal right can still be valid consideration even when the existence of that right is doubtful or disputed, so long as the forbearing party has an honest and reasonable belief in its possible validity." *MBB Realty Ltd. P'ship v. A&P (In re A&P)*, 509 B.R. 430, 444 (S.D.N.Y. 2014). *See also Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*, 929 F. Supp. 2d 460, 470 (W.D. Pa. 2013) (it is clear that "a surrender or compromise of a doubtful claim and forbearance to sue thereon is sufficient consideration").

Ultimately, FedEx fails to make any cognizable argument that it is absolved of liability for AOC violations by "defects in contract formation." FedEx is a sophisticated entity with able counsel that knowingly entered into the AOC after significant negotiations. It should not be allowed to back out of its agreement now.

### D. FedEx's Thirteenth Defense Lacks Any Basis in Law or Fact

In its Thirteenth Defense, FedEx keeps to its theme of blaming the government for FedEx's own violations, using the covenant of good faith and fair dealing to impart non-existent obligations on the State. As is clear on the AOC's face, FedEx agreed in the AOC to discontinue its unlawful practices and undertake its own enforcement practices in exchange for a release of the State's legal claims. There are no written, affirmative obligations on the State in the AOC.

---

[11] *See, e.g., James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. v. State, Office of Atty. Gen.*, 27 Misc. 3d 1223(A), 910 N.Y.S.2d 762 (Sup. Ct. N.Y. Cnty. 2010); *Geiger v. Town of Greece*, 2008 U.S. Dist. LEXIS 21190, at *3-*4 (W.D.N.Y. Mar. 18, 2008); *People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.*, 2003 N.Y. Misc. LEXIS 881 (Sup. Ct. N.Y. Cnty. July 2, 2003).

FedEx's introduction of extrinsic evidence to argue otherwise is barred completely by the AOC's integration clause. AOC ¶ 27.[12] The AOC is structured entirely around FedEx's obligations (*see, e.g.*, AOC ¶¶ 10-14), and FedEx cannot create an affirmative obligation on the State through FedEx's own agreement in the AOC that "*If* the Attorney General … provides FedEx with evidence that any person is or may be using FedEx's Delivery Services to ship Cigarettes to Individual Consumers, *FedEx* shall immediately send such shipper a written communication stating that FedEx does not deliver Cigarettes to Individual Consumers…." AOC ¶ 15 (emphasis added); *see Br.* 26.

FedEx's introduction of non-existent terms into the AOC by citing the duty of good faith and fair dealing is futile, as that theory "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract[s]." *JPMorgan Chase Bank, N.A. v. IDW Group*, LLC, 2009 U.S. Dist. LEXIS 9207, *13-16 (S.D.N.Y. Feb. 9, 2009) (citing *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998)).[13]

Overall, FedEx's argument about the covenant of good faith and fair dealing is hard to parse, but appears premised on two contradictory fact patterns. First, FedEx suggests that the State knew about the unlawful activities of the four shippers at issue, and yet for some reason allowed FedEx to continue shipping their cigarettes for years. There is nothing even to suggest this to be true. *Compare S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (striking estoppel defense where "defendants have offered nothing to suggest they detrimentally relied on

---

[12] *See Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 509-10 (2d Cir. 1989) (citing *4 S. Williston, A Treatise on the Law of Contracts* §§ 631 (3d ed. 1957 & Supp. 1988); *Restatement (Second) of Contracts* § 212 (1981)); *see also Bekhor v. Josephthal Group, Inc.*, 2000 U.S. Dist. LEXIS 14924, at *13 (S.D.N.Y. Oct. 13, 2000).

