UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK and THE PEOPLE OF
THE STATE OF NEW YORK,

                              Plaintiffs,

              - against -

FEDEX GROUND PACKAGE SYSTEM, INC.,

                              Defendant.

**OPINION AND ORDER**

13 Civ. 9173 (ER)

Ramos, D.J.:

          This is a case brought by the City of New York ("City") and the State of New York

("State," and collectively, "Plaintiffs") against FedEx Ground Package System, Inc. ("FedEx")

for damages, penalties, and injunctive relief based on allegedly unlawful shipments and

deliveries of untaxed cigarettes.  Plaintiffs seek the appointment of a special master, damages,

and penalties under the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*

("CCTA"); treble damages and attorney's fees under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); and penalties under the Assurance of

Compliance ("AOC") that FedEx entered into with the Attorney General of the State of New

York ("AG") in 2006.  Before the Court is Plaintiffs' motion to strike twelve of FedEx's twenty-

four affirmative defenses.  (Doc. 89).  For the reasons that follow, the motion is GRANTED in

part and DENIED in part.

## I. BACKGROUND

### A. Factual and Procedural Background

          On March 30, 2014, Plaintiffs commenced this action against FedEx, alleging that it

knowingly delivered unstamped cigarettes throughout the country, including New York City and

State, between 2005 and 2012.  *See* Am. Compl. (Doc. 13).  Plaintiffs allege that FedEx made shipments of unstamped cigarettes on behalf of Shinnecock Smoke Shop, Native Made Tobacco, FOW Enterprises, Inc., and Cigarettes Direct To You (collectively, "Cigarette Sellers").  *Id.* at ¶¶ 13–15.  In total, the Plaintiffs allege that FedEx knowingly shipped nearly 400,000 cartons of unstamped cigarettes from the Cigarette Sellers to individual residences in New York City and State.  *Id.* at ¶ 76.

Plaintiffs' Amended Complaint alleges that FedEx violated the CCTA, RICO, the AOC, the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 *et seq.* ("PACT Act"), and the New York Public Health Law, as well as created a public nuisance.  Am. Compl. ¶¶ 134–78.  On May 13, 2014, FedEx moved to dismiss all of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), except for the alleged AOC violation.  (Doc. 28).  On March 9, 2015, this Court denied the motion as to the CCTA and RICO claims, and granted the motion as to the NYPHL and public nuisance claims.  (Doc. 68).

On May 12, 2015, FedEx answered the Amended Complaint, asserting twenty-four affirmative defenses.[1]  (Doc. 72).  On July 16, 2016, Plaintiffs moved to strike twelve of the defenses pursuant to Rule 12(f).  (Doc. 89).

**B.  Remaining Claims and Applicable Law**

Plaintiffs have four claims that remain: (1) a claim under the CCTA, (2) a claim under the AOC, (3) a claim for RICO violations, and (4) a claim for conspiracy to violate RICO.[2]

---

[1] On August 14, 2015, FedEx filed an amended answer containing the same twenty-four defenses.  (Doc. 101).

[2] Plaintiffs have conceded their claims under the PACT Act.  *See* Memorandum of Law in Opposition (Doc. 103) at 3 n.1.

**The CCTA claim:**  The CCTA makes it unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase "contraband cigarettes."  18 U.S.C. § 2342(a).  "Contraband cigarettes" are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp…to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes."  § 2341(2).  "Together, these provisions establish four elements for a CCTA violation:  that a party (1) knowingly 'ship, transport, receive, possess, sell, distribute or purchase' (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps."  *City of New York v. Chavez*, No. 11 Civ. 2691 (BSJ), 2012 WL 1022283, at *3 (S.D.N.Y. Mar. 26, 2012) (quoting *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08 Civ. 3966 (CBA), 2009 WL 2612345, at *26 (E.D.N.Y. Aug. 25, 2009)).

The CCTA authorizes State and local governments to bring a civil action in federal court to "restrain violations" of the CCTA and "obtain any other appropriate relief…including civil penalties, money damages, and injunctive or other equitable relief."  § 2346(b).  Here, Plaintiffs' CCTA claim seeks money damages equal to the amount of tax revenue that would have been generated had the cigarettes allegedly shipped by FedEx contained paid-for tax stamps, as well as civil penalties and appointment of a special master to monitor FedEx for CCTA violations.

**The AOC claim:**  In 2004, the AG investigated FedEx and other common carriers for violating federal and state laws relating to the unlawful delivery of cigarettes, including New York Public Health Law ("NYPHL") § 1399-*ll*.  Section 1399-*ll*(1) states that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale

3

dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state governments.  Section 1399-*ll*(2), in turn, prohibits common carries from "knowingly transport[ing] cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-*ll*(1)]," and provides a presumption of carrier knowledge "if cigarettes are transported to a home or residence."

In February 2006, FedEx entered into an Assurance of Compliance ("AOC") with the AG, in which it agreed, *inter alia*, to comply with NYPHL § 1399-*ll*, terminate relationships with shippers that unlawfully attempted to use FedEx to ship cigarettes to residential addresses, and report those shippers to the AG's office.  FedEx also agreed to monitor and investigate its own shipments to assure compliance with the AOC.  The AOC also required FedEx to implement a policy prohibiting the shipment and delivery of cigarettes to individual consumers, and to revise its internal policies to ensure their compatibility with the terms of the AOC.  FedEx further agreed that it would pay a $1,000 penalty for every violation of the AOC.

Plaintiffs' AOC claim seeks $1,000 for each of FedEx's deliveries of cigarettes to a home or residence in violation of the AOC.

**The RICO claims:**  "RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)).  Section 1962(c), which Plaintiffs invoke here, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate…commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Under the statute, "racketeering activity" is defined to include violations

4

of the CCTA. *See* § 1961(1) (including "sections 2341–2346 (relating to trafficking in contraband cigarettes)").

A civil RICO plaintiff can recover treble damages, costs, and attorney's fees. 18 U.S.C. § 1964(c). Plaintiffs here sue under this civil provision, which may be invoked by private parties, unlike the provision providing for RICO's criminal penalties, which are recoverable only by the United States. *See* § 1963. "To state a civil RICO claim," Plaintiffs must establish that FedEx "conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to the [Plaintiffs'] business or property." *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 309 (S.D.N.Y. 2014) (citing §§ 1962(c), 1964(c); *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496 (1985)). In addition to alleging violations of § 1962(c), Plaintiffs also allege FedEx's involvement in a conspiracy to violate § 1962(c), pursuant to § 1962(d). Plaintiffs seek treble damages based on the amount of tax revenue lost by the shipment of untaxed cigarettes, and attorney's fees.

