UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE CITY OF NEW YORK and THE PEOPLE OF THE
STATE OF NEW YORK,

                         Plaintiffs,                  Civ. No. 13-cv-9173-ER-KNF

-against-

FEDEX GROUND PACKAGE SYSTEM, INC.,

                         Defendant.

------------------------------------------------------------------------x


**THE CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS
CROSS-MOTION TO DISMISS THE SEVENTH DEFENSE AND  IN OPPOSITION TO
FEDEX'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER  OF
JANUARY 15, 2016**

ZACHARY W. CARTER
Corporation Counsel of
 The City of New York

Eric Proshansky
Krista Friedrich
Assistant Corporation Counsel
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032
eproshan@law.nyc.gov
kfriedri@law.nyc.gov

*Attorneys for Plaintiff*
 *The City of New York*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ............................................................................................................... 1

THE SEVENTH DEFENSE ............................................................................................. 4

PRIOR PROCEEDINGS .................................................................................................. 5

SUMMARY OF ARGUMENT ........................................................................................ 7

ARGUMENT

      POINT I

            THE SEVENTH DEFENSE SHOULD BE
            DISMISSED AS A MATTER OF LAW .................................................... 9

            A.     A Settlement Agreement Is a Contract For
                  Which Contract Remedies Alone Are
                  Permissible. ....................................................................................9

            B.     Because Only Claims Related to Cigarettes-
                  Direct-To-You Were Released, There Is No
                  Legal Basis to Hold That "The City's
                  Claims Are Barred" ......................................................................11

            C.     The Settlement Agreement, by Its Own
                  Terms, is Both Inadmissible in and
                  Irrelevant to This Action ...............................................................12

            D.     The Seventh Defense Should be Stricken in
                  its Entirety ....................................................................................13

      POINT II

            FEDEX'S OBJECTIONS TO THE MAGISTRATE
            JUDGE'S ORDER ARE MERITLESS .................................................... 14

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*In re Air Crash Disaster at John F. Kennedy International Airport*,
    687 F.2d 626 (2d Cir. 1982)..................................................................................11

*Alvarado v. City of New York*,
    2009 U.S. Dist. LEXIS 15591 (E.D.N.Y. Feb 27, 2009)........................................14

*City of New York v. Chavez*,
    944 F. Supp. 2d 260 (S.D.N.Y. 2013).................................................................1 n.1

*City of New York v. Chavez*,
    2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012) .........................................2

*City v. FedEx*,
    2016 U.S. Dist. LEXIS 44681 (S.D.N.Y. March 31, 2016) .........................7, 8 n.10

*Clark v. Elza*,
    406 A.2d 922 (Md. 1979) ..................................................................................10

*DHC Resort, LLC v. Razorback Entertm't Corp.*,
    329 F.3d 974 (8th Cir. 2003) .......................................................................11 n.12

*E.E.O.C. v. First Wireless Grp., Inc.*,
    225 F.R.D. 404 (E.D.N.Y. 2004) .........................................................................14

*Farese v. Scherer*,
    2008 U.S. App. LEXIS 23622 ............................................................................10

*Frank Felix Assocs. v. Austin Drugs*,
    1997 U.S. App. LEXIS 19795 (2d Cir. Apr. 10, 1997) ..........................................10

*Goldman v. Commissioner*,
    39 F.3d 402 (2d Cir. 1994)....................................................................................9

*Halderman v. Pennhurst State Sch. & Hosp.*,
    901 F.2d 311 (3d Cir. 1990)..................................................................................12

*Morris v. Tate (In re Southern Ohio Correctional Facility)*,
    1999 U.S. App. LEXIS 23750 (6th Cir. Sept. 24, 1999) ........................................10

*Pall Corp. v. Entegris, Inc.*,
    655 F. Supp.2d 169 (E.D.N.Y. 2008) ..................................................................14

*Pressley v. City of New York*,
    2016 U.S. Dist. LEXIS 44539 (E.D.N.Y. Mar. 31, 2016)........................14, 18 n.14

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  173 F.3d 481 (2d Cir. 1999).........................................................................9, 11

*Rexnord Holdings, Inc. v. Bidermann*,
  21 F.3d 522 (2d Cir. 1994).......................................................................... 9-10

*Ronen v. Cohen*,
  126 A.D.3d 487 (1st Dep't 2015) ...................................................................10

*Toliver v. City of New York,*
  2012 U.S. Dist. LEXIS 36946 (S.D.N.Y. Mar. 19, 2012) ...............................18 n.14

*United States v. Philip Morris Inc.*,
  300 F. Supp. 2d 61 (D.D.C. 2004) ..............................................................8 n.10

## <u>Statutes</u>

18 U.S.C. § 2341 *et seq.*............................................................................................1

Fed. R. Civ. Proc. 12(f)........................................................................................7 n.9

Fed. R. Civ. Proc. 26............................................................................................8

Fed. R. Civ. Proc. 26(b)(1) ....................................................................................18

N.Y. Pub. Hlth. L. § 1399-*ll* .................................................................................1

## <u>Other Authorities</u>

4-49 *Federal Litigation Guide* § 49.60 (Bender 2016)...............................................10

*Restatement (Second) of Contracts* § 241(a) (1981)............................................11 n.12

Plaintiff the City of New York ("the City") respectfully submits this memorandum of law in support of the City's cross-motion to dismiss the Seventh Defense of FedEx Ground Package System, Inc. ("FedEx") and in opposition to FedEx's Objection to the January 15, 2016 Order of Magistrate Judge Fox (*Dkt. No.* 175).

