UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK and THE PEOPLE OF
THE STATE OF NEW YORK,

                              Plaintiffs,

- against -

FEDEX GROUND PACKAGE SYSTEM, INC.,

                              Defendant.

**OPINION AND ORDER**

13 Civ. 9173 (ER)

Ramos, D.J.:

      Before the Court are FedEx's motion to dismiss Plaintiffs' claims under New York Public Health Law § 1399-*ll* and New York Executive Law § 63(12), and Plaintiffs' request for certain discovery they allege is relevant to those claims. For the reasons discussed below, FedEx's motion to dismiss is DENIED and Plaintiffs' request for discovery is GRANTED.

## I. BACKGROUND[1]

### A. *FedEx I* and *FedEx II*

      This consolidated suit centers on allegations that FedEx Ground Package System, Inc. ("FedEx") knowingly delivered, on behalf of several cigarette sellers, thousands of cartons of unstamped cigarettes throughout the country, including New York City and State. The City of New York ("City") instituted the first action, 13 Civ. 9173 (ER) ("*FedEx I*"), on December 30, 2013, seeking damages, civil penalties, treble damages, injunctive relief, the appointment of a special master, and attorney's fees for FedEx's violations of the Contraband Cigarette

---

[1] This Opinion discusses only those facts necessary to decide the instant motions. Familiarity with the underlying facts and procedural history of this matter is otherwise presumed.

Trafficking Act, 18 U.S.C. § 2341 *et seq.* ("CCTA"), the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 *et seq.* ("PACT Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and New York Public Health Law ("NYPHL") § 1399-*ll*, as well as for FedEx's creation and maintenance of a public nuisance in violation of New York law. Compl. (*FedEx I*, Doc. 1) at 32–34. Initially, the City's action focused on FedEx's shipments from 2005 to 2012 on behalf of only one cigarette seller. *Id.* ¶ 3. On March 30, 2014, the City amended its Complaint to add the State of New York ("State") as a plaintiff (collectively, "Plaintiffs"), allegations related to three other cigarette sellers, and a cause of action for FedEx's violation of the Assurance of Compliance ("AOC") that FedEx entered into with the New York State Attorney General in February 2006. Am. Compl. (*FedEx I*, Doc. 13) ¶¶ 3, 171–174.[2]

    In the course of discovery, Plaintiffs allegedly learned the identities of additional cigarette sellers for whom they believe FedEx knowingly made illegal deliveries. Plaintiffs attempted to obtain discovery related to these entities, but their efforts stalled in October 2014, when Magistrate Judge Fox, to whom all general pretrial matters were then assigned, issued a ruling limiting the scope of discovery to only the four cigarette sellers named in the Amended Complaint. Rather than seek leave to amend their Complaint a second time, on November 12, 2014, Plaintiffs instituted a second action against FedEx, 14 Civ. 8985 (ER) ("*FedEx II*"), seeking the same type of relief as was sought in *FedEx I*. Compl. (*FedEx II*, Doc. 1) at 31–34. In *FedEx II*, however, Plaintiffs focused on FedEx's shipments from 2005 to 2013 on behalf of all cigarette sellers, known and unknown, other than the four previously identified in *FedEx I*. *Id.* ¶¶ 3, 16.

---

[2] The four cigarette sellers at issue in *FedEx I* are Shinnecock Smoke Shop (Southampton, NY), Native Made Tobacco (Palm Springs, CA), FOW Enterprises, Inc. (Elizabethtown, KY), and Cigarettes Direct To You (Louisville, KY). Am. Compl. (*FedEx I*, Doc. 13) ¶ 3.

On April 15, 2016, the Court consolidated *FedEx I* and *FedEx II* and directed that all future filings in the case be filed under *FedEx I*. Although *FedEx II* is now closed, the parties maintain separate pleadings in each of the two actions.

### B. The Court Dismisses Plaintiffs' NYPHL Claim in *FedEx I*

On May 13, 2014, FedEx moved to dismiss Plaintiffs' CCTA, RICO, NYPHL, and public nuisance claims in *FedEx I*. By way of an Opinion and Order dated March 9, 2015, the Court denied FedEx's motion with respect to Plaintiffs' CCTA and RICO claims, but granted the motion with respect to Plaintiffs' NYPHL and public nuisance claims. *City of New York v. FedEx Ground Package Sys., Inc.*, 91 F. Supp. 3d 512, 531 (S.D.N.Y. 2015). In relevant part, the Court concluded that Plaintiffs are not authorized to sue for violations of NYPHL § 1399-*ll* taking place between 2005 and 2012—the time period alleged in *FedEx I*—because the September 27, 2013 amendment to the statute, which granted the City and State the authority to enforce it, is not retroactive. *Id.* at 527–29; *see also Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) ("Generally, 'retroactive operation of statutes is not favored by [New York] courts' and it 'takes a clear expression of the legislative purpose to justify a retroactive application.'") (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998)).

