UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE CITY OF NEW YORK and THE PEOPLE OF THE
STATE OF NEW YORK,

                                    Plaintiffs,

                    -against-


FEDEX GROUND PACKAGE SYSTEM, INC.,

                                    Defendant.

---

**OPINION & ORDER**

13 Civ. 9173 (ER)

Ramos, D.J.:

 Before the Court is Plaintiffs' motion to file a consolidated amended complaint.  For the reasons discussed below, Plaintiffs' motion is DENIED.

## I. BACKGROUND

 This consolidated case comprises two actions against FedEx Ground for allegedly shipping untaxed cigarettes in violation of state and federal law.  The City of New York sued Defendant FedEx Ground for the first time on December 30, 2013.  *See* Doc. 1.  This suit is now known as *FedEx I*.  The original *FedEx I* complaint made allegations specific to one shipping entity, a cigarette shipper located on the Shinnecock Reservation in New York.  *See* Doc. 1 ¶¶ 32–37.  On March 30, 2014, the City amended its complaint to add the State of New York as a plaintiff, allegations specific to three other shipping entities, and a cause of action for breach of the 2006 Assurance of Compliance ("AOC") negotiated between the State of New York and FedEx.  *See* Doc. 13 ¶¶ 20, 40–45, 46–50, 51–58, 59–63.  The amended complaint is one of the two operative complaints in this consolidated case.

Plaintiffs filed another lawsuit on November 12, 2014. *See* Doc. 1, 14-cv-8985. This lawsuit is now known as *FedEx II*. Like *FedEx I*, *FedEx II* charges the defendant with illegally shipping cigarettes. *See generally* Doc. 1, 14-cv-8985. Unlike *FedEx I*, however, the original *FedEx II* complaint did not specify on whose behalf FedEx allegedly shipped cigarettes. *See* Doc. 1, 14-cv-8985. Plaintiffs amended their *FedEx II* complaint for the first time on May 8, 2015. *See* Doc. 23, 14-cv-8985. In their first amended complaint, Plaintiffs specifically named 21 additional shippers.[1] *See* Doc. 23 ¶¶ 63, 14-cv-8985. They also included a claim for relief under N.Y. Executive Law § 63(12) for the violation of N.Y. Public Health Law § 1399-ll, a claim not present in *FedEx I*. *See* Doc. 23 ¶¶ 92–100, 14-cv-8985. On March 31, 2016, the Court dismissed Plaintiffs' § 63(12) and § 1399-ll claims with leave to replead. *See City of New York v. FedEx Ground Package Sys., Inc.*, 175 F. Supp. 3d 351, 362–64 (S.D.N.Y. 2016). Plaintiffs consequently filed their second amended complaint on April 14, 2016. Doc. 74, 14-cv-8985. That complaint is the other operative complaint in this consolidated case.

On April 15, 2016, the Court consolidated *FedEx I* and *FedEx II* pursuant to Federal Rule of Civil Procedure 42(a). *See* Doc. 184. The complaints themselves were not consolidated. Shortly afterwards, both parties submitted competing proposed discovery plans and scheduling orders. Both parties' proposals suggested May 30, 2014 as the cutoff date for amended pleadings in *FedEx I* and May 8, 2015 as the cutoff date for amended pleadings in *FedEx II*. *See* Doc. 189; Doc. 190. The Court adopted those dates. *See* Doc. 201. These dates remain the same in the operative scheduling order, issued June 22, 2017. Doc. 339.

---

[1] The operative *FedEx II* complaint still contains allegations regarding the 21 alleged shippers; however, the parties have subsequently agreed that only three of those 21 shippers will remain in the case: Two Pine Enterprises, Shinnecock Indian Outpost, and Your Kentucky Tobacco Resource LLC, *see* Doc. 466 at 6.

