UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK AND THE
PEOPLE OF THE STATE OF NEW YORK,
                                    Plaintiffs,

                    -against-

FEDEX GROUND PACKAGE SYSTEM,
INC.,
                                    Defendant.

**OPINION**

13 Civ. 9173 (ER)

Ramos, D.J.:

Before the Court are cross motions for partial summary judgment.[1]  Plaintiffs, the City of

New York and the People of the State of New York, move for summary judgment for (1) liability

under the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341–46; (2) liability

under the 2006 Assurance of Compliance ("AOC") entered into by the State of New York and

FedEx Ground; (3) liability for conspiracy under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"),[2] 18 U.S.C. § 1962(d); and (4) a determination of the proper

formula for calculating damages under the CCTA in this case.  Defendant FedEx Ground

("FedEx") moves for summary judgment against Plaintiffs on (1) its statute of limitations

defense against Plaintiffs' CCTA, RICO, and AOC claims; (2) its equitable estoppel defense, as

to all claims relating to Shinnecock Smoke Shop; (3) its liability for substantive RICO and RICO

---

[1] On September 26, 2018, the Court issued a short order detailing its resolution of the motions and explaining that an opinion would follow.  This is the promised opinion.

[2] By letter dated September 24, 2018, Doc. 581, Plaintiffs advised the Court that they are no longer pursuing their RICO claims at trial.  Accordingly, that portion of Plaintiffs' motion is DENIED as moot, as are FedEx's motions regarding the RICO charges.

conspiracy offenses, 18 U.S.C. § 1962(c)–(d); and (4) its liability for all claims relating to Two

Pine Enterprises ("Two Pine").

For the reasons set forth below, Plaintiffs' motion for summary judgment is GRANTED

and FedEx's motion for summary judgment is GRANTED in part and DENIED in part.

## I.    BACKGROUND

Defendant FedEx Ground is a major common carrier with operations in the State of New

York and the City of New York.[3]  Plaintiffs bring this action against FedEx for knowingly

shipping massive quantities of untaxed cigarettes on behalf of unauthorized cigarette dealers.  By

doing so, Plaintiffs allege, FedEx violated federal and state law and deprived them of millions of

dollars in tax revenue.  To provide the necessary context for this opinion, the Court sets forth the

factual and procedural background of the case.

---

[3] The Court draws the facts cited in this opinion from Plaintiffs' Rule 56.1 Statement in Support of Plaintiffs' Motion for Partial Summary Judgment, Doc. 457 (cited to in this opinion as "Pls.' 56.1 Statement of Facts"); FedEx's responses to Plaintiffs' Rule 56.1 Statement, Doc. 492 (cited to in this opinion as "Def.'s 56.1(b) Responses"); FedEx's supplemental statements in response to Plaintiffs' Rule 56.1 Statement, Doc. 492 (cited to in this opinion as "Def.'s 56.1(b) Supplemental Statement of Facts"); FedEx's Rule 56.1 Statement in Support of FedEx's Motion for Partial Summary Judgment, Doc. 459 (cited to in this opinion as "Def.'s 56.1 Statement of Facts"); Plaintiffs' responses to FedEx's Rule 56.1 Statement, Doc. 495 (cited to in this opinion as "Pls.' 56.1(b) Responses"); Plaintiffs' supplemental statements in response to FedEx's Rule 56.1 Statement, Doc. 495 (cited to in this opinion as "Pls.' 56.1(b) Supplemental Statement of Facts"); FedEx's responses to Plaintiffs' supplemental statements, Doc. 510 (cited to in this opinion as "Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts"); and the parties' supporting submissions.  Any citation to the parties' 56.1 statements incorporates by reference the documents cited therein.

The Court relies upon only undisputed facts based on admissible evidence to reach its legal conclusions.  *See Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011); *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).  To demonstrate that a fact cited and relied upon by one party is undisputed by the other in the fact's material respects, the Court cites to the non-movant's responses to the movant's 56.1 statement instead of the statement itself.

Where the Court cites to docket entries, the Court is referring to entries in the docket for the consolidated case, which bears the case number 13-cv-9173.  Where the Court references a docket entry made prior to the consolidation order issued on April 15, 2016 and it is ambiguous which docket the citation refers to, the Court will indicate whether it is a *FedEx I* or *FedEx II* docket entry.

A.     *Regulatory Background and Plaintiffs' Relationship with FedEx*

Plaintiffs each impose an excise tax on the sale of cigarettes.  N.Y. Tax Law § 471; New York City, N.Y., Code ("Ad. Code") § 11-1302.  All cigarettes possessed for sale or use in the State of New York or the City of New York must be taxed.  N.Y. Tax Law § 471; Ad. Code § 11-1302.  The "use" of cigarettes in the State or City entails the "exercise of any right or power, actual or constructive, and shall include but is not limited to the receipt, storage or any keeping or retention for any length of time, but shall not include possession for sale."  N.Y. Tax Law § 471-a; Ad. Code § 11-1301.  The State and City excise taxes are pre-paid by licensed cigarette stamping agents through their purchases of tax stamps, which they must then affix to every pack of cigarettes sold.  N.Y. Comp. Codes R. & Regs. tit. 20, § 74.3.  New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's steam of commerce.  *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 158 (2d Cir. 2011).  By law, stamping agents are required to incorporate the amount of the tax into the price of the cigarettes, thereby ultimately passing the tax along to the consumer.  *See* N.Y. Tax Law § 471(2).  The pack stamp evidences that the appropriate tax has been paid.  *See* N.Y. Tax Law §§ 471, 473; Ad. Code §§ 11-1302, 11-1304.

There are 10 packs of cigarettes in every carton.  At all times relevant to the case, the New York City excise tax was $1.50 per pack or $15.00 per carton.  The New York state excise tax has changed over the years.  Prior to June 3, 2008, the state excise tax was $1.50 per pack or $15.00 per carton.  On June 3, 2008, the state excise tax was increased to $2.75 per pack or $27.50 per carton.  On July 1, 2010, the state excise tax was again increased to $4.35 per pack or $43.50 per carton.  Presently, the State and the City have the second highest combined state-and-

local cigarette excise tax rate at $58.60 per carton.  Def.'s 56.1(b) Supplemental Statement of Facts ¶ 6.

Plaintiffs are well aware of the black market for untaxed cigarettes in New York, whereby cigarette retailers sell their product directly to consumers, bypassing the stamping agents and thereby not paying the applicable taxes.  Plaintiffs routinely prosecute cases involving the distribution of untaxed cigarettes.  *See, e.g.*, *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583 (S.D.N.Y. 2017); *City of New York v. Gordon*, 1 F. Supp. 3d 94 (S.D.N.Y. 2013); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2013 WL 3187049 (E.D.N.Y. June 20, 2013).

Plaintiffs have also worked together with common carriers to stop cigarette trafficking. In 2004, the New York Attorney General investigated FedEx and other common carriers, including UPS, for violating federal and state laws relating to the unlawful delivery of cigarettes, including New York Public Health Law ("N.Y. P.H.L.") § 1399-ll.[4]  On August 13, 2004, the AG caused subpoenas to be served on FedEx pursuant to New York Executive Law ("N.Y. Exec. L.") § 63(12).  Attached to the subpoenas was a "Schedule C," which identified names of shippers that sell and ship cigarettes in the course of their business.  AOC ¶ 7; Def.'s 56.1(b) Responses ¶ 13.  Among other shippers, Schedule C identified "Shinnecock Tobacco," "Shinnecock Indian," "Cigarettes Direct 2 U," and "Danny's Tobacco" as cigarette shippers. Def.'s 56.1(b) Responses ¶ 14.

_____

[4] Section 1399-ll(1) provides that cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state governments.  Section 1399-ll(2), in turn, prohibits common carriers from "knowingly transport[ing] cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-ll(1)]," and provides a presumption of carrier knowledge "if cigarettes are transported to a home or residence."

On February 13, 2006, FedEx entered into an Assurance of Compliance ("AOC") with the Attorney General in which it agreed, *inter alia*, to comply with N.Y. P.H.L. § 1399-ll, terminate relationships with shippers that unlawfully attempted to use FedEx to ship cigarettes to residential addresses, and report those shippers to the AG's office. *See generally* AOC. The AOC also required FedEx to "revise any and all internal policies . . . to ensure they are consistent with the terms of this Assurance of Compliance," Def.'s 56.1(b) Responses ¶ 29, and notify the AG if FedEx found that one of its customers had attempted to ship cigarettes more than once, *see* AOC ¶ 17. FedEx agreed that it would pay a $1,000 penalty for every violation of the AOC. *See* AOC ¶ 23.

In 2008, FedEx implemented an "Improper Shipping Form" ("ISF") procedure. Def.'s 56.1(b) Responses ¶ 64. The ISF procedure required FedEx employees to complete a standardized form when they identified a package that was not in compliance with the company's rules and regulations concerning what items may be shipped and how they may be shipped. Def.'s 56.1(b) Responses ¶ 65. At first, the ISF form was dubbed the "Alcohol Shippers' Violation Form." As the name would suggest, the Alcohol Shippers' Violation Form did not contemplate the recording of tobacco shipments. Def.'s 56.1(b) Responses ¶ 64. A "tobacco" button was added to the form no later than March 2010. Def.'s 56.1(b) Responses ¶ 66.

In early 2013, FedEx and the City of New York entered into negotiations over FedEx's alleged shipments of cigarettes on behalf of a Louisville, KY business, Cigarettes Direct To You ("CD2U"). Pls.' 56.1(b) Responses ¶¶ 35, 37. An agreement was signed by both parties and became effective on March 15, 2013. Pls.' 56.1(b) Responses ¶ 36. Under the agreement,

FedEx paid the City $2.4 million in exchange for a waiver of claims by the City concerning alleged deliveries of cigarettes on behalf of CD2U. Pls.' 56.1(b) Responses ¶¶ 37, 40. Both parties acknowledged that the agreement did not "constitute an admission of guilt, liability, or wrongdoing by FedEx Ground," and it would not be admissible in any litigation between the City of New York and FedEx Ground. Pls.' 56.1(b) Responses ¶¶ 43, 44. While the agreement was specific to CD2U, the language in the agreement was more expansive as concerns FedEx. Specifically, in the agreement, the City represented that it "has no information that suggests that FedEx Ground has delivered or transported unstamped cigarettes to New York City residents or into the geographic boundaries of New York City." Pls.' 56.1(b) Responses ¶ 41.

B.    *The Cigarette Selling Enterprises*

This case is a consolidated case comprised of two formerly separate cases, *FedEx I* and *FedEx II*. Though the cases were consolidated, *see* Doc. 580, the complaints were not. The two operative complaints are the *FedEx I* Amended Complaint and the *FedEx II* Second Amended Complaint. Between the two operative complaints, Plaintiffs allege that FedEx knowingly shipped unstamped cigarettes on behalf of seven entities in total.[5] These shippers are Shinnecock Smoke Shop, Native Made Tobacco ("Native Made"), FOW Enterprises ("FOW"), CD2U, Shinnecock Indian Outpost, Your Kentucky Tobacco Resource Center LLC ("YKTR"), and Two Pine Enterprises ("Two Pine"). The Court summarizes key undisputed facts regarding each shipper below.