[13] *See also Warner Theatre Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co.*, 1997 U.S. Dist. LEXIS 17217, at *6 (S.D.N.Y. Nov. 4, 1997) (the duty of good faith "cannot add to, detract from, or alter the terms of the contract itself"; *CIBC Bank and Trust Co., Ltd. (Cayman) v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1118 (S.D.N.Y. 1995) ("Although the obligation of good faith is implied in the contract, it is the terms of the contract which govern the rights and obligations of the parties.").

any misrepresentation by the SEC"). The argument is so entirely without supporting facts that FedEx must cite to indications that the State *did* reach out to FedEx with information about unlawful cigarette shipments by *other* shippers. *Opp.* 38-39. FedEx's second premise is that, in the alternative, the State did not know about the four shippers at issue, but it *should have* known, characteristically seeking to shift responsibility for FedEx's own violations. But FedEx's agreement to cooperate "*If*" the Attorney General provided FedEx with information about FedEx's clients cannot be transformed into the Attorney General's obligation to seek out and report violations to FedEx.

Even if the AOC did so, which it does not, that could not absolve FedEx of liability for its repeated violations of law. As pleaded, FedEx's Thirteenth Defense presumes that FedEx is without liability for unlawful shipments that were initially undetected by the State. This absurd rule would excuse any violation of an Assurance where there was a mechanism for the State to advise a party to an Assurance of violations and provide an opportunity to cure. Such a provision is meant to facilitate compliance and promote prompt resolution of breaches of an Assurance, not to provide a "get out of jail free" card for violators. FedEx cannot excuse its violations of law by claiming that it should have been caught earlier, particularly where FedEx was in the best position to determine whether its clients named "Cigarettes Direct To You," and "Cigarettes for Less," both located in low-tax states, were shipping cigarettes to New York. FedEx's decision to ship for the illegal shippers was not caused by breach of an imaginary term in the AOC.

## VI. THE CITY AND STATE HAVE DEMONSTRATED PREJUDICE

FedEx contends that the voluminous discovery it seeks to support its defenses: (1) does not burden Plaintiffs; (2) is already completed; or (3) relates to Plaintiffs' own *prima facie* case or to defenses Plaintiffs do not seek to strike. FedEx's sprawling justification for the discovery imposed by its defenses omits the principal source of prejudice, arising from the very fact of an

inquiry into matters of tax and law enforcement policy, *e.g.*, forbearance and consumer collection, that courts have been cautioned to avoid. *Br.* 5-8. This irrelevant discovery subjects the City and State to inappropriate inquiries into sensitive matters of internal policymaking and deliberation that is more than sufficient prejudice for present purposes. *Compare Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.").

In any event, as to discovery burdens, there is no better proof that the prejudice arising out of FedEx's affirmative defenses is sufficient to grant this motion under Rule 12(f)[14] than Magistrate Judge Fox's ruling that fully 51 of the 64 of FedEx's Rule 30(b)(6) deposition topics or subparts challenged by Plaintiffs are irrelevant to *any* claim or defense in this action.[15] FedEx's 25-page Objections to Judge Fox's ruling (*Dkt.* 110), seeking to reinstate every stricken topic, and requiring City and State Rule 30(b)(6) witness preparation on every topic, invokes the defenses at issue here. *See, e.g.*, *id.* at 24. These facts alone utterly belie any claim that Plaintiffs' discovery burdens are "not substantiated." *Opp.* 10. But there is more – even since the filing of this motion, FedEx has multiplied the prejudice described in Plaintiffs' opening brief (Dkt. 94 at 33-35) with additional discovery:

- On July 24, 2015, FedEx took the Rule 30(b)(6) deposition of the City's Director of the Office of Tax Enforcement, Maureen Kokeas, who had previously been deposed for

---

[14] *See United States v. East River Housing Corp.*, 2015 U.S. Dist. LEXIS 24924, at *25 (S.D.N.Y. Mar. 2, 2015) (prejudice where defense would "needlessly increase the time and expense of trial or duration and expense of litigation") (quotation omitted); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426, 428 (S.D.N.Y. 2010) (prejudice where defense would "increase the duration and expense of trial" or "[p]laintiffs would incur increased discovery costs"); *McCaskey*, 56 F. Supp. 2d at 326 ("An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.").