### C. FedEx's Affirmative Defenses

The instant motion seeks to strike twelve of FedEx's twenty-four defenses. Amended Answer, Defenses, and Affirmative Defenses ("Answer") (Doc. 101) 20–28. These twelve can be sorted into three categories: (1) six "Government Conduct Defenses," which seek to bar Plaintiffs' claims or mitigate potential damages based on the wrongful conduct of Plaintiffs themselves; (2) four "AOC Defenses," which seeks to bar the AOC claim based on purported defects with the AOC's formation, terms, or implementation; and (3) two other miscellaneous defenses. The discussion below is organized according to these three categories.

## II. LEGAL STANDARD

"An affirmative defense is an 'assertion of facts and arguments that, if true, will defeat the plaintiff's…claim, even if all the allegations in the complaint are true.'" *Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2013 WL 6669422, at *2 (S.D.N.Y. Dec. 17, 2013) (quoting Black's Law Dictionary 482 (9th ed. 2009)).  Although a court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  Motions to strike an affirmative defense are generally disfavored, *Cty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002), and "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense," *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (citation and internal quotation marks omitted), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986).

To prevail on a motion to strike, the moving party must satisfy a stringent three-pronged test:  "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005).  In considering the first and second prongs, courts apply the same legal standard as that applicable to a motion to dismiss under Rule 12(b)(6). *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).  The "sufficiency of a defense is to be determined solely upon the face of the pleading," and the Court "accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the

[non-moving party's] favor." *Id.* (citations and internal quotation marks omitted).  In evaluating the third prong, the Court may consider whether inclusion of the legally insufficient defense would needlessly increase the "time and expense of trial" or "duration and expense of litigation." *Id.* at 426 (citing *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999)); *see also S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) ("An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.").

## III. GOVERNMENT CONDUCT DEFENSES

### A. The Defenses

The Government Conduct Defenses are the fourth, fifth, sixth, fifteenth, seventeenth, and eighteenth affirmative defenses, asserted by FedEx as follows:

> 4. Plaintiffs' claims, including their request for civil penalties, are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, unclean hands, *in pari delicto*, and/or similar doctrines and equitable doctrines, in that, *inter alia*, Plaintiffs had reason to know about unlawful cigarette sales by Shinnecock, FOW, Native Made and CD2U, yet failed to take appropriate steps as to them or their customers, or to notify FedEx Ground.

> 5. Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate or avoid their claimed damages, including, *inter alia*, by pursuing the shippers alleged to have sold untaxed cigarettes or their customers.

> 6. Plaintiffs' claims for damages must be reduced by the amounts they collected or should have collected from third parties, including, *inter alia*, the consumers bearing ultimate responsibility for the taxes at issue.

> 15. The State's own inactivity under the AOC, and with respect to cigarette tax laws more generally, bars, estops, or otherwise precludes it from complaining of, or seeking relief based on, FedEx Ground's alleged performance and/or nonperformance under the AOC, including, but not limited to, under principles of laches, waiver, estoppel, and similar doctrines.[3]

---

[3] This defense could easily be categorized as an AOC Defense as well, but since it seeks to preclude the AOC claim based on the Plaintiffs' conduct, the Court discusses it along with the Government Conduct Defenses.

17. Plaintiffs' claims are barred or limited by their own conduct, including but not limited to their failure to enforce cigarette tax laws.

18. Plaintiffs' claims are barred or limited by their own conduct, including but not limited to their failure to enforce cigarette tax laws, negligence, or the negligence of their agents, employees, or representatives, or third-parties over which Defendants had no control.

Answer at 21, 26–27.

The thrust of Plaintiffs' argument for striking these six defenses is that they all impermissibly seek to interfere with the City and State's executive discretion to enforce their tax and public health laws. According to Plaintiffs, each defense, at bottom, is simply a complaint that Plaintiffs did not prioritize law enforcement in ways that would reduce the amount of lost tax revenue for which FedEx is now alleged to be directly liable. But Plaintiffs maintain that those enforcement decisions are precisely the type left to the exclusive discretion of the government, and are not to be interfered with by the whims of individual defendants in random cases. *See* Memorandum of Law of Plaintiffs ("Pls.' Br.") (Doc. 94) at 5–8. Plaintiffs further contend that the equitable defenses listed in FedEx's fourth and fifteenth defenses are not applicable to actions for damages, nor to actions in which "the government seeks to vindicate a public interest." Pls.' Br. at 13–20.

FedEx responds that Plaintiffs' purported failure to provide timely notice to FedEx regarding cigarette shippers is relevant to the claims for civil and stipulated penalties under, respectively, the CCTA and AOC. Memorandum of Law in Opposition ("FedEx Opp'n") (Doc. 103) at 4–5. FedEx also argues that Plaintiffs' conduct is relevant to the claims for equitable relief, because, for example, "it would be relevant if Plaintiffs knew of the shippers at issue, or knew of [FedEx's] alleged deliveries, but did not communicate" with FedEx. *Id.* at 5–6. Furthermore, to the extent Plaintiffs are seeking money damages, FedEx argues that it should be

allowed to "invoke ordinary causation and damages principles" as defenses, including by questioning whether Plaintiffs' failure to collect lost taxes from other parties severed the causation chain or violated Plaintiffs duty to mitigate damages. *Id.* at 7.

**B. Applicable Law**

<u>1. Executive Discretion</u>

Government officials "generally are given broad discretion in their decisions whether to undertake enforcement actions." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized…that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). "Executive discretion relates both to the decision not to take action, as well as the decision to take action." *New York v. United Parcel Serv., Inc.*, No. 15 Civ. 1136 (KBF), 2016 WL 502042, at *7 (S.D.N.Y. Feb. 8, 2016) ("*UPS II*") (citing *Heckler*, 470 U.S. at 831). "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise….The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Heckler*, 470 U.S. at 831–32; *see also Leland v. Moran*, 80 F. App'x 133, 135 (2d Cir. 2003) (noting that courts are "particularly ill-equipped to review" enforcement decisions).