## BACKGROUND

This action arises out of the City's 2011 discovery that, since at least 2003, FedEx delivered untaxed cigarettes to consumers nationwide, in violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*, N.Y. Pub. Hlth. L. § 1399-*ll* and, by 2006, in defiance of a non-prosecution agreement between FedEx and the New York State Attorney General.

In 2011, the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") arrested the associates of a cigarette trafficking enterprise operating under the name "Cigarettes-Direct-To-You" (a/k/a "CD2U" or "Chavez, Inc."). Over several years, Cigarettes-Direct-To-You had engaged in the sale and shipment of untaxed cigarettes to thousands of residential customers nationwide.[1] The City's review of documents seized by ATF from the Cigarettes-Direct-To-You offices revealed that FedEx had entered into long-standing delivery contracts with the company, with knowledge of CD2U's business practices, including the shipment of untaxed cigarettes into New York.[2] Based on the information received from ATF, the City subpoenaed FedEx for documents related to Cigarettes-Direct-To-You. FedEx produced invoices evidencing FedEx deliveries for CD2U of at least 70 tons of untaxed cigarettes into New York City alone.

---

[1] Documents received from ATF also formed the basis for a prior action by the City against Cigarettes-Direct-To-You. *City of New York v. Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013).

[2] Discovery in the present action shows FedEx's actual knowledge as early as the 2003 inception of its business relationship with Cigarettes-Direct-To-You that CD2U "ships cigarettes direct to peoples' homes thus the name."

Unconvinced by FedEx's assertions that it could not have known the contents of packages with a return address of "Cigarettes-Direct-To-You," the City sought damages from FedEx. Following negotiations, FedEx paid an amount approximately equal to the $2.4 million in taxes that the City would have received had FedEx not "injected unstamped cigarettes directly into the New York State and City streams of commerce, avoiding the stamping system." *City of New York v. Chavez*, 2012 U.S. Dist. LEXIS 42792 at *13 (S.D.N.Y. Mar. 26, 2012); s*ee* http://cityroom.blogs.nytimes.com/2013/03/15/fedex-to-pay-city-2-4-million-in-cigarette-tax-settlement/ (last visited Apr. 11, 2016). The parties entered into the March 15, 2013 Settlement Agreement (hereafter "Settlement Agreement" or "Agreement"), annexed as Exhibit 1 to the accompanying Declaration of Eric Proshansky dated April 11, 2016, which documented the payment and released FedEx from liability, but only from City claims related to Cigarettes-Direct-To-You deliveries made between specified dates.[3] The strict limitation in the Settlement Agreement to specified deliveries was prescient; shortly after execution of the agreement the City learned that FedEx had made deliveries into the City for shippers other than Cigarettes-Direct-To-You.

The discovery of additional shipments came about as follows. At the outset of the negotiation between the City and FedEx over the Cigarettes-Direct-To-You deliveries, FedEx sought the City's agreement to withhold word of the discussions from the New York Attorney

---

[3] FedEx complains of the City's references to *the fact* of settlement itself, inaccurately asserting that the City put the Settlement Agreement at issue in this action. *Obj. Mem.* 2. The contention is incorrect (albeit irrelevant), and fails to distinguish between the fact of settlement and the Settlement Agreement. The fact of settlement was not confidential (indeed, the City rejected FedEx's requests that the settlement be so treated), and the settlement was widely reported. FedEx placed the Settlement Agreement itself at issue in asserting the Seventh Defense.

The City does not seek to recover any amounts related to the Cigarettes-Direct-To-You deliveries in this action.

General. The City rejected the condition, well aware that the Attorney General had entered into an Assurance of Compliance with FedEx (the "AOC") in exchange for FedEx's agreement to cease cigarette deliveries to State residents. The City duly notified the Attorney General of the Cigarettes-Direct-To-You deliveries, many of which were to New York consumers residing outside of the City. Shortly after announcement of the City-FedEx settlement, the New York Attorney General subpoenaed FedEx, seeking documents concerning *any* cigarette deliveries into New York State. Upon learning that FedEx had produced documents to the Attorney General, the City sought review, which FedEx refused. The City served a second subpoena on FedEx, on July 31, 2013, seeking production of the documents FedEx produced to the State.[4] FedEx then made a production to the City, revealing that it had delivered cigarettes into the City for cigarette shippers other than Cigarettes-Direct-To-You, not disclosed to the City during the Cigarettes-Direct-To-You negotiations.