Following the Court's decision in *FedEx I*, Plaintiffs amended their Complaint in *FedEx II* in four material respects. Am. Compl. (*FedEx II*, Doc. 23). First, Plaintiffs dropped their PACT Act and public nuisance claims. *Id.* Second, Plaintiffs added a claim for civil penalties under New York Executive Law ("N.Y. Exec. Law") § 63(12), premised on FedEx's

3

repeated and persistent violations of NYPHL § 1399-*ll*.  *Id.* ¶¶ 126–129.[3]  Third, Plaintiffs extended the time period of their allegations to encompass FedEx's conduct from 2005 to the date of the filing, May 8, 2015.  *Id.* ¶ 63.  Finally, Plaintiffs specifically named twenty-one cigarette sellers, apart from those named in *FedEx I*, for whom FedEx allegedly made unlawful deliveries.  *Id.*  Plaintiffs later agreed to pursue their claims in *FedEx II* with respect to only six of those entities.  *See* FedEx's Feb. 18, 2016 Ltr. (*FedEx II*, Doc. 65).[4]

### C. The Court Dismisses Plaintiffs' NYPHL and N.Y. Exec. Law Claims in *FedEx II*

On July 16, 2015, FedEx moved to dismiss all of Plaintiffs' claims in *FedEx II*.  By way of an Opinion and Order dated March 31, 2016, the Court denied FedEx's motion with respect to Plaintiffs' CCTA, RICO, and AOC claims, but granted the motion with respect to Plaintiffs' NYPHL and N.Y. Exec. Law claims.  *City of New York v. FedEx Ground Package Sys., Inc.*, 175 F. Supp. 3d 351, 372 (S.D.N.Y. 2016).  Among other things, the Court concluded that Plaintiffs' allegations, coupled with the evidentiary record developed in *FedEx I*, rendered it entirely plausible that FedEx knowingly delivered unstamped cigarettes for the named cigarette sellers.  *Id.* at 359–60.

The Court also found that the PACT Act preempted Plaintiffs' NYPHL and N.Y. Exec. Law claims.  *Id.* at 360–64.  In short, Plaintiffs may not enforce NYPHL § 1399-*ll* against FedEx without proof that FedEx is not exempt from the PACT Act's provisions, *see* 15 U.S.C. § 376a(e)(5)(C)(ii), and the PACT Act specifically exempts FedEx, but only if the AOC "is

---

[3] N.Y. Exec. Law § 63(12) allows the New York State Attorney General to seek injunctive relief, restitution, or damages against any person that has engaged in repeated fraudulent or illegal acts, including repeated violations of a state law such as NYPHL § 1399-*ll*.

[4] The six cigarette sellers at issue in *FedEx II* are Your Kentucky Tobacco Resource LLC (Russell, KY), Discount Tobacco Outlet (Myrtle Beach, SC), Kee Missouri DC (Neosho, MO), Lakeside Enterprises (Seneca Falls, NY), Shinnecock Indian Outpost (Southampton, NY), and Two Pines Enterprises (Basom, NY).  *See* FedEx's Feb. 18, 2016 Ltr. (*FedEx II*, Doc. 65).

4

honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers," *id.* § 376a(e)(3).  In its decision, the Court concluded that the word "honored" in the statute means "recognized" by the states, but that "[u]ltimately, recognition by *both* the states and the carrier is necessary to serve the PACT Act's purpose of exempting a common carrier from suit if a settlement agreement is truly nationwide in its operation." *FedEx*, 175 F. Supp. 3d at 362–63 & n.11.  Because Plaintiffs had not made any allegations suggesting that the AOC did not have nationwide effect, the Court dismissed Plaintiffs' NYPHL claim.  *Id.* at 363.  The Court also dismissed Plaintiffs' N.Y. Exec. Law claim, finding that, because of the preemption issue, Plaintiffs had not adequately pleaded that FedEx could be held liable for repeated and persistent violations of NYPHL § 1399-*ll*.  *Id.* at 364.[5]

### D. Plaintiffs Amend Their Complaint in *FedEx II* a Second Time and FedEx Again Moves to Dismiss the NYPHL and N.Y. Exec. Law Claims