Among other issues, the parties conducted discovery related to the 2006 Assurance of Compliance ("AOC"), which imposed certain obligations on FedEx and included a $1000 stipulated penalties provision for "each and every violation" of the AOC. *See generally* AOC. The parties dispute the scope of the stipulated penalties provision. FedEx contends that only shipments of cigarettes illegal under N.Y. P.H.L. § 1399-ll are subject to the penalty, *see* Doc. 533 at 4, while the State of New York contends that breaches of any AOC provision are subject to a $1000 penalty, *see* Doc. 533 at 3. For example, New York argues that FedEx's failure to issue a warning to a customer within five business days of confirming that the customer shipped cigarettes, also required under the AOC, *see* AOC ¶ 14, is similarly subject to the penalties provision.

On December 21, 2016, FedEx deposed Vincent Esposito, a former New York Assistant Attorney General, about the AOC. Pullman Decl. ¶ 17; *see generally* Pullman Decl., Ex. G. Specifically, FedEx asked Esposito questions about the negotiations leading to the execution of the AOC, the meaning of its terms, the State's views of FedEx's compliance efforts, and the differences between the AOC and a similar document the State negotiated with United Parcel Service ("UPS"), the Assurance of Discontinuance ("AOD"). *See* Pullman Decl., Ex. G Tr. 164–66, 170–72.

On January 5, 2017, FedEx deposed David Nocenti, Mr. Esposito's former supervisor, with respect to those same issues. Pullman Decl. ¶ 18; *see also* Pullman Decl., Ex. H.

On February 21, 2017, the Court denied FedEx's motion to dismiss the § 63(12) claim from the Second Amended Complaint. *City of New York v. FedEx Ground Package Sys., Inc.*, 2017 WL 740067, at *7 (S.D.N.Y. Feb. 21, 2017). The Court noted that under the Prevent All Cigarette Trafficking ("PACT") Act, states may not enforce against a common carrier laws

3

prohibiting the delivery of cigarettes to personal residences without proof that the common carrier is not exempt under PACT, 15 U.S.C. § 376a(e).  *FedEx*, 2017 WL 740067, at *3.  FedEx is exempt under PACT Act, so long as the AOC "is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers[.]"  15 U.S.C. § 376a(e).  To be "honored," the AOC must be "recognized" by FedEx and each state.  *FedEx*, 175 F. Supp. 3d at 362.  Thus, if the AOC is not recognized by FedEx and the states, then FedEx is not exempt under the PACT Act from state law claims.  Under this logic, the Court held that "[g]iven the degree of noncompliance alleged in the Second Amended Complaint, the finder of fact could conclude that FedEx no longer recognizes the nationwide effect of the AOC.  In that event, FedEx would no longer be exempt under the PACT Act," and thus would be subject to state law claims.  *FedEx*, 2017 WL 740067, at *7.  Hence, at this stage in the litigation, the operative complaint in *FedEx II* still contains a § 63(12) claim.  The operative complaint in *FedEx I* does not.

Meanwhile, on March 24, 2017, the Honorable Katherine B. Forrest issued an opinion following a bench trial in a similar case brought by these same Plaintiffs against UPS.  *See State of New York v. United Parcel Service, Inc.*, 2017 WL 1135257 (S.D.N.Y. Mar. 24, 2017).[2]  As relevant to the instant motion, Judge Forrest found that a stipulated penalties provision identical to that found in the AOC applied to violations of any of the obligations set forth in the State's AOD with UPS.  *See State of New York v. United Parcel Service, Inc.*, 253 F. Supp. 3d 583, 658–59 (S.D.N.Y. May 25, 2017).  In doing so, she rejected the interpretation that FedEx is also pressing here; namely, that a "violation" of the AOD only ever occurs when UPS delivers cigarettes to a non-authorized person.  *See id.*

---

[2] That opinion was corrected and superseded on May 25, 2017 in ways irrelevant to the instant motion.  *See State of New York v. United Parcel Service, Inc.*, 253 F. Supp. 3d 583 (S.D.N.Y. May 25, 2017).

On October 5, 2017, Plaintiffs deposed Anthony Spalvieri, FedEx's designated Rule 30(b)(6) witness, Pullman Decl. ¶ 13, on the issue of FedEx's compliance with the AOC, *see, e.g.*, Pullman Decl., Ex. F, Tr. 149–51.  Specifically, Spalvieri testified that:  (1) he did not "believe there was any formal communication directly to employees about that [AOC] with New York" before 2012, *see* Pullman Decl., Ex. F, Tr. 91:12–19; and (2) FedEx lacked a formal auditing process to detect cigarette shipments, *see* Pullman Decl., Ex. F, Tr. 183:18–19.