---

[5] The Second Amended Complaint in *FedEx II* includes allegations relating to 21 shippers. But Plaintiffs have dropped a significant number of the 21 original shippers from the case. *See City of New York v. FedEx*, 2016 WL 1532252, at *1 n.3 (S.D.N.Y. Apr. 15, 2016).

1.     Shinnecock Smoke Shop

Shinnecock Smoke Shop is located on the Shinnecock Native American reservation in Southampton, New York.  In 2005, Jeffrey Lerman, an independent contractor who picks up and delivers packages for FedEx, started picking up packages at Shinnecock Smoke Shop five days a week.  Def.'s 56.1(b) Responses ¶ 118.  Raychel Favaloro was an account executive for FedEx who handled the Shinnecock Smoke Shop account at or around that time.  Def.'s 56.1(b) Responses ¶ 116.  While making pickups for Shinnecock Smoke Shop, Lerman saw individuals putting cigarettes in boxes, which were then sealed, affixed with shipping labels, and stacked for him to deliver.  Def.'s 56.1(b) Responses ¶ 119.  On February 21, 2007, another account for Shinnecock Smoke Shop was opened.  Def.'s 56.1(b) Responses ¶ 192.

On January 4th and 5th, 2012, FedEx investigated whether Shinnecock Smoke Shop was shipping cigarettes by intercepting some of its packages and revealing their contents.  Def.'s 56.1(b) Responses ¶ 204; Pls.' Ex. 123.  The interception revealed that 63 packages shipped by Shinnecock Smoke Shop contained unstamped cigarettes.  Def.'s 56.1(b) Responses ¶ 204.  As a result, on January 12, 2012, FedEx terminated Shinnecock Smoke Shop's account.  Def.'s 56.1(b) Responses ¶ 204.  However, FedEx did not inform the New York Attorney General of the termination until six months later, on June 13, 2012.  Def.'s 56.1(b) Responses ¶ 206.

2.     Native Made

Native Made was a business located in Palm Springs, CA.  Def.'s 56.1(b) Responses ¶ 123.  FedEx opened an account for Native Made in 2005.  Def.'s 56.1(b) Responses ¶ 123.  Next year, in July 2006, FedEx Account Executive Jason Lozano entered a call note in FedEx's

database that stated that Native Made shipped tobacco with FedEx. *See* Def.'s 56.1(b) Responses ¶ 207.

Katherine Venturi became an account executive in 2008. Def.'s 56.1(b) Responses ¶ 209. Venturi knew that Native Made sold tobacco and saw a lot of cigarettes displayed in the Native Made store. Def.'s 56.1(b) Responses ¶¶ 210–11.

In February 2011, Native Made became subject to a Stipulated Judgment and Permanent Injunction as a result of a suit brought against it by the California Attorney General for violating federal and state law by shipping untaxed cigarettes. Def.'s 56.1(b) Responses ¶ 213.

In May 2012, FedEx terminated Native Made for shipping cigarettes directly to consumers. Def.'s 56.1(b) Responses ¶ 220. FedEx notified the AG of the termination a month later, on June 13, 2012. Def.'s 56.1(b) Responses ¶ 221.

3.   <u>FOW</u>

FedEx opened an account for Fow Enterprises, a business located at 615 N. Main Street, Elizabethtown, KY, on June 19, 2000. Def.'s 56.1(b) Responses ¶ 104. FOW owned a convenience store called "Danny's Tobacco." Def.'s 56.1(b) Responses ¶ 103. Customers of FOW placed orders for cigarettes, tobacco products, and non-tobacco products over the phone, through the mail, and through its website, dannystobacco.com. Def.'s 56.1(b) Responses ¶ 106. None of the cigarettes shipped by Danny's Tobacco bore New York State or New York City tax stamps. Def.'s 56.1(b) Responses ¶ 107.

From 2002 to 2006, FedEx picked up packages for FOW at Danny's Tobacco convenience store. Def.'s 56.1(b) Responses ¶ 108. After 2006, FedEx made pickups at a separate warehouse. Def.'s 56.1(b) Responses ¶ 108.

Christopher Gallant became the FedEx Account Executive for FOW in 2005.  Def.'s 56.1(b) Responses ¶ 112.  Gallant visited the store at least fifty times and met with Kevin Fow, the store manager and co-owner.  Def.'s 56.1(b) Responses ¶ 112.  There was cigarette advertising on the walls in the store.  Def.'s 56.1(b) Responses ¶ 110.  In 2008, Gallant transitioned the FOW account to Heath Harlem.  Def.'s 56.1(b) Responses ¶ 183.  On September 5, 2008, FedEx sent a warning letter to FOW regarding an improper shipment.  Def.'s 56.1(b) Responses ¶ 187.

In April 2010, Brian Broderick became the account executive for FOW.  Def.'s 56.1(b) Responses ¶ 188.  Broderick authored a transition memo in January 2011, in which he told his manager, Grant Kuhn, that FOW shipped cigarettes to residences.  Def.'s 56.1(b) Responses ¶ 190.

    4.    <u>CD2U</u>

CD2U was a Kentucky corporation.  Def.'s 56.1(b) Responses ¶ 82.  In 2003, a FedEx account executive, Teresa Knight, submitted a pricing proposal for CD2U.  Def.'s 56.1(b) Responses ¶ 82.  At that time, CD2U was located at 922 Ulrich Avenue, Louisville, KY 10219.  Def.'s 56.1(b) Responses ¶ 82.  In the proposal, Knight wrote that CD2U "currently ships cigarettes direct to peoples' homes thus the name," describing the product shipped by CD2U as "cigarettes."  Def.'s 56.1(b) Responses ¶ 86.  By 2006, CD2U was shipping with FedEx Ground.  Def.'s 56.1(b) Responses ¶ 82.  At that time, Deborah Schmidt was the account executive for CD2U.  Def.'s 56.1(b) Responses ¶ 126.  Schmidt did not ask Israel Chavez, the owner of CD2U, *see* Def.'s 56.1(b) Responses ¶ 126, whether CD2U had a license to deal in cigarettes.  Def.'s 56.1(b) Responses ¶ 128.  As early as July 2006, CD2U's account with FedEx was

classified as a "Home Delivery" account.  Def.'s 56.1(b) Responses ¶ 131.  On or about March 2007, CD2U moved 6212 Strawberry Lane, Louisville KY.  Def.'s 56.1(b) Responses ¶ 133.  At that time, the account was transitioned to Brian Broderick.  Def.'s 56.1(b) Responses ¶ 133.

In November 2008, Renee Thomas took over from Broderick as Account Executive of CD2U.  Def.'s 56.1(b) Responses ¶ 137.  Thomas visited CD2U's facility over twenty times, and met Chavez personally multiple times.  Def.'s 56.1(b) Responses ¶ 137.  Thomas knew that CD2U's business involved shipping cigarettes directly to people's homes.  Def.'s 56.1(b) Responses ¶ 138.

On December 9, 2009, the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed search warrants and consent searches in twelve locations associated with CD2U's operations, including at the Louisville address where FedEx made pickups for CD2U.  Def.'s 56.1(b) Responses ¶ 153.  In the search, ATF seized unstamped cigarettes, other tobacco products, and computers that held CD2U's sales data, including the contents of its shipments to New York State and City residents.  Def.'s 56.1(b) Responses ¶ 155.  FedEx never notified the Attorney General that ATF had shut down CD2U.  Def.'s 56.1(b) Responses ¶ 156.  On June 28, 2010, ATF sent a letter to multiple states, including New York, informing them of CD2U's illegal cigarette sales.  Def.'s 56.1(b) Responses ¶ 254.

On December 27, 2010, ATF sent a follow-up letter to the states enclosing a disc containing data created with information recovered from CD2U's computers.  Def.'s 56.1(b) Responses ¶ 255.  The disc contained information for CD2U's customers in New York State, but did not identify the common carrier used by CD2U.  Def.'s 56.1(b) Responses ¶ 256.

On April 21, 2011, the City of New York filed suit against Chavez and other defendants under the CCTA and RICO, seeking to recover for CD2U's sale of untaxed cigarettes to New York City residents. Def.'s 56.1(b) Responses ¶ 258. A few days later, the City of New York notified the State that it had learned that CD2U had used FedEx Ground, among other common carriers, to ship its packages. Def.'s 56.1(b) Responses ¶ 259. The City of New York was granted summary judgment against Chavez for violations of the CCTA in May 2013. Def.'s 56.1(b) Responses ¶ 261. In a separate criminal case, the U.S. Attorney's Office for the Western District of Kentucky prosecuted Chavez. Def.'s 56.1(b) Responses ¶ 260. Chavez was ultimately convicted of conspiracy and other offenses in connection with CD2U's sale of untaxed cigarettes. Def.'s 56.1(b) Responses ¶ 260.

    5.    Shinnecock Indian Outpost

Shinnecock Indian Outpost is on the Shinnecock Native American Reservation, located at 42 Montauk Highway, Southampton, NY. Def.'s 56.1(b) Responses ¶ 194. In or around 2008, Lerman started picking up packages for Shinnecock Indian Outpost in addition to Shinnecock Smoke Shop. Def.'s 56.1(b) Responses ¶ 194. Within months, Lerman knew that Shinnecock Indian Outpost was shipping cigarettes. Def.'s 56.1(b) Responses ¶ 195. He had seen Shinnecock Indian Outpost employees preparing packages of cigarettes to give to him. Def.'s 56.1(b) Responses ¶ 195.

    6.    YKTR

YKTR was a Kentucky business located at 314 Ferry St., Russell, KY. *See* Pls.' Ex. 51, 18:21–22, Martin Tr.; *see also* Def.'s 56.1(b) Responses ¶ 92. John Maddux owned YKTR. Def.'s 56.1(b) Responses ¶ 97. Dan Skelley became the FedEx account executive for YKTR in

2005.  Def.'s 56.1(b) Responses ¶ 95.  Skelley came to learn that YKTR shipped cigarettes to

residences.  Def.'s 56.1(b) Responses ¶ 96.  FedEx kept a "close eye" on YKTR, but not because

it thought YKTR was shipping cigarettes.  Def.'s 56.1(b) Responses ¶ 157.  Rather, FedEx did so

because YKTR was a large customer of FedEx, and FedEx wanted to avoid losing YKTR to its

primary competitor, UPS. Def.'s 56.1(b) Responses ¶ 157.

On August 6, 2008, FedEx's Administrative Quality Manager for the New England

Region, Virginia Richardson, identified YKTR in an email to numerous colleagues as a source of

"illegal cigarette shipments."  Def.'s 56.1(b) Responses ¶ 165.  Richardson's email was then

forwarded to Kevin Garrison, Operations Manager at the Ashland, KY terminal through which

YKTR packages passed.  Def.'s 56.1(b) Responses ¶¶ 100, 166–67.