[15] While the Magistrate thus would have stricken these deposition topics irrespective of FedEx's defenses, there was and still is prejudice to Plaintiffs from having to engage in motion practice to eliminate these topics – which would be alleviated should this Court strike the defenses at issue here, to which the topics are purportedly related.

seven hours on July 9 as a Rule 30(b)(1) witness. FedEx again questioned Ms. Kokeas extensively regarding the City's cigarette tax investigation and enforcement methods and the City's efforts to collect taxes from individual consumers of untaxed cigarettes. *See Declaration of Leonard Braman* ("*Braman Decl.*") Ex. 1 (*Kokeas 7/24/15 Dep. Tr.*, *see, e.g.* at 7-65, 95-97). FedEx intends to seek to recall Ms. Kokeas for further deposition on these and still more topics. *Dkt.* 114 at 9 n.6.

- On September 2, 2015, FedEx served Third Requests for the Production of Documents on the State, consisting of 56 document requests, many of which relate to the defenses sought to be stricken, such as regarding State investigative and enforcement methods (*Braman Decl.* Ex. 2 (*e.g.*, Request Nos. 4-8, 31, 48-49, 51)), forbearance (*id.* Nos. 35, 44, 45, 47), and consumer collection (*id.* Nos. 33, 46).

FedEx even questions the obvious conclusion that the extensive discovery it seeks will in fact "increase the … duration and expense of litigation." *East River*, 2015 U.S. Dist. LEXIS 24924 at *25; *see Opp.* 10-11. The time and cost of responding to the new discovery alone will be significant, and will be layered on top of discovery previously described in Plaintiffs' moving brief. Also self-evident is that including at trial the twelve defenses Plaintiffs seek to strike will "increase [] the time, expense and complexity of a trial," *McCaskey*, 56 F. Supp. 2d at 326, requiring evidence on such subjects as Plaintiffs' policies on tax investigation, tax enforcement, and tax collection, and the wisdom or effectiveness of these policies. Because FedEx's defenses fail as a matter of law, increased trial burden alone is sufficient prejudice without more to grant a motion to strike, as FedEx itself acknowledges. *Opp.* 10. Nor does prejudice abate because defenses can be stricken on motions *in limine* or on summary judgment. *Id.* 11. Plaintiffs are prejudiced *now*, for example by the necessity of preparing for the potential trial of these defenses. The deficiencies in FedEx's defenses present pure questions of law. No facts would permit the defenses to succeed; they should thus be stricken now to conserve the parties' and the Court's resources. *S.E.C. v. Toomey*, 866 F. Supp. 719, 725 (S.D.N.Y. 1992) ("Because the []

defense must fail as a matter of law regardless of any facts which might be presented at discovery or trial, it is appropriately dealt with before discovery using Rule 12(f).").[16]

FedEx essentially rebuts its own argument that the discovery it seeks for its defenses is relevant as somehow relating to Plaintiffs' proof, recognizing that Plaintiffs must prove "that *FXG* operated the shippers' enterprises … knowing that cigarettes … were in [the shippers'] packages" and must prove "*FXG's* actual knowledge." *Opp.* 11. The relevant conduct and the relevant knowledge are self-evidently that of FedEx, not Plaintiffs. These facts – especially FedEx's knowledge that it was shipping cigarettes – will be proven through information obtained from FedEx itself. *See, e.g. Braman Decl.* Ex. 3 (claims submitted to FedEx by Shinnecock Smoke Shop seeking reimbursement for lost packages shipped by FedEx containing "5 cartons of cigarettes" (FXGNYCNYS0000041) and "10 cartons of cigarettes" (FXGNYCNYS0000049)). FedEx never supports its vague contention that Plaintiffs' "documentation, corroboration, or preservation of evidence regarding the alleged shipments or shippers" (*Opp.* 12) will serve to defend against Plaintiffs' claims. The evidence that Plaintiffs must adduce to prove that *FedEx knew what FedEx was doing*, and any evidence to the contrary, is almost exclusively in FedEx's own hands.