The Court has reviewed the cases cited by the parties, as well as the thorough review of this body of law by the district court in *UPS II*, both of which confirm the existence of a basic principle against allowing a party to dictate "when and under what circumstances" a particular law is to be enforced or not enforced. *See UPS II*, 2016 WL 502042, at *8 ("The case law in the area of executive discretion generally relates to a party's attempt to require particular

enforcement, or hold a public entity responsible for lack of or inadequate enforcement.").  It is an

open question, however, whether and to what extent a party can refer to the "consequences" of a

"particular enforcement choice" as part of the factual predicate relevant to an affirmative

defense.  *Id.*

### 2. Equitable Defenses

The common-law equitable defenses that FedEx invokes are closely related.  Waiver is

best described as the intentional surrender of a legal right by act or omission; equitable estoppel

applies when a party misrepresents or conceals material facts and knows or should know that

another party will act as a result; laches bars a party's claim in equity where the party has

unreasonably delayed in a prejudicial manner; unclean hands prohibits awarding equitable relief

to a party that has acted fraudulently or deceitfully to gain an unfair advantage; and *in pari*

*delicto* applies where the plaintiff is also a wrongdoer and thus equally responsible for the injury

at issue.  *See id.* at *12 (collecting cases describing each defense).

Once again, given the body of case law involving government plaintiffs and these

equitable defenses, a basic principle emerges:  "Courts have routinely held that, when acting in a

capacity to enforce public rights in the public interest and discharge statutory responsibilities,

government entities are not subject to all equitable defenses—such as laches or estoppel—that

could ordinarily be invoked against a private actor."  *Id.* at *7 (collecting cases).  On the other

hand, no case endorses wholesale "the sweeping proposition that there is no set of facts pursuant

to which an equitable defense might be asserted against a governmental entity," especially where

the government's role in an action more closely resembles that of a private litigant.  *Id.* at *8

(citing cases in which equitable estoppel is asserted against governmental entities).

### 3. Duty to Mitigate

In New York, a party that "has been injured either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury," and a failure to make such an effort will bar that party "from recovering for those additional damages which result from such failure." *Ridgeview Partners, LLC v. Entwistle*, 354 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (quoting *Den Norske Ameriekalinje Actiesselskabet v. Sun Printing and Publ'g Ass'n*, 226 N.Y. 1, 7 (N.Y. 1919)). "'Reasonable efforts' are efforts conducted with reasonable skill, prudence and efficiency." *Technest Holdings, Inc. v. Deer Creek Fund LLC*, No. 06 Civ. 1665 (HBP), 2008 WL 3449941, at *19 (S.D.N.Y. Aug. 12, 2008) (quoting *Den Norske*, 226 N.Y. at 9).

## C. Discussion

### 1. The Sixth and Seventeenth Defenses Are Struck

The Court grants Plaintiffs' motion to strike the sixth and seventeenth defenses as to all claims. The sixth defense is nothing more than FedEx's request that Plaintiffs collect lost taxes from other parties instead of FedEx, which is the "sort of enforcement decision" that "falls in the heartland of a State's broad discretion in the area of law enforcement decision-making." *UPS II*, 2016 WL 502042, at *11 (citations omitted).

The same is true of the seventeenth defense, which refers only to tax collection, and thus can only be construed as asserting that Plaintiffs' own tax enforcement decisions somehow precludes their suit here. *Id.*

Neither defense is cognizable as a matter of law. Were they successful, they would necessarily induce the Court to interfere with or penalize Plaintiffs for their decisions about how and from whom to collect taxes. Such interference is prohibited by principles of executive

discretion and comity, the latter of "which generally forbids federal courts from interfering with a state's enforcement of its tax laws." *Abuzaid v. Mattox*, 726 F.3d 311, 312–13 (2d Cir. 2013) (reversing district court's injunction relieving seller of unstamped cigarettes from tax penalties imposed by the state "because such relief would interfere with the state's administration of its tax laws"); *see also Heckler*, 470 U.S. at 831.

> 2. The Fourth and Fifteenth Defenses Are Struck as to the CCTA Claim

The extent to which these two defenses survive differs with respect to the three types of claims at issue.

The CCTA authorizes State and local governments to seek various types of relief to restrain CCTA violations, but it does not provide a private right of action.  With respect to the CCTA claim, therefore, Plaintiffs are "acting in law enforcement capacity in their roles as government entities," and "not in a capacity akin to that of a private entity."  *UPS II*, 2016 WL 502042, at *14.  This situation thus falls squarely into the line of authority prohibiting equitable defenses from applying to government actors exercising broad discretion to discharge statutory duties.  *Id.*; *see also Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 111 (2d Cir. 2010) ("[P]rinciples of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow." (quoting *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (internal quotation marks omitted)); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 75–76 (D.D.C. 2004) ("When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law…. *In pari delicto* is similarly unavailable."); *A.C. Transp., Inc. v. Bd. of Educ.*, 253 A.D.2d 330, 337 (N.Y. App. Div. 1999) ("The defense of estoppel (or ratification, acquiescence or laches) cannot be invoked against a governmental agency to prevent it from discharging its statutory duties."

(citation and internal quotation marks omitted)).  Accordingly, the fourth defense and the

fifteenth defense are both struck as to the CCTA claim.[4]

Plaintiffs' role is arguably different in the context of their AOC and RICO claims,

because they "are acting in a role that is more akin to that of a private actor, rather than in the

role of a public enforcer of the public interest."  *UPS II*, 2016 WL 502042, at *14.  The AOC

claim essentially puts Plaintiffs in the position of enforcing an ordinary contract, while civil

RICO actions are available as private rights of action for non-government litigants.  While the

parties brief the issues heavily, particularly RICO, the arguments ultimately demonstrate that

there is no controlling authority that conclusively determines whether or not equitable defenses

apply to a government as contract- or RICO-plaintiff.  *Compare* Pls.' Br. at 3–5, 8–10, *with*

FedEx Opp'n at 19–20; *cf. Republic of Iraq v. ABB AG*, 768 F.3d 145, 163 (2d Cir. 2014)

(affirming district court's dismissal of foreign sovereign's civil RICO claims on *in pari delicto*

grounds), *cert. denied*, 135 S. Ct. 2836 (2015); *see also* FedEx Opp'n at 17–18 (collecting cases

that caution against striking defense for which disputed question of law exists).  Plaintiffs'

motion to strike the fourth and fifteenth defenses is thus denied as to the AOC and RICO claims.