At first, because the newly-revealed deliveries into the City appeared *de minimis*, the City notified FedEx that the City would not pursue claims related to those shippers. The Attorney General's office immediately expressed puzzlement at the City's conclusion, and suggested that FedEx had not produced the same documents to the City as had been produced to the State. The City notified FedEx of the apparent discrepancy, at which point FedEx produced to the City invoices documenting hundreds of cigarette deliveries into the City by FedEx for Shinnecock Smoke Shop. Those documents had apparently been produced to the State but initially omitted from the subsequent production to the City. The City and FedEx were unable to resolve claims

---

[4] The City's subpoena sought:

> Documents produced or which will be produced by You [FedEx] to the New York State Attorney General in response to a subpoena dated March 21, 2013, other than documents concerning CD2U.

related to the Shinnecock Smoke Shop deliveries, which became the subject of the City's claims in *FedEx I*.[5] To be clear, the City brings no claims related to the Settlement Agreement in this action.

## THE SEVENTH DEFENSE

In resolving the Cigarettes-Direct-To-You deliveries, FedEx represented to the City that the company was not *currently* delivering cigarettes into the City. *See* Settlement Agreement ¶ 6. As requested by FedEx, the City represented that:

> Aside from the information relating to Chavez, Inc./CD2U, the City represents that, as of the date of this Agreement, the City has no information that suggests that FedEx Ground has delivered or transported unstamped cigarettes to New York City residents or into the geographic boundaries of New York City.

Settlement Agreement ¶ 5. The Agreement also contains a provision, in paragraph 7, that, if the City identified to FedEx a suspected cigarette shipper, FedEx would provide the City with information about the shipper (the "Cooperation Provision"). The Agreement was signed on or about March 15, 2013.

FedEx's Seventh Defense provides:

> The City's claims are barred, in whole or in part, by the settlement agreement with FedEx Ground, effective March 15, 2013, to the extent, *inter alia,* the City had any information prior to the date of that agreement, suggesting that FedEx Ground had delivered or transported unstamped cigarettes to New York City residents or into the geographic boundaries of New York City, and to the extent the City did not honor the cooperative framework established by that agreement.

---

[5] In light of this history, it was with a certain amount of incredulity that the City and State learned in *FedEx I* of still additional shippers for whom FedEx delivered untaxed cigarettes into New York. Those shippers had not been disclosed in FedEx's response to the State subpoena. Claims related to those shippers form the basis for *FedEx II*.

*FedEx Amended Answer*, at 22 (*Dkt. No.* 101). The Seventh Defense thus implicates two different provisions of the Settlement Agreement, paragraph 5, in which the City made its representation as to lack of knowledge of FedEx deliveries other than for Cigarettes-Direct-To You, and paragraph 7, in which FedEx agreed to provide shipper information.

In its December 9, 2015 letter-brief to Magistrate Judge Fox (*Dkt. No.* 146), FedEx speculated that the City may in the Settlement Agreement have "materially misrepresented" that the City had no such information concerning other FedEx deliveries. To find some evidence in support of that speculation, FedEx has propounded extensive and invasive discovery into virtually all of the City's prior cigarette investigations. FedEx further proposes that if the City did have such information, it would, for unspecified reasons, provide FedEx with a defense to the City's claims in this action.[6]

## PRIOR PROCEEDINGS

The City objected to FedEx's attempt to delve into prior City investigations. On November 17, 2015, the parties addressed various discovery issues before Judge Fox, including FedEx's attempts to acquire information to support the Seventh Defense. *See generally* Transcript of Proceedings before the Honorable Kevin N. Fox, U.S.M.J., (hereafter, "*Tr.*") annexed as Exhibit 2 to the accompanying Declaration of Eric Proshansky dated April 11, 2016. Judge Fox ordered the parties to brief the issue. On December 9, 2015, FedEx filed a letter-brief in support of its motion to compel discovery related to the Seventh Defense. *Dkt. No.* 146. Notably, FedEx's brief offered no legal authority tending to establish that the Seventh Defense

---

[6] FedEx's history of repeatedly failing to disclose the shippers for whom the company shipped cigarettes is the likely basis for FedEx's gratuitous suspicion that the City's representation in Agreement ¶ 5 was similarly incomplete. *See* http://www.urbandictionary.com/define.php?term=Projection ("Projection . . . An unconscious self-defence mechanism characterised by a person unconsciously attributing their own issues onto someone or something else as a form of delusion and denial.").

had any basis in law, but instead only alluded to facts concerning other City cigarette investigations. The City responded with a letter-brief filed on December 17, 2015, stressing that whatever the facts, there were insurmountable legal flaws in the Seventh Defense. *Dkt. No.* 148. On January 15, 2016, Magistrate Judge Fox issued an order (the "Order"):

> The Court has considered the arguments urged upon it during the conference and in the parties' letter briefs, Docket Entry Nos. 146 and 148, and has determined that FedEx has failed to establish that it is entitled to the discovery it seeks . . . FedEx's request that the City be required to disclose information relating to the [Settlement] Agreement is denied.