Following the Court's decision, and with the Court's leave, Plaintiffs amended their Complaint in *FedEx II* for the second time.  Second Am. Compl. (*FedEx II*, Doc. 74).  Plaintiffs supplemented their allegations in two ways.  First, Plaintiffs now allege that, on information and belief, the AOC is not recognized by the various states to block illegal deliveries of cigarettes or smokeless tobacco to consumers.  *Id.* ¶¶ 103–107.  Second, Plaintiffs now allege that FedEx does not honor its agreement throughout the United States to block illegal deliveries of cigarettes to consumers.  *Id.* ¶ 108.  Plaintiffs thus assert that the PACT Act does not preempt their NYPHL and N.Y. Exec. Law claims.  *See id.*

---

[5] The Court also concluded that the State cannot seek civil penalties under N.Y. Exec. Law § 63(12) unless the underlying statute being enforced expressly provides for them.  *FedEx*, 175 F. Supp. 3d at 363–64 ("As the text [of N.Y. Exec. Law § 63(12)] makes clear, the State is generally limited to the three enumerated remedies when bringing actions under that provision—injunctive relief, restitution, and damages—and civil penalties are not included.").

On June 14, 2016, FedEx moved to dismiss Plaintiffs' NYPHL and N.Y. Exec. Law claims. FedEx first argues that, as in *FedEx I*, Plaintiffs lack the authority to bring these claims, since the specific factual allegations in the Second Amended Complaint pre-date the September 27, 2013 amendment to NYPHL § 1399-*ll*. FedEx's Mem. (*FedEx I*, Doc. 210) at 5–8. FedEx alternatively argues that Plaintiffs' claims are preempted, both by the PACT Act and the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501 *et seq.* ("FAAAA"). *Id.* at 8–17. Plaintiffs filed an opposition to the motion, and FedEx filed a reply. Pls.' Opp'n Mem. (*FedEx I*, Doc. 224); FedEx's Reply Mem. (*FedEx I*, Doc. 229).

### E. Discovery Dispute

While briefing FedEx's motion, Plaintiffs submitted a letter to the Court alleging that FedEx improperly refused to produce certain discovery, namely: (1) "improper shipping forms"[6] related to the shipment of cigarettes or tobacco, regardless of shipper; (2) nationwide shipping records for the shippers at issue in *FedEx II*; and (3) documents concerning an investigation by the California State Attorney General's Office related to FedEx's shipment of cigarettes within that state. Pls.' July 6, 2016 Ltr. (*FedEx I*, Doc. 219) at 1. Plaintiffs argue that the foregoing discovery goes to FedEx's knowledge, or willful blindness, concerning the contents of the packages it shipped, which will be relevant to all of their claims, as well as their request for injunctive relief, the appointment of an outside monitor, and civil penalties. *Id.* at 2. Plaintiffs also argue that the nationwide shipping records and improper shipping forms will be relevant to determining FedEx's entitlement to the PACT Act exemption. *Id.* FedEx filed a response to

---

[6] Improper shipping forms are used by FedEx employees to report any issues they may discover regarding a package as it travels through its network, including possible violations by the shipper of FedEx's policies regarding hazardous material, alcohol, and tobacco shipping and labeling. FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227) at 2.

Plaintiffs' letter, and Plaintiffs filed a reply.  FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227); Pls.' July 28, 2016 Ltr. (*FedEx I*, Doc. 228).

In light of the relationship between Plaintiffs' discovery requests and the issues to be decided by the Court in ruling on FedEx's motion to dismiss, the Court withdrew its Order of Reference to Magistrate Judge Fox for general pretrial purposes.  July 7, 2016 Order (*FedEx I*, Doc. 223).  Both the motion to dismiss and the discovery dispute are now ripe for review.[7]

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not, however, required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

---

[7] Also pending before the Court, but not yet fully briefed, are FedEx's motion to compel the production of certain documents Plaintiffs have withheld or redacted on privilege grounds and Plaintiffs' cross-motion for a protective order.

7

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III. DISCUSSION

### A. FedEx's Motion to Dismiss Plaintiffs' NYPHL and N.Y. Exec. Law Claims

#### 1. Plausibility and Retroactivity

FedEx first argues that the Court should dismiss Plaintiffs' NYPHL and N.Y. Exec. Law claims because the Second Amended Complaint contains no factual allegations regarding deliveries taking place after September 27, 2013, when NYPHL § 1399-*ll* was amended to grant the City and State the authority to enforce it. FedEx's Mem. at 1–4, 6. In response, Plaintiffs urge the Court to reconsider its prior ruling that the 2013 amendment is not retroactive, so as to permit them to seek civil penalties against FedEx for pre-amendment violations of the statute. Pls.' Opp'n Mem. at 15–22. Alternatively, Plaintiffs argue that they have sufficiently pleaded post-amendment violations, and thus their claims should survive at least as to that time period. *Id.* at 22–24.