On November 14, 2017, FedEx deposed Dana Biberman, the former Chief of the State's Tobacco Compliance Bureau.  Pullman Decl. ¶ 19.  FedEx asked Biberman questions regarding the meaning of various provisions of the AOC and differences between the AOC and AOD. Specifically, FedEx asked Biberman about whether the AOC included audit and training provisions similar to those in the AOD.  *See* Pullman Decl., Ex. I, Tr. 70–74, 92–94, 103–04.

Plaintiffs first notified FedEx of their intention to file a consolidated amended complaint no later than August 2017.  Pullman Decl. ¶ 5.  On September 6, 2017, Plaintiffs sent FedEx a proposed consolidated complaint and sought FedEx's consent to file it.  On October 2, 2017, FedEx informed Plaintiffs that it did not consent to the proposed amendments.  Pullman Decl. ¶ 7.  Approximately two months later, Plaintiffs filed a letter motion seeking leave to file a consolidated amended complaint.  Pullman Decl. ¶ 9.  The Court granted Plaintiffs leave to file the motion at a pre-motion conference held on December 14, 2017.  Pullman Decl. ¶ 9.  Plaintiffs filed their motion, attaching the proposed consolidated complaint, on January 31, 2018.  Doc. 414.  The proposed consolidated complaint attached there differed in some minor respects from the version initially shared with FedEx.  Def.'s Mem. at 7 n.3.  FedEx filed its opposition to the motion on March 2, 2018, Doc. 423, and Plaintiffs filed their reply on March 16, 2018, Doc. 427.

## II.    LEGAL STANDARD

The Court should "freely give leave" to a party to amend its pleading "when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* Absent some reason for doing so, denying leave to amend is an abuse of the district court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Where a scheduling order governs by when parties must amend their pleadings, the lenient standard of Rule 15 must be balanced against the requirement of Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). Whether good cause exists depends primarily on the diligence of the party seeking amendment. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). It can also depend on whether allowing the amendment will prejudice the defendant. *See id.* at 244. The good cause standard is not met when the proposed amendment rests on information that the party knew, or should have known, before the deadline. *iMedicor, Inc v. Access Pharm., Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013).

District courts may grant leave to file a consolidated complaint in consolidated cases. *See Garber v. Randell*, 477 F.2d 711, 717 n.4 (2d Cir. 1973). "[E]ach case in which it may appear desirable to consolidate complaints in different actions must be evaluated on its own facts with close attention to whether the anticipated benefits of a consolidated complaint outweigh potential prejudice to the parties." *Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354,

1360 (2d Cir. 1975).  Like other amended pleadings, the filing of a consolidated amended

complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure.

## III.    DISCUSSION

Plaintiffs' proposed consolidated complaint makes four types of changes to the presently

operative complaints.[3]  First, the proposed consolidated complaint "streamlines and coheres the

allegations by reorganizing and deleting repetitive paragraphs."  Pls.' Mem. at 11.  Second, it

"makes clear" that Plaintiffs are seeking relief under N.Y. Exec. Law § 63(12) for violations of

N.Y. P.H.L. § 1399-ll with respect to all shippers involved, not just those in *FedEx II*.  *See* Pls.'

Mem. at 11.  Third, the proposed consolidated complaint adds allegations that, in addition to

breaching its obligation to abide by § 1399-ll, FedEx breached its other AOC obligations,

including those to train employees and audit and report shippers.  *See* Pls.' Mem. at 11.  Finally,

the proposed consolidated complaint removes allegations relating to three alleged shippers from

Plaintiffs' *FedEx II* claims, a change that FedEx does not oppose.[4]  *See* Pls.' Mem. at 11.  FedEx

primarily contests the second and third categories of changes.  The Court finds that good cause

does not exist to allow the filing of the consolidated complaint.