After the ATF raided CD2U, Skelley documented in his December 2009 call notes that

YKTR was "still in biz, ATF has not done anything[.]"  Def.'s 56.1(b) Responses ¶ 170.  By July

2010, FedEx stopped making deliveries for YKTR.[6]  Def.'s 56.1(b) Responses ¶ 171.

In December 2013, ATF executed search warrants at YKTR's 314 Ferry Street offices.

Def.'s 56.1(b) Responses ¶ 262.  ATF seized computers containing YKTR's point of sales

database.  Def.'s 56.1(b) Responses ¶ 263.  ATF provided copies of some of the seized evidence

to the State, including evidence that YKTR packages delivered to New York State were shipped

by FedEx.  Def.'s 56.1(b) Responses ¶ 264–65.

FedEx formally terminated YKTR as an account on July 2, 2014.  Def.'s 56.1(b)

Responses ¶¶ 171–72.  On November 13, 2014, Maddux and others were charged by indictment

---

[6] The parties dispute why FedEx stopped making deliveries for YKTR.  Plaintiffs assert that YKTR ceased shipping
cigarettes with FedEx on its own accord out of concern with law enforcement.  Pls.' 56.1 Statement of Facts ¶ 172.
FedEx suggests that it stopped because its legal department instructed it to stop.  Def.'s 56.1(b) Responses ¶ 172.

in connection to their operation of YKTR. Def.'s 56.1(b) Responses ¶ 267. They were ultimately convicted. Def.'s 56.1(b) Responses ¶ 268.

      7.   <u>Two Pine</u>

Two Pine's account with FedEx was associated in FedEx's systems with the address P.O. Box 149, Clarence, NY. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 42. Deloris Uebelhoer[7] was listed by FedEx as the primary contact for Two Pine. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 43. FedEx provided delivery services to Two Pine from approximately April 25, 2014, until February 11, 2015. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 47. During this time period, FedEx shipped approximately 2,520 packages for Two Pine. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 48.

On December 15, 2014, the City of New York provided FedEx Ground's sister company, FedEx Freight, with a list of entities that it believed shipped cigarettes within or into New York State. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 57. The list included Two Pine and described its location as 7238 Meadville Road and P.O. Box 149, both of which were associated in FedEx Ground's systems with the Two Pine account. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 58. FedEx Ground terminated the Two Pine account on February 10, 2015. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 65. FedEx Ground informed the City and the State of Two Pine's termination on March 6, 2015. Def.'s 56.1(b) Responses to Pls.' Supplemental Statement of Facts ¶ 66.

---

[7] In their papers, the parties sometimes refer to Uebelhoer as Deloris "Eubelhoer." For consistency, the Court will refer to her as Deloris "Uebelhoer."

C.    *Procedural History*

The Court herein only addresses key proceedings necessary to understanding the context of this opinion.

The City of New York filed its first lawsuit against FedEx Ground on December 30, 2013.  Doc. 1.  This suit is now known as *FedEx I*.  The original complaint in *FedEx I* named "Federal Express Corp." as a co-defendant of FedEx Ground and made allegations specific to one shipping entity, Shinnecock Smoke Shop, a cigarette shipper located on the Shinnecock Reservation in New York.  *See* Doc. 1 ¶¶ 2, 30–37.  The original complaint sought injunctive relief, damages, and penalties under the CCTA and the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 *et seq.* ("PACT"), treble damages and attorney's fees under RICO, an injunction and penalties under N.Y. P.H.L. § 1399-ll, and abatement of a public nuisance.  The City dismissed the action against Federal Express Corp. pursuant to Federal Rule of Civil Procedure 41(a)(1) on February 14, 2011.  Doc. 6.  On March 30, 2014, the City amended its complaint to add the State of New York as a plaintiff and also a cause of action for breach of the AOC negotiated between the State of New York and FedEx.  *See* Doc. 13 ¶¶ 20, 40–45, 46–50, 51–58, 59–63.  The amended complaint also added allegations and claims against FedEx relating to three other shippers:  CD2U, Native Made, and FOW.  Doc. 13 ¶¶ 40–45, 46–50, 51–58.  This amended complaint is now one of the two operative complaints in this case.  On March 9, 2015, the Court dismissed Plaintiffs' N.Y. P.H.L. § 1399-ll and public nuisance claims.  *See City of New York v. FedEx Ground Package Sys.*, 91 F. Supp. 3d 512, 529–30 (S.D.N.Y. 2015).  Plaintiffs later conceded their PACT claims.  *See* Doc. 103 at 3 n.1.

Plaintiffs filed another lawsuit against FedEx on November 12, 2014. *See FedEx II* Doc. 1. This case is now known as *FedEx II*. The original complaint in *FedEx II*, as in *FedEx I*, charged FedEx with illegally shipping cigarettes on behalf of its customers. *See generally FedEx II* Doc. 1. It did not specify for which customers FedEx shipped cigarettes. Its claims included all the claims involved in *FedEx I*. Plaintiffs amended their *FedEx II* complaint for the first time on May 8, 2015. *See FedEx II* Doc. 23. In their first amended complaint, Plaintiffs specifically named 21 additional shippers. *See FedEx II* Doc. 23 ¶ 63. They also included a claim for relief under N.Y. Exec. L. § 63(12) for the violation of N.Y. P.H.L. § 1399-ll, a claim not present in *FedEx I*. *See FedEx II* Doc. 23 ¶¶ 92–100. Plaintiffs withdrew their PACT claims in this amended complaint, as they did in *FedEx I*. *See FedEx II* Doc. 23 ¶ 1.

On March 31, 2016, the Court dismissed Plaintiffs' § 63(12) and § 1399-ll claims with leave to replead. *See City of New York v. FedEx Ground Package Sys., Inc.*, 175 F. Supp. 3d 351, 363–64 (S.D.N.Y. 2016). Consequently, Plaintiffs filed their second amended complaint on April 14, 2016, repleading their § 63(12) and § 1399-ll claims. *FedEx II* Doc. 74. The repleaded claims survived Plaintiffs' motion to dismiss. *See City of New York v. FedEx Ground Package Sys., Inc.*, 2017 WL 740067 (S.D.N.Y. Feb. 21, 2017). The second amended complaint is the other of the two operative complaints in this case.

On April 15, 2016, the Court consolidated *FedEx I* and *FedEx II* pursuant to Federal Rule of Civil Procedure 42(a). *See* Doc. 184. The complaints themselves were not consolidated. On January 31, 2018, Plaintiffs moved to file an amended complaint for the consolidated case. Doc. 414. The Court denied Plaintiffs' motion. Doc. 580.

Discovery ended in early 2018.  On May 17, 2018, Plaintiffs moved for partial summary judgment.  Doc. 460.  On May 23, 2018, FedEx cross-moved for partial summary judgment based on its affirmative defenses and on Plaintiffs' RICO claims and all claims relating to Two Pine.  Doc. 466; Doc. 467.  On June 20, 2018, FedEx filed its opposition to Plaintiffs' motion for partial summary judgment.  Doc. 488.  The same day, Plaintiffs filed their opposition to FedEx's motion.  Doc. 489; Doc. 493.  The parties filed their reply briefs on July 11, 2018.  Doc. 507; Doc. 508; Doc. 512.

The trial is currently scheduled to begin on October 16, 2018.  The parties filed their joint pretrial statement on September 7, 2018.  Doc. 533.  Pending before the Court, in addition to the motions decided in this opinion, are several other motions:  (1) Plaintiffs' motions in limine to exclude the expert reports and testimony of FedEx witnesses Michael J. Moore, Scott Drenkard, and Patrick Fleenor, *see* Doc. 472; Doc. 477; (2) FedEx's motion in limine to exclude the expert reports and testimony of Laura Stamm, Sonia Angell, and Rebecca Williams, *see* Doc. 480; (3) Plaintiffs' and FedEx's motions for oral argument, *see* Doc. 454; Doc. 513; Doc. 519; Doc. 521; (4) various pretrial motions in limine to exclude certain evidence from being brought at trial. The Court will decide these motions in the coming days.

## II.    LEGAL STANDARD

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c).  "An issue of fact is 'genuine'

if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR*

*Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it

might affect the outcome of the litigation under the governing law.  *Anderson v. Liberty Lobby*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the

absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  If the

moving party meets its burden, "the nonmoving party must come forward with admissible

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."

*Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.

2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  A motion

for summary judgment cannot, however, be defeated on the basis of conclusory assertions,

speculation, or unsupported alternative explanations of facts.  *Major League Baseball Props.,*

*Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467

(citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party must do

more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v.*

*Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

## III.   DISCUSSION

### A.    *CCTA*

The CCTA provides that "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes . . . ." 18 U.S.C. § 2342(a). The CCTA defines "contraband cigarettes" as:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp . . . and which are in the possession of any person other than . . . (B) a common or contract carrier transporting the cigarettes involved under a proper bill of lading or freight bill . . . .

18 U.S.C. § 2341(2). Thus, proof of a CCTA violation requires showing that a party (1) knowingly shipped, transported, received, or possessed (2) more than 10,000 cigarettes (3) that did not bear State or City tax stamps (4) under circumstances where the law required the cigarettes to bear such stamps. *City of New York v. Gordon*, 155 F. Supp. 3d 411, 420 (S.D.N.Y. 2015) (citing *City of New York v. Lasership, Inc.*, 33 F. Supp. 3d 303, 312 (S.D.N.Y. 2014)). A plaintiff can meet its burden of proof with respect to the 10,000 cigarette threshold by aggregating cigarettes across shipments. *New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 139 (S.D.N.Y. 2015).[8]

---

[8] FedEx maintains its position that a CCTA violation requires that 10,000 cigarettes be shipped, transported, received, or possessed in one transaction. Doc. 488 at 30 n. 14. This issue is currently on appeal before the Second Circuit in *New York v. United Parcel Serv., Inc.*, No. 17-1993 (2d Cir.).

Plaintiffs move for summary judgment on FedEx's liability under the CCTA. Plaintiffs contend that FedEx violated the CCTA by knowingly transporting over 10,000 unstamped cigarettes. FedEx opposes the motion, contending that Plaintiffs have failed to show an absence of a genuine dispute of material fact that FedEx knowingly shipped over 10,000 cigarettes. Additionally, FedEx seeks summary judgment as to its affirmative defense of statute of limitations, arguing that Plaintiffs' CCTA claim is wholly or partially time barred for certain shippers.

For the reasons discussed below, the Court grants summary judgment to Plaintiffs on FedEx's liability for violating the CCTA, and grants partial summary judgment to FedEx on its statute of limitations defense.