FedEx's discovery topics that seek information from Plaintiffs generally have nothing to do with Plaintiffs' proof, and everything to do with FedEx's defenses, a prime example being the extensive inquiry into the State's "forbearance" policy, the subject of various outstanding Rule 30(b)(6) deposition topics and document requests. *See, e.g.*, *Proshansky Supp. Decl.* (*Dkt.* 93) Ex. 1 (Rule 30(b)(6) deposition topics 6, 8, 11, 17; *Braman Decl.* Ex.2 (Document Request Nos.

---

[16] While FedEx notes that certain discovery "has already been completed" (*Opp.* 10), the numerous ongoing issues noted above and in Plaintiffs' opening brief speak to current and future prejudice. Moreover, the fact that FedEx was able to obtain certain discovery from Plaintiffs prior to, or in spite of, Plaintiffs' moving to strike FedEx's defenses, does not mean that FedEx should be allowed to continue to put Plaintiffs to such burdens.

35, 44, 45, 47). As Plaintiffs have demonstrated, the forbearance policy is irrelevant as a matter of law. *See Br.* 9-11. There is no conceivable evidence about forbearance that Plaintiffs would have to *introduce* in their affirmative case – *i.e.*, to prove that *FedEx* was liable for shipping cigarettes. Nor, contrary to FedEx's argument, is forbearance relevant to penalties or injunctive relief. A victim's conduct *is not* an element by which courts assess penalties. A district court may consider "a number of factors" in assessing a civil penalty, including: "(1) the level of defendant's culpability, (2) the public harm caused by the violations, (3) defendant's profits from the violations, and (4) defendant's ability to pay a penalty." *See Advance Pharm., Inc. v. United States*, 391 F.3d 377, 399 (2d Cir. 2004); *accord United States v. Global Distribs.*, 498 F.3d 613 (7th Cir. 2007). Victim conduct is not among these. *Milhelm Attea*, cited by FedEx, itself stated that "[t]he Court's determination of a civil penalty … will be guided by traditional factors, including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay." *Id.* at *97. "Forbearance" was mentioned in connection with penalties in *Milhelm Attea* not as to plaintiffs' conduct but as bearing on the defendants' culpability, a traditional factor. The defendant cigarette stamping agents there were licensed by the State but received inconsistent instructions from the State Tax Department and the Attorney General as to the necessity of stamping cigarettes. *See Br.* 11 n.6. FedEx's can offer no such mitigation.[17]

FedEx has also sought and continues to seek discovery regarding the City and State's efforts, or lack thereof, at consumer collection. *See, e.g.*, *Dkt.* 93, Ex. 1 (deposition topics 1(f), 3(h), 17; Ex. 2 (topics 1(f), 3(i), and 15); *Braman Decl.* Ex. 1 (Request Nos. 33, 46). But as

---

[17] Similarly, particularly given FedEx's concession that Plaintiffs need not show irreparable harm (*Opp.* 6 n.2), FedEx does not explain how evidence of Plaintiffs' own conduct here is relevant to the elements for granting permanent injunctive relief, which FedEx does not cite: "(1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

discussed above, whether or not Plaintiffs have, or even more irrelevantly, *could* have, sought taxes from third parties is irrelevant to *FedEx's* liability. No "aspect[] of plaintiffs' *prima facie* case" turns on evidence that Plaintiffs could collect amounts from third parties (*Opp.* 15), nor should FedEx be allowed to introduce speculation as to others' liability in an attempt to negate its own independent liability. FedEx's concern with "multiple recoveries" (*Opp.* 16) is a red herring given FedEx's recognition that there has been no relevant recovery of taxes from consumers.[18]