*See UPS II*, 2016 WL 502042, at *15 & n.13 (denying motion to strike defense that is identical

to FedEx's fourth defense here); *id.* at *20 (same as to FedEx's fifteenth defense here).

### 3. The Fifth Defense Is Struck as to the CCTA and AOC Claims

The fifth defense is directed to Plaintiffs' purported duty to mitigate damages.

Plaintiffs' fundamental role as discretionary enforcer of the public interest when suing

under the CCTA precludes application of a duty to mitigate damages.  To impose a duty to

---

[4] As the *UPS II* court rightly noted, the Court can balance equitable considerations in its determination as to whether injunctive relief is warranted under the CCTA, should that be necessary.  *UPS II*, 2016 WL 502042, at *14 n.11 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

mitigate damages in this context would require Plaintiffs, as FedEx itself puts it, to "pursu[e] the shippers alleged to have sold untaxed cigarettes or their customers."  Answer at 21.  That would stand as a judicial mandate forcing the City and State to re-prioritize their tax enforcement efforts, or penalizing them for not doing so.  The principles of executive discretion and comity forbid this result.  *See UPS II*, 2016 WL 502042, at \*14.

In the context of the AOC claim, the State is functionally serving as a private party in a contract dispute.  That would usually make the duty to mitigate appropriate.  In this particular case, however, the AOC provides for stipulated penalties of a set amount ($1000) for each time FedEx knew or should have known of a delivery of cigarettes to an unauthorized recipient inside New York State.  Am. Compl. ¶ 173.  There is no other basis for relief.  The duty to mitigate is thus "inapplicable" because the stipulated damages are "not amenable to mitigation—it is a binary issue—either there is a violation, in which case the amount is established by contract, or not."  *UPS II*, 2016 WL 502042, at \*15.

Once again, the parties vigorously contest the propriety of imposing a duty to mitigate on a government plaintiff in the civil RICO context.  On the one hand, the fact that Plaintiffs rely on CCTA violations as their RICO predicate suggests the very same problems as requiring mitigation of damages for the CCTA claim itself.  On the other hand, the parties do not cite controlling authority either way, and the nature of RICO damages in some cases where the predicate acts resemble breaches of contract suggests that the duty to mitigate is not a total stranger to the civil RICO context.  *See UPS II*, 2016 WL 502042, at \*15 n.12 (discussing contract-like damages in civil RICO cases); FedEx Opp'n at 19–20 (citing two out-of-Circuit cases refusing to strike duty-to-mitigate defense in civil RICO case given lack of controlling authority and sparse factual record).  The Court is thus compelled to deny Plaintiffs' motion to

strike the fifth defense as to the RICO claims and await further development of the record.  *UPS II*, 2016 WL 502042, at *15 ("In short, the Court needs to better understand the factual record to understand whether the proffered use of this defense vis-à-vis the RICO claims is in the realm of what is out of bounds as attacking an enforcement decision, or within bounds as arguing that whatever the decision, there are consequences that cannot be escaped and for which UPS should not be liable.").

### 4. The Eighteenth Defense Is Struck as to the CCTA and AOC Claims

The eighteenth defense is identical to the seventeenth defense, except that it also purports to raise what appears to be a defense of contributory or comparative negligence.

That minor difference is of no import in the context of the CCTA claim.  The core premise of the defense is that Plaintiffs were negligent in their discretionary tax enforcement, a contention that is impermissible where the government seeks to vindicate the public interest via enforcement of a public statutory right.  *Cf. F.T.C. v. Crescent Pub. Grp., Inc.*, 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) ("As a general rule…neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest." (quoting *Nevada v. United States*, 463 U.S. 110, 141 (1983)) (internal quotation marks omitted)).  FedEx's only response, that Plaintiffs should not be able to go after FedEx directly for unpaid tax liability, does not alter the fact that Plaintiffs do not at all resemble private plaintiffs when they seek to enforce the CCTA.  *See* FedEx Opp'n at 22–23.  It is the attempt to assert a contributory- or comparative-negligence defense against Plaintiffs *in their public enforcement role* that is objectionable, and compels striking of the eighteenth defense as to the CCTA claim.

FedEx makes no argument specific to the application of the eighteenth defense to the AOC claim.  This arguably constitutes waiver.  But in any event, since the AOC claim is

functionally a breach-of-contract claim, there is no cognizable legal basis for FedEx to bar it

based on contributory or comparative negligence.  *See Solutia Inc. v. FMC Corp.*, 456 F. Supp.

2d 429, 451 (S.D.N.Y. 2006) ("FMC cites no case that permits a party to escape enforcement of

a contract on the basis of contributory or comparative negligence.  Nor does FMC provide any

persuasive justification for why there should be such a defense.  Accordingly, FMC's Twelfth

Affirmative Defense is dismissed with respect to Solutia's breach of contract claim." (citing

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298 (LMM), 1999 WL

710778, at *3 (S.D.N.Y. Sept. 10, 1999))); *Ne. Petroleum Div. of Cargill, Inc. v. Bear Stearns

N.Y., Inc.*, No. 92 Civ. 6826 (LMM), 1994 WL 381346, at *5 (S.D.N.Y. July 19, 1994)

("Defendant's affirmative defense of contributory negligence must be dismissed, since the

instant action is for breach of contract.").  The defense is therefore struck as to AOC claim.

The Court is also doubtful that a contributory- or comparative-negligence defense can

apply to a claim requiring intentional conduct as an element, such as the RICO claims here.[5]  But

since the parties have not provided controlling authority and Plaintiffs are more akin to a private

tort plaintiff in the civil RICO context, the Court will not strike this defense as to the RICO

claims at this stage.  The Court cautions FedEx, however, that its decision not to strike this

defense in its entirety is not an invitation to wide-ranging discovery on whether Plaintiffs have

historically been negligent in their discretionary collection of taxes and enforcement of tax laws.