*Dkt. No.* 156.[7]

FedEx moved for clarification or reconsideration on January 25, 2016 (*Dkt. No.* 157), asserting that it did not understand the Order to preclude the company from pursuing discovery related to the Seventh Defense. FedEx also argued that the Magistrate Judge was without authority to restrict discovery as to a defense that the City had not moved to dismiss. *Dkt. No.* 157. The City's February 2, 2016 response (*Dkt. No.* 166) pointed out that the Magistrate Judge certainly had plenary authority to regulate discovery in this action and that an order stating "FedEx's request that the City be required to disclose information relating to the Agreement is denied" (*Dkt. No.* 156) required no clarification. Magistrate Judge Fox denied reconsideration on March 4, 2016:

---

[7] FedEx did not advance to the Magistrate Judge a colorable basis for a claimed breach by the City, but instead referenced other City actions against cigarette bootleggers. Having information that untaxed cigarettes had been delivered into the City – information that would surprise no one – is *not* information "suggesting *that FedEx Ground has delivered or transported unstamped cigarettes*" into the City. Settlement Agreement ¶ 5 (emphasis added). The best that FedEx was able to present in support of its suspicions was a deposition excerpt from a prior City litigation in which a witness described FedEx's legal transport of cigarettes from a licensed New York wholesaler to a licensed wholesaler in *South Carolina*. *Dkt. No.* 146 at 3, n.2.

the Court concludes that: (a) its determination, as set forth in the Order, to deny the sole issue that was before the Court for resolution: "FedEx's request that the City be required to disclose information relating to the Agreement," is clear on its face; and (b) no basis has been provided for the defendant's request for reconsideration of the Order.

*Dkt. No.* 172.[8]

## Summary of Argument

The Seventh Defense is not a viable defense as a matter of law to any claims in this action, under any view of the facts.[9] The defense accordingly should be dismissed. Should the Court decline to strike the defense, the Magistrate Judge's limit on discovery related to the Seventh Defense should be affirmed: "[The City] should not have to participate in wide-ranging discovery that could potentially sweep in almost four decades' worth of discretionary enforcement decisions and internal deliberation by City . . . law enforcement and policymakers, . . ." *City v. FedEx*, 2016 U.S. Dist. LEXIS 44681 at *43 (S.D.N.Y. March 31, 2016). Because the defense is meritless, FedEx's inquiry into prior City investigations is neither relevant nor proportional to the needs of the case. *See* Rule 26.

*First*, it is black-letter law that settlement agreements are contracts, construed under contract law. When a contract is breached, the remedy is a *contract* remedy. FedEx's Seventh Defense is a (proposed) bar to viable claims unrelated to any contract damages that the hypothetical breach could have caused. The defense does not seek money damages and is, plainly, not a *contract* remedy. Assuming *any* damages could result from the events FedEx

---

[8] Ruling "(b)" likely reflects the fact that FedEx had neither provided the standard for nor any basis to support reconsideration. *See Dkt. No.* 157.

[9] The standard for the dismissal of affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f) is set forth in the Court's recent decision striking other FedEx affirmative defenses and is not repeated here in the interests of brevity. *City v. FedEx*, 2016 U.S. Dist. LEXIS 44681 at * 8-10 (S.D.N.Y. March 31, 2016).

points to, the remedy is not immunity for unrelated CCTA violations, as the Seventh Defense posits.

*Second*, the Settlement Agreement releases FedEx *only* from liability for the Cigarettes-Direct-To-You deliveries. FedEx effectively seeks to have the Agreement re-written to release the company from additional claims nowhere even alluded to in the Agreement. Nothing in the Agreement evinces the parties' intent to construe the Agreement as a release of anything but what the Agreement plainly states it releases – Cigarettes-Direct-To-You-related claims.

*Third*, the Agreement provides that it is not *relevant to* any subsequent action, "except one to enforce the Agreement." The present action is not one "to enforce" the Agreement. FedEx itself so states: "FedEx Ground is not asserting a breach in performance by the City before the Agreement's effective date of March 15, 2013." *Dkt. No.* 146 at 1, n.1. By declaring that the Agreement is "irrelevant" to future actions, the parties necessarily established the absence of any linkage between any provision of the Agreement, including the City's representation, and any subsequent action (except one to enforce the Agreement). The statement that Settlement Agreement is *irrelevant* to any subsequent action is a statement that there is no relationship between the Settlement Agreement and any issue in this case.

*Fourth*, the Agreement provides that it "shall not be admissible in" any subsequent action between the parties (except one to enforce the Agreement). Because the Agreement is inadmissible in *this* action, FedEx cannot prove its terms and hence can prove no facts to support its Seventh Defense.[10]

---

[10] Finally, the Seventh Defense is merely a disguised unclean hands argument, by which FedEx contends that the City should be foreclosed from seeking judicial relief because of a purported misrepresentation. *See FedEx*, 2016 U.S. Dist. LEXIS 44681 at *14 ("unclean hands prohibits awarding equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair advantage.") The Court has already held that unclean hands has no place in a government action to protect the public interest and has dismissed FedEx's unclean hands defense as inapplicable to the City's CCTA claim. *FedEx*, 2016 U.S. Dist. LEXIS

## ARGUMENT

## I.

## THE SEVENTH DEFENSE SHOULD BE DISMISSED
## AS A MATTER OF LAW

### A. A Settlement Agreement Is a Contract for Which Contract Remedies Alone Are Permissible.

Although the City did not breach the Settlement Agreement, if it had, the remedy sought by the Seventh Defense – dismissal of unrelated claims – is unavailable as a matter of law and the Seventh Defense should be dismissed.