The Court has already held that "Plaintiffs' allegations combined with the evidentiary record developed in *FedEx I* render Plaintiffs' claim that FedEx knowingly delivered unstamped cigarettes for the shippers named in the [Amended] Complaint entirely plausible." *FedEx*, 175

F. Supp. 3d at 360. The Amended Complaint and the Second Amended Complaint in *FedEx II* are largely identical, and both contain allegations that FedEx engaged in unlawful conduct from 2005 to 2015. *Compare* Am. Compl. (*FedEx II*, Doc. 23), *with* Second Am. Compl. (*FedEx II*, Doc. 74).[8] To be sure then, the Court has already ruled on the plausibility of Plaintiffs' post-amendment allegations, finding them to be sufficiently pleaded at this stage.

The Court has also already held that the 2013 amendment to NYPHL § 1399-*ll* is not retroactive, *FedEx*, 91 F. Supp. 3d at 527–29, and that Plaintiffs cannot use N.Y. Exec. Law § 63(12) to collect civil penalties for pre-amendment violations of NYPHL § 1399-*ll*, *FedEx*, 175 F. Supp. 3d at 363–64. The Court will not reconsider these rulings, as the Court has already considered and rejected Plaintiffs' arguments on these issues. *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).[9]

Accordingly, to the extent that Plaintiffs' NYPHL and N.Y. Exec. Law claims survive, Plaintiffs may only seek civil penalties for FedEx's post-amendment violations of NYPHL § 1399-*ll*.[10]

---

[8] By contrast, in *FedEx I*, Plaintiffs' allegations that FedEx engaged in unlawful conduct remain limited to the period prior to the 2013 amendment to NYPHL § 1399-*ll*. Am. Compl. (*FedEx I*, Doc. 13) ¶ 3.

[9] To the extent Plaintiffs argue that the Court's prior rulings are inconsistent with Judge Forrest's decision in *New York v. United Parcel Service, Inc.*, No. 15 Civ. 1136 (KBF), 2016 WL 4094707 (S.D.N.Y. June 10, 2016), *see* Pls.' Opp'n Mem. at 21, that district court case is not controlling authority over this Court. *See, e.g.*, *Plumbing Supply, LLC v. Exxonmobil Oil Corp.*, No. 14 Civ. 3674 (VB), 2016 WL 1611490, at *3 (S.D.N.Y. Apr. 21, 2016).

[10] Because the Court affirms its prior rulings, it need not decide FedEx's alternative argument that the State should be judicially estopped from recovering civil penalties for pre-amendment violations of NYPHL § 1399-*ll*. FedEx's Mem. at 7–8.

## 2. PACT Act Preemption

FedEx next argues that Plaintiffs' NYPHL and N.Y. Exec. Law claims should be dismissed because, once again, Plaintiffs have not alleged any proof that FedEx is not exempt under the PACT Act. FedEx's Mem. at 11–17; *see* 15 U.S.C. § 376a(e)(5)(C)(ii) ("No State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco products to individual consumers or personal residences without proof that the common carrier is not exempt under paragraph (3) of this subsection."); *id.* § 376a(e)(3) (providing that FedEx is exempt if the AOC "is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers").[11]

In response, Plaintiffs argue that their new allegations in Second Amended Complaint show that neither the states nor FedEx honor and recognize the nationwide effect of the AOC, as is required to claim exemption under the PACT Act. Pls.' Opp'n Mem. at 11–14; *see FedEx*, 175 F. Supp. 3d at 362–63 & n.11; *accord New York v. United Parcel Serv., Inc.*, 179 F. Supp. 3d 282, 295 (S.D.N.Y. 2016) ("*UPS II*") (clarifying that the PACT Act exemption requires that both the carrier and the states honor and recognize the agreement and its nationwide effect).

Plaintiffs first argue that the Second Amended Complaint adequately pleads that the states do not honor the nationwide effect of the AOC. Pls.' Opp'n Mem. at 14. In support,

---

[11] The PACT Act provides that if the AOC "is terminated or otherwise becomes inactive," FedEx would still be exempt if it "is administering and enforcing policies and practices throughout the United States that are at least as stringent as the agreement." 15 U.S.C. § 376a(e)(3)(A)(ii). This exemption does not apply here, as the parties do not allege that the AOC has been terminated or is inactive. Indeed, the fact that the agreement is still active serves as the basis for both the State's AOC claim and FedEx's argument in favor of preemption.