### A.    *Whether The Good Cause Standard Applies*

Plaintiffs argue that Rule 16's good cause requirement is inapplicable because the

scheduling order does not contemplate a deadline for the filing of a consolidated amended

complaint.  The Court rejects this argument.  A consolidated amended complaint is still an

amended pleading, and thus subject to the June 22, 2017 scheduling order, which requires

amended pleadings to be filed by May 30, 2014 for *FedEx I* and May 8, 2015 for *FedEx II*, dates

---

[3] The operative complaints in this consolidated action are currently the Amended Complaint in *FedEx I*, Doc. 13, and the Second Amended Complaint in *FedEx II*, Doc. 74, 14-cv-8985.

[4] The three alleged shippers are Discount Tobacco Outlet, Lakeside Enterprises, and Kee Missouri DC.

selected by and agreed to by the parties.  Doc. 338 at 1.  Plaintiffs also argue that because they could not have filed a consolidated complaint by those dates, which preceded the Consolidation Order, their motion to file a consolidated complaint now cannot be bound by the scheduling order.  But Plaintiffs can hardly complain that they could not have filed a consolidated complaint by the scheduling order dates when they proposed those dates *after* the cases were consolidated.  At that point, Plaintiffs knew that any amended pleadings they would seek to file, including a consolidated complaint, would be subject to their proposed deadlines upon the deadlines' adoption by the Court.  Whether the proposed deadlines were "holdovers," Pls.' Reply at 4, does not matter—Plaintiffs had the opportunity to suggest new dates.  Rule 16's good cause requirement applies.

B.      *Whether Good Cause Exists For The Amendments*

Plaintiffs lack good cause to file the proposed consolidated complaint.  They failed to act diligently with respect to the first and last category of changes.  The first category of changes clearly could have been proposed as soon as the consolidation order was entered in 2016.  The last category of changes, the withdrawal of allegations relating to Discount Tobacco Outlet, Lakeside Enterprises, and Kee Missouri DC from the operative complaints, is unopposed by FedEx.  However, FedEx argues that the change is late and unnecessary, as the parties have already agreed to not pursue claims related to those shippers.  Doc. 423 at 19.  The Court agrees with FedEx; the withdrawal of the three shippers does not merit an amendment.

Plaintiffs contend that new factual and legal developments spurred the substantive changes in the second and third categories, and so those amendments are supported by good cause.  Courts sometimes find good cause for Plaintiffs to amend their complaint on the basis of new facts uncovered in discovery.  *See, e.g.*, *Permatex, Inc. v. Loctite Corp.*, 2004 WL 1354253,

at *3 (S.D.N.Y. June 17, 2004).  Courts have also allowed parties to amend their pleadings in response to changes in the intervening law.  *See Sys. Fed'n No. 152, Ry. Emp. Dep't AFL-CIO v. Pennsylvannia R. Co.*, 272 F. Supp. 971, 974 (S.D.N.Y. 1967).

The second category of changes concerns Plaintiffs' N.Y. Exec. Law § 63(12) claims.  In April 2016, Plaintiffs filed their Second Amended Complaint in *FedEx II*, which included claims under § 63(12) for violations of § 1399-ll and allegations of widespread violations of the AOC nationwide.  Doc. 74.  In February 21, 2017, this Court held that given the allegations made in the *FedEx II* Second Amended Complaint, a finder of fact could conclude that FedEx no longer recognizes the nationwide effect of the AOC.  *See City of New York v. FedEx Ground Package Sys., Inc.*, 2017 WL 740067, at *7 (S.D.N.Y. Feb. 21, 2017).  In that event, FedEx would no longer be exempt under the PACT Act, and could be held liable for violations of § 1399-ll under § 63(12).  *Id.*  Plaintiffs now want to add § 63(12) claims in their proposed consolidated complaint with respect to the shippers at issue in *FedEx I*, pointing out that their complaint comes only several months after the February 21, 2017 decision.