1.     <u>Statute of Limitations</u>

Plaintiffs and FedEx disagree over what statute of limitations applies to the CCTA and when the CCTA claim accrued. The Court addresses each of these issues in turn.

a.     <u>*Applicable Limitations Period*</u>

FedEx argues that the four-year statute of limitations of 28 U.S.C. § 1658(a) governs Plaintiffs' CCTA claim. Plaintiffs argue that while the four-year statute of limitations of 28 U.S.C. § 1658(a) governs their CCTA claim for money damages, the five-year statute of limitations of 28 U.S.C. § 2462 governs their CCTA claim for penalties. The Court agrees with FedEx. The applicable statute of limitations for Plaintiffs' CCTA claim, no matter the relief sought, is four years under 28 U.S.C. § 1658(a). Section 2462 applies only to actions on behalf of the United States and *qui tam* actions. *See Bertha Building Corp. v. National Theatres Corp.*, 269 F.2d 785, 788–89 (2d. Cir. 1959).

Plaintiffs and FedEx also disagree over when the statute of limitations was tolled for the CCTA claim as it relates to each shipper.[9] Plaintiffs argue that their CCTA claim with respect to each of the shippers named in *FedEx I* and *FedEx II* relates back to December 30, 2013, the date that they filed the first complaint in this consolidated action, pursuant to Federal Rule of Civil Procedure 15(c). FedEx argues relation back is unwarranted.

Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1471, at 359 (1971). To this end, Rule 15(c) is to be liberally construed. *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983). The "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999) (internal quotation marks omitted).

The Court agrees with Plaintiffs that amended pleadings naming new shippers in each of *FedEx I* and *FedEx II* do relate back, but only to the date of the original complaint in the case in which they are named. Thus, the Court finds that for the shippers subsequently named in *FedEx I*, the CCTA claim relates back to December 30, 2013. And for those shippers subsequently

---

[9] The parties disagree over whether claims filed in amended pleadings relate back to the original complaint for all the causes of action asserted, not just the CCTA. The statute of limitations issues as they relate to the non-CCTA causes of action are not discussed in this section.

named in *FedEx II*, the CCTA claim relates back to November 12, 2014. The original *FedEx I* complaint gave FedEx adequate notice that Plaintiffs would seek to sue it for cigarette shipments on behalf of other shippers. Though it only names Shinnecock Smoke Shop, the complaint states in the claim for relief that FedEx seeks relief for "other delivery sellers whose identity is not known to the City at this time." *FedEx I* Compl. ¶ 98. The Court also notes that amendments naming new shippers to Plaintiffs' CCTA claim do not add a new cause of action. Instead, the amendments make the allegations more precise by adding additional shippers; the amendments do not change the core of FedEx's conduct—shipping untaxed cigarettes. *See Siegel*, 714 F.2d at 216. Courts have applied Rule 15(c) particularly liberally in this context. *See id.*

The amended *FedEx II* pleadings identifying Two Pine, Shinnecock Indian Outpost, and YKTR cannot relate back to the filing of the original complaint in *FedEx I*, however. Instead, that amendment relates back to November 12, 2014, when the first *FedEx II* complaint was filed. This is so because Rule 15 only empowers this Court to allow amendments to a pleading to relate back to the original pleading in that case. It does not enable pleadings in new cases to relate back to events in other, separately filed cases. Thus, the amended complaint identifying Two Pine, Shinnecock Indian Outpost, and YKTR can only relate back to the date of the original *FedEx II* complaint.

For the reasons just articulated, the applicable statute of limitations for Plaintiffs' CCTA claim is four years, 28 U.S.C. § 1658(a), and the statute of limitations was tolled on December 30, 2013 for the CCTA claim as it relates to the *FedEx I* shippers, and on November 12, 2014 for the CCTA claim as it relates to the *FedEx II* shippers. Thus, the limitations period started on

December 30, 2009 for Shinnecock Smoke Shop, CD2U, FOW, and Native Made, and on November 12, 2010 for Two Pine, Shinnecock Indian Outpost, and YKTR.

      b.     *Accrual*

In addition to disputing the limitations period, Plaintiffs and FedEx dispute when the CCTA claim accrued. FedEx argues that Plaintiffs' CCTA claim accrued when they had a complete and present cause of action. Plaintiffs argue that the discovery rule applies, so that their claim accrued when they discovered it existed or with due diligence should have known it existed, *see Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010). The Court agrees with FedEx; as articulated previously, in *City of New York v. FedEx Ground Package Sys. Inc.*, 91 F. Supp. 3d. 512, 522 (S.D.N.Y. 2015), the discovery rule does not apply to the CCTA claim.

The standard rule is that a claim accrues when the plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As the Supreme Court has noted, the lower federal courts have applied a discovery accrual rule when a statute is silent on the issue, but it has disclaimed that position as its own. *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001). The Supreme Court has, on the other hand, made clear that where the statute uses the discovery rule for a subset of cases, courts should not make the discovery rule applicable to the general whole. *Id.* at 23. In *TRW*, the Supreme Court refused to infer that a general discovery rule applied to the statute of limitations of Fair Credit Reporting Act (FCRA) claims, given that the FCRA expressly provided that the discovery rule would apply only to those FCRA claims involving the willful misrepresentation of information that the Act required to be disclosed. *See id.* at 28–29.

The principles of statutory interpretation that guided the Supreme Court in *TRW* guide the Court here. Section 1658(b) provides that a subset of cases identified therein are subject to the discovery rule—those that sound in "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws." The Court thus will not infer that the discovery rule applies to claims subject to § 1658 claims generally.[10]

Additionally, the reasoning of *Gabelli v. S.E.C.*, 568 U.S. 442 (2013), forecloses applying the discovery rule here. In *Gabelli*, the Court held that the discovery rule does not apply in government enforcement actions for civil penalties. *Id.* at 450. Plaintiffs argue that the discovery rule should nonetheless apply to their CCTA claim insofar as it seeks damages. The holding of *Gabelli* does not, strictly speaking, foreclose applying the discovery rule in such a circumstance. But the reasoning of *Gabelli* suggests that the discovery rule is inapposite in government enforcement actions no matter the relief sought. Unlike the typical private party, the Court explained, a central mission of the Securities and Exchange Commission is to "investigat[e] potential violations of the federal securities laws," *id.* at 451 (alteration in original). When the government sues a private entity seeking both civil penalties and damages, it is still carrying out the same affirmative investigative responsibilities that it carries out when it

---

[10] Plaintiffs cite one case in this district, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015), where the court applied the discovery rule to a claim purportedly governed by the statute of limitations in 28 U.S.C. § 1658(a), *see id.* at *114. But the claim at issue was a RICO claim, for which § 1658(a) does not provide a statute of limitations. Instead, the statute of limitations for RICO claims comes from the Supreme Court's holding in *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987), where it chose a four-year statute of limitations for RICO claims by analogizing them to the Clayton Act, *see id.* at 152. *In re LIBOR* thus does not suggest a general discovery rule for § 1658(a).

Plaintiffs also cite *Caufield v. Colgate-Palmolive Co.*, 2017 WL 744600 (S.D.N.Y. 2017), for the proposition that courts generally employ the discovery rule under federal common law, *see id.* at *4. But *Caufield* specified that federal courts only look to the federal common law to determine accrual when the statute of limitations for the claim comes from an analogous state statute of limitations. *Id.* That is not the case here, where the limitations period is included in the federal statute.

brings enforcement actions purely for civil penalties.  That is the case here, where Plaintiffs are government entities suing FedEx for the purpose of protecting public health *and also* for lost tax revenues.  Accordingly, Plaintiffs' CCTA claim accrued when they had a complete and present cause of action, as this Court has previously held, *see FedEx*, 91 F. Supp. 3d at 522.

This leaves the question of when Plaintiffs possessed a complete and present cause of action.  Under the common law, Plaintiffs had a complete cause of action under the CCTA when all the elements of a violation were met.  *See Caronia v. Philip Morris USA, Inc.*, 2010 WL 520558, at *3 (E.D.N.Y. Feb. 11, 2010), *aff'd*, 715 F.3d 417 (2d Cir. 2013) (recognizing that under the "common-law accrual method, . . . accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint" (citations and internal quotation marks omitted)).  In light of the CCTA's quantity requirement, that means Plaintiffs had a cause of action under the CCTA when FedEx knowingly delivered its 10,001st unstamped cigarette.  According to Plaintiffs' data, discussed in Part III.A.2 below, FedEx shipped its 10,001st cigarette prior to the beginning of the limitations period.  As this Court has previously held, however, that does not mean Plaintiffs' CCTA claim is outside the limitations period.  *See City of New York v. FedEx Ground Package Sys. Inc.*, 175 F. Supp. 3d 351, 368–69 (S.D.N.Y. 2016).  Any group of knowing shipments totaling over 10,000 unstamped cigarettes amounts to a CCTA violation giving rise to a cause of action.  If Plaintiffs shipped tens of thousands of cigarettes over many years, they violated the CCTA multiple times during those years.  So long as FedEx knowingly shipped over 10,000 unstamped cigarettes during the limitations period, Plaintiffs' CCTA claim accrued within the limitations period and is timely.

Under the limitations periods and accrual method set forth above, Plaintiffs' CCTA claim is wholly time barred as it relates to CD2U and YKTR. Where a plaintiff's claim is based on a series of discrete acts that are in and of themselves unlawful, such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Each shipment of unstamped cigarettes was a discrete, unlawful act.[11] Plaintiffs cannot hold FedEx liable based on shipments made prior to each shipper's respective limitations periods. It is undisputed that the last shipment FedEx made for CD2U occurred on December 10, 2009, before the December 30, 2009 limitations period start date for *FedEx I*. *See* Pls.' 56.1(b) Responses ¶ 24(c). Similarly, the last shipment FedEx made for YKTR that allegedly contained cigarettes occurred on July 15, 2010, *see* Pls.' 56.1(b) Responses ¶ 24(e), which is before the November 12, 2010 limitations period start date for *FedEx II*. The statute of limitations thus bars Plaintiffs' CCTA claim for all shipments by CD2U and YKTR. Accordingly, FedEx's motion on the statute of limitations as it relates to the CCTA claims regarding CD2U and YKTR is granted.

For the same reason, Plaintiffs' CCTA claim as it relates to Shinnecock Smoke Shop, Native Made, and Shinnecock Indian Outpost is partially time barred. Plaintiffs cannot seek to

---

[11] For this reason, the continuing violation doctrine is inapplicable. The continuing violation doctrine allows a plaintiff to "bring suit challenging all conduct that was a part of [a] violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). That is, the continuing violation doctrine applies only to a single violation made up of discrete incidents, not multiple discrete violations.

The continuing violation doctrine also should not apply to this case because "[t]he courts of this circuit consistently have looked unfavorably on continuing violation arguments." *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989). Only "compelling circumstances" warrant the doctrine's application. *Id.* Plaintiffs have not shown that such circumstances exist here.

hold FedEx liable based on shipments those shippers made prior to their respective limitations periods.

2. <u>Over 10,000 Cigarettes</u>

Plaintiffs seek summary judgment as to FedEx's liability under the CCTA. FedEx opposes, arguing that a genuine issue of material fact exists as to (1) whether FedEx shipped over 10,000 unstamped cigarettes within the limitations period, and (2) whether it did so knowingly. The Court addresses whether FedEx shipped over 10,000 unstamped cigarettes first.