FedEx also claims that three defenses that Plaintiffs do not seek to strike – the First, Seventh, and Fourteenth – justify all discovery that FedEx seeks, but FedEx's attempt to cram all of its discovery requests into three limited defenses fails. The First Defense (Plaintiffs have failed to state a claim "including but not limited to, by failing to establish causation and damages") is not a "defense" at all, but merely a statement that Plaintiffs cannot meet elements of their *prima facie* case, which does not entitle FedEx to the discovery it seeks for the reasons set forth *supra* at 22. The Seventh Defense asserts that "[t]he City's claims are barred … by the settlement agreement with FedEx [] to the extent [] the City had *any* information prior to the date of that agreement[]  suggesting that FedEx [] had delivered [] unstamped cigarettes [to New York City], and to the extent the City did not honor the cooperative framework established by that agreement" (emphasis in original). Self-evidently, that applies solely to the City's knowledge and conduct, and does not entitle FedEx to discovery from the State, or inquiry into, *e.g.,* forbearance or consumer collection. The Fourteenth Defense, which asserts cryptically that FedEx's performance under the AOC was "excused" by "impracticability and frustration," including "by the conduct of the State," would not permit any discovery from the City, and

---

[18] FedEx alludes solely to collection by the City from customers of the shipper CD2U (*Opp.* 16), but the City makes no claim against FedEx in this action relating to CD2U shipments, which were the subject of a prior settlement.

would not permit the sweeping discovery sought by FedEx from the State regarding the entirety of its tax investigation, enforcement, and collection policies – clearly far broader than any "conduct of the State" that conceivably could have "excused" FedEx's from performing under the AOC, whatever such conduct might be.

Finally, FedEx claims that Plaintiffs have not "argue[d] prejudice" regarding the AOC defenses or the Eighth or Twenty-third Defenses,[19] apparently because Plaintiffs did not tie particular discovery requests to these defenses. But as discussed above, the Eighth Defense is mere surplusage, and the AOC and Twenty-third defenses would inevitably lengthen, increase the costs of, and confuse the issues in a trial – for instance, by requiring testimony on FedEx's irrelevant extrinsic evidence regarding the AOC, or on irrelevant issues of tribal sovereign immunity. In any event, FedEx *has* sought discovery as to the AOC defenses. *See, e.g.*, *Proshansky Supp. Decl.* (*Dkt.* 93) Ex. 1 (Rule 30(b)(6) deposition topics 4(a)-(h); *Braman Decl.* Ex. 4 (FedEx's First Requests for the Production of Documents from the State, Request Nos. 1-4). There is no reason to leave these legally insupportable defenses in the case, leaving FedEx free to continue to seek discovery that cannot support them in any event. *Toomey*, 866 F. Supp. at 725; *accord United States v. Manhattan-Westchester Med. Servs.,* 2008 U.S. Dist. LEXIS 5819, at *7 (S.D.N.Y. Jan. 29, 2008).

## CONCLUSION

For the reasons set forth above, the City and State's motion to dismiss FedEx's Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Seventeenth, Eighteenth, and Twenty-third Affirmative Defenses pursuant to Rule 12(f) should be granted in its entirety.

---

[19] As to the substance of FedEx's Twenty-third Defense, FedEx's claim to protection as an Indian – a defense FedEx itself suggests "can be safely ignored" (*Opp.* 40) – Plaintiffs rest on the demonstration in their moving brief that the defense fails as a matter of law and will prejudice Plaintiffs by lengthening and complicating a trial. *Br.* 29-33.

Dated:       New York, New York
               September 11, 2015

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032


By:    /s/ Eric Proshansky
       Eric Proshansky (EP 1777)
       Leonard Braman (LB 4381)
       Amy Okereke
       Assistant Corporation Counsel

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Plaintiff State of New York*
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6699


By:    /s/ Dana Biberman
       Dana Biberman (DB 9878)
       Sandra Pullman (SP 7722)
       Joshua Sprague (JS  8789)
       Assistant Attorneys General