---

[5] *See Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 90 Civ. 7127 (PEP), 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993) ("Because a RICO violation involves intentional conduct, contributory negligence is not a viable defense to such a claim either." (citation omitted)); *see also Field v. Mans*, 516 U.S. 59, 70 (1995) (noting the common law rule that "contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort"); *GAMCO Inv'rs, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 257 (S.D.N.Y. 2013) ("This is just another way to state the common law rule that contributory negligence is not a defense to an intentional or reckless tort.  The best solution is for people not to harm others intentionally, not for potential victims to take elaborate precautions against such depravations." (quoting *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 528 (7th Cir. 1985) (internal quotation marks omitted)).

## IV. AOC DEFENSES

### A. The Defenses

The AOC Defenses are the tenth, eleventh, twelfth, and thirteenth defenses, asserted by

FedEx as follows:

10. The AOC is unenforceable under Executive Law § 63, as the Attorney General lacked the authority to institute a civil action under NYPHL 1399-*ll* at the time the AOC was executed.

11. The penalty provision of the AOC is unenforceable, as it is beyond the permissible scope of relief in an Assurance under Executive Law § 63 and/or New York contract law.

12. The AOC is unenforceable due to failure of consideration and/or misrepresentations by the State.  At the time the AOC was signed, the Attorney General knew that it lacked authority to commence a civil action under NYPHL 1399-*ll*.  Nevertheless, the New York Attorney General materially misrepresented its authority pursuant to New York Public Health Law § 1399-*ll*, including its ability under the statute to institute a civil action under and recover civil penalties pursuant to New York Public Health Law § 1399-*ll*—while simultaneously concealing its own material admissions elsewhere regarding the non-existent scope of its authority.  The Attorney General made this material misrepresentation through a combination of statements contained on the face of the AOC and in related correspondence regarding the purpose and effect of the AOC….Contrary to these representations, the New York Attorney General lacked authority to commence a civil action under 1399-*ll* and therefore lacked the authority to enter into an Assurance of Compliance pursuant to New York Executive Law § 63(15) regarding alleged violations of N.Y.P.H.L. § 1399-*ll*….Moreover, the Attorney General's Office knew that its representations regarding its authority under 1399-*ll* were false when made….In addition to materially misrepresenting its authority under § 1399-*ll*, the Attorney General's Office also fraudulently concealed material information from FedEx Ground and failed to disclose information concerning its own contrary statements as necessary to prevent the statements it did make from being misleading….The statements made by the New York Attorney General's Office were intended to, and did, induce reliance by FedEx Ground; namely its execution of the AOC….

13. The State's claim under the AOC is barred or limited by its own breach or nonperformance of, or bad faith with respect to, the Assurance of Compliance, including but not limited to, any covenants implied therein.

Answer at 22–26.[6]

**B. Discussion**

    <u>1. Background on NYPHL § 1399-*ll* and N.Y. Exec. Law §§ 63(12), 63(15)</u>

    NYPHL § 1399-*ll* makes it "unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be [a consumer]."  NYPHL § 1399-*ll*(2).  In 2013, § 1399-*ll* was amended to authorize the Attorney General and "corporation counsel of any political subdivision that imposes a tax on cigarettes" to "bring an action to recover the civil penalties provided by [§ 1399-*ll*(5)] and for such other relief as may be deemed necessary."  § 1399-*ll*(6).  Prior to the 2013 amendment, only the State Commissioner of Health could bring such an action.  In a previous decision in this case, the Court held that the 2013 amendment was not retroactive and thus the City and State could not sue for civil penalties directly under § 1399-*ll* for conduct predating the amendment.  *See City of New York v. FedEx Ground Package Sys., Inc.*, 91 F. Supp. 3d 512, 528–29 (S.D.N.Y. 2015) ("*FedEx I*").

    New York Executive Law ("N.Y. Exec. Law") § 63(12) provides that, where "any person" engaged in "repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality" in conducting business, the Attorney General may apply on behalf of the State "for an order *enjoining* the continuance of such business activity or of any fraudulent or illegal acts, [or] directing *restitution* and *damages*…." (emphasis added).

---

[6] In the context of a motion to dismiss pursuant to Rule 12(b)(6), FedEx has asserted identical arguments about the AOC in a related case before this Court, involving substantially similar allegations by the City and State based on FedEx's alleged deliveries on behalf of twenty-one other cigarette sellers.  *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 14 Civ. 8985 (S.D.N.Y.).  The Court has rejected many of these arguments, for the same reasons, in an Opinion and Order published the same day as the instant Opinion and Order.

The AOC was entered into pursuant to another provision of the New York Executive Law, N.Y. Exec. Law § 63(15), and essentially serves as a "regulatory mechanism, similar to a deferred-prosecution agreement, in which the Attorney General agrees to forego suit…in exchange for a company's agreement to alter its practices." *Whitehaven S.F., LLC v. Spangler*, No. 14 Civ. 3677, 2015 WL 8240549, at *1 (2d Cir. Dec. 9, 2015). N.Y. Exec. Law § 63(15) provides as follows: "In any case where the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state, in lieu thereof he may accept an assurance of discontinuance of any act or practice in violation of such law from any person engaged or who has engaged in such act or practice."

### 2. The Scope of the AG's Authority under N.Y. Exec. Law § 63(12)

In an opinion in a related case, released on the same day as this opinion, the Court ruled on the scope of Plaintiffs' pre-amendment authority to seek civil penalties under NYPHL § 1399-*ll* via an action brought pursuant to N.Y. Exec. Law § 63(12). *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 14 Civ. 8985 (S.D.N.Y.). That discussion is relevant to the instant motion because, in both cases, Plaintiffs have defended their authority to enter the AOC in part on the proposition that § 63(12), regardless of the Court's prior ruling on retroactivity, has always permitted the AG to seek civil penalties for violations of § 1399-*ll*. Pls.' Br. at 23–24. The Court's analysis is thus presented here as well.