Under black-letter law, the Settlement Agreement resolving the City's claims against FedEx for the Cigarettes-Direct-To-You deliveries is a contract. "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (citing *Goldman v. Commissioner*, 39 F.3d 402, 405 (2d Cir. 1994)); *Rexnord Holdings, Inc. v. Bidermann*, 21

---

44681 at *14 (quoting *United States v. Philip Morris Inc.,* 300 F. Supp. 2d 61, 75-76 (D.D.C. 2004) ("When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law . . . .").

The Seventh Defense itself is premised on a bit of FedEx chicanery. FedEx surely knew "that FedEx Ground had delivered or transported unstamped cigarettes to New York City residents or into the geographic boundaries of New York City" other than for CD2U. As one example, when the March 15, 2013 Settlement Agreement was executed, FedEx *unequivocally* knew that it had previously delivered cigarettes for Shinnecock Smoke Shop, because FedEx terminated service to that shipper on or about January 9, 2012, giving as its reason Shinnecock Smoke Shop's shipments of cigarettes to consumers. By demanding the representation in Settlement Agreement ¶ 5, FedEx was playing a cynical game of hide-and-seek, probing the City's knowledge of known but undisclosed violations. FedEx was essentially seeking insurance for its concealment: If the City did not know of other shippers, FedEx could continue to conceal them. If the City did know of other shippers, but did not disclose them to FedEx, FedEx could use the Settlement Agreement as a sword, just as it has here. There is no conceivable, benign purpose for which FedEx could have sought from the City information already in FedEx's hands. FedEx had every opportunity to disclose the Shinnecock Smoke Shop deliveries to the City during the Cigarettes-Direct-To-You negotiations, but elected to conceal them. This lawsuit is the consequence.

F.3d 522, 525 (2d Cir. 1994). "As long as the basic requirements to form a contract are present, there is no reason to treat a settlement agreement differently than other contracts which are binding." *Frank Felix Assocs. v. Austin Drugs*, 1997 U.S. App. LEXIS 19795 at *11 (2d Cir. Apr. 10, 1997) (quoting *Clark v. Elza*, 406 A.2d 922, 927 (Md. 1979); *accord Morris v. Tate (In re Southern Ohio Correctional Facility)*, 1999 U.S. App. LEXIS 23750 at *17-19 (6th Cir. Sept. 24, 1999) ("Settlement agreements are a type of contract subject to principles of state contract law.").[11]

The principle that inevitably follows is that remedies for breach of a settlement agreement must be contract remedies. "[A] settlement agreement is a contract, and in actions for breach of contract, the non-breaching party may recover general damages which are the natural and probable consequences of the breach." *Ronen v. Cohen*, 126 A.D.3d 487, 488 (1st Dep't 2015) (quotation marks and citation omitted). "Parties are limited to contract remedies following the breach of a settlement agreement." *Farese v. Scherer,* 2008 U.S. App. LEXIS 23622 at *10 ("If . . . defendants did in fact breach the settlement agreement . . . [plaintiff] has the option to either bring an action to rescind the agreement or sue for damages caused by the breach."). "A voluntary settlement agreement is a contract that is binding, and its enforceability is determined under state law. On motion, a district court has the power to summarily enforce a settlement agreement in a case still pending before it. Alternatively, an aggrieved party may bring a separate action for breach of a settlement agreement." 4-49 *Federal Litigation Guide* § 49.60 (Bender 2016). There is accordingly no merit to FedEx's Seventh Defense, which seeks to remedy a purported breach of the Settlement Agreement by barring the City's present claims. Not only is

---

[11] FedEx itself understands the Settlement Agreement to be a contract, contending that in the Agreement, "the City *warranted* that no information of the type referenced in Paragraph 5 existed." *Dkt. No.* 175 at 4 (emphasis added). The reference to a "warranty" indicates FedEx's reliance on contract principles.

such a remedy generally unheard of – and separately barred for reasons discussed below – but the remedy sought by FedEx or one resembling it is unknown to contract law.[12]

### B. Because Only Claims Related to Cigarettes-Direct-To-You Were Released, There Is No Legal Basis to Hold That "The City's Claims Are Barred"

As true with any contract, "courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Red Ball*, 173 F.3d at 484. Nothing in the Settlement Agreement even hints that the parties contemplated immunizing FedEx from future claims if the City had not disclosed information concerning FedEx deliveries. The releasing language is carefully and narrowly crafted to embrace only those claims that arose out of FedEx deliveries for Cigarettes-Direct-To-You, made between specified dates. *See* Settlement Agreement ¶ 3. Even if, *arguendo*, the City erred in the representation made in Agreement ¶ 5 – which it did not – the Agreement does not provide that any such error could release other and different claims by the City. *See In re Air Crash Disaster at John F. Kennedy International Airport*, 687 F.2d 626, 629 (2d Cir. 1982) ("It is beyond a district judge's discretion to alter the terms of . . . a settlement agreement . . ."). In the absence of appropriate language (or any

---

[12] Nor could FedEx establish any contract damages here, even if there were a breach of the Settlement Agreement: "It is FedEx Ground's position that while paragraph 5 does not itself require the City to provide FedEx Ground with such information [regarding other deliveries], it obviously requires the City to have disclosed the existence or possession of such information." *Dkt. No.* 146 at 2. Supposing hypothetically that the City had possessed such information and disclosed it, any claim now by FedEx that it would not have concealed the Shinnecock Smoke Shop deliveries that led to this lawsuit could only rest on the rankest of speculation.