The PACT Act also provides that FedEx would be exempt if it is subject to "any other active agreement [with] a State that operates throughout the United States to ensure that no deliveries of cigarettes or smokeless tobacco shall be made to consumers or illegally operating Internet or mail-order sellers and that any such deliveries to consumers shall not be made to minors or without payment to the States and localities where the consumers are located of all taxes on the tobacco products." *Id.* § 376a(e)(3)(B)(ii)(II). This exemption also does not apply here, as the parties do not allege the existence of any agreement between FedEx and a state other than the AOC.

Plaintiffs allege that the AOC (i) does not provide any other state with a right of enforcement, and (ii) does not provide any other state with a right to obtain any penalty for an illegal cigarette delivery into that state. Second Am. Compl. (*FedEx II*, Doc. 74) ¶¶ 103–107.[12] These aspects of the AOC were in existence at the time Congress created the exemption, however, and this Court has already concluded that "Congress created [the] exemption to keep [the AOC] in place." *FedEx*, 175 F. Supp. 3d at 362. Indeed, "[t]he evidence before Congress was that the three settlement agreements enumerated in § 376a(e)(3)(B)(ii)(I) *already* had effect across the nation," and "[b]y requiring nationwide recognition, Congress merely sought to codify the status quo with respect to carriers who had already agreed to curb illegal cigarette deliveries." *New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 141 & n.8 (S.D.N.Y. 2015) ("*UPS I*").[13] Thus,

---

[12] Paragraph 33 of the AOC provides that it "shall not grant any rights or privileges to any person or entity who is not a party" to the AOC. Paragraph 23 provides that no penalty shall be imposed for a violation of the AOC if the violation "involves the delivery of Cigarettes to an Individual Consumer outside the State of New York."

[13] *See also Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing on H.R. 4081 & H.R. 3689 Before the Subcomm. on Crime, Terrorism, & Homeland Sec. of the H. Comm. on the Judiciary*, 110th Cong. 9 (2008) (testimony of Rep. Weiner) ("[UPS, DHL, and FedEx] have agreed in an agreement with New York state that is now being followed throughout the country, they have agreed not to ship this tobacco product. . . . So the only one who would actually be covered by this in a real practical sense is the United States Postal Service. Everyone else would already be following their status quo operations."); *id.* at 79 (testimony of David S. Lapp, Chief Counsel, Tobacco Enforcement Unit, Office of the Attorney General of Maryland, testifying on behalf of the National Association of Attorneys General) ("Along with other State attorneys general, we have attained agreements with . . . the major delivery companies, including UPS, FedEx and DHL, all to stop Internet sales of cigarettes."); *id.* at 124 (statement of Eric Proshansky, Deputy Chief, Division of Affirmative Litigation, New York City Law Department) ("The states, acting through the National Association of Attorneys General, and with the assistance of the Bureau of Alcohol, Tobacco, Firearms & Explosives, negotiated an unprecedented set of agreements with credit card processors and common carriers in which members of those industries have pledged to end any participation in the Internet cigarette business."); H. Comm. on the Judiciary, Prevent All Cigarette Trafficking Act of 2008 or PACT Act, H.R. Rep. No. 110-836, at 24 (2008) ("[T]he subsection provides a limited exception from these requirements for a common carrier with an active settlement agreement with a State, honored nationwide, to block deliveries of cigarettes and smokeless tobacco or shipments where applicable taxes have not been paid. The three major common carriers—United Parcel Service, FedEx, and DHL—all have such agreements with the New York State Attorney General's office. At the May 1, 2008, hearing on the bill, the Crime, Terrorism, and Homeland Security Subcommittee received testimony that these agreements were effective at stopping the illegal shipment of cigarettes. To consumers [*sic*]."); 155 Cong. Rec. S5853 (daily ed. May 21, 2009) (statement of Sen. Kohl) ("In recognition of UPS and other common carriers' agreements to not deliver cigarettes to individual consumers on a nationwide basis, pursuant to agreements with the State of New York, we have exempted them from the bill provided this agreement remains in effect."); 156 Cong. Rec. H1534 (daily ed. Mar. 17, 2010) (statement of Rep. Weiner) ("[I]t is already by agreement that UPS, FedEx, DHL, the major common carriers have said, You know what? We think it's wrong to be facilitating this by making deliveries for Internet tobacco companies, so we're not going to do it. They've agreed to it. It's in place in all 50 States.").

the fact that a state "is not a party to [the AOC] and the [AOC] provides no remedies or enforcement mechanism for the state to pursue is not a sufficient basis to find that the [AOC] is not honored or recognized throughout the United States." *UPS II*, 179 F. Supp. 3d at 304.