Plaintiffs' new § 63(12) claims nonetheless come too late.  Plaintiffs included their *FedEx II* § 63(12) claims for the first time in an amended complaint filed May 8, 2015.  While those claims only survived the motion to dismiss stage after the February 21, 2017 opinion, clearly, Plaintiffs thought they could make § 63(12) claims by mid-2015, because they actually did so in *FedEx II*.  The February 21, 2017 opinion merely confirmed to Plaintiffs that by alleging enough facts surrounding the AOC, they could plausibly allege that the PACT Act exemption no longer applied and thereby plausibly allege § 63(12) claims.  Indeed, the Court described this strategy in its March 31, 2016 opinion.  *See City of New York v. FedEx Ground Package System, Inc.*, 175 F. Supp. 3d 351 (S.D.N.Y. 2016) ("[P]laintiffs have not adequately

pleaded that their § 1399-ll claim is outside the ambit of the PACT Act's presumptive exemption for nationwide settlement agreements, as was already discussed.  Plaintiffs thus cannot use § 63(12) to collect civil penalties under NYPHL § 1399-ll at this juncture.").  Plaintiffs thus did not exercise sufficient diligence in amending their complaint to include § 63(12) claims.

The most important changes in Plaintiffs' proposed consolidated complaint, however, are those related to the AOC.  Plaintiffs seek to "add several allegations relating to the terms of the AOC and Defendant's breach of those obligations," Pls.' Mem. at 11, in response to facts uncovered in discovery and Judge Forrest's decision in *State of New York v. United Parcel Service*, 253 F. Supp. 3d 583 (S.D.N.Y. 2017).  In discovery, FedEx deposed Vincent Esposito, Dana Biberman, and David Nocenti on the negotiation of the 2006 AOC and its terms, *see* Pls.' Mem. at 4, 5, and Plaintiffs deposed FedEx's Rule 30(b)(6) witness, Anthony Spalvieri, on FedEx's internal policies after the AOC's enactment, *see* Pls.' Mem. at 7.  In *UPS*, Judge Forrest interpreted an agreement between New York State and UPS similar to the AOC and held that the failure to abide by any of the obligations described in the agreement amounted to a violation. 253 F. Supp. 3d at 658–59.  The new allegations are purportedly based off these events.  They reiterate FedEx's obligations under the AOC and allege that FedEx failed to abide by many of them.  *See, e.g.*, Pullman Decl., Ex. C ¶ 41 ("Additionally, the AOC requires FedEx to alert the Attorney General to the termination of the shipper no later than five (5) business days after confirmation of the prohibited shipment."); ¶ 43 ("Despite being aware of routine and continued prohibited shipments of cigarettes by particular shippers over an extended period of time, FedEx failed to investigate, issue written warnings, terminate, and advise the Attorney General of these customers as mandated by the AOC.").  The operative complaints instead focus on one obligation under the AOC, actual shipment of cigarettes in violation of § 1399-ll.

The deposition testimony of Esposito, Nocenti, and Biberman does not furnish good cause to amend the complaint because the proffered testimony is not relevant to the amendments Plaintiffs seek.  These deponents testified regarding their view of what obligations the AOC imposed, but their opinions amount to irrelevant parol evidence.  While parol evidence may be admissible to address a claim that the AOC was ambiguous, *cf. Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997), Plaintiffs have advanced no such argument here.

Spalvieri's Rule 30(b)(6) testimony presents a tougher call, but also fails to furnish good cause.  Spalvieri testified about the extent of FedEx's compliance with the AOC.  Specifically, Spalvieri testified (1) that he did not "believe there was any formal communication directly to employees about that assurance of compliance with New York" before 2012, and (2) that FedEx lacked a formal auditing process to detect cigarette shipments.[5]  *See* Pullman Decl., Ex. F, Tr. 91:16–19, 183:18–19.  The latter proposition is irrelevant because the AOC does not impose any obligation on FedEx to "audit" its accounts to detect cigarette shipments.  The first proposition initially appears relevant because the AOC obliges FedEx to send an annual written communication to its employees and contractors reiterating key parts of FedEx's cigarette policy.  *See* AOC ¶ 18.  The context of the cited statement by Spalvieri, however, shows that he was referencing communications informing employees about the initial execution of the AOC.  *See* Pullman Decl., Ex. F., Tr. 91:12–19 ("Q:  Were managers ever notified prior to this training in 2012 about the agreement that FedEx entered into with the New York State Attorney General's Office?  A:  I don't believe there was any formal communication directly to employees about