For the five shippers that remain, the record shows that no genuine issue of material fact exists as to whether FedEx shipped over 10,000 cigarettes for the shippers involved. FedEx's invoices show that it made altogether thousands of deliveries to New York addresses on behalf of Shinnecock Smoke Shop, Shinnecock Indian Outpost, Two Pine, FOW, and Native Made from 2007 until well into the limitations periods. *See* Pls.' Ex. 158 at 8.[12] Specifically, the invoices show that FedEx made 16,820 shipments for Shinnecock Smoke Shop from October 1, 2007 to February 6, 2012; 4,435 shipments for Shinnecock Indian Outpost from July 26, 2010 to July 9, 2012; 766 shipments for Two Pine from April 29, 2014 to February 24, 2015; 602 shipments for FOW from June 27, 2008 to December 28, 2011; and 449 shipments for Native Made from January 5, 2007 to May 18, 2012.

Other evidence makes clear that many of these shipments included untaxed cigarettes. For example, on September 12, 2008, an inspection of a damaged package from Shinnecock

---

[12] To support their contention that FedEx's invoices reveal that it shipped many packages for the shippers at issue, Plaintiffs cite ¶ 305 of their 56.1 Statement of Facts, which in turn cites Plaintiffs' Exhibit 158. Exhibit 158 is the report of Laura Stamm, not FedEx's invoices. Plaintiffs do not cite to any particular page of the Stamm Report, but upon inspection, Table 2 on page 8 of the Stamm Report includes a summary of FedEx's invoice data.

Smoke Shop revealed that it contained cigarette cartons.  Def.'s 56.1(b) Responses ¶ 197.  In March 2010, FedEx received a claim for five cartons of cigarettes, at prices inconsistent with taxation, shipped by Shinnecock Smoke Shop to a New York address.  Def.'s 56.1(b) Responses ¶¶ 199–201.  During the same year, FedEx received five more claims from Shinnecock Smoke Shop and two additional damaged package reports, all of which indicated that the packages shipped contained cigarettes.  Def.'s 56.1(b) Responses ¶ 202.  On January 4-5, 2012, FedEx intercepted and opened packages from Shinnecock Smoke Shop, revealing that 63 packages contained unstamped cigarettes.  Def.'s 56.1(b) Responses ¶ 204.  And from February 2011 to April 2012, FedEx issued ten ISF's to Native Made for improper tobacco shipments; at least half of the forms specified that the packages contained cigarettes.  Def.'s 56.1(b) Responses ¶ 214.  Given the quantity of shipments FedEx made, no genuine dispute exists that FedEx shipped over 10,000 cigarettes for the shippers involved within the applicable limitations periods.

FedEx disputes the relevance of ISFs and damaged package reports showing that the contents included cigarettes because those cigarettes never actually made it to a New York address.  FedEx misunderstands the purpose of the evidence.  Plaintiffs do not present direct evidence that 10,000 cigarettes were delivered to New York addresses, but they do not have to.  Rather, the ISFs and damaged package reports allow the reasonable inference that the contents of the unopened and un-intercepted packages shipped by FedEx were unstamped cigarettes.  Given the scale of the unopened and un-intercepted packages shipped, Plaintiffs argue, no genuine dispute exists that FedEx shipped over 10,000 cigarettes.  The Court agrees with Plaintiffs' assessment.

3.     Knowingly Shipped or Distributed

FedEx argues that even if it did ship over 10,000 cigarettes within the limitations period, a genuine issue of material fact exists as to whether it did so knowingly.  The Court finds that the admissible evidence compels the inference that FedEx knew that it was shipping unstamped cigarettes.

"A person acts 'knowingly' if he acts intentionally, voluntarily, and deliberately and not because of a mistake or accident, mere negligence, or other innocent reason."  *United States v. Ferrarini*, 219 F.3d 145, 155 (2d Cir. 2000) (describing this as a "standard" definition of "knowingly"); *see also United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998).  Willful blindness, where defendants "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances," amounts to actual knowledge in the criminal context and some civil contexts.  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

It is beyond doubt that certain FedEx employees knew that FedEx was shipping unstamped cigarettes.  That knowledge may be imputed to FedEx.  Corporate defendants can only act through their employees and agents.  *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001).  When someone is employed to perform certain duties for his or her employer and acquires knowledge material to those duties, the employee's knowledge is imputed to the principal.  *See Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d Cir. 1999).  Corporations can thus "be guilty of 'knowing' or 'willful' violations of regulatory statutes through the doctrine of respondeat superior."  *United States v. A & P Trucking Co.*, 358 U.S. 121, 125 (1958).  In order for respondeat superior to apply, however, the

employee's knowing acts must have been "in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002). An act is within the scope of employment if it is performed while the employee is engaged generally in the business of the employer, or if his or her act may be reasonably said to be necessary or incidental to such employment. *Harisch v. Goldberg*, 2016 WL 1181711, at *14 (S.D.N.Y. Mar. 25, 2016). This is the case even if the knowledge of the employee performing the act is never communicated to his or her superior. *New York Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 n.2 (2d Cir. 2003) (quoting *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784 (N.Y. 1985)). "[A] corporation may be charged with the collective knowledge of its employees[.]" *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989). Clearly, the FedEx employees discussed below, who witnessed first-hand cigarettes being packaged and learned of the ISF forms indicating that packages contained cigarettes, did so as part of their jobs with FedEx. Their knowledge thus suffices to conclude that FedEx had the requisite knowledge.

As an initial matter, the Court finds that insofar as FedEx knew it was shipping cigarettes, it also knew it was shipping unstamped cigarettes. FedEx does not dispute that none of the shippers involved were state-licensed cigarette stamping agents during the relevant timeframe and thus could not be a point of entry for cigarettes shipped into New York. Def.'s 56.1(b) Responses ¶ 4. "[A] corporate defendant is deemed to have had knowledge of a regulatory violation if the means were present by which the company could have detected the infractions." *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 671 (S.D.N.Y. 2017) (citing *United States v. T. I. M. E.-D. C., Inc.*, 381 F. Supp. 730, 739 (W.D. Va. 1974)). FedEx also does not

dispute that it made no attempt to determine whether Shinnecock Smoke Shop, CD2U, FOW Enterprises, and Native Made Tobacco were licensed to receive cigarettes or not, Def.'s 56.1(b) Responses ¶ 5,[13] even though it certainly had the means to.

No genuine dispute of material fact exists that FedEx knowingly shipped over 10,000 cigarettes during the limitations period. FedEx certainly knew, for instance, that Shinnecock Smoke Shop shipped cigarettes. In March 2007, FedEx employees documented in two damaged package reports that Shinnecock Smoke Shop had attempted to send Seneca and Bel-Air brand cigarettes to New York City addresses.[14] Def.'s 56.1(b) Responses ¶ 193. In September 2008, FedEx employees documented in a damaged package report submitted for a Shinnecock Smoke Shop shipment to a New York address that the package contained cigarettes. Def.'s 56.1(b) Responses ¶¶ 197–98. And as mentioned above, Shinnecock Smoke Shop filed a lost shipment claim for five cartons of cigarettes destined for a New York address in March 2010, *see* Def.'s 56.1(b) Responses ¶ 199. FedEx also knew that Native Made shipped unstamped cigarettes. Between February 2011 and April 2012, FedEx issued ten ISF's to Native Made for shipping tobacco; half of the ISF's mention cigarettes. Def.'s 56.1(b) Responses ¶ 214. Though none of these ISF's regarded shipments to New York, the ISF's nonetheless put FedEx on notice that Native Made shipped cigarettes. In February 2011, Native Made became subject to a Stipulated Judgment and Permanent Injunction upon a lawsuit filed by the California Attorney General for

---

[13] The cited evidence does not address Shinnecock Indian Outpost, YKTR, or Two Pine Enterprises, but FedEx has put forth no evidence suggesting that it checked the licensure of these shippers either.

[14] Though the limitations period for Shinnecock Smoke Shop ran from December 30, 2009, the Court relies on undisputed evidence from outside the limitations period to make findings of fact as to whether the elements of the CCTA offense were met within it.

violating the CCTA by shipping untaxed cigarettes. Def.'s 56.1(b) Responses ¶ 213. However, no evidence exists that FedEx took any action to stop Native Made from shipping cigarettes until May 2012, when it terminated Native Made as an account for shipping cigarettes directly to consumers. Def.'s 56.1(b) Responses ¶ 220.

FedEx employees knew that FOW shipped untaxed cigarettes.[15] In 2003, the City of New York informed FedEx that FedEx shipped eight cartons of cigarettes to a residential address in New York City on behalf of "Dannystobacco.com," based out of "615 N. Main Street, Elizabethtown, KY 42701." *See* Pls. Ex. 11 at 1. This address matched that of a FedEx account at the time, "Fow Enterprises." *See* Def's. 56.1(b) Responses ¶ 104. From 2002 until 2006, FedEx picked up packages for FOW at the "Danny's Tobacco" convenience store located at 615 N. Main Street, Elizabethtown, KY. *See* Def.'s 56.1(b) Responses ¶ 108. After 2006, FedEx picked up FOW's packages at a warehouse instead. *See* Def.'s 56.1(b) Responses ¶ 108.

In February 2007, a Service Manager for FedEx Home Delivery in Michigan notified FedEx's Regional Operations Engineering manager that a shipper, "FOW Enterprises Inc (FEI), Elizbethowne [*sic*] KY" was shipping cigarettes into Michigan. *See* Def.'s 56.1(b) Responses ¶ 173. The Service Manager had found sixteen cartons of cigarettes, which amounts to 3200 cigarettes, in a single package from FOW. *See* Def.'s 56.1(b) Responses ¶ 173. A month later, someone from the FedEx Sales Department told a Senior Security Specialist at FedEx that cigarette cartons had been stolen from packages shipped by "Danny Fow at Fow Enterprises, 615

---

[15] The relationship between FOW and an entity called "Danny's Tobacco" is a matter of factual dispute. *Compare* Pls.' 56.1 Statement of Facts ¶ 103 *with* Def.'s 56.1(b) Responses ¶ 103. What is undisputed based on the evidence cited is that there existed a store at 615 N. Main Street, Elizabethtown, KY, called "Danny's Tobacco," which was owned by an organization called Fow Enterprises, and that Fow Enterprises had an account with FedEx Ground. *See* Pls.' 56.1 Statement of Facts ¶¶ 103–08; Def.'s 56.1(b) Responses ¶¶ 103–08.

Main Street, Elizabethtown, KY." *See* Def.'s 56.1(b) Responses ¶ 174. The packages were to be delivered to an address in Westchester, IL. *See* Def.'s 56.1(b) Responses ¶ 174. Christopher Gallant, the Account Executive for FOW at the time, *see* Def.'s 56.1(b) Responses ¶ 112, was informed of the thefts. *See* Pls.' Ex. 100. After FedEx was informed of the cigarette thefts, it went on to make four additional shipments to the same Westchester, IL address. *See* Def.'s 56.1(b) Responses ¶ 180.