As the text of N.Y. Exec. Law § 63(12) makes clear, the State is generally limited to the three enumerated remedies when bringing actions under that provision—injunctive relief, restitution, and damages—and civil penalties are not included. *See State v. Solil Mgmt. Corp.*, 491 N.Y.S.2d 243, 249 (N.Y. Sup. Ct.) ("[The State] is not entitled to punitive damages or treble damages, or both, from respondent. N.Y. Exec. Law § 63(12) does not provide for either of

19

these extraordinary remedies and petitioner is limited to obtaining restitution or compensatory damages."), *aff'd*, 114 A.D.2d 1057 (N.Y. App. Div. 1985); *see also People ex rel. Spitzer v. Frink Am., Inc.*, 2 A.D.3d 1379, 1380 (N.Y. App. Div. 2003) ("[S]ection 63(12) 'create[s] no new claims but…provide[s] *particular* remedies and standing in a public officer to seek redress on behalf of the State and others.'" (emphasis added) (alterations in original) (quoting *State v. Cortelle Corp.*, 38 N.Y. 2d 83, 86 (1975))).

However, plaintiffs point to two types of cases in support of their position that they are not precluded from seeking civil penalties in a § 63(12) action:  (i) cases in which courts have held that the State can obtain § 63(12) relief "beyond the remedies available" in the underlying statute being enforced, and (ii) cases in which the State was awarded remedies beyond the three listed in § 63(12), including civil penalties.  Pls.' Br. at 23–24.  The first type merely acknowledges that the State can obtain injunctive relief, restitution, or damages via § 63(12), even if the underlying statute does not provide for those remedies.  *See Frink Am.*, 2 A.D.3d at 1380–81 (discussing only injunctive relief and restitution as recoverable remedies under § 63(12) that go "beyond" remedies in underlying statute).  The second type involves awards to the State for civil penalties under § 63(12), but only because the underlying statute expressly empowered the AG to levy such penalties.  *See* Pls.' Br. at 23 (collecting cases to argue that § 63(12) allows the AG "to seek penalties *where an underlying statute provides for penalties*" (emphasis added)); FedEx Opp'n at 31–32 & nn.15–16 (demonstrating that Plaintiffs' cases involve statutory provisions explicitly authorizing the AG to seek penalties).  These two categories of cases simply stand for the straightforward proposition that, in any given case, the AG can seek penalties available under both § 63(12) *and* the underlying statute being enforced.  Plaintiffs do not cite

any case in which the AG is awarded civil penalties via a § 63(12) action to enforce an underlying statute that does not itself empower the AG collect civil penalties.

The upshot is that the AG has only been able to use § 63(12) to seek civil penalties for violations of § 1399-*ll* since 2013, *i.e.*, since § 1399-*ll* itself authorized the AG to bring an action for civil penalties.

### 3. The Tenth Defense Is Struck

The tenth defense is not cognizable as a matter of law because the AG has long had the authority to institute a civil *action* under N.Y. Exec. Law § 63(12) to restrain violations of NYPHL § 1399-*ll*.  The basic problem is that FedEx conflates the AG's authority to seek civil penalties under § 1399-*ll*, which was unavailable at the time the AOC was executed, and the AG's authority to institute *any* civil action to halt violations of § 1399-*ll*, which was available under § 63(12) at the time the AOC was executed.

FedEx relies on this Court's opinion in *FedEx I*, but misconstrues its holding.  *FedEx I* held only that the 2013 amendment to § 1399-*ll*, which authorized the AG to levy civil penalties, was not retroactive.  Nothing in *FedEx I* limited the AG's authority to, for example, bring an action pursuant to N.Y. Exec. Law § 63(12) to enjoin persistent violations of § 1399-*ll* or collect compensatory damages.[7]  The absence of authority as to one type of remedy does not operate as a complete bar on any civil action, as the tenth defense claims—the AG plainly had authority to enforce § 1399-*ll* in particular ways at the time the AOC was executed, and it was that authority that legitimated the AOC.  *Cf. UPS II*, 2016 WL 502042, at *19 (upholding the AG's authority to

---

[7] The Legislature's stated justification for the 2013 amendment was to "provide[] for more effective enforcement of the statute by permitting both the Attorney General and the Corporation Counsel…to bring actions to recover civil penalties for statutory violations."  N.Y. Sponsors Memo., 2013 S.B. 5215 (Nov. 5, 2013); N.Y. Sponsors Memo., 2013 A.B. 429 (Mar. 14, 2013).  There is no indication, in other words, that the amendment had ambitions beyond providing an additional type of remedy for the City and State.

enter into assurance with UPS because AG "had the authority to commence an action for certain specified forms of relief under N.Y. Exec. Law § 63(12) in relation to repeated violations of PHL § 1399-*ll*"); *Frink Am., Inc.*, 2 A.D.3d at 1380–81 (upholding AG's authority to enforce § 63(12) remedies not found in underlying statute).

Plaintiffs' motion to strike the tenth defense is granted.

4. The Eleventh Defense Is Struck

The eleventh defense is struck because the AG had authority to include stipulated penalties in the AOC under both § 63(15) and ordinary contract principles, and because these penalties do not run afoul of New York's restrictions on liquidated damages.

FedEx first argues that § 63(15) does not, on its own terms, authorize the inclusion of penalties into an assurance such as the AOC. FedEx Opp'n at 31–33. But of course § 63(15) does not expressly list *any* remedies that are appropriately included in assurances.[8] And unlike § 63(12), which empowers the AG to bring enforcement actions and seek certain remedies against an uncooperative defendant, § 63(15) contemplates a *voluntary* agreement in which the AG and the counterparty negotiate and agree on the permissible scope of injunctive and monetary relief going forward. Consequently, unlike the plain language in § 63(12), there is nothing in § 63(15) that purports to limit the types of remedial schemes to be included in assurances of compliance. *Cf.* § 63(15) (requiring only that "the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state"); *Solil Mgmt. Corp.*, 491 N.Y.S.2d at 246 (upholding § 63(15) agreement requiring landlord to pay rent refunds even where underlying statute gave housing commissioner exclusive jurisdiction to sue landlord for

---

[8] Although § 63(15) allows for "a stipulation for the voluntary payment by the alleged violator of the reasonable costs and disbursements incurred by the attorney general during the course of his investigation," there is no logical basis or authority to indicate that this is meant to be the exclusive remedy provided by any § 63(15) assurance.

rent overcharges, because landlord who "entered into that agreement…waived any objection it might have had to the Attorney-General's jurisdiction to investigate rent overcharge complaints").  Here, the fact that the AG could institute a civil action "in connection with" enforcement of the federal and state laws listed in the AOC, including § 1399-*ll*, is sufficient authority for the penalties that FedEx agreed to pay.