Moreover, a breach of Settlement Agreement ¶ 5 could not be a material breach. A breach is material if it deprives the injured party of a substantial benefit reasonably anticipated under the contract. *DHC Resort, LLC v. Razorback Entertm't Corp.*, 329 F.3d 974, 976 (8th Cir. 2003) (citing *Restatement (Second) of Contracts* § 241(a) (1981)). The substantial benefit to FedEx from the Settlement Agreement was a release from liability for the Cigarettes-Direct-To-You deliveries made into the City. FedEx obtained that benefit, as evidenced by the absence of City claims for those deliveries in this action.

expressed intent), the Court should not re-write the terms of the Agreement to provide a remedy that FedEx did not seek to incorporate into the Agreement, and to which the City never agreed. If FedEx intended to receive immunity from claims for deliveries known to the City as of March 15, 2013, FedEx would have sought a release of "all claims arising out of deliveries known to the City as of the date of this Agreement." It did not. FedEx now seeks to have the Court rewrite the narrow release negotiated by the parties and replace it with a release different from that agreed to by the City. A settlement agreement "memorializes the bargained for positions of the parties and *should be strictly construed* to preserve those bargained for positions." *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990) (emphasis added). The parties did not bargain to release FedEx from claims unrelated to Cigarettes-Direct-To-You. The Seventh Defense should be dismissed for this reason as well.

### C. The Settlement Agreement, by Its Own Terms, is Both Inadmissible in and Irrelevant to This Action

The Agreement provides:

> This Agreement shall not be admissible in, nor is it relevant to, any litigation, action or lawsuit between the City of New York on the one hand and FedEx Ground on the other, with the exception of any subsequent action brought by the parties to enforce the Agreement.

Settlement Agreement ¶ 9. The City and FedEx agreed to the inadmissibility and the irrelevance of the Settlement Agreement, other than in an action to "enforce" the Agreement. The present action is not one to "enforce" the Agreement, nor could it be. The City's present action does not seek to compel any FedEx performance under the Agreement. There is no City performance called for in the Settlement Agreement that could be the subject of enforcement, other than executing the Agreement, which the City has undeniably done. And "FedEx Ground is not

asserting a breach in performance by the City before the Agreement's effective date of March 15, 2013." *Dkt. No.* 146 at 1, n.1.

FedEx's acknowledgement that the Settlement Agreement is "irrelevant" to this action is the strongest possible evidence that the parties did not intend to connect the City's representation in Settlement Agreement ¶ 5 with the release of future claims. FedEx and the City would hardly designate the Settlement Agreement as "irrelevant" if the Agreement had been intended to establish such a linkage. FedEx cannot seek dismissal of claims by virtue of "a material misrepresentation to FedEx Ground when the Agreement was executed," *Dkt. No.* 146 at 1, n.1, when it has declared the Settlement Agreement "irrelevant" to any subsequent action.

Moreover, having also declared the Settlement Agreement inadmissible in this action, FedEx cannot even prove the terms of the Agreement, as it must do to sustain its defense.

### D. The Seventh Defense Should be Stricken in Its Entirety

The Seventh Defense contains two components, one concerning the City's knowledge (Settlement Agreement ¶ 5) and the Cooperation Provision. (Settlement Agreement ¶ 7). FedEx has not raised any issue concerning nor introduced any facts related to the Cooperation Provision because, by its terms, that provision is inapplicable in this action. That provision specifies that ". . . in the event that the City has a reasonable basis to believe that any person is using FedEx Ground to deliver unstamped cigarettes within the geographic boundaries of New York City, FedEx Ground agrees, *upon the City's notification of its reasonable basis and at its request*," to provide information about the shipper. *See* Settlement Agreement ¶ 7. That contingency never occurred as to Shinnecock Smoke Shop – the City never notified FedEx about Shinnecock Smoke Shop or requested information about it. Shinnecock Smoke Shop is the only shipper at issue in the City's claims. Accordingly, the entire Seventh Defense should be dismissed.

## II.

### FEDEX'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ARE MERITLESS

FedEx asks this Court to overturn Judge Fox's order without proffering a single citation to case law (except concerning the timeliness of its objections), much less even a hint at the legal standard under Federal Rule of Civil Procedure 72 governing objections to a Magistrate Judge's order.