Plaintiffs next argue that the Second Amended Complaint adequately pleads that FedEx does not honor the nationwide effect of the AOC. Pls.' Opp'n Mem. at 14. In support, Plaintiffs allege, in essence, that FedEx cannot be said to honor its agreement given its pervasive violations. Second Am. Compl. (*FedEx II*, Doc. 74) ¶ 108; *see also id.* ¶ 32 (alleging that FedEx knowingly shipped tens of thousands of cartons of cigarettes, including unstamped cigarettes, to individual residences in New York and nationwide); *id.* ¶¶ 35–47 (detailing the basis for alleging FedEx's knowledge). This Court has already concluded that interpreting "honored" to simply mean "complied with" would "undermine the purpose of providing an exemption for carriers who have come to a nationwide settlement agreement." *FedEx*, 175 F. Supp. 3d at 363. Namely, "[i]f the City or State could bring suit against a carrier who is not complying with the settlement agreement by bringing a PACT Act claim, there would be no point to a nationwide agreement, with its own set of remedies, which was recognized by Congress to serve the same purpose as the PACT Act." *Id.* However, this Court agrees with the conclusion in *UPS II* that a carrier may not retain the exemption provided by Congress by maintaining the requisite nationwide policies "in name only," *UPS II*, 179 F. Supp. 3d at 306, as that would also defeat Congress's intention to "ensure[] that the carrier was acting in conformity with the PACT Act's goals across the country," *FedEx*, 175 F. Supp. 3d at 363. Thus, while one violation of the AOC would be insufficient to establish that FedEx no longer honors the agreement nationwide, evidence that FedEx has failed to implement and enforce a compliance program that effectively

12

prevents the prohibited delivery of cigarettes could result in the loss of its entitlement to the exemption.

FedEx argues that Plaintiffs' allegations, if true, establish at most a violation of its nationwide policy, but not its non-existence. FedEx's Reply Mem. at 10. The Court disagrees. Given the degree of non-compliance alleged in the Second Amended Complaint, the finder of fact could conclude that FedEx no longer recognizes the nationwide effect of the AOC.[14] In that event, FedEx would no longer be exempt under the PACT Act, and FedEx could be held liable for violations of NYPHL § 1399-*ll*. Plaintiffs will thus be permitted to pursue their NYPHL and N.Y. Exec. Law claims at this juncture.

### 3. FAAAA Preemption

Finally, FedEx argues that Plaintiffs' NYPHL and N.Y. Exec. Law claims are preempted by the FAAAA. FedEx's Mem. at 8–11. The Court finds that the PACT Act expressly carves out from the FAAAA's reach state laws like the one Plaintiffs seek to enforce here.

In relevant part, the FAAAA provides that "a State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); *see also id.* § 41713(b)(4)(A) (similar provision for combined motor-air carriers). In *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008), the Supreme Court held that this provision of the FAAAA preempted a Maine statute that required carriers like FedEx to provide services to verify a recipient's age and

---

[14] In *UPS II*, Judge Forrest concluded that the City and State could raise a genuine issue of fact as to UPS's entitlement to the PACT Act exemption by: (1) "present[ing] evidence of a sufficiently large number of instances of shipments of contraband cigarettes that it suggests that UPS is, overall, turning a blind eye towards such unlawful shipments;" or (2) "submitting evidence showing that UPS policymakers have in fact turned a blind eye to shipments of contraband cigarettes." *UPS II*, 179 F. Supp. 3d at 306. The Court agrees that either type of evidence could establish proof that a carrier is not entitled to the PACT Act exemption, without foreclosing the possibility that other types of evidence could also suffice.

13

identity, to check shipments for certain markings, and to compare shipments to a list of proscribed shippers distributed by Maine's Attorney General.  The Court concluded that to allow Maine to insist that carriers provide these services "could easily lead to a patchwork of state service-determining laws, rules, and regulations," which would be "inconsistent with Congress' major legislative effort [through the FAAAA] to leave such decisions, where federally unregulated, to the competitive marketplace."  *Id.* at 373.  The Court acknowledged, however, that states could persist in their efforts to prevent cigarettes from falling into the hands of minors by "seek[ing] appropriate federal regulation," citing, as an example, the then-current version of the bill that became the PACT Act.  *Id.* at 377.  Indeed, Justice Ginsburg, in a concurring opinion, noted that the Court's decision had left a "large regulatory gap" for Congress to fill, and that having been "alerted to the problem, Congress [had] the capacity to act with care and dispatch to provide an effective solution."  *Id.* at 377–78 (Ginsburg, J., concurring).