---

[5] Plaintiffs contend that Spalvieri also testified that FedEx failed to train its employees pursuant to the terms of the AOC, but the Court finds that proposition unsupported by the cited deposition testimony of Spalvieri.  Regardless, even if Spalvieri had testified that FedEx failed to train its employees, that testimony would not merit amendment because the AOC does not impose any obligation to train employees.  For the same reason, the deposition testimony of John Costanza and Dan Skelley stating that FedEx failed to train its employees to detect illegal cigarette shipments, *see* Pls.' Mem. at 8 n.15, fails to provide good cause to amend the complaint.

that assurance of compliance with New York prior to I guess this document.").  This statement does not pertain to any of FedEx's obligations under the AOC.  Consequently, it does not furnish good cause for Plaintiffs to amend their complaint.

Lastly, Judge Forrest's *UPS* opinion does not support a finding of good cause.  In *UPS*, Judge Forrest held that the term "violation," as used in an agreement similar to the AOC, referred to a failure to abide by any of the obligations listed in the agreement.  *See* 253 F. Supp. 3d at 658–59.  This holding could ultimately have implications for Plaintiffs' AOC claims because the stipulated penalties provision in the AOC is identical to that in the agreement at issue in *UPS*.  *Compare* AOC ¶ 23 *with UPS*, 253 F. Supp. 3d at 657.  *UPS* does not justify Plaintiffs' proposed amendments, however.  As a preliminary matter, the UPS opinion was filed fully five months before Plaintiffs sought FedEx's consent to file an amended complaint.  Moreover, it is clear that it has long been Plaintiffs' position that any breach of an obligation amounts to a violation under the AOC; hence, *UPS* was not a new circumstance that prompted the proposed amendment.[6]  At the December 14, 2017 hearing, Plaintiffs argued that their new AOC allegations did not prejudice FedEx because it was "obvious" since 2006 what the AOC's provisions were.  *See* Doc. 404, Dec. 14, 2017 Hr'g Tr. at 5:12–16 ("The Court:  Those provisions that you are seeking to add now, you say, were obvious to FedEx in 2006.  Weren't they similarly obvious to you in 2006?  Ms. Konopka:  Your Honor, yes, they were obvious to us.").  Thus, Plaintiffs, claim, FedEx has been on notice throughout the course of the litigation that it could conduct discovery relating to the AOC provisions—just like Plaintiffs did.  *See* Pls.' Reply at 4.  But there would be no reason for the parties to conduct discovery on those provisions' meaning and implementation

---

[6] Indeed, in their briefing, Plaintiffs do not explain how the *UPS* opinion prompted their new allegations.  They simply assert that their proposed consolidated complaint was filed "in response to changes in law," i.e., the *UPS* opinion.  Pls.' Mem. at 14.  The Court's opinion thus draws some inferences on Plaintiffs' behalf.

unless they were subject to the ¶ 23 stipulated penalties clause. This suggests that the *UPS* decision did not mark a change in the law as it was understood by Plaintiffs to date.[7] The Court therefore concludes that the *UPS* decision does not furnish good cause for the Plaintiffs' new AOC allegations.

Of course, courts evaluate good cause based on the cumulative effect of many factors, not any single one. But here, the cumulative effect of every new development Plaintiffs cite to support their proposed amendments is insufficient to furnish good cause. The factual and legal developments do not explain or justify the new amendments sought at this point, far past the scheduling order deadlines. Accordingly, Plaintiffs' motion to amend is denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to file a consolidated amended complaint is DENIED. The Clerk of the Court is respectfully requested to terminate the motion, Doc. 414.

Dated: September 20, 2018
New York, New York

Edgardo Ramos, U.S.D.J.

---

[7] Further, Plaintiffs here are the same plaintiffs who argued for the expansive interpretation of "violation" ultimately adopted by Judge Forrest.