In 2008, the year after Gallant was informed that cigarette cartons were found and stolen from packages sent by FOW, Gallant told the new Account Executive, Heath Harlem, that he "felt" that FOW shipped cigarettes. *See* Pls.' Ex. 2, Harlem Tr. at 176:7–8. Harlem would later come to believe that himself. In April 2010, when Harlem transferred the FOW account to new Account Executive Brian Broderick, Harlem wrote to Broderick that Kevin Fow "[s]hips cigarettes out of his convenience store." See Def.'s 56.1(b) Responses ¶ 188; Pls.' Ex. 105. And in a January 2011 transition memo to his manager, Grant Kuhn, Broderick in turn stated that FOW "ship[s] cigarettes to residences off of their website and their catalog," warning Kuhn that "[t]his business could go away due to legal issues etc." *See* Def.'s 56.1(b) Responses ¶ 190; Pls.' Ex. 107 at 1.

The quantum of evidence provided with respect to Shinnecock Indian Outpost and Two Pine is admittedly less. Jeffrey Lerman, who picked up packages from Shinnecock Indian Outpost, did so as an employee of a trucking company he owned, not FedEx Ground itself. *See* Def.'s 56.1(b) Supplemental Statement of Facts ¶¶ 189–90. Lerman was thus an independent contractor for FedEx Ground. *See* Def.'s 56.1(b) Supplemental Statement of Facts ¶ 189. Though some independent contractors are agents of their contracting partners, *see* Restatement

(Third) of Agency § 1.01 cmt. c (2006) ("[T]he common term 'independent contractor' is equivocal in meaning and confusing in usage because some termed independent contractors are agents while others are nonagent service providers"), it is unclear at this stage of the litigation whether Lerman and FedEx Ground's relationship amounted to an agency relationship. The Court thus cannot impute Lerman's knowledge to FedEx at this time. Further, the extent of Lerman's knowledge that Shinnecock Indian Outpost was shipping unstamped cigarettes is also a matter of dispute. Lerman knew Shinnecock Indian Outpost shipped cigarettes because he saw employees putting packages of cigarettes together for him to load on his truck. *See* Def.'s 56.1(b) Responses ¶ 195. Lerman disputes that he knew the cigarettes were untaxed, however. *See* Def.'s 56.1(b) Supplemental Statement of Facts ¶ 192.

As for Two Pine, the evidence of knowing shipments is similarly lacking. In fact, FedEx has moved for summary judgment on all claims related to Two Pine. Regardless of how conclusive the evidence of FedEx's knowledge as to Shinnecock Indian Outpost and Two Pine is, however, there is enough evidence showing that FedEx knowingly shipped cumulatively over 10,000 cigarettes for the other shippers.

FedEx does present some evidence showing that some of its employees did not know FedEx was shipping unstamped cigarettes. For example, Shinnecock Smoke Shop employees told Account Executive Raychel Favaloro that they shipped novelty items, not cigarettes. *See* Def.'s 56.1(b) Supplemental Statement of Facts ¶ 185–86. But evidence that the shippers lied to certain FedEx employees about the contents of their packages does not show that FedEx lacked knowledge. In any event, Plaintiffs do not need to show that *every* FedEx employee knew that FedEx was shipping unstamped cigarettes before knowledge can be imputed to it. Plaintiffs have

shown that no genuine dispute exists that *some* FedEx employees knew, yet continued to engage

in business as usual, such that over 10,000 cigarettes were knowingly shipped.[16]

No genuine dispute of material fact exists that FedEx knowingly shipped over 10,000

unstamped cigarettes within the limitations period. The Court grants judgment as a matter of law

for Plaintiffs on FedEx's liability for violating the CCTA.

        4.       <u>Proper measure of CCTA damages</u>

Plaintiffs argue that, as a matter of law, the proper method of calculating the money

damages owed is the amount of cigarette cartons FedEx shipped multiplied by the applicable

State and City tax rate at the time of shipment. FedEx challenges Plaintiffs' proposed formula

on the ground that genuine disputes of material fact exist as to whether such shipments caused

Plaintiffs any damages. The Court agrees with Plaintiffs.

The CCTA authorizes states to recover "civil penalties, money damages, and injunctive

or other equitable relief." 18 U.S.C. § 2346(b)(2). In addition to civil penalties, Plaintiffs seek

to recover money damages from FedEx. The calculation of the amount of damages is a factual

determination, but the formula used in making that calculation is a question of law for the Court.

*Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998) (citing *United*

*States ex rel. N. Maltese and Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985)).

Plaintiffs are seeking money damages in the form a lost tax revenue, a form of compensatory

damages. Compensatory damages "are the damages awarded to a person as compensation,

indemnity, or restitution for the harm sustained by him." Restatement (Second) of Torts § 903

---

[16] The Court finds that Plaintiffs have shown that FedEx employees had actual knowledge of the cigarette shipments. Consequently, the Court does not address Plaintiffs and FedEx's arguments regarding whether FedEx was willfully blind to the shipments.

(1979). They are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). However, the defendant is not responsible for the "remote consequences" of its actions. *Southern Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918). "The general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Id.*

As discussed in part II, cigarettes are subject to the State tax upon their entry into the State and the City tax upon their entry into the City. Cigarettes in "use" must be stamped, N.Y. Tax Law § 471; Ad. Code § 11-1302, and the cigarettes FedEx shipped were in "use" by FedEx because FedEx was transporting them, *see* N.Y. Tax Law § 471-a; Ad. Code § 11-1301. Both the State and the City were thus deprived of tax revenue to which they were entitled the moment FedEx knowingly transported the cigarettes into their jurisdictions untaxed. *See City of New York v. Golden Feather Smoke Shop, Inc.*, 2013 WL 3187049, at *33 (E.D.N.Y. June 20, 2013); *City of New York v. Milhelm Attea & Bros.*, 2012 WL 3579568, at *14 (E.D.N.Y. Aug. 17, 2012). Because each cigarette carton FedEx shipped this way deprived the State and City of the tax they were entitled to receive had FedEx complied with the law, Plaintiffs suffered damages in the amount of the applicable tax rate on each carton shipped. *See Golden Feather*, 2013 WL 3187049 at *33.

According to FedEx, Plaintiffs' formula fails to show how FedEx caused Plaintiffs' damages. Under a damages formula that includes causation, FedEx argues, Plaintiffs' damages are only the tax revenues Plaintiffs lost from the smokers it shipped to who would have otherwise paid for taxed cigarettes. Since some of these smokers would have substituted to

illegal cigarettes from other sources or non-cigarette alternatives if FedEx had not shipped to them, not all of the cigarettes FedEx shipped would have been replaced by taxed cigarettes. Plaintiffs' damages are thus significantly less than the amount of applicable taxes on all the cigarette cartons FedEx shipped.

Plaintiffs indeed must show a causal connection between FedEx's actions and the damages they allege, as FedEx argues, and they do—FedEx shipped untaxed cigarettes to which a tax applied, causing Plaintiffs to lose tax revenue to which they were entitled. It is FedEx that presents a legally untenable theory of causation. "[A] number of judge-made rules circumscribe[] the availability of damages recoveries in both tort and contract litigation— doctrines such as foreseeability and proximate cause, directness of injury, [and] certainty of damages[.]" *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 532 (1983). These doctrines all disfavor FedEx's theory of damages. FedEx's theory requires the jury to speculate what third parties—smokers, retailers, other players in New York's cigarette economy—would have done in the absence of FedEx's conduct over the course of many years, and what effect their decisions would have had. Damages alleged in this way are too far removed from the underlying conduct.

The Supreme Court has disapproved of engaging in the analysis FedEx puts forth. In *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010), the City of New York alleged that an out-of-state cigarette retailer committed a RICO violation by selling cigarettes to city residents without submitting required customer information to New York State. Because the State lacked the information, it could not then forward that information to the City to use to collect taxes from individuals, thereby injuring the City "in the amount of the portion of back taxes that were never

collected." *Id.* at 9–10. The Supreme Court rejected that causal theory. Chief Justice Roberts noted that proximate cause inquiries under RICO, like damages inquiries, generally do not go "beyond the first step." *Id.* at 10. The conduct directly responsible for the City's injury was the customers' failure to pay the taxes owed. *Id.* at 10. In *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018), a liquor distributor with exclusive distribution rights in New York sued another distributor for bootlegging liquor to New York liquor retailers, arguing that the scheme deprived it of sales revenue. The Second Circuit rejected the distributor's causal theory because the causal connection between the defendant's alleged conduct and the alleged lost revenues was too speculative; had defendant not bootlegged, for instance, "various retailers might have purchased wine, beer, or a brand of liquor not subject to [the plaintiff's] exclusive distribution contracts[.]" *Id.* at 143. "[T]hough [the plaintiff] was New York State's exclusive lawful distributor for many brands, the market was far from "zero-sum." Sorting out [the plaintiff's] counterfactual sales in this scenario would thus prove 'speculative in the extreme.'" *Id.* (quoting *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 983 (9th Cir. 2008)). The Court suggested that New York State should sue instead because it was a "more direct victim of the smuggling operation," having "lost tax revenue by virtue of the untaxed liquor crossing the border . . . depriv[ing] it of its right to collect money from [the bootleggers]." *Id.* at 144. The same deficiencies in causation in *Hemi* and *Empire* apply to FedEx's theory of damages.

FedEx caused Plaintiffs to lose tax revenue by shipping untaxed cigarettes to New York in contravention of the regulatory framework, which would have taxed those cigarettes upon

entry into Plaintiffs' jurisdictions. The proper measure of damages is thus the applicable tax on every carton of cigarettes shipped by FedEx within the statute of limitations.

B.     *AOC*

On February 3, 2006, the Attorney General of the State of New York, FedEx Express, and FedEx Ground signed and executed the AOC. In signing the AOC, FedEx agreed that it "shall at all times comply with PHL § 1399-ll." AOC ¶ 10. Section 1399-ll provides that it "shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be" someone other than someone licensed as a cigarette tax agent or wholesale dealer, an export warehouse proprietor, or an officer, agent, or employee of the United States or New York state.

FedEx also agreed to a variety of other obligations in the AOC. Key provisions include the following:

- In paragraph 14, FedEx agreed that "[i]f [it] becomes aware of any person(s) using FedEx's Delivery Services to ship Cigarettes to Individual Consumers, within five (5) business days after confirmation of such information, FedEx shall correspond in writing with such person(s), indicating that FedEx does not deliver Cigarettes to Individual Consumers."

- In paragraph 15, FedEx agreed that if the government provides FedEx with evidence that one of its customers is or may be using FedEx to ship cigarettes to unauthorized individuals, FedEx will "immediately send such shipper a written communication" and cease delivering for the customer unless FedEx knows a package does not contain cigarettes.