FedEx's defense that the AOC's stipulated penalty provisions are impermissible liquidated damages also fails.  FedEx Opp'n at 33.  First, the Court echoes the *UPS II* court's "serious doubts that this liquidated damages rule applies to a deferred-prosecution agreement like the [AOC], which is distinguishable in important respects from an ordinary commercial contract," and notes that FedEx "does not cite a single case in which such a stipulated damages provision was held unenforceable."  *UPS II*, 2016 WL 502042, at *19 n.14.  Second, FedEx's argument that the AOC's penalties could be considered impermissible liquidated damages under New York law is unconvincing.  In New York, "a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not plainly disproportionate to the possible loss."  *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 70 (2d Cir. 2004) (internal quotation marks omitted).  FedEx's attempt to decouple the AOC's stipulated penalties from actual damages ultimately serves to underscore the difficulty of ascertaining actual damages from FedEx's violation of one or more of the interrelated obligations imposed by the AOC.  *See UPS II*, 2016 WL 502042, at *19 n.14 ("Damages would have been difficult to ascertain in light of UPS's various agreements contained in the AOD….").  Without a more convincing showing that the AOC's per-violation penalty is "plainly disproportionate" to the loss from a given violation,  FedEx's emphasis on the fact that the AOC uses the term "penalties" alone is not sufficient to render the AOC's penalty

provisions unenforceable.  *See Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d 1015, 1018–19 (N.Y. 1977) ("In interpreting a provision fixing damages, it is not material whether the parties themselves have chosen to call the provision one for 'liquidated damages'…or have styled it as a penalty.  Such an approach would put too much faith in form and too little in substance." (citations omitted)).

Plaintiffs' motion to strike the eleventh defense is granted.

### 5. The Twelfth Defense Is Struck as to Lack of Consideration, and as to Misrepresentation of Authority to Commence Civil Action and Include AOC Penalties

FedEx's lengthy twelfth defense challenges the AOC's formation based on two theories: (i) The AG did not provide any consideration, and (ii) the AG made misrepresentations about the scope of authority under NYPHL § 1399-*ll* and N.Y. Exec. Law § 63.  The Court finds that most aspects of this defense are not cognizable, but will permit the defense to go forward to the extent it relies on misrepresentations specifically about the AG's lack of authority to obtain *civil penalties* under § 1399-*ll*.

FedEx first argues that the AOC lacked consideration because the AG's promise not to bring a § 1399-*ll* action was "entirely illusory and known by the Attorney General's office to have been illusory…in light of its inability to bring such an action."  FedEx Opp'n at 34.  This argument requires FedEx to construe the AOC as merely a promise from the AG not to seek statutory civil penalties that it could not obtain under § 1399-*ll*, but this framing is far too narrow.  First off, the AG had authority to enforce § 1399-*ll* using § 63(12) remedies, and the AOC encompassed an agreement not to pursue those remedies.  *See* AOC ¶ 7.[9]  More generally,

---

[9] "[A] Rule 12(f) motion to strike…focuses solely on the allegations in the pleadings."  *Great Rock Golf 2006, LLC v. Town of Riverhead*, No. 12 Civ. 3585 (SJF), 2013 WL 3788606, at *7 (E.D.N.Y. July 18, 2013) (collecting cases).  The Court may consider the contents of the AOC in resolving this motion both because it is "integral" to the pleadings in the Complaint and Answer, and because all parties had knowledge and possession of the AOC and

the AOC "covered a broader range of conduct than PHL § 1399–*ll*," and did not purport, and was not required, "to specify an exhaustive list of the legal remedies that the []AG might have relied upon in a theoretical enforcement proceeding" or "expressly provide for only those specific penalties or other remedies that would been the end result of a successful enforcement action." *UPS II*, 2016 WL 502042, at *18.  The consideration from the AG, in other words, was far broader than a mere agreement not to seek civil penalties under § 1399-*ll*—it was an agreement to halt the AG's investigation and forbear from bringing an enforcement action related to FedEx's potential violations of a number of state and federal laws, including but not limited to § 1399-*ll*.  *See* AOC at 4 ("[T]he Attorney General accepts the following assurances pursuant to EL § 63(15) *in lieu of* commencing a civil action against FedEx in connection with the matters that were the subject of the investigation described in Paragraphs 6 and 7 of this Assurance of Compliance, *including* any alleged past violations of PHL § 1399-*ll*." (emphasis added)); *see also UPS II*, 2016 WL 502042, at *18 ("The AOD was, effectively, a settlement of a pending investigation by the NYAG.  In the AOD, UPS clearly received the benefit of the State's agreement to forego a potential enforcement action for what the State believed to be UPS's prior violations of state law.").  This consideration was adequate, as a matter of law.

The same reasoning dispenses with FedEx's misrepresentation defense to the extent that defense is premised on representations about the AG's authority to include penalties within the AOC.  The AG had that authority under § 63(15), and did not make any misrepresentations by so stating.

Furthermore, because the AG also had authority to bring an action under N.Y. Exec. Law § 63(12) to, for example, enjoin violations of § 1399-*ll*, the AG did not misrepresent its authority

---

relied upon it in framing their pleadings.  *Cf. Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011).

to commence a civil action generally.  *See UPS II*, 2016 WL 502042, at *19 (striking

misrepresentation defense because the AG "had the authority to commence an action for certain

specified forms of relief under Exec. Law § 63(12) in relation to repeated violations of PHL §

1399-*ll*").

As previously discussed, however, the AG did *not* have authority at the time of the AOC

to bring an action for the civil penalties provided by § 1399-*ll*, either directly under that

provision or via an action pursuant to N.Y. Exec. Law § 63(12).  Thus, there remain both

questions of fact and law that preclude striking the defense at this stage, including the substance

of the representations made, whether the AG had an intent to deceive, and whether FedEx

reasonably relied on any misrepresentations.  *See Paraco Gas Corp. v. Travelers Cas. & Sur. Co.

of Am.*, 51 F. Supp. 3d 379, 392 (S.D.N.Y. 2014) ("A party alleging fraud in the formation of a

contract must plead '(i) a material misrepresentation of a presently existing or past fact; (ii) an

intent to deceive; (iii) reasonable reliance on the misrepresentation…; and (iv) resulting

damages.'" (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011))).