> Magistrate Judges have broad discretion to resolve non-dispositive matters. *Alvarado v. City of New York*, 2009 U.S. Dist. LEXIS 15591 (E.D.N.Y. Feb 27, 2009). The Court, therefore, may only overrule a magistrate judge's determination of a non-dispositive matter where it is "clearly erroneous or contrary to law." *Id*. "Under the clearly erroneous standard of review of Federal Rule of Civil Procedure 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Pall Corp. v. Entegris, Inc*., 655 F. Supp.2d 169, 172 (E.D.N.Y. 2008) (internal quotation and citation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *E.E.O.C. v. First Wireless Grp., Inc*., 225 F.R.D. 404, 405 (E.D.N.Y. 2004).

*Pressley v. City of New York*, 2016 U.S. Dist. LEXIS 44539 at *3-4 (E.D.N.Y. Mar. 31, 2016). FedEx has nowhere specified the manner in which Judge Fox's order "is contrary to law" by "fail[ing] to apply or misapply[ing] relevant statutes, case law or rules of procedure," *id*., and it is difficult to understand how FedEx could do so because its objections are all trivial procedural complaints.

Contrary to FedEx's objections (*Obj. Mem*. at 6-7)  Judge Fox most certainly (i) ruled on the issue for which he requested briefing; (ii) decided an issue raised by a pending motion; (iii) need not provide a "stated rationale," and (iv) and may restrict discovery as to a "valid" defense.

FedEx does not even attempt to demonstrate that, even if one or more of its charges were accurate, any of them rise to the level of "clearly erroneous or contrary to law."

**Objection I** – FedEx sees its strongest objection to be that Judge Fox "ruled on a different issue from the one on which he requested briefing." *Obj. Mem.* at 6. We have located no case overturning a Magistrate Judge's decision on such grounds. Judge Fox issued a ruling and adhered to that ruling on reconsideration. If the parties had twice failed to address the issue in which he was interested, Judge Fox undoubtedly would have redirected the parties to that issue.

FedEx was the first to raise the Seventh Defense as pertinent to the discovery dispute, prior to the conference with Judge Fox:

> Under this [Seventh] defense based on the settlement agreement, FedEx Ground is entitled to information the City may have had suggesting that FedEx Ground had delivered or transported unstamped cigarettes to New York City residents or into the geographic boundaries of New York City before the indicated effective date.

*Dkt. No.* 114 at 7 (quotation marks omitted). Before the conference, again FedEx squarely placed the Seventh Defense at issue by arguing that the Agreement and the Seventh Defense were grounds for FedEx to penetrate the City's privilege objections:

> FedEx Ground asserted, in relevant part, that if the City made material representations in a specific provision of the [Settlement] Agreement, those misrepresentations serve as a defense to the City's claims in this lawsuit. The City asserts it made no such material misrepresentation, but the City's efforts to block certain deposition questions have interfered with FedEx Ground's ability to test this assertion. Thus the significance of the Agreement was among the issues raised by FedEx Ground in its letters to the Court of August 31 regarding deposition questions and privilege logs.

*Dkt. No.* 146 at 1. The Magistrate Judge recognized that FedEx sought discovery based on the Settlement Agreement and therefore raised the issue at the conference:

> Let me ask about the settlement from March, 2013, that FedEx claims required the City to disclose information that says "may have had" [*sic*] regarding FedEx delivering or transporting unstamped cigarettes in and about the New York City area.

*Tr.* at 23:20-24. FedEx responded:

> Your Honor, the answer is that that was a representation in the agreement made at the time that the agreement was entered into, and obviously we believe that for the additional reason that it's pertinent to that agreement and to the defense, we pleaded on that ground that we should obtain discovery of any information suggesting that the City actually did have information about the activities. I think you're referring to page 7 of our August 31st letter, that we're entitled to any information that did suggest, that was in the possession of the City that did suggest the things indicated in item 6 there.

*Tr.* at 24:5-15; *see also Tr.* at 24:19-25. As measured by the transcript, what followed was nearly five pages of argument, by both sides, concerning the Seventh Defense. *Tr.* at 24-30. This argument included FedEx counsel's comment that the Settlement Agreement was "deeply implicated" in the discovery dispute. *Tr.* at 27:13. Judge Fox then recognized that the issue could be better explored through briefing: "THE COURT: It might be of utility to have briefing *on this matter involving the settlement agreement*." *Tr.* at 30:5-6. (emphasis added). FedEx asked a clarifying question:

> Mr. Sansom: First of all, with regard to the issue of briefing regarding the agreement, *we would brief regarding the seventh defense in our answer which arises from that agreement*, just by way of clarification.

*Tr.* at 31-32:2-4 (emphasis added). Judge Fox certainly did not state that he "did not want" (*Obj. Mem.* at 4) such briefing. He recognized that the "issue before me . . . is a claim that the City has breached under the agreement to provide information about what it knew, . . . before March

- 16 -

2013, regarding FedEx delivering or transporting unstamped cigarettes." *Tr.* at 32:6-17.[13] If

FedEx had believed that something different was to be briefed, it would have briefed it, instead

of remaining utterly silent and filing a brief addressing the City's knowledge.

    **Objection II** – FedEx's complaint that there was no pending "motion" is pettifoggery.

Courts have discretion to address non-dispositive matters in a flexible and expeditious manner.