In enacting the PACT Act, Congress filled the regulatory gap identified by Justice Ginsburg by "impos[ing] strict restrictions on the 'delivery sale' of cigarettes and smokeless tobacco."  *Red Earth LLC v. United States*, 657 F.3d 138, 141 (2d Cir. 2011).[15]  In order to avoid a patchwork of related state regulation, Congress expressly prohibited states from enforcing certain types of laws restricting such deliveries.  15 U.S.C. § 376a(e)(5)(A).  Specifically, states cannot:

(i) require that a carrier verify the age or identity of the consumer accepting the delivery;

(ii) require that a carrier obtain a signature from the consumer accepting the delivery;

(iii) require that a carrier verify that all applicable taxes have been paid;

---

[15] "A 'delivery sale' occurs when the buyer and seller are not in each other's physical presence at the time the buyer requests or receives the cigarettes, as when cigarettes are ordered over the Internet and delivered by mail." *Red Earth*, 657 F.3d at 141 (citing 15 U.S.C. § 375(5)).

14

>  (iv) require that packages delivered by a carrier contain any particular labels, notice, or markings; or
>
>  (v) prohibit carriers from making deliveries on the basis of whether the shipper is or is not identified on any list of shippers maintained and distributed by any entity other than the federal government.

*Id.* However, Congress expressly carved out other types of state laws from both PACT Act preemption and preemption by "any other Federal statute," including the FAAAA. *Id.* § 376a(e)(5)(C)(i). Specifically, states are permitted to generally prohibit "the delivery sale, or the shipment or delivery pursuant to a delivery sale, of cigarettes or other tobacco products to individual consumers or personal residences." *Id.*[16]

FedEx concedes that the PACT Act does not preempt NYPHL § 1399-*ll* to the extent the statute prohibits deliveries to "individual consumers or personal residences." FedEx's Mem. at 10–11. But FedEx argues that the carve-out does not extend to deliveries to "businesses." *Id.* FedEx's argument is without merit. In the PACT Act, the term "consumer" means "any person that purchases cigarettes or smokeless tobacco" who is not "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4). The Act further defines a "person" to include an "individual," as well as a "corporation, company, association, firm, [or] partnership." *Id.* § 375(10). Congress thus envisioned that its carve-out would apply to statutes restricting deliveries to all unlawfully operating entities, including both businesses and natural persons.

The only remaining question is whether NYPHL § 1399-*ll* qualifies for the PACT Act's carve-out. NYPHL § 1399-*ll* prohibits carriers like FedEx from knowingly shipping cigarettes to any person it reasonably believes is not:

---

[16] Pursuant to § 376a(e)(5)(C)(ii), states are not permitted to enforce such laws against a common carrier "without proof that the common carrier is not exempt under" § 376a(e)(3). As explained above, Plaintiffs will be permitted to offer proof that FedEx is no longer exempt by virtue of the AOC. *See supra* Section III.A.2.

15

(a) a person licensed as a cigarette tax agent, wholesale dealer, or registered retail dealer;

(b) an expert warehouse proprietor or an operator of a customs bonded warehouse; or

(c) a person who is a federal or state officer, employee, or agent and who presents himself or herself as such, when such person is acting in accordance with his or her official duties.

NYPHL § 1399-*ll*(2). The New York statute thus proscribes the exact type of conduct spelled out in the PACT Act carve-out, *i.e.*, deliveries to unauthorized persons. The FAAAA cannot, therefore, be construed to preempt New York's law.[17]

### B. The Parties' Discovery Dispute

During the course of discovery in *FedEx II*, certain disputes have arisen concerning FedEx's obligation to produce documents related to cigarette sellers other than those identified in the pleadings and deliveries outside the State of New York. Pls.' July 6, 2016 Ltr. (*FedEx I*, Doc. 219) at 1. Plaintiffs now ask the Court to compel FedEx to produce:

---

[17] The Court's reading comports with the Senate Judiciary Committee's stated rationale for including the carve-out in the first place—to preserve NYPHL § 1399-*ll* and other like statutes:

> One criticism of earlier versions of the PACT Act focused on creating federal regulations of the delivery of tobacco products, when a large number of states have already passed laws in this area. Common carriers and other delivery services believed that it would be burdensome to comply with the various federal and state requirements in this area.
>
> To lessen these concerns, subsection (e)(4) [which, following subsequent amendments, became subsection (e)(5)] was added . . . . This subsection preempts a limited number of state laws in this area, namely those types of laws that are being replaced by the strong federal regulatory scheme in the PACT Act. . . .
>
> New York has adopted regulations, however, that do not in any way conflict with the PACT Act's provisions. New York has enacted a law that completely prohibits the delivery sale of tobacco products to individual consumers. Because New York's law entirely prohibits the delivery sale, shipment and delivery of cigarettes to consumers, rather than regulating how such delivery sale, shipment or delivery should be effected, there is no need to preempt New York's law, or other similar statutes. As a result, subsection (e)(4)(C) [which became subsection (e)(5)(C)] was included to clarify that state laws prohibiting the delivery sale, and those prohibiting the shipment or delivery pursuant to a delivery sale, of cigarettes and smokeless tobacco to individual consumers are not preempted by the PACT Act. This is intended to preserve New York's existing law and ensure that other states are able to adopt similar laws in the future.