- In paragraph 17, FedEx agreed that if it becomes aware that a customer to whom it had given a warning pursuant to paragraph 14 or 15 uses FedEx to make another prohibited cigarette shipment, "then no later than five (5) business days after confirmation of such Prohibited Shipment, FedEx shall permanently terminate all Delivery Services for such customer, and shall advise the Attorney General of such action."

- In paragraph 18, FedEx agreed to issue an annual "written communication to its sales staff and U.S. pick up and delivery employees . . . reiterating" FedEx's policy against shipping cigarettes and each individual's obligation to alert FedEx management if he or she believes a shipper is shipping cigarettes.

In paragraph 23, FedEx agreed to the following provision:

FedEx shall pay to the State of New York a stipulated penalty of $1,000 for each and every violation of this Assurance of Compliance occurring after the Effective Date; provided, however, that no penalty shall be imposed if: (a) the violation involves the delivery of Cigarettes to an Individual Consumer outside the State of New York; or (b) the violation involves the delivery of Cigarettes to an Individual Consumer within the State of New York, but FedEx establishes to the reasonable satisfaction of the Attorney General that FedEx did not know and had no reason to know that the shipment contained Cigarettes.

The State seeks summary judgment that FedEx violated the AOC.[17] FedEx seeks summary judgment on its statute of limitations defense to the State's claim under the AOC. For the reasons discussed below, the Court grants summary judgment to the State on FedEx's liability for breaching the AOC, and grants partial summary judgment to FedEx on its statute of limitations defense.

Before addressing the parties' motions, however, the Court must first decide two threshold legal questions:[18] (1) what violations of the AOC are subject to the penalty provision of ¶ 23, and (2) what claims for relief has the State successfully pled in this case.

1.     Proper Scope of the AOC's ¶ 23 Provision

The State and FedEx disagree over what breaches of the AOC are subject to the stipulated penalties provision in ¶ 23 of the AOC. The State argues that every time FedEx failed

---

[17] Only the State brings claims under the AOC. The City is not a party to the AOC.

[18] In their papers, the parties argued over whether the AOC ought to be construed as a consent decree and thus whether a judge or jury was the proper trier of fact. In their letter dated September 24, 2018, the State informed the Court that it will no longer object to the AOC claim being tried to the jury. *See* Doc. 581.

to comply with one of the obligations set out in the AOC, FedEx committed a violation subject to the ¶ 23 penalty provision. FedEx argues that only violations of § 1399-ll constitute a violation subject to the ¶ 23 penalty provision.

The Court agrees with the State. By its express terms, paragraph 23 requires Plaintiffs to pay a stipulated penalty for "each and every violation" of the AOC. Thus, any breach of an obligation under the AOC amounts to a violation that can be penalized under ¶ 23. The requirement to comply with § 1399-ll is just one part of the overall structure of the AOC.

FedEx argues that "violation" refers only to illegal shipments under § 1399-ll because ¶ 23 recognizes two exceptions to the stipulated penalties provision's scope, and both exceptions are types of shipments:

> ". . .no penalty shall be imposed if: (a) the violation involves the delivery of Cigarettes to an Individual Consumer outside the State of New York; or (b) the violation involves the delivery of Cigarettes to an Individual Consumer within the State of New York, but FedEx establishes to the reasonable satisfaction of the Attorney General that FedEx did not know and had no reason to know that the shipment contained Cigarettes."

Since ¶ 23 recognizes no other type of violation to which the stipulated penalty may attach, FedEx argues, it only applies to shipments that violate § 1399-ll. The Court does not read the two exceptions to have such a narrowing effect on ¶ 23.

Another problem with FedEx's urged interpretation of the AOC is that it would leave the State with no means of ensuring compliance with the other terms of the AOC. As FedEx has admitted, the AOC is a contract. In consideration for the cessation of the State's investigation into FedEx's potential cigarette shipments, FedEx agreed to implement certain reporting and communications measures. Paragraph 23 is the only provision in the contract penalizing FedEx

for non-compliance.  Placing certain violations outside the scope of ¶ 23 would prevent the State from enforcing its agreement.

2.      Properly Pled Relief Under the AOC

FedEx argues that, even assuming the AOC allows the State to seek penalties for violations of all provisions, the State's AOC claim is limited to violations of § 1399-ll because that is the only claim to relief the operative complaints authorize.  The Court agrees.

The State can only seek penalties under the AOC for § 1399-ll violations because those are the only AOC violations supported by the operative complaints.  Federal Rule of Civil Procedure 8 requires the plaintiff to make a demand for the relief he or she seeks.  The operative complaints limit the relief sought to stipulated penalties for violations of § 1399-ll.  In the *FedEx I* operative complaint, Plaintiffs requested that the Court "award liquidated damages to the State in the amount of $1,000 for each of FedEx's deliveries of cigarettes to a home or residence in violation of the AOC, *i.e.* $32,687,000[.]"  *FedEx I* Am. Compl. at 47.  In the *FedEx II* operative complaint, Plaintiffs requested that the Court "award stipulated penalties to the State in the amount of $1,000 for each of FedEx's deliveries of cigarettes made in violation of the AOC[.]"  *FedEx II* Sec. Am. Compl. at 35.  Authorizing the State to collect damages for violations of obligations such as those laid out in paragraphs 14, 15, and 17 of the AOC would be allowing the State to go beyond the complaints.[19]

---

[19] On January 31, 2018, the Plaintiffs moved to file a consolidated amended complaint, which would have amended the State's AOC claim for relief to include violations of all provisions of the AOC.  *See* Doc. 414.  For the reasons set out in the Court's opinion dated September 21, 2018, the Court denied Plaintiffs leave to file the consolidated complaint.  *See* Doc. 580.

Because the operative complaints do not include a claim for relief for violations of the AOC in addition to violations of § 1399-ll, the State's claim for AOC penalties is limited to violations of § 1399-ll.

3.    Statute of Limitations

FedEx moves for summary judgment on its affirmative defense of statute of limitations with respect to the State's AOC claims.  FedEx argues that all AOC claims for shipments that occurred prior to the limitations period are time barred and should thus be dismissed.  As with the CCTA claim, the parties dispute the applicable statute of limitations.  The Court holds that a six-year statute of limitations applies and that the AOC claim was therefore tolled with respect to each shipper named in *FedEx I* on December 30, 2007, and with respect to each shipper named in *FedEx II* on November 12, 2008.[20]  All shipments that occurred prior to the limitations period applicable for each shipper are time barred.

Under New York C.P.L.R. § 213(2), contract claims are subject to a six-year statute of limitations.  The AOC is a valid contract between the State of New York and FedEx.  In *UPS*, the Court held that a similar agreement between the State and FedEx competitor UPS, the Assurance of Discontinuance (AOD), is a contract.  253 F. Supp. 3d at 672.  Though the AOD

---

[20] The State and FedEx disagree as to when the limitations period for the AOC claims were tolled for the same reason they disagree as to when the period was tolled for the CCTA claim—the State argues that amended complaints naming additional shippers relate back to the original complaints in *FedEx I* and *FedEx II*, while FedEx argues against relation back.  For the same reasons outlined in part III.A.1, the Court finds that the AOC claims in Plaintiffs' amended complaints relate back to the original *FedEx I* and *FedEx II* complaints, respectively.

The State is entitled to collect stipulated penalties for every violation of § 1399-ll that occurred within the applicable limitations period:  the statute of limitations for breach of contract runs from the time of the breach, *see Lehman XS Tr., Series 2006-4N, ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortg. Funding, Inc.*, 643 F. App'x 14, 16 (2d Cir. 2016), and a breach occurred upon every violation of § 1399-ll.  *Cf. Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611 (N.Y. 1979) (finding contract claims arising within six years of commencement of suit timely because six-year statute of limitations runs separately for damages occasioned each time breach occurred).

includes provisions different from those in the AOC, the State entered the AOD under the same procedures.  The AOC and the AOD share similar structures, even including identical text in certain parts.

FedEx argues that the three-year statute of limitations applicable to violations of § 1399-ll, N.Y. C.P.L.R. 214(2), should apply to the State's AOC claim because the AOC claim is entirely dependent on the existence of § 1399-ll.  But the two cases FedEx cites show only that where the plaintiff alleges a statutory violation, the applicable limitations period for that statute applies.  *See Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214 (N.Y. 1996); *Zeides v. Hebrew Home for the Aged at Riverdale, Inc.*, 300 A.D.2d 178 (N.Y. App. Div. 1st Dep't. 2002).[21]  Here, the contracting parties put forth their obligations in the form of a contract, and one of the parties is now suing for a breach of the contract.  That one of the obligations in the contract is to abide by § 1399-ll does not change the cause of action from breach of contract to violation of § 1399-ll.  The fact the AOC contains other provisions that impose additional obligations on FedEx shows that a breach for contract claim under the AOC is not simply just a § 1399-ll substitute.  Accordingly, the six-year statute of limitations for breach of contract applies to the State's AOC claim.

---

[21] FedEx also cite *People v. Credit Suisse Securities (USA) LLC*, 2018 WL 2899299 (N.Y. 2018), which held that the statute of limitations of the underlying legal liability applied to a N.Y. Exec. L. § 63(12) claim, *see id.* at *5. This case cannot be generalized to apply to the AOC, because N.Y. Exec. L. § 63(12) specifically "gives the Attorney General standing to redress liabilities recognized elsewhere in the law, expanding the scope of available remedies," *Credit Suisse*, 2018 WL 2899299, at *5.  Section 63(12) is a vehicle for the Attorney General to seek relief based on pre-existing sources of legal liability, unlike a breach of contract claim, which is an independent source of legal liability.

4.      *Equitable Estoppel*

Plaintiffs argue that FedEx is equitably estopped from asserting a statute of limitations defense because it signed the AOC in bad faith.  On a motion for summary judgment, the plaintiff bears the burden to present facts which, if true, justify equitably estopping a defendant from asserting the statute of limitations.  *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997).  The doctrine typically applies where the plaintiff shows that the defendant misrepresented the length of the limitations period or "lulled" the plaintiff into believing that it was not necessary to commence the litigation.  *Cerbone v. ILGWU*, 768 F.2d 45, 50 (2d Cir. 1985); *see also Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) (stating that doctrine applies where "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action").  The plaintiff must demonstrate "egregious wrongdoing" on the part of defendant for equitable estoppel to apply. *Netzer*, 963 F. Supp. at 1316 (S.D.N.Y. 1997).