The Court thus grants Plaintiffs' motion to strike the twelfth defense, but only to the

extent the defense turns on lack of consideration or representations going to the AG's authority

to (i) include penalties within the AOC, or (ii) initiate any civil action to enforce § 1399-*ll*.  The

motion is denied to the extent the defense turns on representations *specifically* going to the AG's

authority to sue for civil penalties under § 1399-*ll*.

### 6. The Thirteenth Defense Is Not Struck

FedEx's thirteenth defense is based on Plaintiffs' breach or non-performance of the AOC,

including a breach of any implied covenant, such as good faith and fair dealing.  As already

noted, Plaintiffs are more akin to regular private plaintiffs in the context of their AOC claim.

"Even governmental entities are subject to the implied covenant of good faith and fair dealing."
*UPS II*, 2016 WL 502042, at *20 (collecting cases).  Although Plaintiffs make a persuasive
argument that the AOC did not impose any affirmative performance obligations on the AG, Pls.'
Br. at 25–26, it is nonetheless a question of fact as to whether they fulfilled their duties under any
implied covenants, which precludes the Court from striking this defense as a matter of law.  *UPS
II*, 2016 WL 502042, at *20.[10]  Plaintiffs' motion to strike the thirteenth defense is denied.

## V. OTHER DEFENSES

### A. The Defenses

The remaining defenses are FedEx's eighth and twenty-third defenses, which FedEx
asserts as follow:

> 8. Plaintiffs' CCTA-based claims are barred, in whole or in part, to the extent they
> are not based on separate violations, each of which comprised more than 10,000
> unstamped cigarettes.

> 23. Plaintiffs' claims are preempted or barred, in whole or in part, by principles of
> federal law pertaining to Indians or Indian tribes to the extent Plaintiffs seek to
> hold FedEx Ground liable for aspects of Indian activities and FedEx Ground may
> legally avail itself of the rights or powers of Indians or Indian tribes.

Answer at 22, 27.

### B. Discussion

#### 1. The Eighth Defense Is Not Struck

FedEx states that this defense "merely reflects the statutory declaration" that "*each
CCTA violation alleged by Plaintiffs*" must involve "at least 10,001 cigarettes."  FedEx Opp'n at

---

[10] Plaintiffs' argument that the AOC's merger clause negates a defense based on the implied covenant of good faith
and fair dealing is rejected for the purposes of this motion, because the Court is not convinced that it is a question
easily resolvable as a matter of law, at least at this stage.  *Compare* FedEx Opp'n at 38 (citing cases for proposition
that presence of merger clause does not negate implied covenant of good faith and fair dealing), *with* Reply
Memorandum of Law of Plaintiffs (Doc. 122) at 18 (citing cases for proposition that implied covenant of good faith
and fair dealing does not create any obligation on the parties independent of the contract terms).

28.  This is simply a restatement of the CCTA's statutory definition of "contraband cigarettes,"

18 U.S.C. § 2341(2), serving no other purpose than to preserve FedEx's obvious right to contest

whether Plaintiffs have made out a required element of their CCTA claim.  Since there is no

prejudice that could possibly result from such a defense, however, the Court declines to strike it.

The Court emphasizes that this defense should in no way be used to undercut the

unanimous ruling of this Court and others that Plaintiffs are permitted to aggregate quantities of

cigarettes across multiple shipments in order to establish the requisite 10,001 cigarettes that

constitutes a single CCTA violation.  *See UPS II*, 2016 WL 502042, at *28; *FedEx I*, 91 F. Supp.

3d at 520–21.

### 2. The Twenty-Third Defense Is Not Struck

The Court denies Plaintiffs' motion as to the twenty-third defense.  Plaintiffs have made

persuasive arguments that Native Americans are subject to state and local cigarette tax laws, and

that in any case, FedEx is not a Native American in Native American country.  However, the

Court is not convinced that Plaintiffs have provided controlling authority that precludes *all*

questions of fact and law governing the full scope of the twenty-third defense.  *Cf. UPS II*, 2016

WL 502042, at *27 n.23 (noting the "challenging question" of whether a carrier's liability could

arise from "shipments that [the carrier] made on or within the boundaries of a single reservation

between qualifying Native American sellers and tribe members").

## VI. PREJUDICE

Regarding the Government Conduct Defenses that the Court has struck, the prejudice is

consistent and clear:  Plaintiffs should not have to participate in wide-ranging discovery that

could potentially sweep in almost four decades' worth of discretionary enforcement decisions

and internal deliberation by City and State law enforcement and policymakers, all for the sake of

defenses that are facially infirm as a matter of law.  *Cf. UPS II*, 2016 WL 502042, at *9–11

(describing long history of State efforts and forbearance policies with respect to collection of

taxes for cigarettes sold on Native American reservations to non-tribe members); Pls.' Br. at 33–

34 (referencing FedEx discovery requests regarding history of City and State investigative and

enforcement methods, forbearance policies, and collection of cigarette taxes from consumers);

Reply Memorandum of Law of Plaintiffs (Doc. 122) at 20–23 (same).  Inclusion of these

defenses, for which no questions of fact or substantial questions of law exist, would "needlessly

increase the time and expense of trial or duration and expense of litigation."  *UPS II*, 2016 WL

502042, at *29 (citation and internal quotation marks omitted).  The Court acknowledges

FedEx's point that some of the discovery necessary for the defenses that have been struck will

nevertheless be necessary for Plaintiffs' *prima facie* case, or even for some remaining defenses

that have not been struck.  FedEx Opp'n at 15–17.  But partial overlap does not negate the

prejudice that Plaintiffs will face should they have to account for decades of discretionary policy

decisions, a likely possibility given some of the discovery requests made to date, particularly as

they relate to the Government Conduct Defenses that have been struck here.

  The Court also finds that Plaintiffs would be prejudiced by having to partake in needless

summary judgment and motion *in limine* practice regarding the AOC Defenses that are plainly

invalid as a matter of law, and thus amenable to resolution by the Court now.

  In sum, the Court finds that all of the defenses that fail as a matter of law would cause

Plaintiffs prejudice if they remained in the case.  They are thus appropriately struck from the

pleadings pursuant to Rule 12(f).

## VII. CONCLUSION

The Court GRANTS Plaintiffs' motion in part and DENIES it in part. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 89.

It is SO ORDERED.

Dated:    March 31, 2016
          New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.