FedEx cites no rule providing that every court order, no matter how minor, must be preceded by

a precisely framed motion. FedEx appeared before the Magistrate Judge complaining of the

City's privilege assertions. In the course of the appearance the City explained that those

assertions were connected to FedEx's irrelevant inquiry into prior City investigations. FedEx in

turn claimed the investigations were relevant to the Seventh Defense. That assertion led to

several pages worth of argument on the Settlement Agreement and the Seventh Defense. FedEx

cannot claim *any* surprise at the subject of the ruling, especially where its counsel stated that

"regarding the agreement, we would brief regarding the seventh defense in our answer which

arises from that agreement," *Tr.* at 31-32:2-4, and did in fact do so, *see Dkt. No.* 146, in a letter

brief that only addressed the Seventh Defense (not whether the City had a contractual obligation

to provide information). The City in turn extensively briefed the issue of the Agreement's

---

[13] The City inadvertently introduced some confusion into the discussion because, as noted *supra*, FedEx's Seventh Defense asserts a breach of two provisions of the Settlement Agreement: (i) paragraph 5, the knowledge provision and (ii) paragraph 7, the Cooperation Provision. *See Tr.* at 27:19-29:15. Although the Cooperation Provision was not addressed by either side during the discovery dispute (nor was it applicable), the City mistakenly referred to it, an irrelevancy that did lead Judge Fox to observe that "The City says that the agreement doesn't obligate it to do what you're claiming," *Tr.* 32:11-12, which was a reference to the City's irrelevant argument about the Cooperation Provision, which was never actually at issue. Ultimately, the City returned the argument to the issue of the representation made by the City (*Tr.* 29:5-9), that it had addressed earlier in the argument (*Tr.* 27:24-28:3) and counsel for FedEx also re-focused the argument on the same issue, noting "The issue is very simple, the City made a representation as to what it knew or had reason to know and FedEx Ground is simply attempting to test the accuracy of that representation." *Tr.* 29:20-23. FedEx's counsel thus clarified the precise issue briefed by both sides, *see Dkt. No.* 146; *Dkt. No.* 148, in which neither side alluded to the superfluous issue of "cooperation" inadvertently introduced by the City. Judge Fox decided the issue argued and briefed by the parties.

irrelevance to this action, without addressing at all the question of a contractual obligation to provide information.

**Objection III** – FedEx complains that Judge Fox's decision suffers from a lack of "rationale," but that does not render a decision clearly erroneous or contrary to law. Although FedEx may feign ignorance here, the fact is that nearly all discovery disputes turn on the basic parameters of Rule 26. An Order stating that "FedEx's request that the City be required to disclose information relating to the Agreement is denied," *Dkt. No*. 157 at 1, inherently embodies Judge Fox's experienced conclusion, after extensive briefing and argument on the issue, that the discovery sought by FedEx would ultimately be either irrelevant to the claims or defenses in the action or out of proportion to the needs of the case. *See* F. R. Civ. P. 26(b)(1). No additional explanation is required.

**Objection IV** – Objection IV's fourth place finish reflects its particular absence of merit. FedEx asserts that a Magistrate Judge cannot restrict discovery related to a defense that has never been held invalid or challenged. *Obj. Mem*. at 8. The absurdity of the argument may be shown by putting the shoe on the other foot. For example, though the State's claim against FedEx for violation of the AOC has been upheld, the Magistrate Judge surely has authority to limit discovery premised on the AOC. Had the State sought unlimited discovery related to the AOC from FedEx, for example, by demanding information on all cigarette deliveries, to all states, by all shippers, FedEx would have raised the issue with the Magistrate Judge forthwith.[14]

---

[14] "Rule 72 of the Federal Rules of Civil Procedure does not contemplate a reply in further support of objections to a magistrate judge's report and recommendation." *Pressley v. City of New York*, 2016 U.S. Dist. LEXIS 44539 (E.D.N.Y. Mar. 31, 2016); *see also Toliver v. City of New York*, 2012 U.S. Dist. LEXIS 36946 at *1-2, n.1 (S.D.N.Y. Mar. 19, 2012) ("Rule 72 of the Federal Rules of Civil Procedure does not provide for additional submissions beyond the party's initial objections and the opponent's response."), *vacated on other grounds*, 530 Fed. App'x 90 (2d Cir. 2013). The City anticipates that FedEx's papers will respond only to the City's cross-motion to dismiss.

**CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully request that the Court issue an order (i) affirming the Magistrate Judge's January 15th Order; (ii) dismissing the Seventh Defense in its entirety; and (iii) awarding such other and further relief as the Court deems proper.

Dated: New York, New York
      April 11, 2016

ZACHARY W. CARTER
Corporation Counsel of
  The City of New York


By:    \_\_\_/s/ Eric Proshansky_____
       Eric Proshansky
       Krista Friedrich
       Assistant Corporation Counsel
       100 Church Street, Room 20-99
       New York, New York 10007
       (212) 356-2032
       eproshan@law.nyc.gov
       kfriedri@law.nyc.gov

       *Attorneys for Plaintiff*
        *The City of New York*