S. Comm. on the Judiciary, Prevent All Cigarette Trafficking Act of 2007, S. Rep. No. 110-153, at 12–13 (2007).

16

    (1)    all improper shipping forms related to the shipment of cigarettes or tobacco, regardless of shipper;

    (2)    nationwide shipping records for the cigarette sellers at issue in *FedEx II*; and

    (3)    documents concerning an investigation by the California State Attorney General's Office related to FedEx's shipment of cigarettes within that state.

*Id.*

In response to request (1), FedEx has agreed to produce all improper shipping forms related to the shipment of cigarettes or tobacco, but only for the cigarette sellers at issue in this case. FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227) at 2. FedEx does not assert that producing the remaining documents would be burdensome. Instead, FedEx argues that the request is overly broad, since information for other shippers is not relevant to any claim in the case, and FedEx has not yet pleaded its affirmative defenses in *FedEx II*. *Id.* at 2–3. The Court disagrees, and finds that all improper shipping forms related to the shipment of cigarettes or tobacco, regardless of shipper, is relevant to aspects of the case that have nothing to do with PACT Act preemption, including Plaintiffs' request for injunctive relief, civil penalties, and the appointment of a special master. *See* Pls.' July 28, 2016 Ltr. (*FedEx I*, Doc. 228) at 2. Moreover, to the extent that FedEx asserts an entitlement to PACT Act preemption in its Answer to the Second Amended Complaint, nationwide improper shipping forms will also be relevant to the issue of whether FedEx honored the nationwide effect of the AOC. Accordingly, request (1) is granted.[18]

In response to request (2), FedEx argues that it has already agreed to produce considerable information about the nationwide shipments of the cigarette sellers at issue in

---

[18] FedEx argues that focusing on the cigarette sellers at issue in this case would be consistent with this Court's approach in resolving the dispute over the scope of FedEx's depositions of Plaintiffs. FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227) at 3–4. The Court's decision to limit the scope of *Plaintiffs'* discovery obligations was rooted in identifiable burdens imposed on the City and State, as well as a regard for government officials' broad executive discretion. *See, e.g.*, *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2016 WL 1718261, at *8 (S.D.N.Y. Apr. 27, 2016). FedEx has not even asserted any burden here, nor does it necessarily enjoy the same treatment as government officials.

*FedEx II*. FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227) at 4–5. FedEx asserts that the only information it is withholding—package-specific details for out-of-state deliveries—is irrelevant, because it would only assist Plaintiffs in calculating damages, which they are not seeking for the out-of-state shipments. *Id.* at 5. Again, the Court disagrees. FedEx's degree of involvement in the conduct of each cigarette seller's business is particularly relevant to Plaintiffs' RICO claims and is also relevant to assist the finder of fact in determining what FedEx knew and whether the shipments at issue contained cigarettes. *See* Pls.' July 28, 2016 Ltr. (*FedEx I*, Doc. 228) at 4. As FedEx is not asserting that the request is too burdensome, request (2) is granted.

In response to request (3), FedEx argues only that information for shippers other than the cigarette sellers at issue in this case is irrelevant. FedEx's July 21, 2016 Ltr. (*FedEx I*, Doc. 227) at 6. Having just concluded that such information is relevant, and in the absence of any argument by FedEx that producing the documents would impose a burden, the Court grants request (3).

**IV. CONCLUSION**

For the foregoing reasons, FedEx's motion to dismiss Plaintiffs' NYPHL and N.Y. Exec. Law claims is DENIED and Plaintiffs' request for discovery is GRANTED. In light of the fact that the current deadline for document production in *FedEx II* has already passed,[19] the parties

---

[19] The Civil Case Discovery Plan and Scheduling Order provides that the production of all documents was to be completed by March 16, 2016 in *FedEx I* and by October 17, 2016 in *FedEx II*. Sept. 23, 2016 Order (*FedEx I*, Doc. 235) ¶ 8.

are directed to submit a proposed amended scheduling order by **March 7, 2017**. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 209.

    It is SO ORDERED.

Dated:    February 21, 2017
             New York, New York

                                                        Edgardo Ramos, U.S.D.J.