The State has not demonstrated that such egregious wrongdoing exists here.  The State's proffered evidence merely shows that FedEx failed to abide by AOC obligations like failing to report known cigarette shippers.  *See* Doc. 489 at 21, *citing* Pls.' 56.1 Statement of Facts ¶¶ 35–39; 40–44; 63–64.  "Egregious misconduct" must amount to more than just breaches of the contract itself, or else equitable estoppel would apply to all statute of limitations defenses to breach of contract claims.  The State has not shown that FedEx engaged in affirmative acts of "fraud, misrepresentations or deception," *Zumpano*, 6 N.Y.3d at 674, to cause the State to delay filing this action.  Consequently, equitable estoppel does not apply.[22]

---

[22] The State also argues that the AOC claim is timely under any statute of limitations because the AOC lacks a termination date and requires continuous performance, so each time FedEx breached the AOC, the statute of limitations ran anew.  The Court agrees with the State to the extent the State argues that since every illegal shipment

5.      FedEx's Liability Under the AOC

The State seeks a determination of liability under the AOC; it does not ask this Court to determine the number of violations under the AOC or provide a calculation of penalties at this time.  *See* Doc. 512 at 13 n.8.  The Court grants summary judgment to the State on FedEx's liability for breaching the AOC.

The State is suing FedEx for violating N.Y. P.H.L. § 1399-ll, which FedEx had agreed not to violate in the AOC.  Section 1399-ll makes it unlawful for a common carrier "to knowingly transport cigarettes to any person in [New York] reasonably believed by such carrier to be other than" a cigarette tax agent or wholesale dealer, an export warehouse proprietor, or an officer, agent, or employee of the United States or New York.  The elements of a § 1399-ll violation are very similar to that of a CCTA violation: the defendant must be a (1) common carrier that (2) knowingly transported (3) cigarettes (4) to someone in New York (5) reasonably believed to be unauthorized to receive them.

The Court finds that no genuine dispute of material fact exists that FedEx violated § 1399-ll and thereby breached the AOC within the limitations periods.  This finding follows from the same evidence discussed in part III.A.2 and III.A.3, evidence which supported summary judgment on the CCTA violation.  The CCTA violation, after all, requires that FedEx shipped over 10,000 cigarettes in a four-year statute of limitations, while § 1399-ll has no minimum quantity for cigarettes shipped and is subject to a six-year statute of limitations.  No reasonable

_____

breaches the AOC, the statute of limitations for an AOC claim only starts running with the last shipment made. Insofar as the State argues that the continuing obligation doctrine permits the State to reach beyond the six-year limitations period, however, the State is wrong.  "Where applicable, the [continuing obligation] doctrine will save all claims for recovery of damages but only to the extent of wrongs committed within the applicable statute of limitations."  *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 1st Dep't. 2017).

jury could find that FedEx *never* violated § 1399-ll.  That is enough to grant summary judgment

on liability for violating the AOC.  A jury can determine how many times FedEx violated the

AOC, and thereby how much in stipulated penalties FedEx owes the State.

C.     *Equitable Estoppel*

FedEx moves for summary judgment as to all claims by the City of New York relating to

shipper Shinnecock Smoke Shop on grounds of equitable estoppel.  In a settlement agreement

between the City and FedEx concerning CD2U dated March 15, 2013, the City represented that

it "ha[d] no information that suggests that FedEx Ground has delivered or transported unstamped

cigarettes to New York City residents or into the geographic boundaries of New York City."

Pls.' 56.1(b) Responses ¶ 41.  But approximately nine months earlier, in July 2012, Eric

Proshansky, a lawyer with the New York City Law Department, received a document from

Richard Hynes, a security consultant for a major cigarette company, suggesting that the City did

have such information.  Pls.' 56.1(b) Responses ¶¶ 53, 55–56.  Among other things, the

document stated that "[u]ntil last year, Fed Ex ground [*sic*] continued to pick up cigarettes from

Smith's house for delivery to cigarette customers."  Pls.' 56.1(b) Responses ¶¶ 55–56.  In

discovery, the City admitted that Mr. Proshansky knew at the time that "Smith" referred to

Jonathan Smith, the owner of Shinnecock Smoke Shop, located on Long Island.  Pls.' 56.1(b)

Responses ¶¶ 58–59, 60.  The City also admitted that packages shipped from Long Island via

ground transportation had to pass through New York City.  Pls.' 56.1(b) Responses ¶ 61.  FedEx

argues that the above facts show that the City necessarily knew that Shinnecock Smoke Shop

was distributing cigarettes in New York City prior to the March 2013 agreement, represented

otherwise, and should thus now be estopped from suing for claims relating to Shinnecock Smoke Shop. The Court disagrees.

The doctrine of equitable estoppel prevents a claim from being asserted where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). "Under federal law, a party may be estopped from pursuing a claim or defense where: (1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; (2) and the other party reasonably relies upon it; (3) to her detriment." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)). The doctrine of equitable estoppel, however, is not applied to the government on the same terms as it is to private citizens. *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994) (citing *United States v. Boccanfuso*, 882 F.2d 666, 669 (2d Cir. 1989)). Courts may only apply estoppel to the government where, in addition to the above factors, the government engaged in affirmative misconduct. *Shalala*, 34 F.3d at 1168. The doctrine thus applies against the government only "in the most serious of circumstances." *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982). Whether such extraordinary circumstances exist to warrant the application of equitable estoppel is a question of fact. *Kosakow*, 274 F.3d at 725.

Such extraordinary circumstances clearly do not exist here. First, FedEx has made no showing of reasonably relying on the City's alleged misrepresentation that it was unaware of cigarette shipments from Shinnecock Smoke Shop. In the March 2013 agreement, FedEx and

the City only agreed to release each other of claims related to CD2U.  *See* Pls.' Ex. 36 at 1.  It is

unclear how the alleged misrepresentation relating to Shinnecock Smoke Shop affected the terms

of the agreement.  Secondly, and more importantly, FedEx has made no showing that the City

engaged in any affirmative misconduct.  FedEx's proffered evidence does not come close to

establishing that the City knowingly misrepresented to FedEx that it was unaware of Shinnecock

Smoke Shop.  Mr. Proshansky could have easily and understandably failed to make the

connection between Smith, Shinnecock Smoke Shop's presence on Long Island, and the fact that

ground deliveries from Long Island must pass through New York City.  And if he did, he could

have easily and understandably forgotten its relevance nearly a year after Hynes's email when

the City was signing the release with FedEx.  FedEx has not shown that no genuine dispute over

the factual predicates of its equitable estoppel defense exists; hence, summary judgment is

denied.

       F.     *Two Pine*

FedEx moves for summary judgment with respect to all claims to the extent they involve

Two Pine.  Plaintiffs allege that FedEx knowingly shipped cigarettes for Two Pine to New York

State residents in violation of the CCTA, N.Y. P.H.L. § 1399-ll, RICO, and the AOC.  The Court

dismissed all RICO claims, including Two Pine's, as moot.  The Court hereby denies summary

judgment as to the other claims to the extent they relate to Two Pine.

Plaintiffs cannot rely upon the declaration of Vincent Lesnak to establish a genuine

dispute of material fact that Two Pine shipped cigarettes.  In his declaration, Vincent Lesnak, an

independent consultant, testified that Deloris Uebelhoer, the owner of Two Pine, told him that

100% Two Pine's shipments transported through FedEx Ground contained cigarettes.  *See* Def.'s

Ex. 244.  As Plaintiffs rely upon Uebelhoer's statement to show that FedEx did indeed ship

cigarettes from Two Pine, *see* Doc. 493 at 41, the statement is inadmissible hearsay, *see* Fed. R.

Evid. 801(c).  Thus, it cannot be considered on this motion for summary judgment.  *See*

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)

(inadmissible hearsay may not be considered on summary judgment motion absent a showing

that admissible evidence will be available at trial).

Lesnak's declaration is not Plaintiffs' sole piece of evidence concerning Two Pine,

however.  Plaintiffs present two other pieces of evidence.  First, Plaintiffs cite evidence showing

that FedEx encouraged its sales representatives to ask their shipping customers what they

shipped and to check their websites.  *See* Doc. 493 at 42 (citing Pls.' 56.1(b) Supplemental

Statement of Facts ¶ 55).  This general policy suggests, Plaintiffs argue, that FedEx sales

representatives knew that Two Pine shipped cigarettes from asking Uelbelhoer and from

checking Two Pine's website, www.SenecaCigarettes.com, which openly advertised cigarettes.[23]

*See* Doc. 493 at 41–42.

Second, Plaintiffs cite an ISF issued by FedEx on January 3, 2015, which stated that

"tobacco" was found in a package Two Pine sent to a non-New York address.  *See* Pls.' 56.1(b)

Supplemental Statement of Facts ¶ 62.  Plaintiffs argue that the ISF suggests that FedEx was

---

[23] The archived pages of the website are admissible because they are not offered for the truth of the matter stated; rather, Plaintiffs use the website pages to suggest that FedEx knew what Two Pine was shipping.  If Plaintiffs wish to use the website pages as evidence that Two Pine was shipping cigarettes at the listed prices, or that payments were directed to Two Pine, they will need to authenticate the pages in accordance with Federal Rule of Evidence 901.  *See Novak v. Tucows, Inc.*, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009) (striking exhibits containing screenshots of websites procured from Wayback machine for hearsay lacking authentication).

shipping cigarettes to Two Pine's recipients; FedEx notes that the ISF description mentions tobacco, not cigarettes.

Admittedly, the cited does not amount to an airtight case against FedEx. Nonetheless, on summary judgment, this Court must view the facts in the light most favorable to the non-movants. Under this standard, a reasonable jury could find that FedEx knowingly shipped untaxed cigarettes on behalf of Two Pine, thereby violating the CCTA, N.Y. P.H.L. § 1399-ll, and its obligations under the AOC. The Court therefore denies FedEx's motion for summary judgment on those claims as they relate to Two Pine.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion is GRANTED and FedEx's motion is GRANTED in part and DENIED in part. Specifically:

1. Summary judgment is GRANTED to Plaintiffs on FedEx's liability for violating the CCTA;

2. Summary judgment is GRANTED to Plaintiffs on their proposed formula for calculating damages under the CCTA;

3. Summary judgment is GRANTED to the State of New York on FedEx's liability for violating the AOC;

4. As they have now abandoned their RICO conspiracy claim, Plaintiffs' summary judgment motion on the claim is DENIED as moot;

5. Similarly, as Plaintiffs have now abandoned their substantive RICO and RICO conspiracy claims, FedEx's summary judgment motion on both claims is DENIED as moot;

6. FedEx's summary judgment motion on its affirmative defense of statute of limitations against Plaintiffs' CCTA claim is GRANTED IN PART, with the result that Plaintiffs may pursue CCTA violations occurring on or after December 30, 2009 for shippers named in *FedEx I*, and CCTA violations occurring on or after November 12, 2010 for shippers named in *FedEx II*;

7. FedEx's summary judgment motion on its affirmative defense of statute of limitations for breach of the AOC is GRANTED IN PART, with the result that the State of New York may pursue AOC violations occurring on or after December 30, 2007 for shippers named in *FedEx I*, and AOC violations occurring on or after November 12, 2008 for shippers named in *FedEx II*;

8. Summary judgment is DENIED to FedEx on its affirmative defense of equitable estoppel; and

9. Summary judgment is DENIED to FedEx on all claims relating to Two Pine.

Dated: October 5, 2018
       New York, New York

Edgardo Ramos, U.S.D.J.